IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | |
|---|---|
| *In re* Certificate of Material Witness to Non-Party Lindsey O. Graham in his official capacity as United States Senator, <br><br> in the matter of: <br><br> Special Purpose Grand Jury, Fulton County Superior Court Case No. 2022-EX-000024. | Case No. _____:22-mc-_____ |

### *Expedited* Motion to Quash and Memorandum in Support

The Fulton County District Attorney has ensured South Carolina Senator Lindsey O. Graham that he is not a target or a subject of the Special Purpose Grand Jury investigating "possible attempts to disrupt the lawful administration of the 2020 elections in the State of Georgia." Yet the District Attorney has launched the formal process of compelling the Senator to travel to Georgia to testify before the Special Purpose Grand Jury. She has obtained an *ex parte* certificate from a Georgia state court that is directed at the Tenth Circuit Court of General Sessions under the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings. The proceedings are aimed at forcing Senator Graham to appear in Georgia for seven weeks of in-person testimony.

Senator Graham moves to quash the *ex parte* Certificate and related process purporting to require his appearance in any proceedings related to any Georgia Special Purpose Grand Jury because (1) the Constitution's Speech or Debate Clause protects him from this legal process, (2) sovereign immunity prohibits enforcement of the state court process on him as a federal officer, and (3) no extraordinary circumstances exist for compelling his testimony. Therefore, the Court should expedite briefing, and quash the state court proceedings seeking to compel his appearance.

**Factual Background**

Nearly six months ago, the Fulton County Superior Court Chief Judge issued an order impaneling a Special Purpose Grand Jury to "investigate any and all facts and circumstances relating directly or indirectly to possible attempts to disrupt the lawful administration of the 2020 elections in the State of Georgia." (*See* **Exhibit 1**, Certificate of Material Witness Pursuant to Uniform Act to Secure the Attendance of Witnesses from Without the State, Codified in the State of Georgia as O.C.G.A. § 24-13-90 et seq., ¶ 1 [hereinafter the "Certificate"].) Since that time, news outlets report that Fulton County District Attorney Fani T. Willis has compelled Georgia Secretary of State Brad Raffensperger, Deputy Secretary of State Gabe Sterling, former Secretary of State Chief Investigator Frances Watson, former Elections Director Chris Harvey, and others to testify before the Special Purpose Grand Jury. *See* Tamar Hellerman, *Raffensperger testifies before Fulton grand jury probing 2020 elections*, THE ATLANTA JOURNAL-CONSTITUTION (June 2, 2022), available at https://bit.ly/3Ilc61E.

On July 5, 2022, the District Attorney filed her *ex parte* "Petition for Certification of Need for Testimony Before Special Purpose Grand Jury Pursuant to O.C.G.A. § 24-13-90 et seq." (Exhibit 1, Certificate ¶ 2; *see also* Exhibit 2, Petition.) Without notice to Senator Graham, the Superior Court Judge supervising the Special Purpose Grand Jury issued the *ex parte* Certificate under Georgia's version of the Uniform Act to Secure the Attendance of Witnesses from Without the State, O.C.G.A. §§ 24-13-90 through -97. (*Id.*)[1] The Certificate purports to find that Senator Graham is a necessary and material witness in the Special Purpose Grand Jury's investigation based on two alleged phone calls to "Georgia Secretary of State Brad Raffensperger and members

---

[1] South Carolina has also passed the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings, S.C. Code Ann. §§ 19-9-10 through -130. Because the states' two acts are similar, Senator Graham refers to them both as the "Uniform Act."

of his staff in the weeks following the November 2020 election in Georgia." (*Id.* ¶¶ 2–3.) The Certificate explains that the District Attorney seeks to compel Senator Graham's testimony before the Special Purpose Grand Jury in Georgia from July 12, 2022, through August 31, 2022. (*Id.*) The Certificate does not refer to producing documents or other materials. (*Id.*)

The Certificate is addressed to the Tenth Circuit Court of General Sessions, South Carolina requesting that Senator Graham be ordered to appear to testify before the Special Grand Jury by court process. (*See* Exhibit 1, Certificate ¶ 10.) Senator Graham filed his Notice of Removal under 28 U.S.C. § 1442(a), along with this Expedited Motion to Quash and Memorandum in Support.[2]

**Argument**

The Speech or Debate Clause of the United States Constitution protects Senator Graham from being "questioned in any other Place." U.S. Const. art. I, § 6, cl. 1. The Clause provides Senator Graham both an immunity and privilege in this context because the testimony sought relates to matters within the legislative sphere. Sovereign immunity also precludes state court process against Senator Graham given the acts occurred within his official capacity.[3] Moreover, the District Attorney cannot establish extraordinary circumstances to require his compelled testimony, interfering with Senator Graham's official duties on behalf of the People of South Carolina. Thus, Senator Graham moves to quash the *ex parte* Certificate any process related to his

---

[2] Although arguably not required for his motion to quash, Senator Graham's counsel certifies he attempted to confer with opposing counsel on July 11, 2022, in an attempt in good faith to resolve the matter contained in this motion, but did not receive a response. *See* Local Civ. R. 7.02 (D.S.C.).

[3] Given that the District Attorney also seeks information about communications she alleges Senator Graham had with others, other additional privileges or immunities may apply. Because the protections provided to Senator Graham by the Speech or Debate Clause are absolute, however, the Senator does not brief these additional grounds but remains willing to do so should the Court request information on these additional protections.

compelled appearance before the Georgia Special Purpose Grand Jury. Senator Graham also moves for expedited briefing and consideration of the motion.

## I. Senator Graham is immune from the state court process and his testimony is privileged under the Speech or Debate Clause and Legislative Immunity.

The Speech or Debate Clause provides that "for any Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any other Place." U.S. Const. art. I, § 6, cl. 1. The Clause ensures that the "legislative function the Constitution allocates to Congress may be performed independently," *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 502 (1975), "without regard to the distractions of private civil litigation or the perils of criminal prosecution." *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 415 (D.C. Cir. 1995). "In reading the Clause broadly," the United States Supreme Court has said that "legislators acting within the sphere of legitimate legislative activity 'should be protected not only from the consequences of litigation's results but also from the burden of defending themselves." *Eastland*, 421 U.S. at 503 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 85 (1967)). "Put simply, the Clause provides legislators with absolute immunity for their legislative activities, relieving them from defending those actions in court." *United States v. Jefferson*, 546 F.3d 300, 310 (4th Cir. 2008).

On top of protecting Members of Congress from having to appear and defend themselves in "any other Place," the Speech or Debate Clause provides "a testimonial and non-disclosure privilege" that protects Members "from being compelled to answer questions about legislative activity or produce legislative materials." *Howard v. Office of the Chief Admin. Officer of U.S. House of Representatives*, 720 F.3d 939, 946 (D.C. Cir. 2013). Members of Congress "'may not be made to answer—either in terms of questions or in terms of defending [themselves] from prosecution' regarding legislative acts." *Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 529 (9th Cir. 1983) (quoting *Gravel v. United States*, 408 U.S. 606, 616 (1972)); *see also Brown &*

*Williamson*, 62 F.3d at 421 ("A party is no more entitled to compel congressional testimony—or production of documents—than it is to sue" Members of Congress).

When the Speech or Debate Clause is raised in defense to a subpoena, the only question to resolve is whether the matters about which testimony are sought "fall within the 'sphere of legitimate legislative activity.'" *Eastland*, 421 U.S. at 501. "[O]nce it is determined that Members are acting within the 'legitimate legislative sphere' the Speech or Debate Clause is an *absolute* bar to interference." *Id.* at 503 (emphasis added); *MINPECO, S.A. v. Conticommodity Services, Inc.*, 844 F.2d 856, 862 (D.C. Cir. 1988) ("Once the legislative act test is met, the principle is absolute.").

Legislative activity protected by the Clause encompasses "anything 'generally done in a session of the House by one of its members in relation to the business before it.'" *Doe v. McMillan*, 412 U.S. 306, 311 (1973) (quoting *Kilbourn v. Thompson*, 103 U.S. 168, 204 (1881)). The Clause accordingly precludes any inquiry into "deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House." *United States v. Dowdy*, 479 F.2d 213, 223 n.18 (4th Cir. 1973) (quoting *Gravel*, 408 U.S. at 625). This standard includes deliberations and communications on all matters "on which legislation may be had," *Eastland*, 421 U.S. at 508, and includes the acquisition of information in support of potential legislative activity, *Dowdy*, 479 F.2d at 226. The absolute immunity provided by the Clause also prohibits inquiry into a Member's motives or purpose related to the legislative activity. *Trump v. Comm. on Ways & Means*, 415 F. Supp. 3d 38, 45 (D.D.C. 2019) (explaining that "judicial inquiry into legislative purpose is out of bounds when suit is brought against Congress or others entitled to Speech or Debate Clause

immunity for actions that are thought to be within the core of the legislative function"), *appeal dismissed*, No. 19-5360, 2020 WL 7021489 (D.C. Cir. Nov. 13, 2020).

Senator Graham's contact with Georgia officials referenced in the Certificate falls within the "legislative sphere" because it was to gather information relevant to his oversight responsibilities as Chairman of the Senate Judiciary Committee and given his obligations under the Electoral Count Act of 1887. *See Committee and Subcommittee Assignments for the One Hundred Sixteenth Congress*, S. Pub. 116-2 (March 18, 2019); 3 U.S.C. §§ 15–18. The Certificate and public news reports explain that Senator Graham discussed a matter of public importance—absentee voting—with the Georgia Secretary of State. (Certificate ¶ 3); Camille Caldera, *Fact check: Claim about Sen. Lindsey Graham's calls to state officials is misleading*, USA TODAY (Nov. 20, 2020), available at https://bit.ly/2Xl2YDv. In doing so, the Senator was discussing with another governmental official an issue routinely brought before the Judiciary Committee, as well as an issue addressed by each Senator every four years. *See*, *e.g.*, Defending the Integrity of Voting Systems Act, Pub. Law 116-179, 134 Stat. 855 (enacted Oct. 20, 2020); 165 Cong. Rec. S4915 (daily ed. July 17, 2019) (noting favorable report of Act out of Senate Judiciary Committee); 3 U.S.C. § 15 (outlining process for consideration of electoral votes by Senate and House of Representatives). Senator Graham has been concerned about election security and ensuring that absentee voting procedures are secure long before the 2020 election. *See*, *e.g.*, *Press Release: Senate Approves Another Graham-Backed Election Security Bill*, U.S. Senate Judiciary Comm. (July 19, 2019), available at https://bit.ly/2XiiaB1; Questioning by Sen. Graham, Barrett Confirmation Hearing, U.S. Senate Judiciary Comm. (Oct. 14, 2020), *available at* https://bit.ly/38okw7P.

Senator Graham is not alone in his concerns about the security of absentee voting. His call is no different than calls made by other Senators. *See*, *e.g.*, 167 Cong. Rec. S20 (daily ed. Jan. 6, 2021) (statement of Senator Lee referencing spending "a lot of time on the phone with legislators and other leaders from the contested [election] states"). His call is also similar to concerns previously raised by State officials in South Carolina; the South Carolina General Assembly dealt with absentee voting at least twice during the 2020 election cycle. *See* 2020 S.C. Acts 133 (altering absentee ballot process for June 2020 primary); 2020 S.C. Acts 149 (changing absentee voting procedures for November 2020 election). So too did the Georgia legislature deal with the issue before and after the 2020 election cycle. *See* Act 24, 2019 Ga. Acts 7, § 38 (amending, among others, O.C.G.A. § 21-2-419); Act 9, 2021 Ga. Acts 14, § 35 (same). Elected officials and courts in South Carolina and Georgia—including an appellate court in a case against Secretary Raffensperger—have been asked to resolve issues related to absentee voting recently amid a shifting landscape of election laws. *Andino v. Middleton*, 141 S. Ct. 9, 9–10 (2020) (granting stay of order from enjoining South Carolina's absentee ballot signature requirements); *New Georgia Project v. Raffensperger*, 976 F.3d 1278, 1284 (11th Cir. 2020) (granting stay of injunction pending appeal involving absentee voting); *Bailey v. S.C. State Election Comm'n*, 430 S.C. 268, 272–73, 844 S.E.2d 390, 392 (2020) (rejecting challenge to absentee process).

Senator Graham did not inject himself into Georgia's electoral process, and never tried to alter the outcome of any election. The conversation was about absentee ballots and Georgia's procedures. *See* Wes Bruer and Marshall Cohen, CNN Politics (Nov. 20, 2020), available at https://cnn.it/3PqjMC6 (quoting Deputy Secretary of State Gabe Sterling). Instead, the contact referenced in the Certificate is legislative activity falling under Senator Graham's fact-finding and oversight responsibility as the then-Chairman of the Senate Judiciary Committee and a sitting

United States Senator required to determine whether to certify electoral votes before a joint session of Congress. *Eastland*, 421 U.S. at 504 ("A legislative body cannot legislate wisely or effectively in the absence of information respecting the conditions which the legislation is intended to affect or change.") (quotation omitted); *Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2031 (2020) ("Without information, Congress would be shooting in the dark, unable to legislate wisely or effectively. The congressional power to obtain information is broad and indispensable. (citations and quotations omitted)). It is immaterial whether the legislative fact-finding occurs on the Senate floor, in a committee room, or through less formal means. *Dowdy*, 479 F.2d at 226 (protecting communications to gather information for subcommittee); *In re Grand Jury Subpoenas*, 571 F.3d 1200, 1203 (D.C. Cir. 2009) (concluding that testimony about legislative fact-finding trip was immune under the Speech or Debate Clause); *Tavoulareas v. Piro*, 527 F. Supp. 676, 680 (D.D.C. 1981) ("[T]he acquisition of information by Congress or congressional staff is generally an activity within the protection of the speech or debate clause."). Given this legislative purpose, the inquiry "in any other Place" into the Senator's actions must end. U.S. Const. art. I, § 6, cl. 1.

Because "the guarantees of [the Speech or Debate] Clause are vitally important to our system of government," they "are entitled to be treated by the courts with the sensitivity that such important values require," *Helstoski v. Meanor*, 442 U.S. 500, 506 (1979). So, "[w]ithout exception," the Supreme Court has "read the Speech or Debate Clause broadly to effectuate its purposes." *Eastland*, 421 U.S. at 501. Reading the Speech or Debate Clause broadly as the Supreme Court instructs, quashing the state court proceedings seeking to compel Senator Graham's testimony—or the appearance and testimony of any Member of Congress—in Georgia under these circumstances is proper.

**II.    Sovereign immunity precludes enforcement of the Certificate, Order to Appear, and any related process.**

Absent an express waiver, sovereign immunity shields the federal government from suit or other judicial proceedings.  See *FDIC v. Meyer*, 510 U.S. 471, 475 (1994).  This immunity protects both federal government entities and federal officials and employees sued in their official capacity, as "an official-capacity suit is, in all respects other than name, to be treated as a suit against the [government] entity."  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *see also Smith v. Cromer*, 159 F.3d 875, 879 (4th Cir. 1998) (stating that, in case involving state-court subpoena to federal employee, "It is . . . clear that an action seeking specific relief against a federal official, acting within the scope of his delegated authority, is an action against the United States, subject to the governmental privilege of sovereign immunity.").

As the Fourth Circuit has explained, state courts—and federal courts upon removal under § 1442—lack "jurisdiction to compel a federal employee to testify concerning information acquired during the course of his official duties, in a state court civil action to which the United States was not a party."  *Smith*, 159 F.3d at 879 (citing *Boron Oil Co. v. Downie*, 873 F.2d 67, 69–71 (4th Cir. 1989)).  Courts around the country agree.  *See Houston Bus. Journal, Inc. v. Office of the Comptroller of the Currency*, 86 F.3d 1208, 1211 (D.C. Cir. 1996) ("In state court the federal government is shielded by sovereign immunity, which prevents the state court from enforcing a subpoena."); *In re Subpoena in Collins*, 524 F.3d 249, 251 (D.C. Cir. 2008) ("A state subpoena commanding a federal agency to produce its records or have its employees testify about information obtained in their official capacities violates federal sovereign immunity.").

As part of the federal government, Congress and its Members are covered by federal sovereign immunity.  *See McLean v. United States*, 566 F.3d 391, 401 (4th Cir. 2009) ("[S]overeign immunity extends to the United States Congress when it is sued as a branch of the

government."), *overruled on other grounds by Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721, 1724 (2020) (interpreting Prison Litigation Reform Act of 1995); *Jud. Watch, Inc. v. Schiff*, 474 F. Supp. 3d 305, 310 (D.D.C. 2020), *aff'd,* 998 F.3d 989 (D.C. Cir. 2021); *Keener v. Cong.*, 467 F.2d 952, 953 (5th Cir. 1972) (per curiam) (same); *Cartwright v. Walsh*, No. 3:18-mc-0014, 2018 WL 461236, at *2 (M.D. Pa. Jan. 18, 2018) (quashing state court subpoenas to Congressman and his employee on sovereign immunity grounds).

For similar reasons set forth above, the compelled state court process initiated by the District Attorney, which seeks from a sitting United States Senator information acquired in his official capacity the Chairman of the Senate Judiciary Committee, infringes on sovereign immunity. Because "[s]overeign immunity is jurisdictional in nature," *FDIC v. Meyer*, 510 U.S. 471, 475 (1994), the party seeking to claim jurisdiction—here, the District Attorney who obtained the Certificate and now seeks to compel the federal officer's testimony in Georgia—bears the burden to establish an affirmative waiver of that immunity. But as the Supreme Court has explained, a waiver of sovereign immunity "must be unequivocally expressed in statutory text and will not be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996) (internal citation omitted). No such waiver exists, so the Court should quash the subpoena based on sovereign immunity.

**III.    No exceptional circumstances exist for compelling Senator Graham's testimony.**

Along with the absolute immunity provided to Senators by the Speech or Debate Clause, courts across the country have held that "[h]igh ranking government officials have greater duties and time constraints than other witnesses," and thus "should not, absent extraordinary circumstances, be called to testify regarding their reasons for taking official actions.'" *In re United States (Kessler)*, 985 F.2d 510, 512 (11th Cir. 1993) (per curiam) (emphasis added) (citation omitted); *Coleman v. Schwarzenegger*, No. CIV S-90-520 LKK JFM P, 2008 WL 4300437, at *2

(E.D. Cal. Sept. 15, 2008) (three-judge district court panel) ("The settled rule across the circuits is that absent extraordinary circumstances, high-ranking officials may not be subjected to depositions or called to testify regarding their official actions."); *see also Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007) (citing cases). The Fourth Circuit agrees. *U.S. Bd. of Parole v. Merhige*, 487 F.2d 25, 29 (4th Cir. 1973); *see also In re McCarthy*, 636 F. App'x 142, 143 (4th Cir. 2015) (granting petition for writ of mandamus prohibiting deposition of high-ranking government official) (citing *Franklin Sav. Ass'n v. Ryan*, 922 F.2d 209, 211 (4th Cir. 1991)).

"This rule is based on the notion that '[h]igh ranking government officials have greater duties and time constraints than other witnesses' and that, without appropriate limitations, such officials will spend an inordinate amount of time tending to pending litigation." *Bogan*, 489 F.3d at 423 (quoting *In re United States (Kessler)*, 985 F.2d at 512). The stress of such litigation on a high-ranking official is even more severe when a litigant seeks to compel the personal appearance of the official. *In re USA*, 624 F.3d 1368, 1373–74 (11th Cir. 2010).

Members of the United States Senate, no less than officials of the other branches and state officers, are high-ranking governmental officials. *See*, *e.g.*, *Moriah v. Bank of China Ltd.*, 72 F. Supp. 3d 437, 440–41 (S.D.N.Y. 2014) (quashing deposition subpoena to former House Majority Leader as high-ranking government official); *McNamee v. Massachusetts*, No. 12-40050-FDS, 2012 WL 1665873, at *1–2 (D. Mass. May 10, 2012) (quashing subpoenas to Congressman and his chief of staff for lack of "extraordinary circumstances" justifying testimonial subpoena to high-ranking government official); *Springfield Terminal Ry. Co. v. United Transp. Union*, No. 89-0073, 1989 WL 225031, at *2 (D.D.C. May 18, 1989) (prohibiting deposition that would "disrupt [his] work as the ranking Minority Member of the House Appropriations Committee"). Senators, thus, may not be compelled to testify absent a showing of exceptional circumstances.

The District Attorney has made no showing of extraordinary circumstances that would warrant compelling Senator Graham's testimony. It is unclear from the Certificate what testimony Senator Graham could provide that might be relevant to the Special Purpose Grand Jury's investigation or why the same information could not be provided by other witnesses. *See Bogan*, 489 F.3d at 423 (stating that testimony of high ranking officials "permitted only where it is shown that other persons cannot provide the necessary information"). This includes other witnesses who allegedly spoke with Senator Graham in Georgia in November 2020 who have already testified before the Special Purpose Grand Jury.

The District Attorney also cannot meet the even higher threshold for compelling Senator Graham's in-person appearance in Georgia. This is especially true because the District Attorney seeks to have Senator Graham appear for seven weeks. (Certificate ¶¶ 6, 10.) That appearance would inhibit—or even potentially prohibit altogether—Senator Graham from exercising his constitutionally prescribed duties in the Senate on behalf of the People of South Carolina. During this time, Senator Graham is in South Carolina and returning to Washington, D.C. for legislative business until the next state work period begins. Thus, requiring Senator Graham to travel to Georgia to testify in person from July 12–August 31, 2022, would impose a burden on his official Senate duties and could potentially require him to violate the Senate Rules by his absence. *See* Senate Rule VI.2 ("No Senator shall absent himself from the service of the Senate without leave.").

Accordingly, the District Attorney can prove no extraordinary circumstances that support compelling Senator Graham to testify and the Court should quash the process issued.

### IV.    The Court should expedite these proceedings.

Given the unique circumstances in which these proceedings have developed, Senator Graham seeks expedited briefing, argument, and consideration of this motion under the short

timeframes imposed by the District Attorney.  If it pleases the Court, Senator Graham requests that the District Attorney have to respond to this motion within three days, that Senator Graham be given a business day to reply, and that the Court schedule a hearing at the earliest available date should it determine that such a hearing is necessary.

### Conclusion

The District Attorney's attempts to compel Senator Graham to appear are an abuse of process.  Her attempts to force Senator Graham to travel to Georgia for seven weeks during the middle of the Senate session is a gross overreach, especially given the immunity and privilege provided by the Speech or Debate Clause, and sovereign immunity.  Thus, Senator Graham requests that the Court:

- Order the District Attorney to respond to this motion within three days.

- Quash the *ex parte* Certificate and related process purporting to require his appearance in any proceedings related to any Georgia Special Purpose Grand Jury.

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: */s/ E. Bart Daniel*
E. Bart Daniel, Federal Bar No. 403
E-Mail: bart.daniel@nelsonmullins.com
Matt Austin, Federal Bar No. 11435
E-Mail: matt.austin@nelsonmullins.com
151 Meeting Street / Sixth Floor
Post Office Box 1806 (29402-1806)
Charleston, SC  29401-2239
(843) 853-5200

Matthew A. Abee, Federal Bar No. 11747
E-Mail: matt.abee@nelsonmullins.com
1320 Main Street / 17th Floor
Columbia, SC  29201
(803) 799-2000

*Attorneys for Senator Lindsey O. Graham*

Charleston, South Carolina
July 12, 2022