# EXHIBIT 3

SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA
IN RE: SPECIAL PURPOSE GRAND JURY
2022-EX-000024
RECORDS

## Case Information

2022-EX-000024 | EX PARTE: CHRISTOPHER BRASHER

Case Number
2022-EX-000024

File Date
01/24/2022

Court
Superior

Case Type
EX PARTE SPECIAL GRAND
JURY

Case Status
Closed

## Party

EX PARTE
BRASHER, CHRISTOPHER

## Disposition Events

01/24/2022 Judgment ▾

Judgment Type
ADMINISTRATIVE CLOSURE OF CASE PER EX-PARTE ORDER

## Events and Hearings

01/24/2022 EX PARTE ORDER OF THE JUDGE ▼

EX PARTE ORDER OF THE JUDGE

Comment
ORDER APPROVING REQUEST FOR SPECIAL PURPOSE GRAND JURY

05/25/2022 EX PARTE PETITION ▼

EX PARTE PETITION

Comment
PETITION FOR CERTIFICATION OF NEED FOR TESTIMONY BEFORE SPECIAL PURPOSE GRAND JURY PURSUANT TO OCGA 24-13-90 ET SEQ.

05/25/2022 EX PARTE ORDER OF THE JUDGE ▼

EX PARTE ORDER OF THE JUDGE

Comment
CERTIFICATE OF MATERIAL WITNESS PURSUANT TO UNIFORM ACT TO SECURE THE ATTENDANCE OF WITNESSES FROM WITHOUT THE STATE, CODIFIED IN THE STATE OF GEORGIA AS OCGA 24-13-90 ET SEQ

06/27/2022 EX PARTE FILING ▼

EX PARTE FILING

Comment
MOTION TO QUASH SUBPOENAS

06/28/2022 EX PARTE ORDER OF THE JUDGE ▼

EX PARTE ORDER OF THE JUDGE

Comment
RULE 22 ORDER-APPROVED AJC PHOTOGRAPHER

06/29/2022 EX PARTE ORDER OF THE JUDGE ▼

EX PARTE ORDER OF THE JUDGE

Comment
RULE 22 ORDER-APPROVED; CNN PRODUCER DEVON SAYERS; CNN PHOTJOURNALIST (TBD)

06/30/2022 EX PARTE ORDER OF THE JUDGE ▼

EX PARTE ORDER OF THE JUDGE

Comment
RULE 22 ORDER-APPROVED; THE ASSOCIATED PRESS KATE BRUMBACK

06/30/2022 EX PARTE FILING ▾

EX PARTE FILING

Comment
STATE'S RESPONSE TO MOTION TO QUASH

06/30/2022 EX PARTE ORDER OF THE JUDGE ▾

EX PARTE ORDER OF THE JUDGE

Comment
RULE 22 ORDER-APPROVED; WSB-TV NEWS REPORTER AND PHOTOJOURNALIST AND
SANDRA PARRISH, WSB RADIO

07/01/2022 EX PARTE FILING ▾

EX PARTE FILING

Comment
MOTION TO CONTINUE SPECIAL PURPOSE GRAND JURY APPEARANCE OF WILLIAM LIGON
TO ACCOMMODATE COUNSEL'S TRIAL SCHEDULE

07/01/2022 EX PARTE ORDER OF THE JUDGE ▾

EX PARTE ORDER OF THE JUDGE

Comment
RULE 22 ORDER-APPROVED; WXIA

07/05/2022 EX PARTE PETITION ▾

EX PARTE PETITION

Comment
PETITION FOR CERTIFICATION OF NEED FOR TESTIMONY BEFORE SPECIAL PURPOSE
GRAND JURY PURSUANT TO OCGA 24-13-90 ET SEQ (KENNETH CHESEBRO)

07/05/2022 EX PARTE ORDER OF THE JUDGE ▾

EX PARTE ORDER OF THE JUDGE

Comment
CERTIFICATE OF MATERIAL WITNESS PURSUANT TO UNIFORM ACT TO SECURE THE
ATTENDANCE OF WITNESSES FROM WITHOUT THE STATE, CODIFIED IN THE STATE OF
GEORGIA AS OCGA 24-13-90 ET SEQ (KENNETH CHESEBRO)

07/05/2022 EX PARTE PETITION ▾

EX PARTE PETITION

Comment
PETITION FOR CERTIFICATION OF NEED FOR TESTIMONY BEFORE SPECIAL PURPOSE
GRAND JURY PURSUANT TO OCGA 24-13-90 ET SEQ (CLETA DEATHERAGE MITCHELL)

07/05/2022 EX PARTE ORDER OF THE JUDGE ▾

EX PARTE ORDER OF THE JUDGE

Comment
CERTIFICATE OF MATERIAL WITNESS PURSUANT TO UNIFORM ACT TO SECURE THE
ATTENDANCE OF WITNESSES FROM WITHOUT THE STATE, CODIFIED IN THE STATE OF
GEORGIA AS OCGA 24-13-90 ET SEQ (CLETA DEATHERAGE MITCHELL)

07/05/2022 EX PARTE PETITION ▾

EX PARTE PETITION

Comment
PETITION FOR CERTIFICATION OF NEED FOR TESTIMONY BEFORE SPECIAL PURPOSE
GRAND JURY PURSUANT TO OCGA 24-13-90 ET SEQ (LINDSEY GRAHAM)

07/05/2022 EX PARTE ORDER OF THE JUDGE ▾

EX PARTE ORDER OF THE JUDGE

Comment
CERTIFICATE OF MATERIAL WITNESS PURSUANT TO UNIFORM ACT TO SECURE THE
ATTENDANCE OF WITNESSES FROM WITHOUT THE STATE, CODIFIED IN THE STATE OF
GEORGIA AS OCGA 24-13-90 ET SEQ (LINDSEY GRAHAM)

07/05/2022 EX PARTE PETITION ▾

EX PARTE PETITION

Comment
PETITION FOR CERTIFICATION OF NEED FOR TESTIMONY BEFORE SPECIAL PURPOSE
GRAND JURY PURSUANT TO OCGA 24-13-90 ET SEQ (JENNA ELLIS)

07/05/2022 EX PARTE ORDER OF THE JUDGE ▾

EX PARTE ORDER OF THE JUDGE

Comment
CERTIFICATE OF MATERIAL WITNESS PURSUANT TO UNIFORM ACT TO SECURE THE
ATTENDANCE OF WITNESSES FROM WITHOUT THE STATE, CODIFIED IN THE STATE OF
GEORGIA AS OCGA 24-13-90 ET SEQ (JENNA ELLIS)

07/05/2022 EX PARTE PETITION ▾

EX PARTE PETITION

Comment
PETITION FOR CERTIFICATION OF NEED FOR TESTIMONY BEFORE SPECIAL PURPOSE
GRAND JURY PURSUANT TO OCGA 24-13-90 ET SEQ (JOHN EASTMAN)

07/05/2022 EX PARTE ORDER OF THE JUDGE ▾

EX PARTE ORDER OF THE JUDGE

Comment
CERTIFICATE OF MATERIAL WITNESS PURSUANT TO UNIFORM ACT TO SECURE THE
ATTENDANCE OF WITNESSES FROM WITHOUT THE STATE, CODIFIED IN THE STATE OF
GEORGIA AS OCGA 24-13-90 ET SEQ (JOHN EASTMAN)

07/05/2022 EX PARTE PETITION ▾

EX PARTE PETITION

Comment
PETITION FOR CERTIFICATION OF NEED FOR TESTIMONY BEFORE SPECIAL PURPOSE
GRAND JURY PURSUANT TO OCGA 24-13-90 ET SEQ (RUDOLPH GIULIANI)

07/05/2022 EX PARTE ORDER OF THE JUDGE ▾

EX PARTE ORDER OF THE JUDGE

Comment
CERTIFICATE OF MATERIAL WITNESS PURSUANT TO UNIFORM ACT TO SECURE THE
ATTENDANCE OF WITNESSES FROM WITHOUT THE STATE, CODIFIED IN THE STATE OF
GEORGIA AS OCGA 24-13-90 ET SEQ (RULDOLPH GIULIANI)

07/05/2022 EX PARTE PETITION ▾

EX PARTE PETITION

Comment
PETITION FOR CERTIFICATION OF NEED OR TESTIMONY BEFORE SPECIAL PURPOSE GRAND
JURY PURSUANT TO OCGA 24-13-90 ET SEQ (JACKI DEASON)

07/05/2022 EX PARTE ORDER OF THE JUDGE ▾

EX PARTE ORDER OF THE JUDGE

Comment
CERTIFICATE OF MATERIAL WITNESS PURSUANT TO UNIFORM ACT TO SECURE THE
ATTENDANCE OF WITNESSES FROM WITHOUT THE STATE, CODIFIED IN THE STATE OF
GEORGIA AS OCGA 24-13-90 ET SEQ (JACKI DEASON)

07/06/2022 EX PARTE ORDER OF THE JUDGE ▾

EX PARTE ORDER OF THE JUDGE

Comment
ORDER DENYING MOTION TO QUASH

07/06/2022 EX PARTE ORDER OF THE JUDGE ▾

EX PARTE ORDER OF THE JUDGE

Comment
ORDER DENYING MOTION TO CONTINUE

07/11/2022 EX PARTE FILING ▾

EX PARTE FILING

Comment
RESPONSE TO DISTRICT ATTORNEY'S JULY 8, 2022, MEMORANDUM FOR THE COURT
REGARDING GRAND JURY APPEARANCE OF WILLIAM LIGON

07/11/2022 EX PARTE PETITION ▾

EX PARTE PETITION

Comment
PETITION FOR CERTIFICATION OF NEED FOR TESTIMONY BEFORE SPECIAL PURPOSE
GRAND JURY PURSUANT TO OCGA 24-13-90 ET SEQ (LINDSEY GRAHAM)

07/11/2022 EX PARTE ORDER OF THE JUDGE ▾

EX PARTE ORDER OF THE JUDGE

Comment
CERTIFICATE OF MATERIAL WITNESS PURSUANT TO UNIFORM ACT TO SECURE THE
ATTENDANCE OF WITNESSES FROM WITHOUT THE STATE, CODIFIED IN THE STATE OF
GEORGIA AS OCGA 24-13-90 ET SEQ (LINDSEY GRAHAM)

# Financial

No financial information exists for this case.

# Documents

EX PARTE ORDER OF THE JUDGE

EX PARTE PETITION

EX PARTE ORDER OF THE JUDGE

EX PARTE FILING

EX PARTE ORDER OF THE JUDGE

EX PARTE ORDER OF THE JUDGE

EX PARTE ORDER OF THE JUDGE

EX PARTE FILING

EX PAR̶̶̶̶̶

EX PARTE FILING

EX PARTE ORDER OF THE JUDGE

EX PARTE PETITION

EX PARTE ORDER OF THE JUDGE

EX PARTE PETITION

EX PAR̶̶̶̶̶

EX PARTE PETITION

EX PARTE ORDER OF THE JUDGE

EX PARTE PETITION

EX PARTE ORDER OF THE JUDGE

EX PARTE PETITION

EX PARTE ORDER OF THE JUDGE

EX PARTE PETITION

EX PARTE ORDER OF THE JUDGE

EX PARTE PETITION

EX PARTE ORDER OF THE JUDGE

EX PARTE ORDER OF THE JUDGE

EX PARTE ORDER OF THE JUDGE

EX PARTE FILING

EX PARTE PETITION

EX PARTE ORDER OF THE JUDGE



## IN THE SUPERIOR COURT OF FULTON COUNTY
### ATLANTA JUDICIAL CIRCUIT
### STATE OF GEORGIA

2022-EX000024

FILED IN OFFICE

JAN 24 2022

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

IN RE: **REQUEST FOR**
**SPECIAL PURPOSE**
**GRAND JURY**

## ORDER APPROVING REQUEST FOR SPECIAL PURPOSE
## GRAND JURY PURSUANT TO O.C.G.A. §15-12-100, et seq.

The District Attorney for the Atlanta Judicial Circuit submitted to the judges of the

Superior Court of Fulton County a request to impanel a special purpose jury for the purposes set

forth in that request. This request was considered and approved by a majority of the total

number of the judges of this Court, as required by O.C.G.A. §15-12-100(b).

IT IS THEREFORE ORDERED that a special purpose grand jury be drawn and

impaneled to serve as provided in O.C.G.A. § 15-12-62.1, 15-12-67, and 15-12-100, to

commence on May 2, 2022, and continuing for a period not to exceed 12 months. Such period

shall not include any time periods when the supervising judge determines that the special

purpose grand jury cannot meet for safety or other reasons, or any time periods when normal

court operations are suspended by order of the Supreme Court of Georgia or the Chief Judge of

the Superior Court. The special purpose grand jury shall be authorized to investigate any and all

facts and circumstances relating directly or indirectly to alleged violations of the laws of the

State of Georgia, as set forth in the request of the District Attorney referenced herein above.

Pursuant to O.C.G.A. § 15-12-101(a), the Honorable Robert C. I. McBurney is hereby

assigned to supervise and assist the special purpose grand jury, and shall charge said special

purpose grand jury and receive its reports as provided by law.



This authorization shall include the investigation of any overt acts or predicate acts relating to the subject of the special purpose grand jury's investigative purpose. The special purpose grand jury, when making its presentments and reports, pursuant to O.C.G.A. §§ 15-12-71 and 15-12-101, may make recommendations concerning criminal prosecution as it shall see fit. Furthermore, the provisions of O.C.G.A. § 15-12-83 shall apply.

This Court also notes that the appointment of a special purpose grand jury will permit the time, efforts, and attention of the regular grand jury(ies) impaneled in this Circuit to continue to be devoted to the consideration of the backlog of criminal matters that has accumulated as a result of the COVID-19 Pandemic.

IT IS FURTHER ORDERED that this Order shall be filed in the Office of the Clerk of the Superior Court of Fulton County.

SO ORDERED, THIS 24 DAY OF January, 2022.

CHRISTOPHER S. BRASHER, CHIEF JUDGE
Superior Court of Fulton County
Atlanta Judicial Circuit

**IN THE SUPERIOR COURT OF FULTON COUNTY**

**STATE OF GEORGIA**

FILED IN OFFICE

MAY 25 2022

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

IN RE:                                    )
SPECIAL PURPOSE GRAND JURY    )        **2022-EX-000024**
                                              )
                                              )        **Judge Robert C. I. McBurney**
                                              )

## PETITION FOR CERTIFICATION OF NEED FOR TESTIMONY
## BEFORE SPECIAL PURPOSE GRAND JURY
## PURSUANT TO O.C.G.A. O.C.G.A. § 24-13-90 ET SEQ.

**COMES NOW** the State of Georgia, by and through Fani T. Willis, District Attorney,

Atlanta Judicial Circuit, Fulton County, Georgia, and petitions this Honorable Court for a

Certificate of Need for Testimony Before Special Purpose Grand Jury, pursuant to O.C.G.A. §

24-13-92 et seq., and in support thereof says as follows:

1. A Special Purpose Grand Jury investigation commenced in Fulton County, Georgia,

   by order of this court on May 2, 2022. *See* Order Impaneling Special Purpose Grand

   Jury Pursuant to O.C.G.A. § 15-12-100, Et Seq, "**Exhibit A**". The Special Purpose

   Grand Jury is authorized to investigate any and all facts and circumstances relating

   directly or indirectly to possible attempts to disrupt the lawful administration of the

   2020 elections in the State of Georgia. *See* Letter Requesting Special Purpose Grand

   Jury, "**Exhibit B**".

2. **Trevian Kutti**, born February 27, ██, (hereinafter, "the Witness") is a necessary

   and material witness to the Special Purpose Grand Jury investigation. Through both

   its investigation and through publicly-available information, the State has learned that

   on January 4, 2021, the Witness came to the Georgia residence of Ruby Freeman, a

former temporary worker employed by the Fulton County Department of Registration and Elections. *See generally* Police Report, "**Exhibit C**". Prior to that date, Freeman had been falsely accused of participating in election fraud by former President Donald Trump, attorney Rudy Giuliani, and other individuals, and these accusations resulted in threats and harassment aimed at Freeman and her family. Initially, the Witness presented herself to Freeman as someone who could help her, but the Witness then warned Freeman that her liberty was in jeopardy and attempted to pressure Freeman into falsely confessing to participation in election fraud. The Witness also arranged for Freeman to speak by telephone to several third parties related to the Witness's attempt to acquire a false confession from Freeman. The identity of these third parties, as well as the nature and extent of their relationships to the Witness or other persons publicizing disproven allegations of election fraud, are known only by the Witness. Also, while portions of the Witness's conversations with Freeman were recorded on police body-worn cameras, other portions (including all of the conversations between the Witness and Freeman that occurred at Freeman's home) were not recorded, making it necessary to speak to the Witness about those conversations and the events leading up to them. These facts are demonstrably related, either directly or indirectly, to the subject of the Special Purpose Grand Jury's investigation.

3. The testimony of the Witness will not be cumulative of any other evidence in this matter.

4. The Witness resides outside the jurisdiction of this Honorable Court and is therefore unable to be served with process to compel attendance and testimony.

5. The Witness currently resides at ▮▮▮▮▮▮ ▮▮▮▮▮ ▮▮▮▮▮.

6. The Witness will be required to be in attendance and testify before the Special Purpose Grand Jury on June 14, 2022, and continuing through and until the conclusion of the Witness's testimony on or before June 30, 2022.

7. The Office of the Fulton County District Attorney, in and for the State of Georgia, will pay all reasonable and necessary travel expenses and witness fees required to secure the Witness's attendance and testimony, in accordance with the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings. *See* O.C.G.A. §24-13-90 et seq.

8. If the Witness comes into the State of Georgia pursuant to this request, directing the Witness to attend and testify before the Special Purpose Grand Jury, the laws of this State shall give the Witness protection from arrest and from service of civil or criminal process, both within this State and in any other state through which the Witness may be required to pass in the ordinary course of travel, for any matters which arose before the Witness's entrance into this State and other states.

9. Both Georgia and Illinois have adopted the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings. *See* O.C.G.A. § 24-13-90; 725 Ill. Comp. Stat. §§ 220/1.

**WHEREFORE**, the State of Georgia, by and through Fani T. Willis, District Attorney, Atlanta Judicial Circuit, Fulton County, Georgia, prays that this Honorable Court issue a Certificate of Need for Testimony Before Special Purpose Grand Jury, pursuant to O.C.G.A. § 24-13-92 et seq., certifying to the proper authorities in the jurisdiction in which the Witness is located that the Witness is a necessary and material witness whose attendance and testimony is required

for the above-referenced Special Purpose Grand Jury investigation, and the presence of the

Witness will be needed for the number of days specified above.

    Respectfully submitted this the 25th of May, 2022,

                    **FANI T. WILLIS**
                    **DISTRICT ATTORNEY**
                    **ATLANTA JUDICIAL CIRCUIT**

                    **F. McDonald Wakeford**
                    **GA Bar No. 414898**
                    Chief Senior Assistant District Attorney
                    Atlanta Judicial Circuit
                    136 Pryor Street Southwest
                    Third Floor
                    Atlanta, Georgia 30303

# EXHIBIT A

OFFICE OF THE FULTON COUNTY DISTRICT ATTORNEY
ATLANTA JUDICIAL CIRCUIT
136 PRYOR STREET SW, 3RD FLOOR
ATLANTA, GEORGIA 30303

*Fani T. Willis*
District Attorney



TELEPHONE 404-612-4639

The Honorable Christopher S. Brasher
Chief Judge, Fulton County Superior Court
Fulton County Courthouse
185 Central Avenue SW, Suite T-8905
Atlanta, Georgia 30303

2022-EX-000017

**FILED IN OFFICE**

JAN 20 2022

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

January 20, 2022

Dear Chief Judge Brasher:

I hope this letter finds you well and in good spirits. Please be advised that the District Attorney's Office has received information indicating a reasonable probability that the State of Georgia's administration of elections in 2020, including the State's election of the President of the United States, was subject to possible criminal disruptions. Our office has also learned that individuals associated with these disruptions have contacted other agencies empowered to investigate this matter, including the Georgia Secretary of State, the Georgia Attorney General, and the United States Attorney's Office for the Northern District of Georgia, leaving this office as the sole agency with jurisdiction that is not a potential witness to conduct related to the matter. As a result, our office has opened an investigation into any coordinated attempts to unlawfully alter the outcome of the 2020 elections in this state.

We have made efforts to interview multiple witnesses and gather evidence, and a significant number of witnesses and prospective witnesses have refused to cooperate with the investigation absent a subpoena requiring their testimony. By way of example, Georgia Secretary of State Brad Raffensperger, an essential witness to the investigation, has indicated that he will not participate in an interview or otherwise offer evidence until he is presented with a subpoena by my office. Please see Exhibit A, attached to this letter.

Therefore, I am hereby requesting, as the elected District Attorney for Fulton County, pursuant to O.C.G.A. § 15-12-100 et. seq., that a special purpose grand jury be impaneled for the purpose of investigating the facts and circumstances relating directly or indirectly to possible attempts to disrupt the lawful administration of the 2020 elections in the State of Georgia. Specifically, a special purpose grand jury, which will not have the authority to return an indictment but may make recommendations concerning criminal prosecution as it shall see fit, is needed for three reasons: first, a special purpose grand jury can be impaneled by the Court for any time period required in order to accomplish its investigation, which will likely exceed a normal grand jury

term; second, the special purpose grand jury would be empowered to review this matter and this matter only, with an investigatory focus appropriate to the complexity of the facts and circumstances involved; and third, the sitting grand jury would not be required to attempt to address this matter in addition to their normal duties.

Additionally, I am requesting that, pursuant to O.C.G.A. § 15-12-101, a Fulton County Superior Court Judge be assigned to assist and supervise the special purpose grand jury in carrying out its investigation and duties.

I have attached a proposed order impaneling the special purpose grand jury for the consideration of the Court.

Respectfully,

Fani/T. Willis
District Attorney, Atlanta Judicial Circuit

Exhibit A: Transcript of October 31, 2021 episode of *Meet the Press* on NBC News at 26:04 (video archived at https://www.youtube.com/watch?v=B71cBRPgt9k)
Exhibit B: Proposed Order

cc:

The Honorable Kimberly M. Esmond Adams
The Honorable Jane C. Barwick
The Honorable Rachelle Carnesdale
The Honorable Thomas A. Cox, Jr.
The Honorable Eric Dunaway
The Honorable Charles M. Eaton, Jr.
The Honorable Belinda E. Edwards
The Honorable Kelly Lee Ellerbe
The Honorable Kevin M. Farmer
The Honorable Ural Glanville
The Honorable Shakura L. Ingram
The Honorable Rachel R. Krause
The Honorable Melynee Leftridge
The Honorable Robert C.I. McBurney
The Honorable Henry M. Newkirk
The Honorable Emily K. Richardson
The Honorable Craig L. Schwall, Sr.
The Honorable Paige Reese Whitaker
The Honorable Shermela J. Williams
Fulton County Clerk of Superior Court Cathelene "Tina" Robinson

# EXHIBIT B

IN THE SUPERIOR COURT OF FULTON COUNTY
ATLANTA JUDICIAL CIRCUIT
STATE OF GEORGIA

2022 - ER 000024

FILED IN OFFICE

JAN 24 2022

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

IN RE: **REQUEST FOR**
**SPECIAL PURPOSE**
**GRAND JURY**

## ORDER APPROVING REQUEST FOR SPECIAL PURPOSE
## GRAND JURY PURSUANT TO O.C.G.A. §15-12-100, et seq.

The District Attorney for the Atlanta Judicial Circuit submitted to the judges of the

Superior Court of Fulton County a request to impanel a special purpose jury for the purposes set

forth in that request. This request was considered and approved by a majority of the total

number of the judges of this Court, as required by O.C.G.A. §15-12-100(b).

IT IS THEREFORE ORDERED that a special purpose grand jury be drawn and

impaneled to serve as provided in O.C.G.A. § 15-12-62.1, 15-12-67, and 15-12-100, to

commence on May 2, 2022, and continuing for a period not to exceed 12 months. Such period

shall not include any time periods when the supervising judge determines that the special

purpose grand jury cannot meet for safety or other reasons, or any time periods when normal

court operations are suspended by order of the Supreme Court of Georgia or the Chief Judge of

the Superior Court. The special purpose grand jury shall be authorized to investigate any and all

facts and circumstances relating directly or indirectly to alleged violations of the laws of the

State of Georgia, as set forth in the request of the District Attorney referenced herein above.

Pursuant to O.C.G.A. § 15-12-101(a), the Honorable Robert C. I. McBurney is hereby

assigned to supervise and assist the special purpose grand jury, and shall charge said special

purpose grand jury and receive its reports as provided by law.

This authorization shall include the investigation of any overt acts or predicate acts relating to the subject of the special purpose grand jury's investigative purpose. The special purpose grand jury, when making its presentments and reports, pursuant to O.C.G.A. §§ 15-12-71 and 15-12-101, may make recommendations concerning criminal prosecution as it shall see fit. Furthermore, the provisions of O.C.G.A. § 15-12-83 shall apply.

This Court also notes that the appointment of a special purpose grand jury will permit the time, efforts, and attention of the regular grand jury(ies) impaneled in this Circuit to continue to be devoted to the consideration of the backlog of criminal matters that has accumulated as a result of the COVID-19 Pandemic.

IT IS FURTHER ORDERED that this Order shall be filed in the Office of the Clerk of the Superior Court of Fulton County.

SO ORDERED, THIS 24 DAY OF January , 2022.

CHRISTOPHER S. BRASHER, CHIEF JUDGE
Superior Court of Fulton County
Atlanta Judicial Circuit

# EXHIBIT C

| Agency Name | **INCIDENT/INVESTIGATION** | Case# |
|---|---|---|
| Cobb County Police | **REPORT** | 21-000835 |

**INCIDENT DATA**

| | | |
|---|---|---|
| ORI | | Date / Time Reported |
| | GA 0330200 | 01/04/2021  20:38 Mon |
| | | Last Known Secure |
| Location of Incident | | 01/04/2021  19:56 Mon |
| | GA | At Found |
| | | 01/04/2021  20:38 Mon |

| Premise Type | Zone/Beat |
|---|---|
| Residence/home | E, 210 |

**#1** Crime Incident(s) (Com)  Weapon / Tools *None* — Activity *N*
Suspicious Activity
99BF

| | Entry | Exit | Security |
|---|---|---|---|

**#2** Crime Incident  (  )  Weapon / Tools — Activity

| | Entry | Exit | Security |
|---|---|---|---|

**#3** Crime Incident  (  )  Weapon / Tools — Activity

| | Entry | Exit | Security |
|---|---|---|---|

MO

**VICTIM**

# of Victims  *0*   Type:   Injury:   Domestic: NO

| V1 | Victim/Business Name (Last, First, Middle) | Victim of Crime # | DOB / Age | Race | Sex | Relationship To Offender | Resident Status | Military Branch/Status |
|---|---|---|---|---|---|---|---|---|

Home Address — Home Phone

Employer Name/Address — Business Phone — Mobile Phone

| VYR | Make | Model | Style | Color | Lic/Lis | VIN |
|---|---|---|---|---|---|---|

CODES:  V- Victim (Denote V2, V3)   O = Owner (if other than victim)   R = Reporting Person (if other than victim)

**OTHERS INVOLVED**

Type:  INDIVIDUAL( NON LE)   Injury:

| Code *R* | Name (Last, First, Middle) FREEMAN, RUBY JEWEL | Victim of Crime # | DOB / Age | Race *B* | Sex *F* | Relationship To Offender | Resident Status Resident | Military Branch/Status |
|---|---|---|---|---|---|---|---|---|

Home Address — Home Phone

Employer Name/Address — Business Phone — Mobile Phone

Type:  INDIVIDUAL( NON LE)   Injury:

| Code *IO* | Name (Last, First, Middle) KUTTI, TREVIAN | Victim of Crime # | DOB / Age | Race *B* | Sex *F* | Relationship To Offender | Resident Status Non-Resident | Military Branch/Status |
|---|---|---|---|---|---|---|---|---|

Home Address — Home Phone

Employer Name/Address *(CRISIS MANAGER)* — Business Phone — Mobile Phone

1 = None   2 = Burned   3 = Counterfeit / Forged   4 = Damaged / Vandalized   5 = Recovered   6 = Seized   7 = Stolen   8 = Unknown
("OJ" = Recovered for Other Jurisdiction)

**PROPERTY**

| VI # | Code | Status Frm/To | Value | OJ | QTY | Property Description | Make/Model | Serial Number |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

**Status**

| Officer/ID# | KEARNEY, M. P. (2100, IA) (2480) | | |
|---|---|---|---|
| Invest ID# | CASE, T. C. (2100, CAP) (2478) | Supervisor | MURPHY, S. P. (2100, PCT2) (1507) |
| Complainant Signature | Case Status Administratively Closed   01/21/2021 | Case Disposition: | Page 1 |

R_CSI.IBR   Printed By: WARM, 6611   Sys#: 589640   03/11/2022 14:32

# INCIDENT/INVESTIGATION REPORT

*Cobb County Police*

Case # *21-000835*

| | IBR | Status | Quantity | Type Measure | | Suspected Type | |
|---|---|---|---|---|---|---|---|
| **Status Codes** | 1 = None   2 = Burned   3 = Counterfeit / Forged   4 = Damaged / Vandalized   5 = Recovered   6 = Seized   7 = Stolen   8 = Unknown | | | | | | |
| D R U G S | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**Assisting Officers**
*RICKERSON, S.S. (1502)*

Suspect Hate / Bias Motivated:    *NONE (NO BIAS)*

# INCIDENT/INVESTIGATION REPORT

Narr. (cont.) OCA: 21-000835                    *Cobb County Police*

NARRATIVE

On January 4, 2021 at approximately 2038 hours, I responded to a suspicious activity call that occurred at ⬛⬛⬛⬛⬛⬛⬛ Upon arrival, I made contact with Ruby Freeman who stated that she was a ballot counter for the election. Ms. Freeman stated that she was being harassed by people on social media and had random people knocking on her door.

Ms. Freeman stated that a female and male were at her door trying to speak with her. Ms. Freeman stated that the female (Trevian Kutti) stated that she needed to speak with her.

I asked Ms. Freeman if she would be comfortable speaking with Ms. Kutti at the precinct (4700 Austell Road) while we supervised, and Ms. Freeman stated yes. I contacted Ms. Kutti and they agreed to meet at 2230 hours. I escorted Ms. Freeman to the precinct to speak with Ms. Kutti and escorted Ms. Freeman back to her residence.

Ms. Freeman's residence was listed on a zone patrol and Ms. Freeman was informed to call back immediately if she observed any suspicious activity outside of her residence.

No further.

## CASE SUPPLEMENTAL REPORT

Printed: 03/11/2022 14:32

*Cobb County Police*                                                                OCA: **21000835**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *ADMINISTRATIVELY...*     **Case Mng Status:** *ADMINISTRATIVELY CLOSED*     **Occurred:** *01/04/2021*
**Offense:** *SUSPICIOUS ACTIVITY*

**Investigator:** *KEARNEY, M. P. (2480)*                          **Date / Time:** *01/05/2021 03:38:39, Tuesday*
**Supervisor:** *MURPHY, S. P. (1507)*     **Supervisor Review Date / Time:** *01/05/2021 04:02:59, Tuesday*
**Contact:**                                                         **Reference:** *Additional Information*

On January 4, 2021 at approximately 2038 hours, I responded to a suspicious activity call that occurred at ▇▇▇▇▇
▇▇▇▇▇▇▇▇ Upon arrival, I made contact with Ruby Freeman who stated that she was a ballot counter for the
election. Ms. Freeman stated that she was being harassed by people on social media and had random people knocking
on her door.

Ms. Freeman stated that a female and male were at her door trying to speak with her. Ms. Freeman stated that the
female (Trevian Kutti) stated that she needed to speak with her. Ms. Freeman was uneasy due to the threats she had
been getting since the election.

I made contact with Ms. Kutti who stated that she was a crisis manager and was sent from a high-profile individual and
that she traveled from Chicago, Illinois. Ms. Kutti stated that Ms. Freeman was in danger and had 48 hours to speak
with her so that she could get ahead of the issue. Ms. Kutti stated that unknown subjects were going to be at Ms.
Freeman's residence, but did not elaborate on the dangers Ms. Freeman was facing, but it was due to the election.

I asked Ms. Freeman if she would be comfortable speaking with Ms. Kutti at the precinct (4700 Austell Road) while we
supervised, and Ms. Freeman stated yes. I contacted Ms. Kutti and they agreed to meet at 2230 hours. I escorted Ms.
Freeman to the precinct to speak with Ms. Kutti and escorted Ms. Freeman back to her residence.

Ms. Freeman's residence was listed on a zone patrol and Ms. Freeman was informed to call back immediately if she
observed any suspicious activity outside of her residence.

No further.

Investigator Signature                                              Supervisor Signature

IN THE SUPERIOR COURT OF FULTON COUNTY

STATE OF GEORGIA

FILED IN OFFICE

MAY 25 2022

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

IN RE:                                      )
SPECIAL PURPOSE GRAND JURY        )         2022-EX-000024
                                            )
                                            )         Judge Robert C. I. McBurney
                                            )

### CERTIFICATE OF MATERIAL WITNESS
### PURSUANT TO UNIFORM ACT TO SECURE THE ATTENDANCE
### OF WITNESSES FROM WITHOUT THE STATE,
### CODIFIED IN THE STATE OF GEOGIA AS
### O.C.G.A. § 24-13-90 ET SEQ.

Upon the petition of Fani T. Willis, District Attorney, Atlanta Judicial Circuit, pursuant to

the Uniform Act to Secure the Attendance of Witnesses from Without the State, codified at

O.C.G.A. § 24-13-90 et seq., the Court issues the following Certificate under seal of this Court,

and further says as follows:

1. A Special Purpose Grand Jury investigation commenced in Fulton County, Georgia,

   by order of this Court on May 2, 2022. *See* Order Impaneling Special Purpose Grand

   Jury Pursuant to O.C.G.A. § 15-12-100, et seq., "**Exhibit A**". The Special Purpose

   Grand Jury is authorized to investigate any and all facts and circumstances relating

   directly or indirectly to possible attempts to disrupt the lawful administration of the

   2020 elections in the State of Georgia. *See* Letter Requesting Special Purpose Grand

   Jury, "**Exhibit B**".

2. Based on the representations made by the State in the attached "Petition for

   Certification of Need for Testimony Before Special Purpose Grand Jury Pursuant to

   O.C.G.A. § 24-13-90 et seq.", the Court finds that **Trevian Kutti**, born February 27,

███ (hereinafter, "the Witness"), is a necessary and material witness to the Special Purpose Grand Jury investigation. The Court further finds that the Witness currently resides at ██████████  ████████  ███████.

10. The Court further finds that on January 4, 2021, the Witness came to the Georgia residence of Ruby Freeman, a former temporary worker employed by the Fulton County Department of Registration and Elections. *See generally* Police Report, "**Exhibit C**". Prior to that date, Freeman had been falsely accused of participating in election fraud by former President Donald Trump, attorney Rudy Giuliani, and other individuals, and these accusations resulted in threats and harassment aimed at Freeman and her family. Initially, the Witness presented herself to Freeman as someone who could help her, but the Witness then warned Freeman that her liberty was in jeopardy and attempted to pressure Freeman into falsely confessing to participation in election fraud. The Witness also arranged for Freeman to speak by telephone to several third parties related to the Witness's attempt to acquire a false confession from Freeman. The identity of these third parties, as well as the nature and extent of their relationships to the Witness or other persons publicizing disproven allegations of election fraud, are known only by the Witness. Also, while portions of the Witness's conversations with Freeman were recorded on police body-worn cameras, other portions (including all of the conversations between the Witness and Freeman that occurred at Freeman's home) were not recorded, making it necessary to speak to the Witness about those conversations and the events leading up to them. These facts are demonstrably related, either directly or indirectly, to the subject of the Special Purpose Grand Jury's investigation.

3.  The testimony of the Witness will not be cumulative of any other evidence in this matter.

4.  The Witness will be required to be in attendance and testify before the Special Purpose Grand Jury on June 14, 2022, and continuing through and until the conclusion of the Witness's testimony on or before June 30, 2022, at the Superior Court of Fulton County, Fulton County Courthouse, 136 Pryor Street, 3rd Floor, Atlanta, Georgia 30303.

5.  The Office of the Fulton County District Attorney, in and for the State of Georgia, will pay all reasonable and necessary travel expenses and witness fees required to secure the Witness's attendance and testimony, in accordance with O.C.G.A. §24-13-90 et seq.

6.  The Witness protection shall be given protection from arrest and from service of civil or criminal process, both within this State and in any other state through which the Witness may be required to pass in the ordinary course of travel, for any matters which arose before the Witness's entrance into this State and other states, while traveling to and from this Court for the purpose of testifying for this case.

7.  The State of Georgia is a participant in a reciprocal program providing for the securing of witnesses to testify in foreign jurisdictions which likewise provide for such methods of securing witnesses to testify in their courts.

8.  This Certificate is made for the purpose of being presented to a judge of the Circuit Court of Cook County by the Cook County State's Attorney, or her duly authorized representative, who is proceeding at the request and on behalf of the Office of the Fulton County District Attorney to compel the Witness to be in attendance and testify

before the Special Purpose Grand Jury on June 14, 2022, and continuing through and

until the conclusion of the Witness's testimony on or before June 30, 2022, at the

Superior Court of Fulton County, Fulton County Courthouse, 136 Pryor Street, 3rd

Floor, Atlanta, Georgia 30303.

**WITNESS MY HAND AND SEAL** as a judge of the Superior Court of Fulton County,

Georgia,

This the 25th day of ___ May ___, 2022.

**Hon. Robert C. I. McBurney**
Superior Court of Fulton County
Atlanta Judicial Circuit
State of Georgia

# EXHIBIT A

OFFICE OF THE FULTON COUNTY DISTRICT ATTORNEY
ATLANTA JUDICIAL CIRCUIT
136 PRYOR STREET SW, 3RD FLOOR
ATLANTA, GEORGIA 30303

*Fani T. Willis*
District Attorney

TELEPHONE 404-612-4639

The Honorable Christopher S. Brasher
Chief Judge, Fulton County Superior Court
Fulton County Courthouse
185 Central Avenue SW, Suite T-8905
Atlanta, Georgia 30303

$2022 - EX - 000017$

FILED IN OFFICE

JAN 20 2022

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

January 20, 2022

Dear Chief Judge Brasher:

I hope this letter finds you well and in good spirits. Please be advised that the District Attorney's Office has received information indicating a reasonable probability that the State of Georgia's administration of elections in 2020, including the State's election of the President of the United States, was subject to possible criminal disruptions. Our office has also learned that individuals associated with these disruptions have contacted other agencies empowered to investigate this matter, including the Georgia Secretary of State, the Georgia Attorney General, and the United States Attorney's Office for the Northern District of Georgia, leaving this office as the sole agency with jurisdiction that is not a potential witness to conduct related to the matter. As a result, our office has opened an investigation into any coordinated attempts to unlawfully alter the outcome of the 2020 elections in this state.

We have made efforts to interview multiple witnesses and gather evidence, and a significant number of witnesses and prospective witnesses have refused to cooperate with the investigation absent a subpoena requiring their testimony. By way of example, Georgia Secretary of State Brad Raffensperger, an essential witness to the investigation, has indicated that he will not participate in an interview or otherwise offer evidence until he is presented with a subpoena by my office. Please see Exhibit A, attached to this letter.

Therefore, I am hereby requesting, as the elected District Attorney for Fulton County, pursuant to O.C.G.A. § 15-12-100 et. seq., that a special purpose grand jury be impaneled for the purpose of investigating the facts and circumstances relating directly or indirectly to possible attempts to disrupt the lawful administration of the 2020 elections in the State of Georgia. Specifically, a special purpose grand jury, which will not have the authority to return an indictment but may make recommendations concerning criminal prosecution as it shall see fit, is needed for three reasons: first, a special purpose grand jury can be impaneled by the Court for any time period required in order to accomplish its investigation, which will likely exceed a normal grand jury

term; second, the special purpose grand jury would be empowered to review this matter and this matter only, with an investigatory focus appropriate to the complexity of the facts and circumstances involved; and third, the sitting grand jury would not be required to attempt to address this matter in addition to their normal duties.

Additionally, I am requesting that, pursuant to O.C.G.A. § 15-12-101, a Fulton County Superior Court Judge be assigned to assist and supervise the special purpose grand jury in carrying out its investigation and duties.

I have attached a proposed order impaneling the special purpose grand jury for the consideration of the Court.

Respectfully,

Fani T. Willis
District Attorney, Atlanta Judicial Circuit

Exhibit A: Transcript of October 31, 2021 episode of *Meet the Press* on NBC News at 26:04 (video archived at https://www.youtube.com/watch?v=B71cBRPgt9k)
Exhibit B: Proposed Order

cc:
The Honorable Kimberly M. Esmond Adams
The Honorable Jane C. Barwick
The Honorable Rachelle Carnesdale
The Honorable Thomas A. Cox, Jr.
The Honorable Eric Dunaway
The Honorable Charles M. Eaton, Jr.
The Honorable Belinda E. Edwards
The Honorable Kelly Lee Ellerbe
The Honorable Kevin M. Farmer
The Honorable Ural Glanville
The Honorable Shakura L. Ingram
The Honorable Rachel R. Krause
The Honorable Melynee Leftridge
The Honorable Robert C.I. McBurney
The Honorable Henry M. Newkirk
The Honorable Emily K. Richardson
The Honorable Craig L. Schwall, Sr.
The Honorable Paige Reese Whitaker
The Honorable Shermela J. Williams
Fulton County Clerk of Superior Court Cathelene "Tina" Robinson

# EXHIBIT B

**IN THE SUPERIOR COURT OF FULTON COUNTY**
**ATLANTA JUDICIAL CIRCUIT**
**STATE OF GEORGIA**

2022 - EX 000024

FILED IN OFFICE

JAN 24 2022

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

IN RE: **REQUEST FOR**
**SPECIAL PURPOSE**
**GRAND JURY**

## ORDER APPROVING REQUEST FOR SPECIAL PURPOSE
## GRAND JURY PURSUANT TO O.C.G.A. §15-12-100, et seq.

The District Attorney for the Atlanta Judicial Circuit submitted to the judges of the

Superior Court of Fulton County a request to impanel a special purpose jury for the purposes set

forth in that request. This request was considered and approved by a majority of the total

number of the judges of this Court, as required by O.C.G.A. §15-12-100(b).

IT IS THEREFORE ORDERED that a special purpose grand jury be drawn and

impaneled to serve as provided in O.C.G.A. § 15-12-62.1, 15-12-67, and 15-12-100, to

commence on May 2, 2022, and continuing for a period not to exceed 12 months. Such period

shall not include any time periods when the supervising judge determines that the special

purpose grand jury cannot meet for safety or other reasons, or any time periods when normal

court operations are suspended by order of the Supreme Court of Georgia or the Chief Judge of

the Superior Court. The special purpose grand jury shall be authorized to investigate any and all

facts and circumstances relating directly or indirectly to alleged violations of the laws of the

State of Georgia, as set forth in the request of the District Attorney referenced herein above.

Pursuant to O.C.G.A. § 15-12-101(a), the Honorable Robert C. I. McBurney is hereby

assigned to supervise and assist the special purpose grand jury, and shall charge said special

purpose grand jury and receive its reports as provided by law.

This authorization shall include the investigation of any overt acts or predicate acts relating to the subject of the special purpose grand jury's investigative purpose. The special purpose grand jury, when making its presentments and reports, pursuant to O.C.G.A. §§ 15-12-71 and 15-12-101, may make recommendations concerning criminal prosecution as it shall see fit. Furthermore, the provisions of O.C.G.A. § 15-12-83 shall apply.

This Court also notes that the appointment of a special purpose grand jury will permit the time, efforts, and attention of the regular grand jury(ies) impaneled in this Circuit to continue to be devoted to the consideration of the backlog of criminal matters that has accumulated as a result of the COVID-19 Pandemic.

IT IS FURTHER ORDERED that this Order shall be filed in the Office of the Clerk of the Superior Court of Fulton County.

SO ORDERED, THIS 24 DAY OF January , 2022.

CHRISTOPHER S. BRASHER, CHIEF JUDGE
Superior Court of Fulton County
Atlanta Judicial Circuit

# EXHIBIT C

**INCIDENT/INVESTIGATION REPORT**

Agency Name: **Cobb County Police**

Case# **21-000835**

Date / Time Reported: **01/04/2021  20:38 Mon**
Last Known Secure: **01/04/2021  19:56 Mon**
At Found: **01/04/2021  20:38 Mon**

ORI: **GA 0330200**

| INCIDENT DATA | | | | | | | |
|---|---|---|---|---|---|---|---|
| Location of Incident | | GA | Premise Type: *Residence/home* | | Zone/Beat: E, 210 | | |
| #1 | Crime Incident(s) *Suspicious Activity* 99BF | (Com) | Weapon / Tools *None* | | | | Activity *N* |
| | | | Entry | Exit | | Security | |
| #2 | Crime Incident | ( ) | Weapon / Tools | | | | Activity |
| | | | Entry | Exit | | Security | |
| #3 | Crime Incident | ( ) | Weapon / Tools | | | | Activity |
| | | | Entry | Exit | | Security | |

**MO**

# of Victims: **0**   Type:   Injury:   Domestic: NO

**VICTIM**

| V1 | Victim/Business Name (Last, First, Middle) | Victim of Crime # | DOB / Age | Race | Sex | Relationship To Offender | Resident Status | Military Branch/Status |
|---|---|---|---|---|---|---|---|---|
| | Home Address | | | | | | Home Phone | |
| | Employer Name/Address | | | | | Business Phone / | Mobile Phone | |

| VYR | Make | Model | Style | Color | Lic/Lis | VIN |
|---|---|---|---|---|---|---|
| | | | | | | |

CODES: V- Victim (Denote V2, V3)  O = Owner (if other than victim)    R = Reporting Person (if other than victim)

**OTHERS INVOLVED**

Type: **INDIVIDUAL( NON LE)**    Injury:

| Code R | Name (Last, First, Middle) *FREEMAN, RUBY JEWEL* | Victim of Crime # | DOB / Age | Race B | Sex F | Relationship To Offender | Resident Status *Resident* | Military Branch/Status |
|---|---|---|---|---|---|---|---|---|
| | Home Address | | | | | | Home Phone | |
| | Employer Name/Address | | | | | Business Phone | Mobile Phone | |

Type: **INDIVIDUAL( NON LE)**    Injury:

| Code IO | Name (Last, First, Middle) *KUTTI, TREVIAN* | Victim of Crime # | DOB / Age | Race B | Sex F | Relationship To Offender | Resident Status *Non-Resident* | Military Branch/Status |
|---|---|---|---|---|---|---|---|---|
| | Home Address | | | | | | Home Phone | |
| | Employer Name/Address *(CRISIS MANAGER)* | | | | | Business Phone | Mobile Phone | |

1 = None  2 = Burned  3 = Counterfeit / Forged  4 = Damaged / Vandalized  5 = Recovered  6 = Seized  7 = Stolen  8 = Unknown
("OJ" = Recovered for Other Jurisdiction)

**PROPERTY**

| VI # | Code | Status Frm/To | Value | OJ | QTY | Property Description | Make/Model | Serial Number |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

| Officer/ID# | *KEARNEY, M. P. (2100, IA) (2480)* | | | |
|---|---|---|---|---|
| Invest ID# | *CASE, T. C. (2100, CAP) (2478)* | | Supervisor | *MURPHY, S. P. (2100, PCT2) (1507)* |

**Status**

| Complainant Signature | Case Status *Administratively Closed* | 01/21/2021 | Case Disposition: | Page I |
|---|---|---|---|---|

R_CS1IBR    Printed By: WARM, 6611    Sys#: 589640    03/11/2022 14:32

# INCIDENT/INVESTIGATION REPORT

*Cobb County Police*

Case # *21-000835*

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Status Codes | 1 = None | 2 = Burned | 3 = Counterfeit / Forged | 4 = Damaged / Vandalized | 5 = Recovered | 6 = Seized | 7 = Stolen | 8 = Unknown |

| | IBR | Status | Quantity | Type Measure | | Suspected Type | |
|---|---|---|---|---|---|---|---|
| D | | | | | | | |
| R | | | | | | | |
| U | | | | | | | |
| G | | | | | | | |
| S | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Assisting Officers
*RICKERSON, S.S. (1502)*

Suspect Hate / Bias Motivated:    *NONE (NO BIAS)*

# INCIDENT/INVESTIGATION REPORT

Narr. (cont.) OCA: 21-000835                          *Cobb County Police*

NARRATIVE

On January 4, 2021 at approximately 2038 hours, I responded to a suspicious activity call that occurred at [redacted] Upon arrival, I made contact with Ruby Freeman who stated that she was a ballot counter for the election. Ms. Freeman stated that she was being harassed by people on social media and had random people knocking on her door.

Ms. Freeman stated that a female and male were at her door trying to speak with her. Ms. Freeman stated that the female (Trevian Kutti) stated that she needed to speak with her.

I asked Ms. Freeman if she would be comfortable speaking with Ms. Kutti at the precinct (4700 Austell Road) while we supervised, and Ms. Freeman stated yes. I contacted Ms. Kutti and they agreed to meet at 2230 hours. I escorted Ms. Freeman to the precinct to speak with Ms. Kutti and escorted Ms. Freeman back to her residence.

Ms. Freeman's residence was listed on a zone patrol and Ms. Freeman was informed to call back immediately if she observed any suspicious activity outside of her residence.

No further.

## CASE SUPPLEMENTAL REPORT

Printed: 03/11/2022  14:32

*Cobb County Police*                                                                                     OCA: **21000835**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *ADMINISTRATIVELY...*          **Case Mng Status:** *ADMINISTRATIVELY CLOSED*    **Occurred:** *01/04/2021*

**Offense:** *SUSPICIOUS ACTIVITY*

**Investigator:** *KEARNEY, M. P. (2480)*                                    **Date / Time:** *01/05/2021 03:38:39, Tuesday*

**Supervisor:** *MURPHY, S. P. (1507)*              **Supervisor Review Date / Time:** *01/05/2021 04:02:59, Tuesday*

**Contact:**                                                                **Reference:** *Additional Information*

On January 4, 2021 at approximately 2038 hours, I responded to a suspicious activity call that occurred at ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ Upon arrival, I made contact with Ruby Freeman who stated that she was a ballot counter for the election. Ms. Freeman stated that she was being harassed by people on social media and had random people knocking on her door.

Ms. Freeman stated that a female and male were at her door trying to speak with her. Ms. Freeman stated that the female (Trevian Kutti) stated that she needed to speak with her. Ms. Freeman was uneasy due to the threats she had been getting since the election.

I made contact with Ms. Kutti who stated that she was a crisis manager and was sent from a high-profile individual and that she traveled from Chicago, Illinois. Ms. Kutti stated that Ms. Freeman was in danger and had 48 hours to speak with her so that she could get ahead of the issue. Ms. Kutti stated that unknown subjects were going to be at Ms. Freeman's residence, but did not elaborate on the dangers Ms. Freeman was facing, but it was due to the election.

I asked Ms. Freeman if she would be comfortable speaking with Ms. Kutti at the precinct (4700 Austell Road) while we supervised, and Ms. Freeman stated yes. I contacted Ms. Kutti and they agreed to meet at 2230 hours. I escorted Ms. Freeman to the precinct to speak with Ms. Kutti and escorted Ms. Freeman back to her residence.

Ms. Freeman's residence was listed on a zone patrol and Ms. Freeman was informed to call back immediately if she observed any suspicious activity outside of her residence.

No further.

Investigator Signature                                      Supervisor Signature

## CASE SUPPLEMENTAL REPORT

Printed: 03/11/2022 14:32

*Cobb County Police*                                                                                               OCA: *21000835*

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *ADMINISTRATIVELY...*          **Case Mng Status:** *ADMINISTRATIVELY CLOSED*   **Occurred:** *01/04/2021*

**Offense:** *SUSPICIOUS ACTIVITY*

---

**Investigator:** *CASE, T. C. (2478)*                                    **Date / Time:** *01/21/2021 19:46:33, Thursday*

**Supervisor:** *NOLES, T. M. (0305)*              **Supervisor Review Date / Time:** *01/21/2021 19:49:16, Thursday*

**Contact:**                                                             **Reference:** *Cleared/any Status*

---

Case: 21000835
Type: Suspicious Activity
Location:
Purpose: Case Assignment/ Case Closed
Detective: T.C. Case
Date: 01/21/2021

On 01/21/2021, at 1845 hours, I was advised by LT. Noles that Ruby Freeman was involved in a suspicious activity report from 01/04/2021. Ms. Freeman was involved in a previous harassing communications incident in December 2020 and I was familiar with her case so I asked for the new case to be assigned to me for follow-up.

On 01/21/2021, at 1850 hours, I called the listed home phone number for Ms. Freeman and found that the number was invalid. I then called the listed mobile number and spoke with Ms. Freeman who stated that Trump supporters had ordered pizza deliveries to her home for three days in a row. A CCPD Police Officer was dispatched to the home but the officer was unable to convince the pizza companies to stop delivering unless Ms. Freeman called them directly. Ms. Freeman stated that she had gone to the businesses herself and resolved the situation.

Ms. Freeman also complained about Trump supporters attempting to hold a rally at her home due to some alleged voter/ ballot fraud. The rally did not occur as planned and there was no need for police action.

The suspicious activity incident was an alleged Trump supporter who attempted to get Ms. Freeman to make false claims about the ballot counting for the FBI investigation of the election results. Ms. Freeman was disappointed with the service that was provided by CCPD because she was not escorted to her home by an officer after the meeting with the Trump supporter. I expressed my desire to have CCPD better serve the citizens and I asked Ms. Freeman if there was anything that I could do to assist her at this time. Ms. Freeman advised she had hired an attorney who would be in charge of any further communications with CCPD and she thanked me for taking the time to call her.

This case was initially listed as cleared and it was activated so that I could access the information from my dashboard. This case will be closed again unless further information is developed.

[01/21/2021 19:46, CAST, 5414, DPS]

Investigator Signature                                    Supervisor Signature

FILED IN OFFICE

JUN 27 2022

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

IN THE FULTON COUNTY SUPERIOR COURT
STATE OF GEORGIA

IN RE:  SUBPOENAS FROM SPECIAL PURPOSE GRAND JURY,
CASE NO. 2022-EX-000024

ISSUED TO: Members of the General Assembly (William Ligon; Lt. Governor
Duncan; and others)

## MOTION TO QUASH SUBPOENAS

### I.      INTRODUCTION

During the month of June, the Fulton County Special Purpose Grand Jury

issued subpoenas to several Members of the General Assembly (hereinafter

"witnesses").[1] The subpoenas require the attendance and testimony of the witnesses

at the special purpose grand jury during the month of July.

The undersigned counsel acting in their limited capacity as Special Assistants

Legislative Counsel, and for the reasons stated and based upon the authorities cited

herein move the Court to enter an Order quashing the subpoenas or to provide

alternative relief as requested herein.

The Georgia Constitution provides privilege and immunity protections to

legislators and their staff:

---

[1] Lt. Governor Geoff Duncan is President of the Senate, not a Member, but the
arguments apply equally to him.

"[t]he members of both houses shall be free from arrest during sessions of the General Assembly, or committee meetings thereof, and in going thereto or returning therefrom, except for treason, felony, or breach of the peace. ***No member [of the General Assembly] shall be liable to answer in any other place for anything spoken in either house or in any committee meeting of either house.***" Ga. Const. art. III, § 4, ¶ 9 (emphasis added).

This motion raises issues concerning the separation of powers that is foundational to our government. As the Supreme Court has long recognized "it is the duty of each [branch] to zealously protect its function from invasion of the others." *McCutcheon v. Smith*, 199 Ga. 685, 690-691 (1945).[2] Based on the published reports of the Fulton DA's goal in issuing the subpoenas to members of the General Assembly, the witnesses who are seeking relief realistically are

---

[2] The Supreme Court explained that the Separation of Powers doctrine is a part of the structural foundation of state government created by the Georgia Constitution: "'The legislative, judicial and executive powers shall forever remain separate and distinct, and no person discharging the duties of one, shall, at the same time, exercise the functions of either of the others, except as herein provided.' [now found at Ga. Const. art 1, §2, ¶ III]. While the line of demarcation separating the legislative, judicial, and executive powers may sometimes be difficult to establish, and for this reason each of the three co-ordinate branches of government frequently invades the province of the others, it is nevertheless essential to the very foundation of our system of government that the mandate of the constitution be strictly enforced. The judicial branch doubtless invades the legislative field more frequently than does the legislative branch the judicial field, but it is the duty of each to zealously protect its function from invasion of the others." *Id.*

2

concerned about the scope of the grand jury's inquiry and the questions that will be posed to them.

The relief sought is straightforward: The Fulton County District Attorney's Office and the Special Purpose Grand Jury that has been convened in Fulton County (1) may not ask any Member of the General Assembly or staff to testify about matters that occurred in the witness's legislative capacity, including conversations a Member had with any other Member or staff; (2) may not ask any Member or staff to testify about the motivations of any Member regarding his or her legislative activities (including, for example, the motivations for questions posed during committee meetings, the motivation for convening committee hearings, or the motivation for allowing certain witnesses to testify, or any other facet of the Member's legislative activities); and (3) may not ask a Member to reveal any research the Member conducted (or staff conducted) including interviewing constituents, lobbyists, or other sources of information that relates to the legislative process.

## II.    THE GEORGIA CONSTITUTION PROVIDES UNQUALIFIED PRIVILEGE AND IMMUNITY TO MEMBERS OF THE GENERAL ASSEMBLY AND THEIR STAFF

The Constitution grants unqualified legislative immunity to legislators and their staff for any conduct related to their activity as legislators, including participation in debates on the floor of the Senate or House; participation in legislative committee hearings and other meetings; conversations with staff and

other members of the General Assembly and their staff about pending legislative

matters and all other activities that are part of the legislative responsibility of the

legislator and staff. The privilege and immunity is enshrined in the Georgia

Constitution and replicates the Speech and Debate Clause of the United States

Constitution. Ga. Const. art. III, § 4, ¶ 9; *Village of N. Atlanta v. Cook*, 219 Ga.

316, 319-320 (1963) (addressing this constitutional provision and finding that it is

similar to that in the United States Constitution regarding members of Congress;[3]

and expressly holding that legislators may not be questioned about the motivations

or intent in drafting legislation, or conducting legislative affairs); *Gravel v. United*

*States*, 408 U.S. 606 (1972) (explaining scope of the Speech or Debate Clause in the

United States Constitution, Art. I, § 6, cl. 1, as it applies to federal legislators and

staff and outlining, *prior* to the appearance of the witness the allowable scope of any

questioning of the witness); *Fletcher v. Peck*, 6 Cranch 87, 130, 3 L.Ed. 162 (It was

not consonant with our scheme of government for a court to inquire into the motives

of legislators, [this] has remained unquestioned); *Eastland v. U.S. Servicemen's*

*Fund*, 421 U.S. 491, 503 (1975) ("[O]nce it is determined that Members are acting

within the 'legitimate legislative sphere' the Speech or Debate Clause is an absolute

---

[3] The Speech and Debate Clause is found in the U.S. Constitution, Article 1, § 6: "[F]or any Speech or Debate in either House, they [members] shall not be questioned in any other Place."

4

bar to interference."); *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408 (D.C. Cir. 1995) (the Speech or Debate Clause *prohibits compelled questioning* about legislative communications or legislative actions even if the Member is not named as a party in the lawsuit); *Rangel v. Boehner*, 785 F.3d 19 (D.C. Cir. 2015) (reviewing the history and purpose of the Speech or Debate Clause). The Constitution provides that a legislator and staff may not be compelled to disclose any communications that relate to the legislative responsibilities of the legislator and the staff member. *Miller v. Transamerican Press, Inc.*, 709 F.2d 524 (9th Cir. 1983) (legislator may not be questioned about matters to which the privilege applies).

Thus, there are two separate components of the constitutional provision:

The constitutional provision operates to: (1) prohibit civil suits and criminal prosecutions against Members of the General Assembly (and their staff) for their legislative activities; and (2) shield Members of the General Assembly (and their staff) from appearing in any forum outside of the General Assembly to answer questions or to produce documents relating to their legislative activities, including, but not limited to, their motivations for taking certain actions or communications related thereto.[4]

---

[4] In civil matters the federal courts recognize that legislative immunity *completely bars* plaintiffs from seeking evidence from legislators (even non-parties) on *any* aspect of the legislative process. *Roma Outdoor Creations, Inc. v. City of Cumming*, 2008 WL 11411396, at *3 (N.D. Ga. Sept. 18, 2008) (protecting city mayor from a deposition); *Flanigan's Enters., Inc. of Ga. v. City of Sandy Springs*, 2009 WL

### III. THE CONSTITUTIONAL PRIVILEGE AND IMMUNITY CLAUSE SERVES TWO FUNCTIONS: FACILITATING THE LEGISLATIVE PROCESS AND PROTECTING THE SEPARATION OF POWERS

### A. PRIVILEGED COMMUNICATIONS

The importance of both legislative immunity and legislative privilege cannot be overstated: These provisions enable legislators and their staff to communicate with one another free from the fear that their communications will later be reviewed or questioned by another branch of the government or by any private party in the course of litigation. *See United States v. Brewster*, 408 U.S. 501, 524 (1972). Legislators must be permitted to talk to one another – perhaps even across the proverbial "aisle" – without concern that efforts to accommodate, or compromise, will be exposed to the public. Bad ideas need to be discussed and rejected; good ideas should be promoted. Legislators will acquire information from a variety of sources to formulate a proper legislative solution to a perceived problem, or determine that no legislative action is necessary or possible. All these communications should be accomplished without fear that the public and others – including other branches of government – are entitled to examine or question every step along the way as the (again, "proverbial") sausage is made.

---

10697495, at *2 (N.D. Ga. Jan. 29, 2009) (protecting "city council members and mayors from having to attend depositions seeking to question them about their role in the passage of legislation").

The privilege also applies beyond the limited scope of communications between legislators, or between legislators and a staff member. Additionally, the privilege applies to a legislator's source of information if the information relates to a legislative investigation or the formulation of legislation. *Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 530 (9th Cir. 1983) ("The possibility of public exposure could constrain these sources. It could deter constituents from candid communication with their legislative representatives and otherwise cause the loss of valuable information. Even more to the point, it would chill speech and debate on the floor. The Congressman might censor his remarks or forgo them entirely to protect the privacy of his sources, if he contemplated that he could be forced to reveal their identity in a lawsuit").

## B. SEPARATION OF POWERS

Legislative immunity and legislative privilege also delineate the proper boundaries ensuring the governmental separation of powers. The legislative branch of government is entitled to pursue its agenda without undue interference from the executive or judicial branches, just as the judicial branch pursues its mission without undue interference from the other branches of government. In *Kilbourn v. Thompson*, 103 U.S. 168, 203-04 (1880), the Supreme Court explained the importance of the legislative privileges and immunity, citing the language of an earlier 19th Century Massachusetts Supreme Court decision:

'These privileges are thus secured, not with the intention of protecting the members against prosecutions for their own benefit, but to support the rights of the people, by enabling their representatives to execute the functions of their office without fear of prosecutions, civil or criminal. I, therefore, think that the article ought not to be construed strictly, but liberally, that the full design of it may be answered. I will not confine it to delivering an opinion, uttering a speech, or haranguing in debate, but will extend it to the giving of a vote, to the making of a written report, and to every other act resulting from the nature and in the execution of the office. And I would define the article as securing to every member exemption from prosecution for everything said or done by him as a representative, in the exercise of the functions of that office, without inquiring whether the exercise was regular, according to the rules of the House, or irregular and against their rules. I do not confine the member to his place in the House; and I am satisfied that there are cases in which he is entitled to this privilege when not within the walls of the representatives' chamber.'

103 U.S. at 203–04 (1880) (quoting *Coffin v. Coffin*, 4 Mass. 1 (1808)). *See also*

*Brewster*, 408 U.S. at 524 ("[T]he purpose of the Speech or Debate Clause is to

protect the individual legislator, not simply for his own sake, but to preserve the

independence and thereby the integrity of the legislative process."); *Powell v.*

*McCormack*, 395 U.S. 486, 503 (1969) (noting that legislative immunity "insures

that legislators are free to represent the interests of their constituents without fear

that they will later be called to task in the courts for that representation").

Imagine, by analogy, if a grand jury (or for that matter, a legislative

committee), could summon judges to answer why a judicial decision was reached in

a certain way (for example, perhaps the grand jury will summon a Superior Court

Judge to inquire why the Judge ruled one way or another regarding a Motion to

Quash a subpoena), or summon an appellate judge and compel the judge to reveal

the discussions that were held during the appellate court's conference prior to issuing

a decision, or demand to know what law review articles the judge read or considered

prior to reaching a decision. Permitting the executive branch to question legislators

about their conversations or their motivations is equally disruptive of the functioning

of the legislative branch of government.

We anticipate the District Attorney and her assistants will decline to provide

the attorneys representing these witnesses any preview of the questions that will be

posed to the witness during his grand jury appearance. Pursuant to Ga. Const. art.

III, § 4, ¶ 9, there are undeniably numerous topics that are within the scope of the

legislative immunity and legislative privilege and may not be the subject of any

inquiry. On the other hand, there are questions the District Attorney may pose to the

witness that are entirely unrelated to his legislative duties.

## IV.    THIS COURT SHOULD SET FORTH THE GUIDELINES FOR QUESTIONING OF MEMBERS PRIOR TO THE MEMBERS' APPEARANCE

Because counsel has been provided no preview and because counsel may not

appear in the grand jury to interpose any objection, the prudent course is to inquire

into the scope of the intended questioning of the witness and to set forth the

boundaries. In addition, the District Attorney should be advised that the witness will

be permitted to invoke privilege and to assert his immunity and to suspend the

questioning to consult with counsel outside the grand jury room as often as necessary to protect the privilege and to seek advice about the propriety of any topic of inquiry.

In *United States v. Swindall*, 971 F.2d 1531, 1547 (11th Cir. 1992), the Eleventh Circuit reversed the conviction of a Georgia Congressman on certain counts based on the government's improper reliance on evidence presented to the grand jury, relating to the the Congressman's legislative activities. The Eleventh Circuit's description of the purpose of the Speech and Debate Clause applies in this case:

> The central role of the Speech or Debate Clause [is] to prevent intimidation of legislators by the Executive and accountability before a possibly hostile judiciary." <u>Gravel v. United States</u>, 408 U.S. 606, 617, 92 S. Ct. 2614, 2623, 33 L. Ed. 2d 583 (1972) (citing <u>Johnson, 383 U.S.</u> at 181, 86 S. Ct.at 755).

> The Speech or Debate Clause "at the very least protects [a member of Congress] from criminal or civil liability and from questioning elsewhere than in [Congress]." <u>Gravel</u>, 408 U.S.at 2615, 92 S. Ct. at 2622. \*\*\*

> The clause is read broadly to effectuate its purposes. See <u>Eastland v. United States Servicemen's Fund</u>, 421 U.S. 491, 501, 95 S. Ct. 1813, 1820, 44 L. Ed. 2d 324 (1975). Legislative activities covered by the privilege include issuing committee reports and holding hearings, see <u>Doe v. McMillan</u>, 412 U.S. 306, 93 S. Ct. 2018, 36 L. Ed. 2d 912 (1973), as well as "*those things generally said or done in the House or the Senate in the performance of official duties*." <u>United States v. Brewster</u>, 408 U.S. 501, 512, 92 S. Ct. 2531, 2537, 33 L. Ed. 2d 507 (1972) (emphasis added]).

<u>Id.</u> 1544. The Court reversed Swindall's conviction based on the improper use of the evidence in presenting the case to the grand jury: "Invocation of the constitutional protection at a later stage cannot undo the damage. If it is to serve its

purpose, the shield must be raised at the beginning." The Court went on to find that "[w]hen a member is improperly questioned, however, the violation occurs automatically. 'It is the very act of questioning that triggers the protection of the *Speech or Debate Clause.*'" *Id.* at 1549 *quoting In re Grand Jury (Intervenor "A"),* 587 F.2d 589, 598 (3d Cir. 1978).

For these reasons, the Court should set this matter down for oral argument[5] to consider the propriety of any topic of inquiry that the District Attorney intends to pursue with a Member or staff of the Georgia General Assembly. The alternative would require this court to evaluate all questions to all Members who have been subpoenaed throughout the course of each Members' testimony over the following weeks or months.

Setting ground rules in advance, as the Supreme Court did in *Gravel,* is the efficient method of evaluating the scope and breadth of the privileges and immunities enjoyed by the Members and staff.

---

[5] The court should also consider, given the nature of the inquiry, whether certain communications are privileged (and particularly in the context of a grand jury proceeding) and should be conducted in closed session and not open to the public, just as the grand jury proceedings are secret and not open to the public. If the Court intends to hear the specifics of privileged communications, the inquiry should be conducted *in camera. United States v. Zolin,* 491 U.S. 554 (1989) (when attorney-client privilege is invoked, inquiry into the specifics of the communication should be conducted *in camera).*

For the foregoing reasons, the witnesses urge the Court to enter an Order holding that Legislative Immunity and Privilege bars the DA from demanding the appearance of any Member at the Grand Jury to respond to questions relating to the Member's legislative duties and holding that the DA may not ask any witness to reveal any communications involving the Member and any other person relating to the Member's legislative duties.

RESPECTFULLY SUBMITTED,

GARLAND, SAMUEL & LOEB, P.C.

Donald F. Samuel, Ga. Bar #624475
Special Assistant Legislative Counsel

Amanda Clark Palmer, Ga. Bar #130608
Special Assistant Legislative Counsel

3151 Maple Drive, N.E.
Atlanta, Georgia 30305
(404) 262-2225
dfs@gsllaw.com
aclark@gsllaw.com

12

IN THE FULTON COUNTY SUPERIOR COURT
STATE OF GEORGIA

IN RE: SUBPOENAS FROM SPECIAL PURPOSE GRAND JURY,
CASE NO. 2022-EX-000024

ISSUED TO: Members of the General Assembly (William Ligon; Lt. Governor
Duncan; and others)

## CERTIFICATE OF SERVICE

I hereby certify that I have served the foregoing **MOTION TO QUASH**

**SUBPOENAS** upon the following counsel this date by depositing a copy of same

in the United States mail, first class postage prepaid, and properly addressed as

follows:

> Fani T. Willis, DA
> Fulton County District Attorney's Office
> Lewis Slaton Courthouse, Thid Floor
> 136 Pryor Street, S.W.
> Atlanta, Georgia 30305

This the 27th day of June, 2022.

RESPECTFULLY SUBMITTED,
GARLAND, SAMUEL & LOEB, P.C.

Donald F. Samuel, Ga. Bar #624475
Special Assistant Legislative Counsel

3151 Maple Drive, N.E.
Atlanta, Georgia 30305
(404) 262-2225
dfs@gsllaw.com

IN THE SUPERIOR COURT OF FULTON COUNTY

STATE OF GEORGIA

IN RE:                                )
SPECIAL PURPOSE GRAND JURY            )        2022-EX-000024
                                      )
                                      )        Judge Robert C. I. McBurney
                                      )

FILED IN OFFICE

JUN 3 0 2022

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

## STATE'S RESPONSE TO MOTION TO QUASH

**COMES NOW** the State of Georgia, by and through Fani T. Willis, District Attorney, Atlanta Judicial Circuit, Fulton County, Georgia, acting in her capacity as the legal advisor to Fulton County's special purpose grand jury, and responds to the Motion to Quash filed by "Members of the General Assembly (William Ligon; Lt. Governor Duncan; and others)." In order to ensure the proper execution of the special purpose grand jury's function and to prevent the unwarranted extension of legislative immunity or privilege to actions which are entirely outside the General Assembly's jurisdiction or legitimate activities, the District Attorney opposes the motion on behalf of the special purpose grand jury.

The Georgia Constitution states, at art. III, § 4, ¶ 9:

> The members of both houses shall be free from arrest during sessions of the General Assembly, or committee meetings thereof, and in going thereto or returning therefrom, except for treason, felony, or breach of the peace. No member shall be liable to answer in any other place for anything spoken in either house or in any committee meeting of either house."

As a result of their concern about the "scope of the grand jury's inquiry and the questions that will be posed to them," the movants ask this Court to prohibit the special purpose grand jury from questioning "any Member of the General Assembly" about three broad subjects: (1) matters that occurred within their legislative capacity, (2) the Members' "motivations" for legislative

activities, and (3) any research they conducted, "including interviewing constituents, lobbyists, or other sources of information that relates to the legislative process." The movants suggest this Court apply the broadest possible brush to limit the scope of the special purpose grand jury's inquiry, preventing questioning regarding "all other activities that are part of the legislative responsibility of the legislator and staff." On behalf of the special purpose grand jury, the District Attorney urges this Court not to do so.

As a preliminary matter, the movants have not yet comprehensively identified themselves. As noted above, the motion refers only to William Ligon, a former state senator; Geoff Duncan, the lieutenant governor of Georgia; and "others." While the District Attorney understands that additional Members served with a grand jury subpoena may choose to join in the motion, the motion requests relief that would apply to *any* Member of the General Assembly, whether they join in the motion or not. Because the right of the legislative immunity and privilege lies with the individual Member, a single motion cannot request a universal ruling outlining their application to each and every Member. *See* ACORN v. Cnty. of Nassau, 2007 U.S. Dist. LEXIS 71058, 2007 WL 2815810, at *2 (E.D.N.Y. Sept. 25, 2007). A legislator cannot assert or waive the privilege on behalf of another legislator. *See* A Helping Hand, LLC v. Baltimore Cnty., Md., 295 F. Supp. 2d 585, 590 (D. Md. 2003). However, as two movants (Mr. Ligon and Lieutenant Governor Duncan) have been identified, the District Attorney will address the scope and nature of legislative immunity and privilege as it may apply to those movants.

I.    **The General Assembly cannot, either in 2020 or today, "rectify" election results by changing the outcome of a certified election that has already taken place, and it is never, and can never be, considered a legitimate "legislative duty" to attempt to do so.**

It has long been established that members of a legislature are not immune to a grand jury subpoena. The Speech and Debate Clause of the United States Constitution does not "immunize

2

Senator or aide from testifying at trial or grand jury proceedings involving third-party crimes where the questions do not require testimony about or impugn a legislative act." Gravel v. United States, 408 U.S. 606, 622 (1972).[1] The special purpose grand jury's investigation, which is authorized to examine any facts and circumstances relating directly or indirectly to possible criminal disruptions of the 2020 elections in Georgia, certainly qualifies as a "grand jury proceeding involving third-party crimes."

The question, then, is what constitutes a "legislative act." The movants seek to prevent inquiry into "matters that occurred in the witness's legislative capacity," as well as their "motivations" for legislative activities. With regard to immunity, "[a]bsolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity.'" Bogan v. Scott-Harris, 523 U.S. 44, 54 (1998) (quoting Tenney v. Brandhove, 341 U.S. 367, 376 (1951)). "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." Id. "A party claiming legislative immunity must demonstrate that its actions, when stripped of all considerations of intent and motive, were legislative rather than administrative or executive in nature." LHR Farms, Inc. v. White City, 2010 U.S. Dist. LEXIS 149917 at *27 (N.D.Ga.) (citing Bogan, 523 U.S. at 55). In Bogan, the Supreme Court considered "whether the application of legislative immunity required a court to 'look beyond [defendants'] formal actions to consider whether the ordinance was legislative in substance.'" Ahearn v. City of Palos Verdes Estates, 2007 U.S. Dist. LEXIS 104513 at *27 (C.D.Cal.) (quoting Bogan, 523 U.S. at 55). The Court first assessed the "formally legislative nature" of the activity (the passing of an ordinance), concluding that the act of voting for the ordinance was "quintessentially legislative."

---

[1] The Georgia Supreme Court has held that the legislative immunity and privilege clause of the Georgia Constitution is similar to the Speech and Debate Clause of the United States Constitution. See N. Atlanta v. Cook, 219 Ga. 316, 318 (1963).

Bogan, 523 U.S. at 55. But the Court "expressly declined to decide whether the mere *form* of legislative action was sufficient, ruling instead that the particular vote was legislative in *substance* because it was a 'discretionary, policymaking decision.'" Dyas v. City of Fairhope, 2009 U.S. Dist. LEXIS 92001, *14 (citing Bogan, 523 U.S. at 56) (emphasis original).

With regard to privilege, the Supreme Court's assessment of the Speech and Debate Clause and its application to Members of Congress provides another two-part test. While the Clause on its face protects only speech and debate on the floor of Congress, "the Supreme Court has given the clause a practical meaning, extending the subject matter protected to cover activity that is within the 'legitimate legislative sphere.'" Miller v. Transamerican Press, Inc., 709 F.2d 524, 529 (9th Cir. 1983).

> However, "legislative acts are not all-encompassing"; the privilege extends beyond pure speech and debate only when necessary to prevent indirect impairment of Congressional deliberations. Gravel, 408 U.S. at 625. Activity other than speech or debate must meet what may be characterized as a two-part test to qualify for the privilege. First, it must be "an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings." Id. The privilege applies "to things generally done in a session of the House by one of its members in relation to the business before it." Kilbourn v. Thompson, 103 U.S. 168, 204, 26 L. Ed. 377 (1881). Second, the activity must address proposed legislation *or some other subject within Congress' constitutional jurisdiction.* Gravel, 408 U.S. at 625. The scope of Congressional inquiry is broad, see, e.g., id. at 610 n.6, though not unlimited. Watkins v. United States, 354 U.S. 178, 187, 1 L. Ed. 2d 1273, 77 S. Ct. 1173 (1957).

Miller, 709 F.2d at 529 (emphasis added). Thus, for privilege to apply, it is not enough that the activity involved is typical of the legislative process; it must address a subject that is *actually within the legislature's jurisdiction.*

In their motion, the movants ask this Court to perform only half of each of these evaluations, assessing only the form of various activities while ignoring their substance, and assessing the forum or presentation of an activity while ignoring whether it lay within the legislature's jurisdiction. A specific example of "legislative activity" provided in the motion is

4

"committee hearings or other meetings."[2] Clearly, committee hearings are traditionally understood as examples of "legislative acts"; they are specifically mentioned in the legislative privilege and immunity clause of the Georgia Constitution, *supra*. However, some facts and circumstances involving a movant, Mr. Ligon, and relevant to the special purpose grand jury's investigation, require greater scrutiny in order to determine whether a hearing is *always* within the "legitimate legislative sphere."

While it is clear that committee hearings or "committee meetings" are legislative in form, their substance is another matter. It is a matter of public record that on December 3, 2020, Mr. Ligon chaired a Senate subcommittee hearing at which Rudy Giuliani and others were given the floor for several hours in order to present claims and public comment relating to purported election fraud. This fact is unquestionably "directly or indirectly related" to the subject of the special purpose grand jury's investigation.[3] Many of the comments and materials offered by Giuliani and others at this hearing have been demonstrated to be utterly false. In 2021, Giuliani was suspended from the practice of law in the state of New York for a pattern of making and publicizing false and misleading statements, including, specifically, his presentations before the Georgia legislature.[4] Following the hearing at which Giuliani appeared, Mr. Ligon authored and publicized a report[5] summarizing the public comments offered at the hearing, presenting the assertions made by

---

[2] Motion p. 3.

[3] *See* O.C.G.A. § 15-12-100(c).

[4] Giuliani "repeated to lawmakers and the public at large numerous false and misleading statements regarding the Georgia presidential election results." *See* Matter of Giuliani, 146 N.Y.S.3d 266, 275-79 (2021).

[5] The report, entitled "Report of the Election Law Study Subcommittee of the Standing Senate Judiciary Committee," was released first by Mr. Ligon as an individual Member "for informational purposes." On December 30, 2020, the subcommittee adopted the report in a 3-1 vote. *See* http://www.senatorligon.com/THE_SENATE%20JUDICIARY%20SUBCOMMITTEE_FINAL %20REPORT.PDF .

Giuliani and others as true "findings" even when they had been publicly (and repeatedly) debunked by state officials for weeks.[6] At the conclusion of the report, Mr. Ligon made several "recommendations," concluding with the following paragraph:

> H. For Rectifying the 2020 General Election Results
>     The Legislature should carefully consider its obligations under the U.S. Constitution. If a majority of the General Assembly concurs with the findings of this report, the certification of the Election should be rescinded and the General Assembly should act to determine the proper Electors to be certified to the Electoral College in the 2020 presidential race. Since time is of the essence, the Chairman and Senators who concur with this report recommend that the leadership of the General Assembly and the Governor immediately convene to allow further consideration by the entire General Assembly.

The General Assembly cannot, either in 2020 or today, "rectify" election results by changing the outcome of a certified election that has already taken place, and it is never, and can *never* be, considered a legitimate "legislative duty" to attempt to do so.[7] Holding hearings and generating a report intended to propose "rescinding" an election certification is *entirely outside* of the General Assembly's jurisdiction. Additionally, presenting demonstrable falsehoods as "findings" in a committee report should never be considered conduct protected by legislative immunity or privilege, and to suggest otherwise makes a mockery of the "integrity of the legislative process" the movants supposedly seek to preserve by shielding themselves from legitimate inquiry from Georgia citizens. It is those citizens, after all, whose votes would have been invalidated by

---

[6] *See* "Report of the Election Law Study Subcommittee of the Standing Senate Judiciary Committee," Section V, paragraph 7. *Compare* https://apnews.com/article/election-2020-donald-trump-georgia-media-social-media-e9a73462e39e7aa39683f0f582a6659e .

[7] While the Constitution gives states, through their legislatures, the power to choose the manner for appointing electors, it delegates to Congress the power "to determine the time of chusing Electors." U.S. Const. art II, § I, cl. 4. Congress, in turn, has provided that all states must appoint their electors on the "Tuesday after the first Monday in November, in every fourth year succeeding every election of a President and Vice President." 3 U.S.C. § 1. That particular day is better known as Election Day. The manner of appointment of electors in Georgia is a general presidential election, *see* O.C.G.A. § 21-2-130 et seq., O.C.G.A. § 21-2-10 et seq., O.C.G.A. 21-2-499, just as it is in every other state. As a result, a state legislature's post-Election Day appointment of its own slate of electors would directly violate federal law, in addition to fundamental tenets of democracy.

the "rectifying" activity proposed by Mr. Ligon. Despite this, he has moved to quash his subpoena on the basis of protections whose purpose, he suggests, is not "protecting the members against prosecutions for their own benefit, but to support the rights of the people." It is outrageous to claim a mantle of protection for legitimate legislative duties when one's own actions sought to reduce the legislature to a laundry for falsehoods and illegalities. It is a matter of public record that this is exactly what occurred in Mr. Ligon's report.

Even actions resulting from "committee meetings" must meet a threshold determination: "once it is determined that Members are acting within the 'legitimate legislative sphere' the Speech or Debate Clause is an absolute bar to interference." Eastland v. United States Servicemen's Fund, 421 U.S. 491, 503 (1975). In circumstances such as these, the report created by Mr. Ligon cannot *possibly* exist within the "legitimate legislative sphere." Including within the same report some recommendations for future legislation, a legitimate legislative duty, does not confer legitimacy upon false "findings" or advocacy for illegal legislative actions such as the "rescinding" of a certified election.[8] To find otherwise would be the ultimate elevation of *form* above *substance*. Even if the Ligon Report was the product of a "hearing," "meeting," or "investigation," the power of a legislature "is not unlimited." Watkins v. United States, 354 U.S. 178, 187 (1957). In Watkins, a case involving the actions of the House Un-American Activities Committee, the Supreme Court held that "[n]o inquiry is an end in itself; it must be related to, and in furtherance of, a legitimate task of Congress." Id. If Congress could exceed the scope of its powers as described in Watkins

---

[8] Even in United States v. Johnson, 383 U.S. 169, 180 (1966), where the Supreme Court stated "[t]he claim of an unworthy purpose does not destroy the privilege," the legislator's actions were more clearly within the "legitimate legislative sphere" than the actions contemplated herein. The legislator in Johnson had given a speech for an allegedly improper reason, but it was inarguably within his authority as a legislator to give the speech. Here, Mr. Ligon wrote a report recommending the overturn of a certified election, an activity which, as has been stated, neither he nor the General Assembly *ever* had the authority to pursue, much less to accomplish.

by pursuing "[i]nvestigations conducted solely for the personal aggrandizement of the investigators or to 'punish' those investigated," activity which the Supreme Court found "indefensible," then the Members of the General Assembly can exceed their powers in pursuing activities designed to advocate for *ultra vires* actions entirely outside of their jurisdiction such as "rescinding" or "rectifying" a certified election.

Finally, it is not an "inhibition" of the legislative process or legislative legitimacy and independence to expect a legislator to verify the truth of his statements or the legality of his recommendations before they are placed into a report and released to the public. This is particularly true where legislative immunity and privilege exist in part because, as the movants insist, "[b]ad ideas need to be discussed and rejected; good ideas should be promoted."[9] The Supreme Court has observed that the Speech or Debate Clause "protects Members against prosecutions that directly impinge upon or threaten the legislative process." Gravel, 408 U.S. at 616.[10] Questioning members as to these matters could not possibly impinge upon the legislative process with regard to proposals for "rescinding" votes because such a proposal falls outside the "legitimate legislative sphere" and outside of the legislature's jurisdiction. Where dishonesty or misinformation was the result, Members should be subject to questioning by the special purpose grand jury. If "the need to encourage frank and honest discussion among lawmakers favors nondisclosure,"[11] then the need to inquire into dishonesty favors the opposite. The movant is free, of course, to argue otherwise.

## II. Members' communications with third parties are not protected by legislative privilege in criminal investigations.

---

[9] Motion p. 6.

[10] While the language of Gravel mentions "prosecutions," the movants have argued that legislative immunity precludes them from being called to testify at all regarding any legislative act whatsoever. The special purpose grand jury cannot issue indictments, and no Members have been formally accused of a crime.

[11] Comm. for a Fair & Balanced Map, 2011 U.S. Dist. LEXIS 117656, *8.

The third form of relief requested by the movants is that this Court prohibit the special purpose grand jury from asking a Member "to reveal any research the Member conducted (or staff conducted) including interviewing constituents, lobbyists, or other sources of information that relates to the legislative process." While movants again would paint legislative privilege and immunity with as broad a brush as possible, the Supreme Court has made clear that constitutional protections do not extend to activities or communications with parties outside the legislature.

In Gravel, the Supreme Court evaluated whether a grand jury could subpoena a Senator's aide for questioning in an investigation of third-party criminal conduct, ultimately concluding that the Speech and Debate Clause does not protect a Congressman from testifying before a grand jury about sources of information used in preparation for legislative acts. The Court held that the grand jury could not question the Senator's aide "*except as it proves relevant to investigating possible third-party crime*, concerning any act, in itself not criminal,[12] performed by the Senator, or by his aides in the course of their employment, *in preparation for the subcommittee hearing*." 408 U.S. at 629 (emphasis added). The holding applied equally to the Senator and to his aide; the Court "refus[ed] to distinguish between Senator and aide in applying the Speech or Debate Clause." Id. at 622. It is thus well settled that, in a criminal investigation such as the one conducted by the special purpose grand jury, third-party communications are not protected by legislative privilege.

The movants cite Miller, 709 F.2d at 530, in support of their claim that "the privilege applies to a legislator's source of information if the information relates to a legislative investigation

---

[12] The Court had earlier held that immunity did not bar prosecution into criminal acts committed in preparation for legislative acts. "While the Speech or Debate Clause recognizes speech, voting, and other legislative acts as exempt from liability that might otherwise attach, it does not privilege either Senator or aide to violate an otherwise valid criminal law *in preparing for or implementing* legislative acts." Id. at 626 (emphasis added).

or the formulation of legislation."[13] However, <u>Miller</u> is a civil case and thus inapposite. Additionally, while the Ninth Circuit in <u>Miller</u> expressed concern that failing to extend legislative privilege to conversations between legislators and third parties would "deter constituents from candid communication" and otherwise "chill speech and debate on the floor," <u>id.</u>, this concern is not shared by all federal courts. Numerous federal authorities have refused to extend legislative privilege beyond legislators and their staffers, even in civil cases. *See* <u>La Union del Pueblo Entero v. Abbott</u>, 2022 U.S. Dist. LEXIS 93601 at *20 (W.D.Tex.) ("To the extent . . . that any legislator, legislative aide, or staff member had conversations or communications with any outsider (e.g. party representatives, non-legislators, or non-legislative staff), any privilege is waived as to the contents of those specific communications."); <u>N.C. State Conf. of the NAACP v. McCrory</u>, 2014 U.S. Dist. LEXIS 185130 at *22-23 (third party communication is "not ordinarily the type of legislative acts that the privilege is designed to protect" and "was waived when the communications were shared with non-legislative outside parties"). Finally, even when federal courts do recognize legislative privilege regarding third-party communications, they also acknowledge that the "seriousness" of a particular case can mitigate in favor of limiting the privilege. Courts have observed that voting rights cases can involve sufficiently serious matters in order to abrogate the privilege, and "[i]n this respect, they are akin to criminal prosecutions." <u>League of Women Voters of Fla. v. Lee</u>, 340 F.R.D. 446, 457 (N.D.Fla. 2021).

Because the special purpose grand jury is conducting an investigation into possible criminal activity, under <u>Gravel</u> this Court cannot extend Georgia's legislative privilege to third-party communications, even if they were undertaken in preparation for a hearing or legitimate legislative activity. This Court also cannot extend the privilege to actions, such as research,

---

[13] Motion at 7.

undertaken in preparation for a hearing or legitimate legislative activity. As a result, the movants' third claim must fail.

**III.    The District Attorney welcomes the general guidance of this Court, but the scope of questioning will likely require individual determinations.**

The movants also suggest that this Court provide "general guidelines" in advance of the questioning of any Member. Otherwise, this Court would have to "evaluate all questions to all Members who have been subpoenaed throughout the course of each Members' testimony over the following weeks or months." The District Attorney agrees that, to the extent possible, this Court should clarify the scope of permissible questioning by the special purpose grand jury. However, individual issues will likely necessitate at least some evaluation of scope for each Member who appears before the grand jury. For example, Lieutenant Governor Duncan has joined in the motion, which states that its arguments apply equally to him. While it is true that "legislative immunity extends to officials outside the legislative branch... when they perform legislative functions," Kensington Volunteer Fire Dept., Inc. V. Montgomery County, 684 F.3d 462, 470 (4th Cir. 2012), there will still have to be a determination of precisely which of the Lieutenant Governor's activities require legislative functions as opposed to executive ones. *See also* Bogan, supra. Other Members will similarly require individual determinations of privilege in order to determine the boundary between protected activities and those subject to proper questioning.

Additionally, these determinations are not required to take place *in camera*, as legislative privilege is not based upon confidentiality concerns. "[C]onfidentiality does not lie at the root of the concerns motivating a privilege for all legislative speech or debate. The speech or debate privilege is at its core a 'use privilege' not a privilege of nondisclosure." In re Grand Jury, 821 F.2d 946, 958 (3rd Cir. 1987). *See also* Pulte Home Corp. v. Montgomery County, 2017 U.S. Dist. LEXIS 82935 at *22 (D.Md.) ("[T]he maintenance of confidentiality is not the fundamental

concern of the legislative privilege."). The Court in its discretion may of course determine that some determinations must be made *in camera*, but, unlike determinations of attorney-client privilege, confidentiality concerns are not of primary concern.

**WHEREFORE**, the State of Georgia, by and through Fani T. Willis, District Attorney, Atlanta Judicial Circuit, Fulton County, Georgia, prays that this Honorable Court deny the instant Motion to Quash and allow for the questioning of the movants before the special purpose grand jury.

Respectfully submitted this the 30th day of June, 2022.

Fani T. Willis, Bar. No. 223955
District Attorney
Atlanta Judicial Circuit
136 Pryor Street Southwest
Third Floor
Atlanta, Georgia 30303

F. McDonald Wakeford, Bar. No. 414898
Chief Senior Assistant District Attorney
Atlanta Judicial Circuit

Nathan J. Wade, Bar. No. 390947
Special Prosecutor
Atlanta Judicial Circuit

12

**Certificate of Service**

I hereby certify that on this 30th day of June 2022, a true copy of this Response was delivered to the following persons by electronic mail: Donald F. Samuel and Amanda Clark Palmer, attorneys for the movants.

FANI T. WILLIS   223955

District Attorney

IN THE FULTON COUNTY SUPERIOR COURT
STATE OF GEORGIA

IN RE: SUBPOENA FROM SPECIAL PURPOSE GRAND JURY,
CASE NO. 2022-EX-000024



FILED IN OFFICE

JUL 01 2022

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

## MOTION TO CONTINUE SPECIAL PURPOSE GRAND JURY APPEARANCE OF
## WILLIAM LIGON TO ACCOMMODATE COUNSEL'S TRIAL SCHEDULE

COMES NOW, former State Senator William Ligon, by and through undersigned counsel, and moves the Court to continue his appearance before the Fulton County Special Purpose Grand Jury to accommodate the undersigned's trial schedule. In support of this motion, William Ligon states as follows:

1. The instant Special Purpose Grand Jury was impaneled on May 2, 2022 for a period not to exceed 12 months. (*See* "Order Approving Request for Special Purpose Grand Jury Pursuant to O.C.G.A. § 15-12-100, et seq.", attached as Exhibit A).

2. In April, the undersigned was retained by Mr. Ligon after he was contacted by representatives of the Fulton County District Attorney's Office regarding their investigation into the conduct of the former President of the United States. The undersigned is a former federal prosecutor, with over twenty-five years of experience either representing subpoenaed grand jury witnesses or conducting and supervising complex grand jury investigations on behalf of the Department of Justice.

3. On June 24, 2022, Mr. Ligon was served with a Grand Jury subpoena in his county of residence, Glynn County, Georgia. (*See* "Subpoena for the Attendance of Witness Pursuant to O.C.G.A. § 24-13-21," attached as Exhibit B). Mr. Ligon's

1

appearance before the Special Purpose Grand Jury is presently scheduled for July 20, 2022 at 9 a.m.

4.    Prior to issuance of the subpoena, the undersigned counsel sought to reach an agreement with the Fulton County District Attorney's Office on alternative dates for Mr. Ligon's appearance before the Special Purpose Grand Jury. Records of these pre-subpoena communications are attached as Exhibit C.

5.    The undersigned counsel is co-lead counsel representing twenty-one plaintiffs in a specially-set jury trial beginning on July 18, 2022. The civil case, Joseph Poppell, et al. v. Cardinal Health, at al. (No. CE19-00472) is pending in Glynn County Superior Court before Judge Roger Lane and is expected to last four to six weeks. The Poppell case was filed in 2019. The trial scheduling order is attached as Exhibit D.

6.    In conversations referenced in Exhibit C, the Fulton District Attorney's Office offered to schedule Mr. Ligon's Grand Jury appearance as far out as August 4, but even that date squarely falls within the four-to-six-week period the Poppell case is expected to last. The Fulton County District Attorney's office failed to provide the undersigned with any reason or rationale why they could not schedule Mr. Ligon's grand jury appearance in late August or early September to reasonably accommodate the undersigned counsel's trial schedule.[1]    Again, the Special

---

[1] *See* Aspirational Statements on Professionalism, Chief Justice's Commission on Professionalism, Ga. R. & Regs. St. Bar 9-102:

> As to opposing parties and their counsel, I will aspire: (a) To cooperate with opposing counsel in a manner consistent with the competent representation of all parties. As a professional, I should: (1) Notify opposing counsel in a timely fashion of any canceled appearance; (2) Grant reasonable requests for extensions or scheduling changes; and (3) Consult with opposing counsel in the scheduling of appearances, meetings, and depositions.

2

Purpose Grand Jury was empaneled on May 2, 2022 for a period not to exceed May 1, 2023.

7.    Subject to this Court's ruling on the pending motion to quash subpoenas to members of the General Assembly (*see* attached Exhibit E), former State Senator William Ligon does not object to appearing before the Special Purpose Grand Jury to answer any lawful, non-privileged questions posed. However, Mr. Ligon has a right to have his counsel of choice available to advise him during the proposed grand jury appearance. Mr. Ligon's right to have counsel available is especially important given the legislative privilege issues raised on behalf of multiple members of the General Assembly in the pending motion to quash. A two-to-four-week delay in Mr. Ligon's appearance would appear to have no impact on the Fulton County investigation.

For the foregoing reasons, William Ligon requests that his appearance before the Fulton County Special Purpose Grand Jury be continued to accommodate his counsel's trial schedule, but in any event, no later than September 9, 2022.

RESPECTFULLY SUBMITTED,

**GRIFFIN DURHAM TANNER & CLARKSON, LLC**

By:    /s/ James D. Durham
        James D. Durham
        Georgia Bar No. 235515
        jdurham@griffindurham.com
        7 East Congress Street, Suite 703
        Savannah, GA 31401
        Ph/Fax: (912) 867-9140

3

IN THE FULTON COUNTY SUPERIOR COURT
STATE OF GEORGIA

IN RE: SUBPOENA FROM SPECIAL PURPOSE GRAND JURY,
CASE NO. 2022-EX-000024

## CERTIFICATE OF SERVICE

I hereby certify that I have served the foregoing Motion to Continue Grand Jury Appearance upon the following counsel this date by depositing a copy of the same in the United States mail, first class postage prepaid, and properly addressed as follows:

> Fani T. Willis, DA
> Fulton County District Attorney's Office
> Lewis Slayton Courthouse, Third Floor
> 136 Pryor Street, S.W.
> Atlanta, GA 30305

This the 30th day of June, 2022.

RESPECTFULLY SUBMITTED,

**GRIFFIN DURHAM TANNER & CLARKSON, LLC**

By:    /s/ James D. Durham
       James D. Durham
       Georgia Bar No. 235515
       jdurham@griffindurham.com
       7 East Congress Street, Suite 703
       Savannah, GA 31401
       Ph/Fax: (912) 867-9140

4

# EXHIBIT A

**IN THE SUPERIOR COURT OF FULTON COUNTY**
**ATLANTA JUDICIAL CIRCUIT**
**STATE OF GEORGIA**

IN RE: **REQUEST FOR**
**SPECIAL PURPOSE**
**GRAND JURY**

2022 -EX 000024

FILED IN OFFICE

JAN 24 2022

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

**ORDER APPROVING REQUEST FOR SPECIAL PURPOSE**
**GRAND JURY PURSUANT TO O.C.G.A. §15-12-100, et seq.**

The District Attorney for the Atlanta Judicial Circuit submitted to the judges of the

Superior Court of Fulton County a request to impanel a special purpose jury for the purposes set

forth in that request. This request was considered and approved by a majority of the total

number of the judges of this Court, as required by O.C.G.A. §15-12-100(b).

IT IS THEREFORE ORDERED that a special purpose grand jury be drawn and

impaneled to serve as provided in O.C.G.A. § 15-12-62.1, 15-12-67, and 15-12-100, to

commence on May 2, 2022, and continuing for a period not to exceed 12 months. Such period

shall not include any time periods when the supervising judge determines that the special

purpose grand jury cannot meet for safety or other reasons, or any time periods when normal

court operations are suspended by order of the Supreme Court of Georgia or the Chief Judge of

the Superior Court. The special purpose grand jury shall be authorized to investigate any and all

facts and circumstances relating directly or indirectly to alleged violations of the laws of the

State of Georgia, as set forth in the request of the District Attorney referenced herein above.

Pursuant to O.C.G.A. § 15-12-101(a), the Honorable Robert C. I. McBurney is hereby

assigned to supervise and assist the special purpose grand jury, and shall charge said special

purpose grand jury and receive its reports as provided by law.

This authorization shall include the investigation of any overt acts or predicate acts relating to the subject of the special purpose grand jury's investigative purpose. The special purpose grand jury, when making its presentments and reports, pursuant to O.C.G.A. §§ 15-12-71 and 15-12-101, may make recommendations concerning criminal prosecution as it shall see fit. Furthermore, the provisions of O.C.G.A. § 15-12-83 shall apply.

This Court also notes that the appointment of a special purpose grand jury will permit the time, efforts, and attention of the regular grand jury(ies) impaneled in this Circuit to continue to be devoted to the consideration of the backlog of criminal matters that has accumulated as a result of the COVID-19 Pandemic.

IT IS FURTHER ORDERED that this Order shall be filed in the Office of the Clerk of the Superior Court of Fulton County.

SO ORDERED, THIS 24 DAY OF January, 2022.

CHRISTOPHER S. BRASHER, CHIEF JUDGE
Superior Court of Fulton County
Atlanta Judicial Circuit

# EXHIBIT B

STATE OF GEORGIA, FULTON COUNTY

# SUBPOENA FOR THE
# ATTENDANCE OF WITNESS

### PURSUANT TO O.C.G.A. § 24-13-21

**TO:  Mr. William T. Ligon**

**YOU ARE HEREBY COMMANDED**, that laying all other business aside, you be and appear before the Special Purpose Grand Jury, Fulton County, Georgia, Hon. Robert C. I. McBurney, Judge, Superior Court of Fulton County, Fulton County Courthouse, 136 Pryor Street, 3rd Floor, Atlanta, Georgia 30303, to be held on **July 20, 2022, at 9:00 a.m.**, in the Grand Jury Room, then and there to be sworn as a witness for the State of Georgia, in the case of <u>IN RE: SPECIAL PURPOSE GRAND JURY</u>, Case Number 2022-EX-000024.

You are required to attend from day to day and from time to time until the matter is disposed of.

**HEREIN FAIL NOT**, under the penalty of law by authority of the Hon. Robert C. I. McBurney, Judge, Superior Court of Fulton County, Georgia, this the _____ day of _____, 2022.

> **Cathelene "Tina" Robinson**
> Clerk of Superior Court
> (404) 613-5313

Subpoena issued by:

**Fulton County District Attorney**
**Fani T. Willis**
Authority of:
Special Purpose Grand Jury, Superior Court of Fulton County

# EXHIBIT C

**From:** Wooten, Will <Will.Wooten@fultoncountyga.gov>
**Sent:** Friday, June 10, 2022 4:09 PM
**To:** Jim Durham <jdurham@griffindurham.com>
**Subject:** RE: Fulton County SPGJ Witness Subpoena: Mr. William T. Ligon

Sounds good, we'll give you a call Monday at 3:00. Thanks again.

Best regards,

**Will Wooten (He/Him)**
Deputy District Attorney
White Collar Crime Unit
DA's LGBTQ+ Advisory Committee Co-Chair
Fulton County District Attorney's Office
136 Pryor Street SW
Atlanta, GA 30303
(404) 612-6560

CONFIDENTIALITY NOTICE: This e-mail contains legally privileged and confidential information intended only for the individual or entity named within the message. If the reader of this message is not the intended recipient, or the agent responsible to deliver it to the intended recipient, the recipient is hereby notified that any review, dissemination, distribution or copying of this communication is prohibited. If this communication was received in error, please notify the sender by reply e-mail and delete the original message.

**From:** Jim Durham [mailto:jdurham@griffindurham.com]
**Sent:** Friday, June 10, 2022 4:05 PM
**To:** Wooten, Will <Will.Wooten@fultoncountyga.gov>
**Subject:** RE: Fulton County SPGJ Witness Subpoena: Mr. William T. Ligon

Direct dial office number: (912) 867-9141.

-Jim

**From:** Wooten, Will <Will.Wooten@fultoncountyga.gov>
**Sent:** Friday, June 10, 2022 4:03 PM
**To:** Jim Durham <jdurham@griffindurham.com>; Hill-DA, Michael <Mike.Hill@fultoncountyga.gov>
**Cc:** Swanson-Lucas, Trina <Trina.Lucas@fultoncountyga.gov>; Ney, Adam <Adam.Ney@fultoncountyga.gov>; Wakeford,

1

FMcDonald <FMcDonald.Wakeford@fultoncountyga.gov>; nathanwade@lawyer.com
**Subject:** RE: Fulton County SPGJ Witness Subpoena: Mr. William T. Ligon

Let's say 3:00 p.m. What's the best number for us to reach you?

Thanks again.

Best regards,

**Will Wooten (He/Him)**
Deputy District Attorney
White Collar Crime Unit
DA's LGBTQ+ Advisory Committee Co-Chair
Fulton County District Attorney's Office
136 Pryor Street SW
Atlanta, GA 30303
(404) 612-6560

CONFIDENTIALITY NOTICE: This e-mail contains legally privileged and confidential information intended only for the individual or entity named within the message. If the reader of this message is not the intended recipient, or the agent responsible to deliver it to the intended recipient, the recipient is hereby notified that any review, dissemination, distribution or copying of this communication is prohibited. If this communication was received in error, please notify the sender by reply e-mail and delete the original message.

---

**From:** Jim Durham [mailto:jdurham@griffindurham.com]
**Sent:** Friday, June 10, 2022 3:59 PM
**To:** Wooten, Will <Will.Wooten@fultoncountyga.gov>; Hill-DA, Michael <Mike.Hill@fultoncountyga.gov>
**Cc:** Swanson-Lucas, Trina <Trina.Lucas@fultoncountyga.gov>; Ney, Adam <Adam.Ney@fultoncountyga.gov>; Wakeford, FMcDonald <FMcDonald.Wakeford@fultoncountyga.gov>; nathanwade@lawyer.com
**Subject:** RE: Fulton County SPGJ Witness Subpoena: Mr. William T. Ligon

Yes.  How about 2 or 3 on Monday?

-Jim



**James D. Durham, Member**
7 E. Congress St., Suite 703
Savannah, Georgia 31401
(912) 867-9140 (main/fax)
(912) 867-9141 (direct)
jdurham@griffindurham.com

GRIFFIN
DURHAM
TANNER &
CLARKSON

*Confidentiality Notice: This message is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged, confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately either by phone or reply to this e-mail and delete all copies of this message.*

**From:** Wooten, Will <Will.Wooten@fultoncountyga.gov>
**Sent:** Friday, June 10, 2022 3:32 PM
**To:** Jim Durham <jdurham@griffindurham.com>; Hill-DA, Michael <Mike.Hill@fultoncountyga.gov>
**Cc:** Swanson-Lucas, Trina <Trina.Lucas@fultoncountyga.gov>; Ney, Adam <Adam.Ney@fultoncountyga.gov>; Wakeford, FMcDonald <FMcDonald.Wakeford@fultoncountyga.gov>; nathanwade@lawyer.com
**Subject:** RE: Fulton County SPGJ Witness Subpoena: Mr. William T. Ligon

Mr. Durham,

Are you available to have a call with our team next Monday afternoon (6/13/22) to discuss options? Thanks so much.

Best regards,

**Will Wooten (He/Him)**
Deputy District Attorney
White Collar Crime Unit
DA's LGBTQ+ Advisory Committee Co-Chair
Fulton County District Attorney's Office
136 Pryor Street SW
Atlanta, GA 30303
(404) 612-6560

CONFIDENTIALITY NOTICE: This e-mail contains legally privileged and confidential information intended only for the individual or entity named within the message. If the reader of this message is not the intended recipient, or the agent responsible to deliver it to the intended recipient, the recipient is hereby notified that any review, dissemination, distribution or copying of this communication is prohibited. If this communication was received in error, please notify the sender by reply e-mail and delete the original message.

**From:** Jim Durham [mailto:jdurham@griffindurham.com]
**Sent:** Friday, June 10, 2022 2:44 PM
**To:** Wooten, Will <Will.Wooten@fultoncountyga.gov>; Hill-DA, Michael <Mike.Hill@fultoncountyga.gov>
**Subject:** RE: Fulton County SPGJ Witness Subpoena: Mr. William T. Ligon

Will and Mike-

As you know, I represent William Ligon regarding the Fulton County DA's grand jury investigation. It is my understanding the special grand jury was convened in May for a one-year term. Mr. Ligon is certainly willing to appear before the grand jury and answer any lawful questions the grand jury may have.

Earlier this week you asked that I accept service of a grand jury subpoena for my client to appear in Fulton County on July 20, 2022. While I cannot be present inside the grand jury room, I can be outside of the room to advise Mr. Ligon on any issues that may arise, including the legislative privilege issues we have already raised with your office. In response to the request to accept service, I told both of you of an immovable conflict I have with your proposed July 20th appearance date. I am co-lead counsel in the trial of Joseph Poppell, et al. v. Cardinal Health, et al. (Superior Court of Glynn County) which has been specially set for July 18th and is expected to last 4-6 weeks. ████████████████████████████████████████████ ████████████████████████████████████████ I trust you have an ability to confirm my conflict.

3

This will confirm, based on Mike's statement below that July 20th was a "firm date" and Will's non-response to my call and email, that you are unwilling to schedule Mr. Ligon's appearance to allow him the ability to have his counsel present and available, as allowed by law. So that my client does not waive an ability to ask a Court to move the date of Mr. Ligon's grand jury appearance, we decline your request to accept service of the subpoena.

You're welcome to give me a call to discuss this issue further.

-Jim

**James D. Durham, Member**
7 E. Congress St., Suite 703
Savannah, Georgia 31401
(912) 867-9140 (main/fax)
(912) 867-9141 (direct)
jdurham@griffindurham.com



*Confidentiality Notice: This message is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged, confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately either by phone or reply to this e-mail and delete all copies of this message.*

**From:** Jim Durham
**Sent:** Thursday, June 9, 2022 1:17 PM
**To:** Wooten, Will <Will.Wooten@fultoncountyga.gov>
**Subject:** FW: Fulton County SPGJ Witness Subpoena: Mr. William T. Ligon

Will-

I left you a voice mail earlier. John Floyd suggested that I give you a call. Below is my exchange with Mike. As I said to Mike, I have a specially-set trial in Brunswick starting July 18 in Brunswick. John Floyd is my cocounsel on that case. Can y'all extend some professional courtesy and schedule my client's appearance for later this summer?

-Jim

**James D. Durham, Member**
7 E. Congress St., Suite 703
Savannah, Georgia 31401
(912) 867-9140 (main/fax)
(912) 867-9141 (direct)
jdurham@griffindurham.com



*Confidentiality Notice: This message is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged, confidential or otherwise legally exempt from*

disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately either by phone or reply to this e-mail and delete all copies of this message.

**From:** Hill-DA, Michael <Mike.Hill@fultoncountyga.gov>
**Sent:** Tuesday, June 7, 2022 3:05 PM
**To:** Jim Durham <jdurham@griffindurham.com>
**Cc:** Swanson-Lucas, Trina <Trina.Lucas@fultoncountyga.gov>
**Subject:** RE: Fulton County SPGJ Witness Subpoena: Mr. William T. Ligon

Jim,

Thank you for the follow up. I look forward to your response on June 10th.

The July 20th date is a firm date.

Thank you.

**From:** Jim Durham [mailto:jdurham@griffindurham.com]
**Sent:** Tuesday, June 07, 2022 2:50 PM
**To:** Hill-DA, Michael
**Cc:** Swanson-Lucas, Trina
**Subject:** RE: Fulton County SPGJ Witness Subpoena: Mr. William T. Ligon

Mike-

As we have discussed before, I represent former Senator Ligon. I received the below email yesterday and your phone messages today to both me and my paralegal. I'll have an answer to you by June 10 re: service, as you have requested. Also, I have a specially-set trial in Brunswick starting July 18 that's expected to last 4-6 weeks. (███████████████████████████████████████████████████.) Is the July 20 date flexible?

-Jim

**James D. Durham, Member**
7 E. Congress St., Suite 703
Savannah, Georgia 31401
(912) 867-9140 (main/fax)
(912) 867-9141 (direct)
jdurham@griffindurham.com

GRIFFIN
DURHAM
TANNER &
CLARKSON

*Confidentiality Notice: This message is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged, confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately either by phone or reply to this e-mail and delete all copies of this message.*

**From:** Hill-DA, Michael <Mike.Hill@fultoncountyga.gov>
**Sent:** Monday, June 6, 2022 3:25 PM
**To:** Jim Durham <jdurham@griffindurham.com>
**Cc:** Swanson-Lucas, Trina <Trina.Lucas@fultoncountyga.gov>
**Subject:** Fulton County SPGJ Witness Subpoena: Mr. William T. Ligon
**Importance:** High

Good afternoon Mr. Durham,

This is Investigator Mike Hill with the Fulton County DA's Office located in Atlanta, GA.

It is our understanding that you currently represent Mr. William T. Ligon regarding the ongoing investigation within our office concerning possible criminal disruptions to the administration of the 2020 general elections in Georgia.

Mr. Ligon is a witness in this investigation and is being subpoenaed to provide truthful testimony before the Special Purpose Grand Jury on **July 20, 2022 at 0900hrs**.

Will you accept service on your clients behalf or does Mr. Ligon need to be personally served?

We must know Mr. Ligon's preference of service on or before this Friday, June 10th.

Please advise. Thanks.


"The Strength of a Family, like the Strength of an Army, is in its Loyalty to each other."

Michael L. Hill II
Senior Investigator, District Attorney | Anti-Corruption Unit
Atlanta Judicial Circuit
141 Pryor Street SW | Government Center
Atlanta, GA 30303 | 404-613-0197 (p) | 404-335-5317 (f)

  

# EXHIBIT D

FILED - RW
GLYNN CO. CLERK'S OFFICE
Filed 3/25/2022 2:32 PM
Accepted 3/25/2022 3:18 PM
CASE # CE19-00472

*Ronald M Adams*
CLERK SUPERIOR COURT

## IN THE SUPERIOR COURT OF GLYNN COUNTY
## STATE OF GEORGIA

JOSEPH POPPELL, *et al.*,

     Plaintiffs,

vs.

CARDINAL HEALTH, INC., *et al.*,

     Defendants.

Civil Action File
No. CE19-00472

### SCHEDULING ORDER

1. The Court will conduct a hearing on **April 27-28, 2022** on all outstanding pre-trial issues. Counsel for all necessary parties are directed to be present.

2. The Court will conduct a hearing on **May 16-17, 2022** on any additional outstanding pre-trial issues. Counsel for all necessary parties are directed to be present.

3. The parties are directed to exchange and mark all trial exhibits prior to May 16, 2022; opposing counsel shall initial each exhibit verifying that each exhibit has been exchanged and seen.

4. All trial exhibits shall be tendered into evidence at the commencement of trial.

5. Jury selection and trial shall commence at 9:30 a.m. on Monday, **July 18, 2022.**

     **SO ORDERED**, this 25th day of March, 2022.

                            *Roger B Lane*
                           **ROGER B. LANE**
                           **Judge, Superior Courts of Georgia**
                           **Brunswick Judicial Circuit**

# EXHIBIT E

FILED IN OFFICE

JUN 27 2022

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

IN THE FULTON COUNTY SUPERIOR COURT
STATE OF GEORGIA

IN RE:  SUBPOENAS FROM SPECIAL PURPOSE GRAND JURY,
CASE NO. 2022-EX-000024

ISSUED TO: Members of the General Assembly (William Ligon; Lt. Governor Duncan; and others)

## MOTION TO QUASH SUBPOENAS

### I.    INTRODUCTION

During the month of June, the Fulton County Special Purpose Grand Jury issued subpoenas to several Members of the General Assembly (hereinafter "witnesses").[1] The subpoenas require the attendance and testimony of the witnesses at the special purpose grand jury during the month of July.

The undersigned counsel acting in their limited capacity as Special Assistants Legislative Counsel, and for the reasons stated and based upon the authorities cited herein move the Court to enter an Order quashing the subpoenas or to provide alternative relief as requested herein.

The Georgia Constitution provides privilege and immunity protections to legislators and their staff:

---

[1] Lt. Governor Geoff Duncan is President of the Senate, not a Member, but the arguments apply equally to him.

1

"[t]he members of both houses shall be free from arrest during sessions of the General Assembly, or committee meetings thereof, and in going thereto or returning therefrom, except for treason, felony, or breach of the peace. *No member [of the General Assembly] shall be liable to answer in any other place for anything spoken in either house or in any committee meeting of either house.*" Ga. Const. art. III, § 4, ¶ 9 (emphasis added).

This motion raises issues concerning the separation of powers that is foundational to our government. As the Supreme Court has long recognized "it is the duty of each [branch] to zealously protect its function from invasion of the others." *McCutcheon v. Smith*, 199 Ga. 685, 690-691 (1945).[2] Based on the published reports of the Fulton DA's goal in issuing the subpoenas to members of the General Assembly, the witnesses who are seeking relief realistically are

---

[2] The Supreme Court explained that the Separation of Powers doctrine is a part of the structural foundation of state government created by the Georgia Constitution: "'The legislative, judicial and executive powers shall forever remain separate and distinct, and no person discharging the duties of one, shall, at the same time, exercise the functions of either of the others, except as herein provided.' [now found at Ga. Const. art 1, §2, ¶ III]. While the line of demarcation separating the legislative, judicial, and executive powers may sometimes be difficult to establish, and for this reason each of the three co-ordinate branches of government frequently invades the province of the others, it is nevertheless essential to the very foundation of our system of government that the mandate of the constitution be strictly enforced. The judicial branch doubtless invades the legislative field more frequently than does the legislative branch the judicial field, but it is the duty of each to zealously protect its function from invasion of the others." *Id.*

2

concerned about the scope of the grand jury's inquiry and the questions that will be posed to them.

The relief sought is straightforward: The Fulton County District Attorney's Office and the Special Purpose Grand Jury that has been convened in Fulton County (1) may not ask any Member of the General Assembly or staff to testify about matters that occurred in the witness's legislative capacity, including conversations a Member had with any other Member or staff; (2) may not ask any Member or staff to testify about the motivations of any Member regarding his or her legislative activities (including, for example, the motivations for questions posed during committee meetings, the motivation for convening committee hearings, or the motivation for allowing certain witnesses to testify, or any other facet of the Member's legislative activities); and (3) may not ask a Member to reveal any research the Member conducted (or staff conducted) including interviewing constituents, lobbyists, or other sources of information that relates to the legislative process.

## II.  THE GEORGIA CONSTITUTION PROVIDES UNQUALIFIED PRIVILEGE AND IMMUNITY TO MEMBERS OF THE GENERAL ASSEMBLY AND THEIR STAFF

The Constitution grants unqualified legislative immunity to legislators and their staff for any conduct related to their activity as legislators, including participation in debates on the floor of the Senate or House; participation in legislative committee hearings and other meetings; conversations with staff and

3

other members of the General Assembly and their staff about pending legislative matters and all other activities that are part of the legislative responsibility of the legislator and staff. The privilege and immunity is enshrined in the Georgia Constitution and replicates the Speech and Debate Clause of the United States Constitution. Ga. Const. art. III, § 4, ¶ 9; *Village of N. Atlanta v. Cook*, 219 Ga. 316, 319-320 (1963) (addressing this constitutional provision and finding that it is similar to that in the United States Constitution regarding members of Congress;[3] and expressly holding that legislators may not be questioned about the motivations or intent in drafting legislation, or conducting legislative affairs); *Gravel v. United States*, 408 U.S. 606 (1972) (explaining scope of the Speech or Debate Clause in the United States Constitution, Art. I, § 6, cl. 1, as it applies to federal legislators and staff and outlining, *prior* to the appearance of the witness the allowable scope of any questioning of the witness); *Fletcher v. Peck*, 6 Cranch 87, 130, 3 L.Ed. 162 (It was not consonant with our scheme of government for a court to inquire into the motives of legislators, [this] has remained unquestioned); *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 503 (1975) ("[O]nce it is determined that Members are acting within the 'legitimate legislative sphere' the Speech or Debate Clause is an absolute

---

[3] The Speech and Debate Clause is found in the U.S. Constitution, Article 1, § 6: "[F]or any Speech or Debate in either House, they [members] shall not be questioned in any other Place."

bar to interference."); *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408 (D.C. Cir. 1995) (the Speech or Debate Clause *prohibits compelled questioning* about legislative communications or legislative actions even if the Member is not named as a party in the lawsuit); *Rangel v. Boehner*, 785 F.3d 19 (D.C. Cir. 2015) (reviewing the history and purpose of the Speech or Debate Clause). The Constitution provides that a legislator and staff may not be compelled to disclose any communications that relate to the legislative responsibilities of the legislator and the staff member. *Miller v. Transamerican Press, Inc.*, 709 F.2d 524 (9th Cir. 1983) (legislator may not be questioned about matters to which the privilege applies).

Thus, there are two separate components of the constitutional provision:

The constitutional provision operates to: (1) prohibit civil suits and criminal prosecutions against Members of the General Assembly (and their staff) for their legislative activities; and (2) shield Members of the General Assembly (and their staff) from appearing in any forum outside of the General Assembly to answer questions or to produce documents relating to their legislative activities, including, but not limited to, their motivations for taking certain actions or communications related thereto.[4]

---

[4] In civil matters the federal courts recognize that legislative immunity *completely bars* plaintiffs from seeking evidence from legislators (even non-parties) on *any* aspect of the legislative process. *Roma Outdoor Creations, Inc. v. City of Cumming*, 2008 WL 11411396, at *3 (N.D. Ga. Sept. 18, 2008) (protecting city mayor from a deposition); *Flanigan's Enters., Inc. of Ga. v. City of Sandy Springs*, 2009 WL

### III. THE CONSTITUTIONAL PRIVILEGE AND IMMUNITY CLAUSE SERVES TWO FUNCTIONS: FACILITATING THE LEGISLATIVE PROCESS AND PROTECTING THE SEPARATION OF POWERS

### A. PRIVILEGED COMMUNICATIONS

The importance of both legislative immunity and legislative privilege cannot be overstated: These provisions enable legislators and their staff to communicate with one another free from the fear that their communications will later be reviewed or questioned by another branch of the government or by any private party in the course of litigation. *See United States v. Brewster*, 408 U.S. 501, 524 (1972). Legislators must be permitted to talk to one another – perhaps even across the proverbial "aisle" – without concern that efforts to accommodate, or compromise, will be exposed to the public. Bad ideas need to be discussed and rejected; good ideas should be promoted. Legislators will acquire information from a variety of sources to formulate a proper legislative solution to a perceived problem, or determine that no legislative action is necessary or possible. All these communications should be accomplished without fear that the public and others – including other branches of government – are entitled to examine or question every step along the way as the (again, "proverbial") sausage is made.

---

10697495, at *2 (N.D. Ga. Jan. 29, 2009) (protecting "city council members and mayors from having to attend depositions seeking to question them about their role in the passage of legislation").

6

The privilege also applies beyond the limited scope of communications between legislators, or between legislators and a staff member. Additionally, the privilege applies to a legislator's source of information if the information relates to a legislative investigation or the formulation of legislation. *Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 530 (9th Cir. 1983) ("The possibility of public exposure could constrain these sources. It could deter constituents from candid communication with their legislative representatives and otherwise cause the loss of valuable information. Even more to the point, it would chill speech and debate on the floor. The Congressman might censor his remarks or forgo them entirely to protect the privacy of his sources, if he contemplated that he could be forced to reveal their identity in a lawsuit").

## B. SEPARATION OF POWERS

Legislative immunity and legislative privilege also delineate the proper boundaries ensuring the governmental separation of powers. The legislative branch of government is entitled to pursue its agenda without undue interference from the executive or judicial branches, just as the judicial branch pursues its mission without undue interference from the other branches of government. In *Kilbourn v. Thompson*, 103 U.S. 168, 203-04 (1880), the Supreme Court explained the importance of the legislative privileges and immunity, citing the language of an earlier 19th Century Massachusetts Supreme Court decision:

7

'These privileges are thus secured, not with the intention of protecting the members against prosecutions for their own benefit, but to support the rights of the people, by enabling their representatives to execute the functions of their office without fear of prosecutions, civil or criminal. I, therefore, think that the article ought not to be construed strictly, but liberally, that the full design of it may be answered. I will not confine it to delivering an opinion, uttering a speech, or haranguing in debate, but will extend it to the giving of a vote, to the making of a written report, and to every other act resulting from the nature and in the execution of the office. And I would define the article as securing to every member exemption from prosecution for everything said or done by him as a representative, in the exercise of the functions of that office, without inquiring whether the exercise was regular, according to the rules of the House, or irregular and against their rules. I do not confine the member to his place in the House; and I am satisfied that there are cases in which he is entitled to this privilege when not within the walls of the representatives' chamber.'

103 U.S. at 203–04 (1880) (quoting *Coffin v. Coffin*, 4 Mass. 1 (1808)). *See also Brewster*, 408 U.S. at 524 ("[T]he purpose of the Speech or Debate Clause is to protect the individual legislator, not simply for his own sake, but to preserve the independence and thereby the integrity of the legislative process."); *Powell v. McCormack*, 395 U.S. 486, 503 (1969) (noting that legislative immunity "insures that legislators are free to represent the interests of their constituents without fear that they will later be called to task in the courts for that representation").

Imagine, by analogy, if a grand jury (or for that matter, a legislative committee), could summon judges to answer why a judicial decision was reached in a certain way (for example, perhaps the grand jury will summon a Superior Court Judge to inquire why the Judge ruled one way or another regarding a Motion to Quash a subpoena), or summon an appellate judge and compel the judge to reveal

8

the discussions that were held during the appellate court's conference prior to issuing a decision, or demand to know what law review articles the judge read or considered prior to reaching a decision. Permitting the executive branch to question legislators about their conversations or their motivations is equally disruptive of the functioning of the legislative branch of government.

We anticipate the District Attorney and her assistants will decline to provide the attorneys representing these witnesses any preview of the questions that will be posed to the witness during his grand jury appearance. Pursuant to Ga. Const. art. III, § 4, ¶ 9, there are undeniably numerous topics that are within the scope of the legislative immunity and legislative privilege and may not be the subject of any inquiry. On the other hand, there are questions the District Attorney may pose to the witness that are entirely unrelated to his legislative duties.

## IV.    THIS COURT SHOULD SET FORTH THE GUIDELINES FOR QUESTIONING OF MEMBERS PRIOR TO THE MEMBERS' APPEARANCE

Because counsel has been provided no preview and because counsel may not appear in the grand jury to interpose any objection, the prudent course is to inquire into the scope of the intended questioning of the witness and to set forth the boundaries. In addition, the District Attorney should be advised that the witness will be permitted to invoke privilege and to assert his immunity and to suspend the

questioning to consult with counsel outside the grand jury room as often as necessary to protect the privilege and to seek advice about the propriety of any topic of inquiry.

In *United States v. Swindall*, 971 F.2d 1531, 1547 (11th Cir. 1992), the Eleventh Circuit reversed the conviction of a Georgia Congressman on certain counts based on the government's improper reliance on evidence presented to the grand jury, relating to the the Congressman's legislative activities. The Eleventh Circuit's description of the purpose of the Speech and Debate Clause applies in this case:

> The central role of the Speech or Debate Clause [is] to prevent intimidation of legislators by the Executive and accountability before a possibly hostile judiciary." Gravel v. United States, 408 U.S. 606, 617, 92 S. Ct. 2614, 2623, 33 L. Ed. 2d 583 (1972) (citing Johnson, 383 U.S. at 181, 86 S. Ct.at 755).
>
> The Speech or Debate Clause "at the very least protects [a member of Congress] from criminal or civil liability and from questioning elsewhere than in [Congress]." Gravel, 408 U.S.at 2615, 92 S. Ct. at 2622. ***
>
> The clause is read broadly to effectuate its purposes. See Eastland v. United States Servicemen's Fund, 421 U.S. 491, 501, 95 S. Ct. 1813, 1820, 44 L. Ed. 2d 324 (1975). Legislative activities covered by the privilege include issuing committee reports and holding hearings, see Doe v. McMillan, 412 U.S. 306, 93 S. Ct. 2018, 36 L. Ed. 2d 912 (1973), as well as "*those things generally said or done in the House or the Senate in the performance of official duties.*" United States v. Brewster, 408 U.S. 501, 512, 92 S. Ct. 2531, 2537, 33 L. Ed. 2d 507 (1972) (emphasis added]).

Id. 1544. The Court reversed Swindall's conviction based on the improper use of the evidence in presenting the case to the grand jury: "Invocation of the constitutional protection at a later stage cannot undo the damage. If it is to serve its

purpose, the shield must be raised at the beginning." The Court went on to find that "[w]hen a member is improperly questioned, however, the violation occurs automatically. 'It is the very act of questioning that triggers the protection of the *Speech or Debate Clause.*'" *Id.* at 1549 *quoting In re Grand Jury (Intervenor "A"),* 587 F.2d 589, 598 (3d Cir. 1978).

For these reasons, the Court should set this matter down for oral argument[5] to consider the propriety of any topic of inquiry that the District Attorney intends to pursue with a Member or staff of the Georgia General Assembly. The alternative would require this court to evaluate all questions to all Members who have been subpoenaed throughout the course of each Members' testimony over the following weeks or months.

Setting ground rules in advance, as the Supreme Court did in *Gravel,* is the efficient method of evaluating the scope and breadth of the privileges and immunities enjoyed by the Members and staff.

---

[5] The court should also consider, given the nature of the inquiry, whether certain communications are privileged (and particularly in the context of a grand jury proceeding) and should be conducted in closed session and not open to the public, just as the grand jury proceedings are secret and not open to the public. If the Court intends to hear the specifics of privileged communications, the inquiry should be conducted *in camera. United States v. Zolin,* 491 U.S. 554 (1989) (when attorney-client privilege is invoked, inquiry into the specifics of the communication should be conducted *in camera).*

For the foregoing reasons, the witnesses urge the Court to enter an Order holding that Legislative Immunity and Privilege bars the DA from demanding the appearance of any Member at the Grand Jury to respond to questions relating to the Member's legislative duties and holding that the DA may not ask any witness to reveal any communications involving the Member and any other person relating to the Member's legislative duties.

RESPECTFULLY SUBMITTED,

GARLAND, SAMUEL & LOEB, P.C.

Donald F. Samuel, Ga. Bar #624475
Special Assistant Legislative Counsel

Amanda Clark Palmer, Ga. Bar #130608
Special Assistant Legislative Counsel

3151 Maple Drive, N.E.
Atlanta, Georgia 30305
(404) 262-2225
dfs@gsllaw.com
aclark@gsllaw.com

12

IN THE FULTON COUNTY SUPERIOR COURT
STATE OF GEORGIA

IN RE: SUBPOENAS FROM SPECIAL PURPOSE GRAND JURY,
CASE NO. 2022-EX-000024

ISSUED TO: Members of the General Assembly (William Ligon; Lt. Governor
Duncan; and others)

## CERTIFICATE OF SERVICE

I hereby certify that I have served the foregoing **MOTION TO QUASH**

**SUBPOENAS** upon the following counsel this date by depositing a copy of same

in the United States mail, first class postage prepaid, and properly addressed as

follows:

> Fani T. Willis, DA
> Fulton County District Attorney's Office
> Lewis Slaton Courthouse, Thid Floor
> 136 Pryor Street, S.W.
> Atlanta, Georgia 30305

This the 27th day of June, 2022.

RESPECTFULLY SUBMITTED,
GARLAND, SAMUEL & LOEB, P.C.

Donald F. Samuel, Ga. Bar #624475
Special Assistant Legislative Counsel

3151 Maple Drive, N.E.
Atlanta, Georgia 30305
(404) 262-2225
dfs@gsllaw.com

IN THE SUPERIOR COURT FOR THE COUNTY OF FULTON

STATE OF GEORGIA

```
                                    )
                                    )
                                    )
                                    )
IN RE:  SUBPOENAS FROM THE          )
SPECIAL PURPOSE GRAND JURY          )
ISSUED TO MEMBERS OF THE            ) CASE NO:
GENERAL ASSEMBLY:  WILLIAM          ) 2022-EX-000024
LIGON; LIEUTENANT GOVERNOR          )
DUNCAN; AND OTHERS.                 )
                                    )
                                    )
                                    )
_____     )
```

TRANSCRIPT OF HEARING PROCEEDINGS

BEFORE THE HONORABLE ROBERT MCBURNEY IN COURTROOM 8D

AT 185 CENTRAL AVENUE, ATLANTA, GEORGIA,

ON JULY 1, 2022

*QUANINCIA S. HILL, RPR*

*SUPERIOR COURT OF FULTON COUNTY*

*185 CENTRAL AVENUE, SW, SUITE T-8955*

*ATLANTA, GEORGIA 30303*

1                        APPEARANCE OF COUNSEL

2

ON BEHALF OF THE STATE OF GEORGIA:

3

                              FANI WILLIS, ESQ.,
4                             DONALD WAKEFORD, ESQ.
                              ASSISTANT DISTRICT ATTORNEYS
5                             136 PRYOR STREET, SW
                              3RD FLOOR
6                             ATLANTA, GA 30303

7                             NATHAN WADE, ESQ.
                              SPECIAL PROSECUTOR
8                             WADE, BRADLEY, & CAMPBELL FIRM
                              1827 POWERS FERRY ROAD, SW
9                             BUILDING 23
                              ATLANTA, GA 30339

10

11    ON BEHALF OF MEMBERS OF THE GENERAL ASSEMBLY:

12                            DONALD F. SAMUEL, ESQ.,
                              AMANDA CLARK PALMER, ESQ.,
13                            ED GARLAND, ESQ.
                              GARLAND, SAMUEL & LOEB
14                            3151 MAPLE DRIVE, N.E.
                              ATLANTA, GA 30305
15
                              JAMES DENTON DURHAM, ESQ.
16                            GRIFFIN, DURHAM, TANNER &
                              CLARKSTON, LLC.
17                            7 EAST CONGRESS STREET
                              SUITE 703
18                            SAVANNAH, GA 31401

19

20

21

22

23

24

25

1          (PROCEEDINGS COMMENCING AT 1:06 P.M.)

2          **THE COURT:**  DO YOU ALL NEED MORE TIME OR ARE YOU SET?

3          OKAY.  WE ARE HERE FOR A HEARING ON A MOTION TO QUASH

4     CERTAIN SUBPOENAS THAT THE DISTRICT ATTORNEY'S OFFICE HAS

5     SERVED.  AND RIGHT NOW IT'S TWO THAT WE'RE WORKING THROUGH.

6     BUT THIS IS ONE OF THE THINGS THAT WE'RE GOING TO EXPLORE IN

7     THE MATTER OF 2022 E-X, FOUR ZEROS, 24, THE SPECIAL PURPOSE

8     GRAND JURY THAT WAS CONVENED ON MAY 2ND OF THIS YEAR.

9          IT WOULD HELP ME IF I COULD KNOW WHO FROM THE DISTRICT

10    ATTORNEY'S OFFICE WOULD BE DOING THE SPEAKING.  IF IT'S JUST

11    ONE PERSON, WE COULD GET THAT NAME ON THE RECORD.

12         **MR. WAKEFORD:**  GOOD AFTERNOON, JUDGE.  DONALD WAKEFORD

13    FOR THE DISTRICT ATTORNEY REPRESENTING AS LEGAL

14    REPRESENTATIVE FOR THE SPECIAL PURPOSE GRAND JURY.

15         **THE COURT:**  GREAT.

16         **MR. WAKEFORD:**  AND MR. NATHAN WADE MAY ALSO SPEAK TO

17    CERTAIN MATTERS, AND THAT'S W-A-D-E, IF WE GET TO THEM TODAY.

18         **THE COURT:**  GREAT.  AND TO BE CLEAR, I'M NOT LIMITING

19    EITHER SIDE TO ONE PERSON, BUT IF I HAVE A QUESTION FOR THE

20    STATE, I'LL START BY SAYING "MR. WAKEFORD."  IF MS. WILLIS

21    WANTS TO ANSWER, SHE CAN ANSWER IT.  SHE'S YOUR BOSS.  BUT

22    I'LL DIRECT QUESTIONS TO YOU.

23         **MR. WAKEFORD:**  ALL RIGHT.  THANK YOU, JUDGE.

24         **THE COURT:**  AND ON BEHALF OF THE SUBPOENAS, I DON'T

25    KNOW WHAT WE CALL IT, 'THE MOTION,' 'THE PETITIONERS' WE'LL

1    CALL IT.

2          **MR. SAMUEL:**  WE ACTUALLY CALL IT WITNESSES.

3          **THE COURT:**  OKAY.

4          **MR. SAMUEL:**  DONALD SAMUEL AND AMANDA CLARK PALMER IS

5    HERE AND ED GARLAND.

6          **THE COURT:**  GOOD MORNING, MR. GARLAND.

7          **MR. GARLAND:**  GOOD MORNING, YOUR HONOR.

8          **THE COURT:**  GOOD TO SEE YOU.  IN THE SAME WAY, I'LL

9    REFER MY QUESTIONS TO YOU.  BUT IF THEY'RE HARD, YOU CAN PASS

10   THEM TO MR. GARLAND.

11         **MR. SAMUEL:**  YES.

12         **THE COURT:**  ALL RIGHT.  LET'S START, MR. SAMUEL, BY

13   HAVING YOU MAKE AS CLEAR AS YOU CAN WHO IT IS YOU REPRESENT

14   BECAUSE YOU -- I KNOW WE'VE HAD SOME CONFERENCES WITH BOTH

15   THERE DISTRICT ATTORNEY'S OFFICE AND YOU PRESENT ABOUT SORT

16   OF A COLLECTIVE REPRESENTATION YOU HAVE.  BUT AS I UNDERSTAND

17   THE LAW AROUND LEGISLATIVE PRIVILEGE, WHICH IS WHAT WE'RE

18   WORKING THROUGH, OR LEGISLATIVE IMMUNITY TODAY, IT IS UNIQUE

19   TO THE LEGISLATOR AND PERHAPS HIM OR HER STAFF.  THERE MAY BE

20   RULINGS THAT FLOW FROM TODAY THAT LOGICALLY AND HOPEFULLY

21   REASONABLY APPLY TO ANYONE YOU END UP REPRESENTING.  BUT AS I

22   READ YOUR MOTION.  IT'S CURRENTLY LIEUTENANT GOVERNOR DUNCAN

23   AND FORMER SENATOR LIGON THAT YOU HAVE SPECIFIC

24   REPRESENTATION OF.  I MAY BE WRONG ABOUT THAT.  BUT WE OUGHT

25   TO GET CLEAR AS WE MOVE INTO THIS IN PARTICULAR BECAUSE SOME

1    OF THE THINGS THE STATE HAS SAID IN ITS RESPONSE ABOUT FORMER

2    SENATOR LIGON AND HIS CONNECTION TO THE COMMITTEE HEARING.

3         **MR. SAMUEL:**  SO LET ME RESPOND THIS WAY.  FIRST OF ALL,

4    MS. CLARK PALMER AND I HAVE BOTH BEEN DESIGNATED AS SPECIAL

5    LEGAL COUNSEL FOR THE LEGISLATOR, SPECIAL LEGISLATIVE

6    COUNCIL.  AND SO IN THAT CAPACITY, WE HAVE BEEN ASKED,

7    BECAUSE THEY DON'T HAVE LAWYERS IN THEIR SHOP WHO DO MUCH

8    GRAND JURY WORK, OKAY, IF WE WOULD HELP PERFORM THE FUNCTIONS

9    THAT THEY GENERALLY PERFORM WHICH IS TO ADVISE MEMBERS ABOUT

10   THEIR RIGHTS IN ALL KINDS OF CONTEXTS.  SO WE'VE AGREED TO DO

11   THAT.

12        WE'VE WRITTEN SOME MEMOS TO THEM.  SOME OF THEM WERE

13   SHARED WITH THE ENTIRE MEMBERSHIP OF THE GENERAL ASSEMBLY AND

14   THEIR STAFF.  SO WE'VE BEEN PROVIDING CONSULTING SERVICES, IF

15   YOU WILL.  WE WERE THEN ASKED, BECAUSE THEY ALSO DO, IN FACT,

16   REPRESENT MEMBERS INDIVIDUALLY IN CERTAIN CASES, HAVE TO BE

17   CAREFUL ABOUT CONFLICTS, WHICH SOMETIMES ARISE.  SO WE SAID

18   THAT WE WOULD DO THE SAME THING THAT YOU WOULD GENERALLY DO.

19   AND WE ADVISED THE MEMBERS THAT WE COULD PROVIDE CONSULTING

20   ADVICE.  WE COULD ACTUALLY REPRESENT THEM, TO THE EXTENT

21   THERE WASN'T ANY CONFLICT WITH ANY OTHER MEMBER, OR YOU COULD

22   HAVE YOUR OWN LAWYER, OR YOU COULD DO IT WITHOUT A LAWYER.

23   WHATEVER YOU WANT IS FINE.  YOU HAVE AN ABSOLUTE RIGHT TO DO

24   -- MAKE ANY ONE OF THOSE CHOICES.

25        SO THERE HAVE BEEN A NUMBER OF MEMBERS THAT WE HAVE

1    TALKED TO INDIVIDUALLY WHO HAVE SAID THAT WE WANT YOU TO

2    PROTECT OUR PRIVILEGE.  SOME OF THEM, HOWEVER, HAVE SAID WE

3    DO NOT WANT TO BE IN THE PLEADING AT THIS POINT.  AND SO --

4         **THE COURT:**  MEANING THE MOTION TO QUASH THAT YOU FILED?

5         **MR. SAMUEL:**  EXACTLY.

6         **THE COURT:**  OKAY.

7         **MR. SAMUEL:**  I THINK IT'S JUST THEY'RE THINKING ABOUT

8    HAVING SEPARATE COUNSEL.  SOME OF THEM DO HAVE SEPARATE

9    COUNSEL.  SOME OF THEM JUST, YOU KNOW, WANT TO GET A SENSE

10   FOR THE -- YOU KNOW, THEY'RE POLITICIANS.  LET ME JUST LEAVE

11   IT AT THAT.

12        AND SO AS OF TODAY, I REPRESENT TWO PEOPLE, BOTH OF

13   WHOM HAVE AUTHORIZED ME TO SPEAK ON THEIR BEHALF.  THERE ARE

14   MANY PEOPLE, INCLUDING THE OFFICE THAT WE WORK FOR, AMANDA

15   CLARK PALMER AND I WORK FOR, WHO EXPECT YOUR RULINGS TO BE OF

16   GENERAL APPLICABILITY TO ANYBODY WHO OPTS IN. THE STATE IS

17   ABSOLUTELY RIGHT.  MR. WAKEFORD IS ABSOLUTELY RIGHT.

18   MS. WILLIS IS ABSOLUTELY RIGHT.  ANYBODY CAN OPT OUT.  I

19   GATHER FROM THE NEWSPAPER, FOR WHAT IT'S WORTH, WHICH IS VERY

20   LITTLE, BUT I GATHER THAT THERE IS -- THERE HAVE BEEN PEOPLE

21   WHO'VE GONE AND TESTIFIED.  THERE HAVE BEEN MANY PEOPLE, I

22   GATHER, WHO HAVE MADE VOLUNTARILY STATEMENTS.  THAT'S

23   PERFECTLY OKAY.  IT'S THEIR RIGHT TO DO SO. I DON'T KNOW

24   WHETHER THEY ASSERTED SOME PRIVILEGE.  I DON'T KNOW WHETHER

25   THEY WAIVED IT.  I DON'T KNOW WHETHER THEY WERE ASKED --

6

1    WHETHER THEY WERE ASKED ANY QUESTIONS THAT PROMPTED ANSWERS.

2         **THE COURT:**  SO LOTS OF SCENARIOS.  INSOFAR AS MEMBERS

3    OF THE LEGISLATURE OR STAFF, BECAUSE YOU'VE FLAGGED FOR ME,

4    AGAIN WITH THE DISTRICT ATTORNEY'S OFFICE PRESENT, THAT THAT

5    COULD BE NOT STAFFERS OF LEGISLATORS BUT SOMEONE WHO WORKS

6    FOR THE SENATE.

7         **MR. SAMUEL:**  BOTH.

8         **THE COURT:**  BOTH.  RIGHT.  ALL OF THE ABOVE COULD BE

9    YOUR CLIENTS.  FOR TODAY, YOUR CLIENTS ARE TWO.

10        **MR. SAMUEL:**  WITH THE UNDERSTANDING, AGAIN, THAT THERE

11   ARE, FOR EXAMPLE -- ARE WE ON THE ZOOM WITH MR. DURHAM?

12        **THE COURT:**  WE ARE.

13        **MR. SAMUEL:**  OKAY.  WELL, HE ACTUALLY IS MR. LIGON'S.

14   SO THAT'S KIND OF IRRELEVANT.  BUT THERE ARE OTHERS WHO ARE,

15   YOU KNOW, EXPECTING THAT, TO THE EXTENT THAT YOU MADE

16   DECISIONS TODAY, AND MR. WAKEFORD AND I HAVE TALKED ABOUT

17   THAT A LOT WHAT YOU ARE GOING TO END UP DOING TODAY, TO THE

18   EXTENT THAT YOU DO A GENERAL APPLICABILITY, EVERYBODY EXPECTS

19   TO TAKE ADVANTAGE OF IT IF THEY WANT TO.

20        **THE COURT:**  OKAY.

21        **MR. SAMUEL:**  SO THAT'S THE SHORT ANSWER TO THE

22   QUESTION.

23        **THE COURT:**  GOT IT.

24        **MR. SAMUEL:**  I DO WANT TO SAY SOMETHING ON BEHALF OF

25   THE LIEUTENANT GOVERNOR, WHO'S ASKED ME TO SPECIFICALLY TELL

7

1    YOU THAT HE VOLUNTARILY WENT AND WAS INTERVIEWED BY THE FOLKS

2    AT THE DA'S OFFICE, DIDN'T REQUIRE A LAWYER THERE, DIDN'T

3    REQUIRE BEING COMPELLED.  HE VOLUNTARILY WENT, ANSWERED ALL

4    THEIR QUESTIONS, AS FAR AS I KNOW.  AND I ASSURED HIM THAT I

5    WOULD MAKE THAT KNOWN TO YOU TODAY.  BUT AS WITH EVERYBODY

6    WHO I'VE SPOKE TO, AND THEN I'LL SIT DOWN BECAUSE YOU ASKED A

7    VERY SIMPLE QUESTION AND IT'S GOING TOO LONG ALREADY.

8         **THE COURT:**  IT'S GOING TO BE A LONG HEARING.

9         **MR. SAMUEL:**  I KNOW.  I KNOW.  WHAT TIME IS THE JURY

10    COMING BACK IN YOUR OTHER CASE?

11         **THE COURT:**  SOON.

12         **MR. SAMUEL:**  OKAY.  WELL, I'LL JUST LEAVE IT AT THAT

13    FOR NOW.

14         **THE COURT:**  WELL, BUT THE LIEUTENANT GOVERNOR DID THOSE

15    THINGS.  GOOD TO KNOW.  AND YET, HE IS STILL UNDER SUBPOENA

16    TO APPEAR OR WERE YOU GOING TO END WITH -- AND SO THERE'S NO

17    MORE SUBPOENA?

18         **MR. SAMUEL:**  NO. HE'S BEEN SUBPOENAED TO APPEAR.

19         **THE COURT:**  OKAY.

20         **MR. SAMUEL:**  AND WANTS TO ASSERT THE PRIVILEGE AND

21    IMMUNITY, BECAUSE FOR INSTITUTIONAL REASONS, THE GENERAL

22    ASSEMBLY AND MANY OF ITS MEMBERS WANT TO ASSERT THE PRIVILEGE

23    AND THE IMMUNITY BECAUSE IT'S IMPORTANT TO THEM, AS

24    INSTITUTIONS -- AS AN INSTITUTION NOT TO INDIVIDUALLY AS

25    MEMBERS AS MANY SUPREME COURT CASES HAVE STATED.

1    **THE COURT:** UNDERSTOOD. OKAY. TO ONE OF THE POINTS

2    YOU MADE, I WOULD HOPE THAT WHATEVER GUIDELINES FLOW FROM

3    TODAY'S HEARING, AND THEY WON'T FLOW NOW FROM MY MOUTH TO

4    EVERYONE BUT ULTIMATELY ON PAPER, THE GUIDELINES THAT ARE

5    DEVELOPED WOULD APPLY TO ANY FUTURE CLIENTS YOU HAVE. YOU

6    MENTIONED THAT SOME MAY WANT TO AVAIL THEMSELVES OF IT, SOME

7    MAY NOT. IT'LL BE MY RULING AS TO HOW INDIVIDUALS WHO MAY

8    AVAIL THEMSELVES OF LEGISLATIVE IMMUNITY ARE GOING TO WORK

9    THE PROCESS. SO IN SOME WAYS, IT'S NOT GOING TO BE AND

10   OPTIONAL 'I DON'T LIKE THE MCBURNEY RULES.' THEY COULD NOT

11   LIKE THEM BUT IT'S HOW IT'LL WORK SUCH THAT, HYPOTHETICALLY,

12   CLIENT 3, THAT WE DON'T HAVE YET, IS TESTIFYING IN FRONT OF

13   THE GRAND JURY AND SAYS, "WELL, THAT'S NOT A QUESTION I'M

14   GOING TO ANSWER," MR. WADE AND HIS TEAM WOULD BE FREE TO,

15   PURSUANT TO THE GUIDELINES, SAY, "WELL, WE'RE GOING TO GET

16   JUDGE MCBURNEY DOWN HERE." THEN CLIENT 3 IS NOT GOING TO

17   SAY, "NO. I DON'T -- NOT -- THAT'S NOT MY GUIDELINE. THAT

18   WAS A GUIDELINE THEY ESTABLISHED FOR THE LIEUTENANT GOVERNOR

19   AND FORMER SENATOR LIGON." JUST SO YOU CAN LET FOLKS KNOW

20   THAT.

21   **MR. SAMUEL:** I AGREE WITH YOU A HUNDRED PERCENT. I

22   THINK THEY KNOW THAT.

23   **THE COURT:** GOOD.

24   MR. WAKEFORD, IS THERE ANYTHING YOU WANTED TO ADD,

25   SOLELY THRESHOLD WORK HERE? AS I UNDERSTAND IT, LIEUTENANT

9

1    GOVERNOR DUNCAN, FORMER SENATOR LIGON, THERE MAY BE

2    RECIPIENTS WITNESSES, RECIPIENTS OF YOUR SUBPOENAS THAT FALL

3    INTO THIS SAME CATEGORY THAT MAY BE GOVERNED BY THESE

4    GUIDELINES, HANDLE THINGS DIFFERENTLY BY NOT RETAINING

5    MR. SAMUELS AND MS. CLARK PALMER'S SERVICES.  BUT WHAT FLOWS

6    OVER TODAY, I THINK, MAY HAVE THAT CARRY-OVER EFFECT TO ANY

7    OF YOUR TEAM'S SUBPOENAS WHO CAN RIGHTFULLY INVOKE THE

8    LEGISLATIVE IMMUNITY?

9        **MR. WAKEFORD:**  WELL, AT THE OUTSET, YOUR HONOR, I THINK

10   WHAT THIS IS MAKING CLEAR IS THAT ONE PROPOSAL BY THE

11   MOVANTS, BY MR. SAMUEL IN HIS MOTION ON BEHALF OF THESE TWO

12   OFFICIALS, WAS TO HOPE TO SET DOWN GENERAL GUIDELINES AND

13   AVOID AN INDIVIDUAL ASSESSMENT FOR EACH PERSON WHO INVOKES

14   THE PRIVILEGE.  I THINK WHAT'S CLEAR IS THAT WE CANNOT AVOID

15   AN INDIVIDUAL ASSESSMENT FOR EACH PERSON BECAUSE THE

16   PARAMETERS OF THE PRIVILEGE ARE NECESSARILY, YOU KNOW,

17   THEY'RE CONTEXT-DEPENDENT.  IT DEPENDS ON WHAT YOU'RE

18   ACTUALLY TALKING ABOUT.

19       ALSO, AS YOU MENTIONED THAT OUTSET, IT'S AN INDIVIDUAL

20   INVOCATION.  ONE PERSON'S INVOCATION DOESN'T APPLY TO ANYONE

21   ELSE.  SO I THINK WHAT WE CAN'T AVOID, UNFORTUNATELY FOR

22   EFFICIENCY SAKE, IS EACH TIME A WITNESS COMES IN HAVING AN

23   INDIVIDUAL ASSESSMENT OF HOW THE PRIVILEGE WILL APPLY TO THAT

24   WITNESS AND THEIR QUESTIONING.

25       **THE COURT:**  MY RESPONSE IS 'YES' AND 'NO.'

**10**

1          **MR. WAKEFORD:**  OKAY.

2          **THE COURT:**  I THINK BOTH SIDES WOULD AGREE CERTAIN

3     ASPECTS WOULD BE DIFFERENT FOR EACH WITNESS.  BUT I THINK

4     THERE ARE SOME BRIGHT LINES.  THAT'S ACTUALLY WHAT WE'RE

5     GOING TO TALK ABOUT FOR THE REST OF THE HEARING THAT I THINK

6     THERE CAN BE RULES THAT CAN BE ENFORCED BY ONE SIDE OR THE

7     OTHER.  AND I THINK THAT WILL BECOME A LITTLE CLEARER AS WE

8     WORK THROUGH IT.

9          SO I'M NOT DISAGREEING WITH YOU.  I DO THINK THERE IS

10    SOME CLARITY THAT CAN BE PROVIDED THAT WOULD APPLY TO ANY

11    LEGISLATIVE WITNESS THAT YOUR TEAM MAY CHOOSE TO SUBPOENA AND

12    WHO SHOWS UP.  BUT THERE WILL BE REFINEMENTS AT THE EDGES FOR

13    EACH PERSON.  A STAFFER IS DIFFERENT FROM A LEGISLATOR.  A

14    LEGISLATOR FROM ONE PARTY, FRANKLY, IS GOING TO BE DIFFERENT

15    THAN ONE FROM ANOTHER PARTY BECAUSE OF THE NATURE OF WHAT

16    YOU'RE EXPLORING.  AND SO THERE MIGHT BE DIFFERENT ISSUES

17    THAT COME UP.  BUT I THINK THEY CAN ALL BE INFORMED BY SOME

18    BASIC RULES ABOUT WHERE I SUSPECT I WILL -- IN APPLYING THE

19    CASE LAW THAT HAS APPLIED LEGISLATIVE IMMUNITY, I WILL BE

20    ESTABLISHING SOME FAIRLY BRIGHT LINES THAT SHOULD YOU TRY TO

21    CROSS THEM AND THE WITNESS SAYS THAT'S NOT WHERE I'M GOING TO

22    GO AND YOU DISAGREE AND I GET INVOLVED, I'LL BE SAYING, ONCE

23    AGAIN, THAT'S GETTING IN THAT AREA WHERE I'VE TRIED TO MAKE

24    CLEAR YOU OUGHT NOT TO GO.  BUT THERE WILL BE GRAY WITH EACH

25    WITNESS.

1          **MR. WAKEFORD:**  YES, YOUR HONOR.  WE UNDERSTAND.

2          AND ALSO, WE ACKNOWLEDGE THAT SOME GENERAL GUIDANCE IS

3     HONESTLY NECESSARY BECAUSE THE BODY THAT IS MAKING THIS

4     INQUIRY IS A GRAND JURY.  SO THE QUESTIONS COME FROM THE

5     GRAND JURY.  AND SO IF THERE ARE TIMES WHEN WE, AS THEIR

6     LEGAL ADVISOR, HAVE TO SPEAK TO THEM ABOUT WHAT THE

7     PARAMETERS ARE, YOU KNOW, WE'RE GOING TO NEED TO HAVE THAT

8     COME FROM YOU.  SO I UNDERSTAND THAT.

9          **THE COURT:**  THAT'S A VERY HELPFUL POINT AND I'M GLAD

10    YOU BROUGHT THAT UP BECAUSE I KNOW ONE REQUEST MR. SAMUEL HAD

11    ON BEHALF OF HIS CLIENTS IS:  WELL, IF THE DA'S OFFICE WOULD

12    JUST TELL US THE QUESTIONS THEY'RE GOING TO ASK, THEN WE

13    COULD HIGHLIGHT, THESE ARE PROBLEMATIC, LET'S TALK WITH THE

14    JUDGES ABOUT THOSE, IF ONLY IT WAS JUST THE DA'S OFFICE

15    ASKING QUESTIONS.  BUT YOU HAVE 26 PEOPLE IN THERE, ANY OF

16    WHOM COULD HAVE A QUESTION, ANY OF WHICH COULD BE PROBLEMATIC

17    IN LIGHT OF LEGISLATIVE IMMUNITY.  SO AGAIN, SOME

18    GUIDELINES -- AND IT MAY BE HELPFUL IN THE END, WHETHER IT'S

19    SOMEONE FROM YOUR TEAM AND MR. SAMUEL IN THE ROLE HE

20    REPRESENTS FOR THE JUDGE TO MEET WITH THE GRAND JURORS TO

21    SAY, WHEN YOU HAVE WITNESSES THAT FALL IN THIS CATEGORY,

22    THERE ARE SOME AREAS THAT -- YOU CAN GO AHEAD AND ASK THE

23    QUESTIONS, BUT KNOW THAT THAT QUESTIONS WILL NOT BE ANSWERED

24    BECAUSE OF...

25          SO YOU CAN THINK THROUGH HOW YOU WANT THAT TO WORK.

1    BUT I DO THINK THAT WE'RE, IN TALKING ABOUT GUIDELINES,

2    BECAUSE OF COURSE THE MOTION WAS TO QUASH, YOU MAY NOT HAVE

3    MY CLIENT.  THESE WITNESSES DON'T HAVE TO APPEAR.  AND I DENY

4    THAT.  OF COURSE I AM NOT QUASHING ANY OF THESE SUBPOENAS.

5    BUT I DO WANT TO PROVIDE A FRAMEWORK SO THAT IT'S NOT EVERY

6    THIRD QUESTION THAT WE'RE HAVING TO CALL A TIMEOUT AND THE

7    LAWYERS HUDDLE UP EITHER WITH LAWYERS OR WITH JUDGE AND THEN

8    WE GO ON.  THOSE WITNESSES WILL BE IN FRONT OF THE GRAND JURY

9    FOR DAYS.  SO I APPRECIATE THAT.

10    ALL RIGHT.

11    **MR. WAKEFORD:**  THANK YOU, JUDGE.

12    **THE COURT:**  YOU'RE WELCOME.

13    SO LET ME SHARE SOME OF THE BRIGHTER LINES THAT I FOUND

14    IN REVIEWING THE PLEADINGS, THE MOTION AND THE RESPONSE, AS

15    WELL AS CASE LAW HIGHLIGHTED THEREIN AND CASE LAW I'VE LOOKED

16    AT MYSELF, WHETHER IT'S FROM THE U.S. SUPREME COURT, GEORGIA

17    CASES, OR SOME FEDERAL CASES THAT BOTH SIDES SEEM TO LIKE.

18    FIRST, I THINK THERE IS SOME COMMON GROUND ACROSS THE

19    TWO PLEADINGS.  EVERYONE AGREES THERE IS A LEGISLATIVE

20    PRIVILEGE.  THERE'S LEGISLATIVE IMMUNITY SO THAT IF THE

21    DISTRICT ATTORNEY'S OFFICE IS SUBPOENAING A LEGISLATOR OR A

22    STAFF MEMBER THEREOF.  THIS IS AN ISSUE.

23    EVERYONE SEEMS TO AGREE THAT GUIDANCE WOULD BE HELPFUL,

24    AND REGRETTABLY, EVERYONE SEEMS TO AGREE THAT THERE OUGHT TO

25    BE "DAY OF JUDICIAL ABILITY."  YOU CAN'T SAY "COVER ALL THE

1    QUESTIONS THAT YOU THINK ARE OKAY AND LET'S TAKE A BREAK AND

2    THREE DAYS LATER, BRING THAT WITNESS BACK."  SO AT THE END OF

3    TODAY'S SESSION, WE'RE GOING TO NEED TO AGREE ON SOME CADENCE

4    AS TO WHEN.  YOU ALL LET ME KNOW THAT 'X' DAY IS OUT, WE'RE

5    GOING TO HAVE ONE OF MR. SAMUEL'S WITNESSES" SO THAT I CAN BE

6    AVAILABLE THAT DAY TO ASSIST, IF NEEDED.

7        SOME LEGAL, AS OPPOSED TO PROCEDURAL, BRIGHT LINES THAT

8    I THINK APPLY HERE IS THAT, NUMBER ONE, AND THE BASELINE OF

9    EVERY THING THAT WE'RE WORKING THROUGH, IS THAT THIS

10   LEGISLATIVE PRIVILEGE IS ABSOLUTE FOR ALL LEGITIMATE

11   LEGISLATIVE ACTIVITY.  I DIDN'T SEE ANY PUSHBACK FROM THE

12   DISTRICT ATTORNEY'S OFFICE THAT THERE IS NO PRIVILEGE; OR IF

13   IT'S LEGITIMATE LEGISLATIVE ACTIVITY, THE PRIVILEGE HAS

14   EXCEPTIONS TO IT.  SO THE DISCUSSION BACK AND FORTH BETWEEN

15   THE BRIEFS WERE, "WELL, WHAT CONSTITUTES LEGITIMATE

16   LEGISLATIVE ACTIVITY?"  AND, DEFINITIONALLY, THAT WOULD MEAN

17   YOU'RE ON THE FLOOR AND YOU'RE ARGUING, YOU'RE PREPARING A

18   BILL, LEGISLATORS ARE CONFERRING WITHIN THE SAME SIDE OR

19   ACROSS THE AISLE.  THAT WOULD ALL BE IN THAT SPHERE OF

20   LEGITIMATE LEGISLATIVE ACTIVITY.

21        IF THE LEGISLATORS ARE PERFORMING A DISCRETIONARY

22   POLICY-MAKING FUNCTION, OR AN AGENT OF THE LEGISLATOR IS

23   DOING THAT, THEN THAT CONDUCT IS PRIVILEGED AND CANNOT BE

24   EXAMINED.  "WHY DID YOU SAY WHAT YOU SAY?" "WHY DID YOU DO

25   WHAT YOU DO?"  THAT WOULD BE ONE BRANCH INTERFERING WITH THE

14

1     BUSINESS OF ANOTHER BRANCH.  THAT'S OUR BASELINE.

2         FLOWING FROM THAT WOULD BE, I THINK, A BAR FROM -- ON

3     THE DISTRICT ATTORNEY'S FROM ASKING ANYONE SUBPOENAED WHO

4     ENJOYS THAT PRIVILEGE OR THAT IMMUNITY FROM ASKING WHY

5     CERTAIN THINGS WERE SAID ON THE LEGISLATIVE FLOOR, IN A

6     COMMITTEE MEETING, ET CETERA, OR EXPLORING WHAT I'M LABELLING

7     'INTERNAL LEGISLATIVE PREPARATION,' WHAT DID YOU AND YOUR

8     STAFF DISCUSS AS YOU PREPARED FOR THE DECEMBER 2, 2020,

9     SUBCOMMITTEE HEARING?  WHAT DID YOU AND ANOTHER LEGISLATOR

10    DISCUSS IN PREPARATION FOR THAT SUBCOMMITTEE MEETING?  THE

11    INTERNAL PREPARATION IS PRIVILEGED.

12        WHERE IT BECOMES LESS CLEAR, AND I AM PRESENTLY LEANING

13    IN THE DIRECTION OF TO BE ALLOWED, IS THAT A COMMUNICATION

14    THAT A LEGISLATOR OR HER STAFF MEMBER HAD WITH A THIRD PARTY,

15    WHETHER IT IS IN CONNECTION WITH WORK THAT THE LEGISLATOR IS

16    PERFORMING OR NOT, IS SUBJECT TO EXPLORATION BY THE GRAND

17    JURY, GIVEN THAT THE GRAND JURY IS INVESTIGATING POSSIBLE

18    THIRD-PARTY CRIME.

19        WE DO NOT HAVE BEFORE US AT THIS JUNCTURE, AT LEAST

20    THAT HASN'T BEEN BROUGHT TO MY ATTENTION, THAT ANY OF THE

21    WITNESSES NEED TO BE WORRIED ABOUT THEIR FIFTH AMENDMENT

22    RIGHTS.  THIS IS SOLELY INVESTIGATION INTO CONDUCT THAT THE

23    DISTRICT ATTORNEY'S OFFICE IS INVESTIGATING CONCERNING

24    THIRD-PARTY ACTORS, NOT THE SPECIFIC WITNESSES AT PLAY HERE,

25    THE LIEUTENANT GOVERNOR OR FORMER SENATOR LIGON.

1       SO AS AN EXAMPLE, THE QUESTION I THINK IS PERMISSIBLE

2   AND WHAT I WANT US TO ENGAGE ON NEXT, IN PARTICULAR STARTING

3   WITH MR. SAMUEL OR MS. CLARK PALMER, WOULD BE A QUESTION FROM

4   THE DISTRICT ATTORNEY'S OFFICE, OR A GRAND JUROR:

5   "MR. LIGON, DID YOU SPEAK WITH ANYONE NOT A MEMBER OF YOUR

6   STAFF OR A MEMBER OF THE LEGISLATURE ABOUT PLANNING,

7   PREPARING OR CONVENING THE DECEMBER 2, 2020, SUBCOMMITTEE

8   HEARING YOU CHAIRED?"

9       "YES, I DID."

10      "WHO WAS IT?"

11      HE CAN ANSWER THAT QUESTION AS WELL.

12      "WHAT DID YOU TALK ABOUT?"  THIS WOULD BE THE SENATOR

13  OR HIS STAFF MEMBER TALKING WITH A NON-LEGISLATIVE OFFICIAL.

14  FRANK SMITH, NOT A LEGISLATOR, NOT A STAFFER FOR ANY OTHER

15  LEGISLATOR, YES, WE'RE GOING TO HAVE THIS HEARING AT WHICH

16  WE'RE GOING TO TALK ABOUT RECTIFYING THE ELECTION.  AND THIS

17  IS WHAT WE DISCUSSED.  THIS PERSON URGED ME TO DO IT.  THIS

18  PERSON TOLD ME NOT TO DO IT.  THIS PERSON SAID YOU NEED TO

19  CALL PERSON 'X' TO COME DOWN AND OFFER HIS VIEW ABOUT

20  SUITCASES AND BALLOTS AND THINGS LIKE THAT.

21      I BELIEVE, PURSUANT TO *GRAVEL VERSUS UNITED STATES* AND

22  OTHER CASES, THAT THAT INTERACTION, LEGISLATOR OR STAFF

23  MEMBER WITH SOMEONE NOT WITHIN THE LEGISLATIVE SPHERE, IS NOT

24  PROTECTED BY THE IMMUNITY.  AND I APPRECIATE THAT MR. SAMUEL

25  HAS RELIED ON A NINTH CIRCUIT CASE TO SAY THAT IT IS.  I DON'T

1    THINK THAT'S WHAT *GRAVEL* SAYS.  THAT'S A U.S. SUPREME COURT

2    CASE, WHICH I WOULD FOLLOW BEFORE I FOLLOW THE NINTH CIRCUIT

3    CASE.  BUT I'D LIKE TO START THE DISCUSSION ABOUT WHERE WE'RE

4    DRAWING SOME OF THESE LINES WITH THAT.  AND THEN, MR. SAMUEL,

5    YOU CAN TAKE IT FROM THERE IF YOU THINK THERE ARE OTHER

6    LINES, GUIDELINES, THAT YOU THINK WOULD BE HELPFUL AS YOU

7    WORK WITH YOUR WITNESSES IN ADVANCE OF THOSE SUBPOENAS.

8        **MR. SAMUEL:**  THANK YOU, YOUR HONOR.  I SAID TO

9    MS. CLARK PALMER BEFORE WE CAME HERE, I COULD WRITE, YOU

10   KNOW, A 20, 25 MINUTE OPENING STATEMENT, OR WE CAN PUT IT IN

11   THE GARBAGE CAN BECAUSE JUDGE MCBURNEY IS NOT GOING TO BE

12   GIVING US THAT PRIVILEGE.

13       **THE COURT:**  I READ YOUR BRIEF.  SO YOU GAVE YOUR

14   OPENING.

15       **MR. SAMUEL:**  YOU'RE EXACTLY RIGHT.  THANK YOU.  YOU'RE

16   EXACTLY RIGHT.

17       OKAY.  SO, YOU KNOW, YOU ACTUALLY SWITCHED YOUR

18   CONCLUSION THERE MID STREAM.  I'M A LITTLE UNSURE WHY.  YOU

19   SAID -- AT FIRST YOU SAID THAT COMMUNICATIONS WITH AN OUTSIDE

20   PARTY INVOLVING THIRD-PARTY CRIMES COULD BE THE SUBJECT OF

21   INQUIRY.  AND THEN BY THE END, YOU WERE SAYING ANY

22   THIRD-PARTY INQUIRY, WHICH I HEARD MID STREAM.

23       **THE COURT:**  SO I MUST HAVE MISSPOKEN BECAUSE, FIRST OF

24   ALL, I'M NOT SUGGESTING THERE WAS A CRIME ANYWHERE.  BUT IF

25   THE GRAND JURY IS INVESTIGATING ALLEGED CRIMINAL ACTIONS BY

1    THIRD PARTIES, NOT THE WITNESSES, THEN IF THEIR EXPLORATION

2    LEADS TO QUESTIONS OF A LEGISLATOR OR HER STAFF MEMBERS ABOUT

3    COMMUNICATIONS WITH PEOPLE OUTSIDE THAT LEGISLATIVE SPHERE

4    THAT ARE RELATED TO THE INVESTIGATION, I BELIEVE THOSE ARE

5    NOT PROTECTED BY LEGISLATIVE IMMUNITY.

6         **MR. SAMUEL:**  OKAY.  WELL, WE DO DISAGREE WITH THAT AS

7    YOU KNOW FROM OUR BRIEF.

8         FIRST OF ALL, NINTH CIRCUIT CASE IS VERY CLEAR THAT IT

9    WOULD INHIBIT COMMUNICATIONS BETWEEN LEGISLATORS AND THE

10   PEOPLE WHO INFORM THEM WHAT ARE APPROPRIATE LEGISLATIVE ACTS,

11   WHAT ARE GOOD LEGISLATIVE RESPONSES TO A PROBLEM OR A BAD

12   LEGISLATIVE RESPONSES TO PROBLEMS.  IF THOSE BECOME AN OPEN

13   BOOK, AND ANYBODY ANYTIME COULD ASK THEM OR SUBPOENA THEM OR

14   FORCE THEM TO ANSWER A QUESTION, "WHAT DID JOHN SMITH, YOU

15   KNOW, AN ABORTION RIGHTS ACTIVIST SAY TO YOU ABOUT, OR A

16   DOCTOR SAY TO YOU ABOUT, YOU KNOW, SOME ISSUE," IF ALL OF

17   THAT BECOMES AN OPEN BOOK, YOU HAVE, YOU KNOW, ELIMINATED A

18   GREAT DEAL OF WHAT THE LEGISLATIVE PRIVILEGE IS DESIGNED TO

19   FACILITY, WHICH IS TRUTHFUL INVESTIGATION, HONEST

20   INVESTIGATION, ATTEMPTED TO COME UP WITH A GOOD RESPONSE TO A

21   PROBLEM, AVOID A BAD RESPONSE TO A PROBLEM.  YOU WILL INHIBIT

22   NOT JUST THE LEGISLATOR FROM ASKING THE QUESTION, YOU WILL BE

23   INHIBITING THE INFORMANT, THE LOBBYIST, YOU KNOW, THE EXPERT,

24   THE GEORGIA TECH PROFESSOR, YOU KNOW, WHATEVER, IT DOESN'T

25   HAVE TO BE SOMEONE INVOLVED IN THIS CASE, YOUR RULING, IF

1    IT'S TRULY APPLIED IN ALL SITUATIONS, NOBODY'S GOING TO GO

2    TALK TO A LEGISLATOR.

3        **THE COURT:** BUT IT DOESN'T APPLY TO ALL SITUATIONS.  IF

4    -- THE KEY IS THAT THE GRAND JURY NEEDS TO BE INVESTIGATING

5    -- IT'S NOT JUST, HEY, WE DON'T LIKE THE WAY THE DEBATE OF

6    CLIMATE CHANGE PLAYED OUT.  SO LET'S START SUBPOENAING PEOPLE

7    TO SAY WHO TALKED TO SO AND SO ABOUT CLIMATE CHANGE.

8        **MR. SAMUEL:** WELL, I DON'T KNOW HOW YOU WOULD EVER

9    CONTROL THAT WITH A GRAND JURY THAT DOESN'T, YOU KNOW, COME

10    TO YOU AND SAY, LET US TELL YOU WHAT THE INVESTIGATION IS

11    ABOUT BEFORE WE DO ANY -- I MEAN, YOU DON'T KNOW WHAT THE

12    INVESTIGATION IS ABOUT.  WE DON'T EVEN KNOW WHAT THIS

13    INVESTIGATION IS ABOUT.

14        **THE COURT:** THAT'S NOT FAIR BECAUSE YOU CAN'T --

15    SPECIAL PURPOSE GRAND JURIES DON'T FALL FROM THE SKY.  THEY

16    HAVE TO BE AUTHORIZED.  A SEPARATE BRANCH.  IT'S NOT THE

17    EXECUTIVE BRANCH THAT CAN WILLY-NILLY SAY, TODAY, LET'S HAVE

18    A DIFFERENT SPECIAL PURPOSE GRAND JURY BECAUSE I'M NOT HAPPY

19    WITH X.

20        **MR. SAMUEL:** IT'S THE JUDICIARY.

21        **THE COURT:** SO YOU UNDERSTAND.  SO THEN IT'S NOT

22    ACTUALLY THAT JUST RANDOMLY SPECIAL PURPOSE GRAND JURIES

23    APPEAR WITH NO CHARTER, CORRECT?

24        **MR. SAMUEL:** YOU'RE ABSOLUTELY CORRECT.  JUDGE BRASHER,

25    CHIEF JUDGE BRASHER, WAS VERY SPECIFIC.  AND SO IT DOES HAVE

1    A PURPOSE.  BUT I DON'T THINK THAT THAT OPENS THE DOOR TO ALL

2    COMMUNICATIONS, OUTSIDE OF THE CAPITOL BUILDING ITSELF, ALL

3    COMMUNICATIONS THAT ANY MEMBER EVER HAD WITH ANYBODY JUST

4    BECAUSE WE'RE DEALING WITH A SPECIAL PURPOSE GRAND JURY.  I

5    THINK THE --

6         THE COURT:  RIGHT.  IT WOULDN'T BE RELEVANT IF THE

7    DISTRICT ATTORNEY'S OFFICE ASKED ONE OF YOUR CLIENTS, "WELL,

8    WHAT ABOUT GUN CONTROL?  WHY WERE YOU -- "  THAT IS NOT

9    WITHIN THE SCOPE OF THE SPECIAL PURPOSE GRAND JURY'S CHARTER.

10   SO THERE ARE RAILS KEEPING THE DISTRICT ATTORNEY'S OFFICE

11   HEADING IN A CERTAIN DIRECTION IN THEIR PURSUIT OF SHOULD

12   THIS BE FORMAL CHARGES OR NOT.  AND THOSE ARE RAILS THAT YOUR

13   CLIENT WOULD BE ABLE TO INVOKE. "WAIT A MINUTE, NOW YOU'RE

14   ASKING ME ABOUT GUN CONTROL.  THAT'S NOT --" I MEAN, THIS IS

15   WHY WE'RE TALKING ABOUT GUIDELINES.

16        MR. SAMUEL:  RIGHT.

17        THE COURT:  SO IT'S NOT ANYONE ABOUT ANYTHING.

18        MR. SAMUEL:  WELL, OBVIOUSLY, IT'S NOT GOING TO BE

19   ABOUT ANYTHING.  IF THEY'RE ASKING ABOUT THE BRAVES SCORE, I

20   WOULDN'T --

21        THE COURT:  WELL, IT WAS YOUR PHRASE, "ANYTHING," NOT

22   MINE. "I DON'T THINK IT'S ANYTHING."

23        MR. SAMUEL:  WELL, I MEAN, YOU HAVEN'T DEFINED EXACTLY

24   WHAT IT HAS TO BE.  IF IT HAS TO BE SPECIFICALLY DEALING

25   WITH, YOU KNOW, THE -- WELL, IN THIS CASE, FOR EXAMPLE, DOES

1    IT HAVE TO DEAL WITH THE COMMITTEE HEARINGS?  THE COMMITTEE

2    HEARINGS WERE PART OF THE SPECIAL PURPOSE GRAND JURY.  DID

3    THEY UNDERSTAND WE'RE INVESTIGATING THE LEGISLATORS OR WHAT

4    THE LEGISLATURE DID?  THEY WERE LOOKING, YOU KNOW,

5    INVESTIGATING EFFORTS, IT SEEMS TO BE, THE FORMER PRESIDENT

6    OF THE UNITED STATES AND MAYBE OTHER PEOPLE IN HIS CIRCLE AS

7    OPPOSED TO THE LEGISLATURES WHO ARE DOING INQUIRIES, WHO ARE

8    DOING WHAT WE EXPECT LEGISLATURES TO DO, WHO ARE TALKING TO

9    CONSTITUENTS.

10        **THE COURT:**  WE WANT TO DEBATE ABOUT WHETHER WE EXPECT

11   LEGISLATORS TO SAY WE SHOULD CREATE A NEW SLATE OF ELECTORS

12   OR NOT.  THAT'S NOT MY ROLE.  THAT'S CLEARLY NOT YOUR ROLE

13   RIGHT NOW EITHER.

14        **MR. SAMUEL:**  RIGHT.

15        **THE COURT:**  BUT THE ROLE OF THE SPECIAL PURPOSE GRAND

16   JURY WAS DEFINED IN THE ORDER THAT CHIEF JUDGE BRASHER

17   SIGNED, AND IT EMPOWERS THEM TO INVESTIGATE WHETHER THERE

18   WERE ILLEGAL EFFORTS TO INTERFERE WITH THE CONDUCT AND

19   OUTCOME OF THE 2020 GENERAL ELECTION.

20        **MR. SAMUEL:**  RIGHT.

21        **THE COURT:**  BUT IN SOME WAYS, IT'S A BIG TOPIC.  BUT IN

22   OTHER WAYS, IT'S NOT SO BIG.  AND SO, YES, THE SUBCOMMITTEE

23   HEARINGS ABOUT WHAT SHOULD WE DO WITH THE 2020 ELECTION COULD

24   BE GERMANE TO THAT.

25        **MR. SAMUEL:**  WELL, I THINK THAT YOU ALREADY USED AS AN

1    ANALOGY THE CRIME-FRAUD EXCEPTION.  WE'RE TALKING ABOUT

2    BREACHING A PRIVILEGE HERE, A CONSTITUTIONAL PRIVILEGE, MORE

3    SO EVEN THAN THE -- I MEAN, EVEN THAN THE -- I MEAN, THE

4    CRIME-FRAUD EXCEPTION, THAT'S JUST A KIND OF A COMMON LAW

5    PRIVILEGE, YOU KNOW, ATTORNEY-CLIENT PRIVILEGE.  AND YET,

6    HERE, WE'RE TALKING ABOUT SOMETHING THAT'S ENSHRINED IN THE

7    CONSTITUTION AND IT HAS BEEN FOR, HOW MANY YEARS HAS IT BEEN,

8    FOR 300 YEARS ALMOST, THAT WE WERE GOING TO INTERFERE WITH

9    THE LEGISLATURE DOING ITS BUSINESS.  AND ITS BUSINESS

10   INCLUDES TALKING TO CONSTITUENTS, TALKING TO EXPERTS, SO THEY

11   CAN FIGURE OUT WHAT THEY NEED TO DO.

12        THE COURT:  BEYOND THE --

13        MR. SAMUEL:  THE FACT THAT THEY'RE --

14        THE COURT:  -- OLDER NINTH CIRCUIT CASE YOU FOUND,

15   THERE ARE LOTS OF CASES AND GEORGIA CASES AND THE 11TH

16   CIRCUIT CASES THAT SAY ACTUALLY A LEGISLATOR'S INTERACTIONS

17   WITH A PRIVATE CITIZEN ARE WITHIN THE PROTECTED LEGISLATIVE

18   SPHERE.

19        MR. SAMUEL:  THE NINTH CIRCUIT CASE CERTAINLY IS THE

20   ONE THAT EVERYBODY CITES OVER AND OVER AGAIN --

21        THE COURT:  OKAY.

22        MR. SAMUEL:  -- AS THE AUTHORITY.  BUT THERE ARE OTHER

23   CASES THAT TALK ABOUT YOU CAN'T ASK A LEGISLATOR HIS OR HER

24   MOTIVATION.  WELL, WOULDN'T THE ANSWER TO THAT BE, BECAUSE I

25   SPOKE TO A GEORGIA TECH PROFESSOR WHO TOLD ME THIS ABOUT

1    BALLOTS, OR I SPOKE TO THE FORMER MAYOR OF A BIG CITY AND HE

2    TOLD ME THIS OR THAT.

3        YOU'RE SAYING THAT HE HAS TO ANSWER THAT QUESTION?

4        MANY COURTS, INCLUDING *GRAVEL*, I THINK IT'S PRONOUNCED

5    *GRAVEL*, BUT, YOU KNOW, INCLUDING *GRAVEL,* SAYS THAT YOU CAN'T

6    ASK ABOUT MOTIVATIONS.

7        **THE COURT:**  I AGREE WITH THAT.

8        **MR. SAMUEL:**  SO THAT'S GOING TO, UNDER YOUR RULING, THE

9    LEGISLATOR CAN SAY, WELL, I'M NOT GOING TO ANSWER THAT

10   QUESTION.  IT'S JUST BECAUSE IT WAS FRAMED THE WRONG WAY

11   BECAUSE THE D-A FRAMED IT AS:  WHAT WAS YOUR MOTIVATION FOR

12   MAYBE A CERTAIN FINDING IN YOUR COMMITTEE REPORT, WHAT WAS

13   YOUR MOTIVATION FOR INVESTIGATING, YOU KNOW, WHATEVER ASPECT

14   THAT THE D-A IS INQUIRING ABOUT AT THAT POINT.

15       IF EVERYBODY AGREES YOU CAN'T ASK A LEGISLATOR'S

16   MOTIVATION, AND 90 PERCENT OF MOTIVATIONS ARE GOING TO BE

17   BASED ON, YOU KNOW, INFORMATION COMING TO HIM OR HER, THEN

18   YOU ARE CONTRADICTING YOUR OWN RULE.

19       THE CRIME-FRAUD EXCEPTION WOULD REQUIRE THAT THEY MAKE

20   A PRELIMINARY SHOWING, NOT JUDGE BRASHER SAID THAT THIS IS A

21   LEGITIMATE, YOU KNOW, COURSE OF INQUIRY FOR THE SPECIAL

22   PURPOSE GRAND JURY.  AND THE CRIME-FRAUD EXCEPTION DOESN'T

23   SAY THE D-A GETS TO SAY THAT.  I DECLARE THAT THERE WAS A,

24   YOU KNOW, THAT THE CLIENT WAS ENGAGED IN AN EFFORT TO COMMIT

25   A FRAUD OR A CRIME, THE CRIME-FRAUD EXCEPTION, THERE'S NO

1    SUCH THING THE ATTORNEY-CLIENT PRIVILEGE.  AND YOU'VE DEALT

2    WITH THAT I'M SURE MANY TIMES IN YOUR FORMER ROLE AS A

3    PROSECUTOR AS WELL.  AND THERE'S VERY SPECIFIC RULES IN THE

4    11TH CIRCUIT ABOUT WHAT THE GOVERNMENT HAS TO DO, WHAT THE

5    PROSECUTION HAS TO DO IN ORDER TO INVOKE THAT PRIVILEGE, WHAT

6    THEY HAVE TO PROVE TO YOU, WHICH IS THAT THERE'S SOMETHING

7    ABOUT THE COMMUNICATION WHICH MAKES ENFORCING THE PRIVILEGE

8    NOT WORTH IT.

9        **THE COURT:**  SO HOW AM I MISREADING OR MISAPPLYING THE

10   NOW CORRECTLY PRONOUNCED *GRAVEL*?

11       **MR. SAMUEL:**  *GRAVEL* INVOLVED, AS YOU KNOW, PENTAGON

12   PAPERS.  AND IT INVOLVED A -- IT WAS WEIRD CASE, REALLY, WHEN

13   YOU THINK ABOUT THE FACTS OF THE CASE.  *GRAVEL* WAS --

14       **THE COURT:**  IS THIS A NORMAL CASE, THE ONE WE'RE

15   DEALING WITH HERE?

16       **MR. SAMUEL:**  *GRAVEL* WAS INVOLVED IN THE BUILDINGS AND

17   GROUNDS, YOU KNOW, COMMITTEE OF U.S. CONGRESS.  HE WAS IN

18   CHARGE OF, YOU KNOW, LANDSCAPING.  THAT'S THE COMMITTEE.  HE

19   INVOKED, AT MIDNIGHT, HE CONVENES THE GRAND JURY AT MIDNIGHT

20   AND SOMEONE HAS SLIPPED HIM OR HIS AIDE A SET OF THE PENTAGON

21   PAPERS.  AND HE SAYS, I'M GOING TO TAKE THE PENTAGON PAPERS

22   AND I'M GOING TO PUT THEM IN THE RECORD OF THE UNITED STATES

23   SENATE, IN THE JOURNAL OF THE UNITED STATES SENATE, AND THEN

24   HE'S GOING TO HAVE HIS STAFF PERSON SEND THEM TO BEACON

25   PRESS, RIGHT.

1        **THE COURT:** SO STRANGE FACTS MAKES STRANGE LAW.  THE

2    CONCLUSION --

3        **MR. SAMUEL:** WELL, BUT --

4        **THE COURT:** -- OF *GRAVEL* WAS I THINK ALONG THE LINES OF

5    WHAT I'M DESCRIBING.  BUT MAYBE --

6        **MR. SAMUEL:** BECAUSE IN THAT CASE, THEY WERE

7    SPECIFICALLY INVESTIGATING WHO STOLE THE PENTAGON PAPERS, AS

8    OPPOSED TO, 'WE CAN ASK YOU ANY QUESTION ABOUT ANYBODY YOU

9    TALKED TO, YOU KNOW, IN CONNECTION WITH THIS GRAND JURY

10   THAT'S INVESTIGATING THE THEFT OF THE PENTAGON PAPERS, NOT

11   JUST THAT, YOU KNOW, THE PERSON WHO WAS ENGAGED IN IT, OR WE

12   CAN TALK TO DANIEL ELLSBERG.  WE CAN TALK TO ALL THESE

13   PEOPLE.  I'M SORRY.  WE CAN DEMAND THAT YOU SAY, "YOU"

14   SENATOR GRAVEL AND RODENBERRY[SIC], I THINK WAS HIS

15   ASSISTANT, HIS STAFF PERSON, WE CAN DEMAND THAT YOU TELL US

16   EVERYBODY ABOUT HOW YOU CAME INTO POSSESSION OF THIS, HOW YOU

17   ACQUIRED IT.

18       ODDLY ENOUGH, THEY ALSO SAY, YOU CAN'T DO ANYTHING TO

19   *GRAVEL* ABOUT IT.  THE IMMUNITY DID PROTECT HIM.

20       **THE COURT:** RIGHT.

21       **MR. SAMUEL:** BUT THE COMMUNICATION, BUT IT WAS VERY

22   FOCUSSED IN THAT CASE.

23       YOU KNOW, WHEN YOU SAY, "WELL, STRANGE CASE," WELL,

24   THOSE ARE THE FACTS OF THAT CASE.  AND TO BROADEN IT AND SAY,

25   I'M GOING TO EXTRAPOLATE FROM THAT THAT ANYTHING YOU WANT TO

1    ASK ABOUT, FROM LET'S TAKE SENATOR LIGON, ANYBODY YOU'VE

2    TALKED TO FROM NOVEMBER 3RD ON, OR BEFORE FOR THAT MATTER,

3    ABOUT ANYTHING DEALING WITH THE ELECTION, YOU CAN ASK THEM.

4         I DON'T THINK THE LAW ALLOWS THAT.  I THINK YOU WILL BE

5    DOING ENORMOUS DAMAGE TO THE LEGISLATIVE PRIVILEGE.

6         **THE COURT:**  SO I'LL LET SOMEONE ELSE FIX THE MICROPHONE

7    YOU BROKE.

8         WHAT IS AN IN-BETWEEN GROUND THAT YOU THINK IS MORE

9    WORKABLE?  BECAUSE YOU WOULD SAY, NO, THAT'S NOT AN AREA THAT

10   CAN BE EXPLORED EITHER.

11        ASSUME THAT'S NOT HOW IT'S GOING TO PLAY OUT, THE

12   QUESTION, WELL, THE NARROWER ONE:  "FORMER SENATOR LIGON, WAS

13   THERE ANYONE YOU SPOKE TO OUTSIDE OF THE LEGISLATOR SPHERE

14   ABOUT PREPARING FOR THAT SUBCOMMITTEE HEARING?"  WHAT --

15        **MR. SAMUEL:**  I WOULDN'T DO IT -- AGREE TO THAT AT ALL.

16        **THE COURT:**  NO.

17        **MR. SAMUEL:**  ANYBODY YOU TALKED TO TO PREPARE FOR A

18   HEARING WOULD BE -- I MEAN, HOW IS HE GOING TO ASK THEM THE

19   QUESTION:  WHAT WAS YOUR MOTIVATION?

20        WE ALL AGREE YOU CAN'T ASK A LEGISLATOR:  "WHAT WAS

21   YOUR MOTIVATION."

22        **THE COURT:**  IF HIS ANSWER IS, "I TALKED TO FRED SMITH,"

23   THEN I DON'T UNDERSTAND.

24        **MR. SAMUEL:**  WELL, YOU'RE THEN SAYING THAT YOU HAVE TO

25   ANSWER THE QUESTION AS TO MOTIVATION, WHICH THE COURT SAYS

1    YOU CAN'T FORCE THEM TO ANSWER.  I MEAN, EVEN *GRAVEL* SAYS

2    THAT.  ALL THE SUPREME COURT CASES SAY IT.  I MEAN, THERE ARE

3    A LONG LIST OF CASES THAT SAY YOU CAN'T ASK A LEGISLATOR WHY

4    YOU DID SOMETHING.

5         **THE COURT:**  OKAY.

6         **MR. SAMUEL:**  IF YOU CAN'T ASK THAT, THEN YOU CAN'T

7    THEN, YOU KNOW, SAY:  "I'M NOT GOING TO ASK YOU WHY YOU DID

8    SOMETHING.  DID YOU TALK TO JOHN SMITH?"

9         **THE COURT:**  CORRECT.

10        **MR. SAMUEL:**  BUT YOU AGREE YOU CAN'T ASK "WHY YOU DID

11   WHAT YOU DID?" "JUST WHAT?  YOU TALKED TO HIM?"

12        YOU'RE JUST MAKING THE MOTIVATION PROHIBITION

13   IRRELEVANT, WHEN IN FACT, IT IS ONE OF THE KEY ASPECTS OF

14   WHAT ALL THE CASES SAY IS THE PRIVILEGE.  YOU CAN'T ASK

15   WHAT'S GOING THROUGH THE LEGISLATOR'S MIND, WHY HE DID

16   SOMETHING.

17        **THE COURT:**  I AGREE WITH THAT.  I DISAGREE THAT FINDING

18   OUT WITH WHOM SOMEONE SPOKE THEREFORE PROVES MOTIVATION.  I

19   DON'T KNOW WITH THIS SITUATION HOW IT WOULD PLAY OUT, BUT I

20   SUSPECT MOST LEGISLATORS WOULD SAY, "I HAD A BUNCH OF PEOPLE

21   CALLED WHO WERE PRO, AND A BUNCH OF PEOPLE WHO CALLED WHO

22   WERE CON."

23        IF WE JUST ASK THE LEGISLATOR WHAT MOTIVATED YOU TO

24   VOTE THE WAY YOU VOTED, I HEARD A LOT OF DIFFERENT

25   PERSPECTIVES ON IT.  I HOPE THEY WOULD HEAR A LOT OF

1    DIFFERENT PERSPECTIVES.  BUT I'M ASKING YOU FOR SOMETHING

2    MORE HELPFUL THAN, HERE'S -- THAT'S WHY THAT ISN'T PRACTICAL,

3    JUDGE.

4        IS THERE A MIDDLE GROUND YOU THINK IS NAVIGABLE

5    BETWEEN, NO, YOU ACTUALLY, BASICALLY, YOU CAN'T ASK ANYTHING

6    ABOUT, WHICH I THINK IS CONSISTENT WITH *GRAVEL*, ANYTHING

7    ABOUT INTERACTIONS YOU HAD WITH THESE THIRD-PARTY ACTORS?

8        **MR. SAMUEL:**  I WOULD SAY, FIRST OF ALL, YOU KNOW, USE

9    THE *BREWSTER RENZI* LINE OF CASES, THE BRIBERY CASES.  THEY

10   TALK ABOUT THE ABILITY TO DO THAT BECAUSE, OBVIOUSLY, THAT'S

11   NOT A LEGISLATIVE ACT BECAUSE YOU ARE ENGAGING IN A CRIME.

12   OBVIOUSLY, THAT'S DIFFERENT THAN THE QUESTION YOU'RE ASKING.

13   BUT OTHER THAN THAT, I WOULD SAY THE ATTORNEY CLIENT

14   CRIME-FRAUD EXCEPTION SHOULD BE YOUR MODEL WHERE THERE HAS TO

15   BE A PREDICATE SHOWING, NO JUST JUDGE BRASHER'S ORDER SAYING

16   WHAT THE SCOPE OF THIS GRAND JURY IS LOOKING AT, BUT RATHER

17   THERE'S A REASON WHY THIS SPECIFIC QUESTION CAN BE ASKED AND

18   BREACH THE PRIVILEGE.

19       YOU ARE BREACHING A PRIVILEGE, BECAUSE WE CONTEND THERE

20   IS PRIVILEGED TO BEGIN WITH.  YOU'RE BREACHING A PRIVILEGE BY

21   COMPELLING, YOU'RE GOING TO BE COMPELLING, COMPELLING THE

22   LEGISLATOR TO ANSWER THE QUESTION, WHAT DID-AND IT'S IN THE

23   RECORD BECAUSE WE'VE ALREADY TALKED ABOUT IT: "WHAT DID

24   GUILIANI TELL YOU?"

25       I MEAN, THAT'S WHAT THEY POSE IN THEIR -- IN THEIR

**1**  BRIEFING PAPERS.  THAT'S WHAT THE KIND OF QUESTIONS THEY WANT

**2**  TO BE ABLE TO ASK. "WHAT DID GULIANI TELL YOU?"

**3**      **THE COURT:**  WELL, YOU READ MORE INTO IT THAN I DO.  MY

**4**  QUESTION WAS FRAMED, NOT THAT I HAVE QUESTIONS FOR ANYONE,

**5**  IS:  WITH WHOM DID YOU SPEAK?

**6**      YOU GET THE LIST OF PEOPLE WITH WHOM THAT PERSON SPOKE.

**7**  YOU GO TALK TO THEM.  YOU DON'T NEED TO ASK THE LEGISLATOR

**8**  WHAT THE PERSON SAID TO YOU.  THAT'S THE EVIDENCE YOU GLEEM.

**9**      **MR. SAMUEL:**  WELL, THAT WASN'T CLEAR.  YOU'RE SAYING

**10**  THEY CAN'T ASK?

**11**      **THE COURT:**  I DIDN'T SAY THAT.  BUT THAT'S WHY I'M

**12**  ASKING YOU IF THERE ARE LINES SHORT OF THE PROHIBITION, WHICH

**13**  I SUSPECT YOU'RE NOT GOING TO GET AS FARTHER WITH -- BECAUSE

**14**  I DON'T DISAGREE WITH YOU AT ALL THAT GETTING INTO MOTIVATION

**15**  IS IMPROPER AND CAN'T BE BACKDOORED.  AND SO I'M

**16**  UNDERSTANDING A LITTLE BIT MORE NOW WHY YOU'RE RESISTING ME

**17**  ON THIS NOTION OF, WELL, WHAT'S AN IN-BETWEEN SPACE.  BECAUSE

**18**  IT MAY BE SUFFICIENT TO ENABLE THE GRAND JURY TO PURSUE WHAT

**19**  I BELIEVE IT'S ENTITLED TO PURSUE IF IT GETS THE LEADS, IF

**20**  YOU WILL, WHY DON'T I TALK TO THESE FIVE PEOPLE.

**21**      **MR. SAMUEL:**  I APOLOGIZE, BECAUSE I DIDN'T REALIZE THAT

**22**  YOU WERE SO LIMITED, OR AT LEAST MAYBE THAT WAS THE PROPOSAL

**23**  YOU WERE MAKING MIDSTREAM HERE IS IF THE ONLY THING THAT THE

**24**  LEGISLATOR'S GOING TO BE ASKED IS SHOW US YOUR PHONE RECORDS,

**25**  YOU KNOW, I'D SAY, "YOU SHOULDN'T DO THAT.  I THINK IT BREACH

1    THE PRIVILEGE." BUT I CAN CERTAINLY LIVE WITH THAT A LOT

2    BETTER THAN "TELL ME WHAT CONVERSATION YOU HAD WITH SOMEBODY"

3    BECAUSE IT IDENTIFY THE NAMES OF THE PEOPLE YOU SPOKE TO.  I

4    MEAN, I CAN TELL YOU FROM HAVING TALKED WITH MY CLIENTS

5    WITHOUT BREACHING THE ATTORNEY-CLIENT PRIVILEGE OR

6    LEGISLATIVE PRIVILEGE, THEY ALL HAVE THOUSANDS, MORE THAN

7    THAT, HUNDREDS OF THOUSANDS OF CONSTITUENTS WHO ARE WRITING

8    TO THEM, WHO ARE, YOU KNOW, CALLING THEM, SENDING THEM

9    AFFIDAVITS, TELLING THEM THINGS.  IF ALL YOU WANT TO KNOW IS

10   A LIST OF YOUR CONSTITUENTS, IF THAT'S ONE OF THE OPTIONS --

11       **THE COURT:**  I DON'T WANT TO KNOW ANYTHING.  BUT I'M

12   TRYING TO UNDERSTAND WHERE THE TRIP WIRES ARE.  AND IT SOUNDS

13   LIKE MORE ALARM BELLS GO OFF IN YOUR HEAD IF THE DISTRICT

14   ATTORNEY'S OFFICE IS EMPOWERED TO SAY 'TELL ME THE SUBSTANCE

15   OF THE COMMUNICATION YOU HAD WITH PERSON X,' THEN ALARM BELLS

16   GO OFF.  THEN ITS, " DID YOU HAVE COMMUNICATION WITH PERSON X

17   CONCERNING THE PREPARATION FOR AND CONDUCT OF THE

18   DECEMBER 2020 SUBCOMMITTEE."

19       **MR. SAMUEL:**  GOT IT.  I DON'T WANT TO WAIVE MY

20   ARGUMENT.

21       **THE COURT:**  YOU WANT NO QUESTIONS ASKED OF YOUR CLIENT

22   THAT VIOLATE THE LEGISLATIVE PRIVILEGE.

23       **MR. SAMUEL:**  THAT'S RIGHT.  AND WE CONTEND THAT ANY

24   QUESTIONS AT ALL IS A VIOLATION OF THE SEPARATION OF THE

25   POWERS.  WE CAN GET INTO THAT LATER WHEN WE TALK ABOUT SOME

1    OF THE OTHER ISSUES THAT THE PROSECUTION HAS RAISED HERE.

2    BUT I WOULD CERTAINLY BE HAPPIER IF YOU WERE GOING TO MAKE A

3    RULING THAT SAID YOU CAN ONLY ASK THEM WITH, WHOM DID YOU

4    HAVE A CONVERSATION WITH.  YOU CAN'T ASK WHAT WAS SAID.

5         AND OBVIOUSLY, OBVIOUSLY, THE GRAND JURY CAN QUESTION

6    ALL OF THOSE OTHER PEOPLE.  THERE'S NO PRIVILEGE IF THEY WANT

7    TO GO AND SPEAK TO JOHN SMITH, WHO'S NOT A LEGISLATOR.

8         **THE COURT:**  IT'S FRED.  BUT, YES.

9         **MR. SAMUEL:**  FRED SMITH.  YES.

10        I'M SORRY I WASTED TOO MUCH TIME.  IF THAT WAS THE ONLY

11   THING WE WERE TALKING ABOUT, I WOULD HAVE PROBABLY --

12        **THE COURT:**  NO. THAT'S ALL RIGHT.  IT'S HELPFUL TO --

13   THE CRIME-FRAUD EXCEPTION IS GOING TO BE A HELPFUL FRAMEWORK

14   FOR ME TO LOOK AT.

15        OTHER THINGS YOU WANTED TO COVER, I WANTED TO MAKE SURE

16   THAT MR. WAKEFORD HAS A CHANCE.

17        **MR. SAMUEL:**  WELL, OBVIOUSLY THE BIG ISSUE HERE IS THEY

18   DON'T CONCEDE THAT ANYTHING THEY WERE DOING, MY SECOND

19   CLIENT, SENATOR LIGON, WAS DOING, NONE OF IT WAS A

20   LEGISLATIVE ACT.  WELL, IF THAT'S TRUE, YOU'RE HALFWAY POINT

21   ISN'T EVEN A TENTH OF WAY.

22        THEY GET TO CALL HIM IN AND THEY'RE GOING TO SAY, "TELL

23   US EVERYTHING THAT HAPPENED IN THAT ROOM, WHY DID IT HAPPEN,

24   WHO DID YOU TALK TO, WHAT DID YOU SAY."

25        I MEAN, THAT'S I THOUGHT WAS GOING TO BE, HOW WE WERE

31

1    GOING TO SPEND AN HOUR AND A HALF TODAY IS TALKING ABOUT

2    HAVING A SUBCOMMITTEE WHERE THEY DON'T LIKE WHAT WAS GOING ON

3    OR THE FINDINGS OR THE RECOMMENDATIONS.  I CERTAINLY WANT TO

4    RESERVE ENOUGH TIME BECAUSE I THINK THAT'S THE ONLY THING

5    THAT THEY WANT TO TALK ABOUT, RIGHT?

6        **THE COURT:**  WE'LL FIND OUT WHAT THEY WANT TO TALK

7    ABOUT.  I'VE READ THEIR BRIEF AS WELL.  AND A THRUST OF IT

8    WAS THAT THE DECEMBER 2020 SUBCOMMITTEE HEARING DIDN'T

9    CONSTITUTION LEGITIMATE LEGISLATIVE ACTIVITY.  CERTAINLY THE

10   FORM OF IT WAS.  IT WAS A COMMITTEE MEETING --

11       **MR. SAMUEL:**  RIGHT.

12       **THE COURT:**  -- IN THE SENATE.  SO IT IS, AT LEAST

13   DEFINITIONALLY, LEGISLATIVE ACTIVITY.  THERE IS ARGUMENT MADE

14   BY THE DISTRICT ATTORNEY'S OFFICE THAT IT WASN'T LEGITIMATE.

15   I'LL LET THEM GIVE WHATEVER TIME THEY WANT TO DO.  IF I NEED

16   ANY FEEDBACK FROM YOU BECAUSE I'M PERSUADED BY WHAT THEY SAY,

17   I'LL LET YOU KNOW.

18       **MR. SAMUEL:**  OKAY.  CAN I -- ONE SECOND.

19       **MR. DURHAM:**  JUDGE, QUICKLY.  IT'S JIM DURHAM.  AS FAR

20   AS PRONOUNCING NAMES CORRECTLY, IT IS LIGON.

21       **THE COURT:**  SOMEONE TOLD ME LIGON.  I APOLOGIZE.

22       **MR. SAMUEL:**  IT WASN'T ME, JIM.  I'VE ALWAYS CALLED HIM

23   'SENATOR LIGON.'

24       **THE COURT:**  THANK YOU, SIR.

25       **MR. SAMUEL:**  IS THAT THE ONLY THING YOU WANTED TO SAY,

1  JIM?

2      **MR. DURHAM:**  FOR NOW.

3      **MR. SAMUEL:**  EARLIER NEXT TIME.

4  CAN I ADD JUST A FEW SECONDS.

5      **THE COURT:**  YES.

6      **MR. SAMUEL:**  A SECOND OR TWO BEFORE MS. CLARK PALMER.

7  I DON'T WANT PEOPLE RUNNING TO YOU DURING THE SESSIONS,

8  DURING THE GRAND JURY APPEARANCES, AND ASKING, WELL, THEY

9  DIDN'T FRAME THE QUESTION RIGHT.  SO I THINK WE SHOULD GET

10  SPECIFIC.  AND THE QUESTION IS:  "WHAT -- HOW ARE THEY GOING

11  TO ASK THE QUESTION WITH 'WHOM DID YOU SPEAK?'"

12  OBVIOUSLY, THERE'S GOING TO HAVE TO BE SOME NARROWING

13  ABOUT WHO THEY WANT TO KNOW ABOUT.  THEY MAY SAY, "WHO DID

14  YOU SPEAK TO ON DECEMBER 2ND?"  THEY MAY SAY, "WHO DID YOU

15  SPEAK TO, YOU DON'T HAVE TO TELL US THE TOPIC, ABOUT THE

16  ELECTION?"  WELL, NOW, YOU'RE GET NOTHING TO THE CONTENT.

17  SO, WE'RE GOING TO HAVE TO REALLY THINK ABOUT HOW THAT

18  QUESTION COULD BE ASKED IF YOU COME TO THAT MIDDLE GROUND.

19      **THE COURT:**  RIGHT.

20      **MR. SAMUEL:**  HOW IS THE QUESTION GOING TO BE ASKED WHEN

21  THE QUESTION ITSELF DOESN'T ANSWER WHAT IS THE CONTENT?  IT'S

22  LIKE THE DOCUMENT SEARCHES, PUBLIC CASE, YOU KNOW, WHERE THEY

23  ASK THE QUESTION, AND BECAUSE YOU'VE ANSWERED IT, OBVIOUSLY

24  IT'S ON TAXPAYER MONEY.

25      **THE COURT:**  RIGHT.

33

1          MR. SAMUEL:  THANK YOU.

2          THE COURT:  THANK YOU.

3          MR. WAKEFORD, YOU SAT VERY PATIENTLY.

4          MR. WAKEFORD:  WELL, YOUR HONOR, THERE HAVE BEEN A FEW

5     THINGS COVERED.  SO WHERE WOULD YOU LIKE ME TO BEGIN?

6          THE COURT:  WHEREVER YOU WANT.

7          MR. WAKEFORD:  OKAY.  WELL, LET'S BEGIN WITH

8     THIRD-PARTY COMMUNICATIONS SINCE THAT IS WHAT MOST OF THE

9     DISCUSSION HAS BEEN ABOUT.

10         I WILL DIRECT YOUR HONOR TO THE EXACT LANGUAGE OF

11    GRAVEL AND ITS HOLDING DELINEATED IN THAT CASE WHAT KIND OF

12    QUESTIONING WOULD BE ALLOWED.  AND IN GRAVEL, THE SUPREME

13    COURT SAID THAT THERE COULD BE NO QUESTIONING OF A SENATOR OR

14    HIS AIDE EXCEPT AS IT PROVE RELEVANT TO INVESTIGATING

15    POSSIBLE THIRD-PARTY CRIME, POSSIBLE THIRD-PARTY CRIME,

16    CONCERNING ANY ACT IN ITSELF, NOT CRIMINAL, PERFORMED BY THE

17    CENTER OR BY HIS AIDES IN THE COURSE OF THEIR EMPLOYMENT IN

18    PREPARATION FOR THE SUBCOMMITTEE HEARING.

19         THE COURT:  SEEMS LIKE IT'S TAILORED FOR YOUR

20    INVESTIGATION.

21         MR. WAKEFORD:  AND IT DISCUSSES, IT SAYS -- IT'S

22    TALKING ABOUT ANY ACT.  AND IT'S SORT OF BACKWARDS BECAUSE

23    IT'S TALKING ABOUT IN THE NEGATIVE HERE, HERE ARE THE THINGS

24    YOU CAN'T TALK ABOUT HERE, EXCEPT THIS.

25         SO THEN, THEREFORE, IT'S ANY ACT THAT IS -- THAT PROVES

1    RELEVANT TO INVESTIGATING POSSIBLE THIRD-PARTY CRIME

2    PERFORMED BY THE SENATOR OR HIS AIDES IN PREPARATION FOR THE

3    SUBCOMMITTEE HEARING.

4         THAT IS THE EXTENT OF MY RESPONSE THAT *GRAVEL* IS CLEAR

5    IN THAT INSTANCE THAT THAT IS THE SCOPE OF WHAT CAN BE

6    QUESTIONED.

7         ADDITIONALLY, WE'VE TALKED A LITTLE BIT ABOUT THE NINTH

8    CIRCUIT CASE, THE *MILLER* CASE.  AS WE STATED IN OUR BRIEF,

9    THAT IS A CIVIL CASE.

10        SO ON ITS TERMS, IT'S JUST NOT APPLICABLE IN THIS

11   SITUATION.  AND THE CONCERNS DISCUSSED MAY BE APPLICABLE

12   ABOUT FREEZING POSSIBLE SOURCES OF INFORMATION OR A CHILLING

13   DEBATE OR COMMUNICATION WITH CONSTITUENTS OR SOMETHING.  THAT

14   MAY BE A CONCERN THAT IS RELEVANT IN A CIVIL CASE WHERE WE'RE

15   WEIGHING CONCERNS, WEIGHING THE IMPORTANCE OF THE IMMUNITY

16   AGAINST A PRIVATE LITIGATION.

17        WHAT *GRAVEL* DOES IS SAY THIS IS A CRIMINAL

18   INVESTIGATION.  SO THE INQUIRY IS DIFFERENT.  THAT'S WHAT

19   THIS IS.

20        THE ORDER IMPANELLING THE SPECIAL PURPOSE GRAND JURY

21   REFERS BACK TO THE REQUEST ORIGINALLY MADE.  AND IT SAYS THAT

22   THE GRAND JURY MAY INVESTIGATE ANY FACTS AND CIRCUMSTANCES

23   RELATING DIRECTLY OR INDIRECTLY, WHICH IS LANGUAGE DIRECTLY

24   FROM THE STATUTE AUTHORIZING SPECIAL PURPOSE GRAND JURIES,

25   ANY OF THAT RELATED TO POSSIBLE CRIMINAL DISRUPTIONS OF THE

1   2020 ELECTIONS.

2        SO THAT'S THE REMIT.  THAT'S WHAT THE SPECIAL PURPOSE

3   GRAND JURY CAN LOOK AT.  IT'S, AS YOU'VE ALREADY STATED, WE

4   CANNOT GO OUTSIDE OF THAT.  BUT TO THE EXTENT THAT IT'S AN

5   INVESTIGATION OF POSSIBLE THIRD-PARTY CRIME WITHIN THAT

6   SPHERE -- I'M SORRY.

7        (CELL PHONE RINGING.)

8        **THE COURT:**  IS THAT YOU?

9        **MR. WAKEFORD:**  I DON'T THINK SO, JUDGE.

10       **THE COURT:**  KEEP GOING.

11       **MR. WAKEFORD:**  TO THE EXTENT THAT THIS IS -- THAT THERE

12  ARE QUESTIONS WITHIN THAT SPHERE ABOUT POSSIBLE THIRD-PARTY

13  CRIMES COMMITTED WITH THAT EXACT DESCRIPTION, THEN THE GRAND

14  JURY CAN ASK ABOUT ACTS AND PREPARATIONS.  THAT'S IT.

15       **THE COURT:**  SO LET'S EXPLORE THAT SOME.

16       UNDER YOUR REASONING, IS IT AN APPROPRIATE QUESTION TO

17  ASK FORMER SENATOR LIGON:  DID YOU TALK WITH THE LIEUTENANT

18  GOVERNOR ABOUT THIS, YOUR PREPARATIONS FOR IT?  AND WHAT WAS

19  HIS ADVICE?

20       **MR. WAKEFORD:**  WELL, THAT'S -- IT'S INTERESTING THAT

21  YOU CHOSE THE LIEUTENANT GOVERNOR BECAUSE THAT IN ITSELF IS A

22  THORNY EXAMPLE BECAUSE YOU HAVE STATED ALREADY THAT YOU FELL

23  LIKE COMMUNICATIONS BETWEEN MEMBERS OF, YOU KNOW --

24       **THE COURT:**  THAT'S WHY I'M ASKING, BECAUSE I DON'T

25  THINK *GRAVEL* SAYS THAT THE LEGISLATOR OR HER STAFFER COULD BE

1    ASKED ABOUT COMMUNICATIONS WITHIN CHAMBERS, IF YOU WILL.  I'M

2    SENATOR LIGON AND I'M SPEAKING WITH MY STAFFER ABOUT GETTING

3    READY FOR THE SUBCOMMITTEE HEARING.

4        I DON'T THINK THE FACT THAT YOU HAVE THIS INVESTIGATION

5    INTO POTENTIAL THIRD-PARTY CRIMES EMPOWERS YOU TO ASK THAT

6    QUESTION.

7        **MR. WAKEFORD:**  I UNDERSTAND.

8        **THE COURT:**  IN OTHER WORDS, IMMUNITY IS IN TACT FOR

9    THAT.

10        SIMILARLY, FORMER SENATOR LIGON SPEAKING TO THE

11    LIEUTENANT GOVERNOR OR ANOTHER SENATOR OR A REPRESENTATIVE

12    ABOUT PREPARATIONS FOR CONDUCT AT -- RESULTS FROM.  ARE WE

13    GOING TO DO A REPORT?  WHO'S GOING TO WRITE IT?  SENATOR

14    LIGON SAYS HE'LL GOING TO WRITE IT.  GREAT.

15        THAT AGAIN, IS THE CLASSIC IMMUNITY PROTECTS, DESPITE

16    THE EXISTENCE OF A THIRD -- AN INVESTIGATION INTO THIRD-PARTY

17    CRIMES.

18        WHAT I THINK *GRAVEL* SAYS IT'S GOING OUTSIDE THAT BUBBLE

19    WHERE IT IS ALLOWED, CONTRARY TO *MILLER*, A CIVIL CASE.  AND

20    IF YOU'RE SAYING THE SAME THING, THEN I'M FOLLOWING WHAT

21    YOU'RE SAYING.

22        **MR. WAKEFORD:**  I HAVE ABSOLUTELY NOTHING TO ADD TO THAT

23    FORMULATION.

24        **THE COURT:**  ALL RIGHT.  TELL ME IF YOU WANT TO SHARE

25    TODAY BEYOND WHAT YOU'VE PUT IN THE DISTRICT ATTORNEY'S

1    RESPONSE TO THE MOTION TO QUASH ABOUT A CLAIM THAT THE

2    LEGISLATIVE ACTIVITIES THAT OCCURRED ON DECEMBER 2, 2020 IN

3    THE SUBCOMMITTEE THAT FORMER SENATOR LIGON CHAIRED WERE NOT

4    LEGITIMATE LEGISLATIVE ACTIVITY.

5        **MR. WAKEFORD:**  POINT OF CLARIFICATION, YOUR HONOR, I

6    THINK IT'S DECEMBER 3RD, 2020.

7        **THE COURT:**  OKAY.  ONE DAY LATER.

8        **MR. WAKEFORD:**  YES, YOUR HONOR.

9        THE POINT THAT WE HAD TO REACH AND THAT WE FELT LIKE WE

10   HAD A DUTY TO MAKE ON BEHALF OF THE SPECIAL PURPOSE GRAND

11   JURY WAS THAT THE INVOCATION OF PRIVILEGE HERE SPOKE TO SOME

12   LOFTY IDEALS AND THE REASON FOR THAT PRIVILEGE EXISTING, ALL

13   OF WHICH ARE TRUE.

14       THE INDEPENDENCE OF THE LEGISLATIVE BRANCH IS, OF

15   COURSE, IMPORTANT.  THAT'S WHY IT'S THERE.  THE INTEGRITY,

16   THE LEGITIMACY OF THE LEGISLATIVE BRANCH, ALL OF THESE THINGS

17   WERE MENTIONED AND ALL OF THOSE IMPORTANT.  BUT WE FELT, THE

18   DISTRICT ATTORNEY'S FELT, THAT IT WOULD BE -- THAT WE COULD

19   NOT GO WITHOUT COMMENTING UPON.

20       INVOKING THIS PRIVILEGE TO AVOID QUESTIONS FROM GEORGIA

21   CITIZENS ON THE BASIS OF LEGITIMACY WHEN THE ACTIONS

22   CONTEMPLATED HERE, ALTHOUGH, YES, IN THE HEARING, IN THE

23   REPORT, SUGGESTED ILLEGAL, EXTRAJUDICIAL ACTIVITIES BY THE

24   LEGISLATURE.  AND IF THE WATCH WORD, IF THE IMPORTANT WORD IS

25   'LEGITIMACY,' WE FELT LIKE A COMMENT HAD TO BE MADE ABOUT

1    WHETHER THAT IS A LEGITIMATE LEGISLATIVE ACT.

2         AND I UNDERSTAND, AS YOU SAID, THE FORM OF IT, IF THE

3    INQUIRY ENDS AT THE FORM OF IT, THAT IS ONE THING.  BUT THE

4    SUBSTANCE OF IT CANNOT POSSIBLY BE SAID TO BE LEGITIMATE; OR

5    LET ME PUT IT THIS WAY:  THE DISTRICT ATTORNEY'S OFFICE WILL

6    NOT CONCEDE THAT THE SUBSTANCE OF THAT IS LEGITIMATE.

7         **THE COURT:**  SO LEGISLATURES, ALMOST ON AN ANNUAL BASIS,

8    PASS LAWS THAT COURTS ULTIMATELY CONCLUDE ARE INVALID FOR

9    CONSTITUTIONAL REASONS, ANY NUMBER OF REASONS.

10        THE FACT THAT THE LEGISLATORS MAY HAVE BEEN WELL

11   INTENTIONED OR NOT, WHICH WE DON'T EXPLORE BECAUSE OF THE

12   IMMUNITY, RESULTS IN A LAW THAT THE COURT LATER ON THROWS

13   OUT, EFFORTS THAT WERE MADE, YOU CAN'T DO THAT

14   UNCONSTITUTIONAL OR YOUR OWN LAWS PREVENT YOU FROM DOING

15   THAT, WOULDN'T BE A REASON TO GO BACK, I THINK, AND SAY LET'S

16   EXPLORE THE HOW AND THE WHY AND THE WHO OF THAT SUBCOMMITTEE

17   THAT YIELDED THAT LAW THAT PREVENTED TRANSGENDER INDIVIDUALS

18   FROM PARTICIPATING IN HIGH SCHOOL SPORTS, SOMETHING LIKE

19   THAT.  SOME DAY, THAT MAY BE CHALLENGED.  IT MAY GET

20   REVERSED.  BUT I THINK IF A LAWYER STOOD UP ON BEHALF OF A

21   LEGISLATOR WHO HELPED GET THAT PASS WHO IS THEN GOING TO BE

22   INVESTIGATED FOR 'WHERE DID YOU GET YOUR INFORMATION THAT

23   THIS WAS AN ISSUE OR A PROBLEM THAT NEEDED ATTENTION,' THE

24   DOOR WOULD BE SLAMMED IN THAT EFFORT TO EXPLORE THAT.

25        HOW IS THIS DIFFERENT, YOUR CONCLUSION THAT -- AND

1    MAYBE ULTIMATELY CORRECT CONCLUSION THAT THE GEORGIA

2    LEGISLATOR DIDN'T HAVE THE AUTHORITY TO SUBMIT A DIFFERENT

3    SLATE OF ELECTORS?

4        **MR. WAKEFORD:**  I UNDERSTAND THE POINT THAT YOUR HONOR

5    IS MAKING.  AND I WOULD SIMPLY RESPOND THAT THE POINT THAT

6    THE DISTRICT ATTORNEY'S OFFICE WAS TRYING TO MAKE IN ITS

7    RESPONSE WAS IN RESPONSE TO THE INVOCATION OF THE IMMUNITY ON

8    THE BASIS OF LEGITIMACY.  AND WE ACTUALLY HEARD FROM OPPOSING

9    COUNSEL, MR. SAMUEL, EARLIER TODAY OR EARLIER IN THIS HEARING

10    THAT THE INVOCATION WOULD INHIBIT TRUTHFUL COMMUNICATION.

11    AND WE THINK IN THE CONTEXT HERE WITH WHAT OCCURRED, THAT

12    IS --

13        **THE COURT:**  IRONIC.

14        **MR. WAKEFORD:**  -- NOT -- IRONIC.  IT'S NOT SOMETHING

15    THAT CAN GO UNCOMMENTED UPON.  BUT I UNDERSTAND WHERE YOUR

16    HONOR -- WHAT YOUR HONOR IS SAYING.

17        IF I COULD JUST HAVE ONE MOMENT, YOUR HONOR.

18        **THE COURT:**  SURE.

19        (DISCUSSION OFF THE RECORD.)

20        **MR. WAKEFORD:**  THANK YOU, YOUR HONOR.  I JUST HAD TO

21    CONFER WITH THE TABLE THERE FOR A SECOND.

22        **THE COURT:**  NOT A PROBLEM.

23        **MR. WAKEFORD:**  THERE WAS ANOTHER SUBJECT THAT WAS

24    BROUGHT UP.  AND AS I'VE SAID, I BELIEVE OUR POSITION ON THAT

25    IS CLEAR.  AND WE'VE MADE THE POINT WE INTENDED TO MAKE.  BUT

1  WE CAN PROVIDE MORE INFORMATION TO THE COURT AS IT REQUESTS

2  OF THE PARTY.

3      **THE COURT:**  OKAY.

4      **MR. WAKEFORD:**  THERE WAS MENTION OF THE FIFTH AMENDMENT

5  AS WELL.  AND I WANT TO MAKE CLEAR THAT THIS CONVERSATION IS

6  ABOUT LEGISLATIVE IMMUNITY AND PRIVILEGE.

7      THE FIFTH AMENDMENT RIGHTS ARE A SEPARATE CONVERSATION

8  AND ALSO NEVER GO AWAY.

9      **THE COURT:**  TO BE CLEAR, I BROUGHT IT UP.  MR. SAMUEL

10  DIDN'T.  AND IT WAS JUST AS AN EXAMPLE OF, SURE, IF THE

11  CONVERSATION VEERS IN THIS DIRECTION, IT MIGHT BE A FIFTH

12  AMENDMENT PRIVILEGE THAT'S BEING INVOKED. THAT WAS NOT

13  MR. SAMUEL'S POINT.  I WAS JUST TRYING TO WORK THROUGH THE

14  CONTOURS OF HIS ARGUMENT.

15      **MR. WAKEFORD:**  RIGHT.  AND I UNDERSTAND THAT.  I WASN'T

16  SUGGESTING THAT IT WAS BROUGHT UP BY HIM.  I JUST MEANT IT

17  WAS MENTIONED.  I DON'T WANT TO CAST DISPERSIONS.

18      **THE COURT:**  YES.  IT WAS MENTIONED.

19      **MR. WAKEFORD:**  NO. BUT IT WAS MENTIONED.  AND I WANTED

20  TO CLARIFY FOR YOUR HONOR.  THIS IS THE QUESTION ABOUT THE

21  APPLICATION OF LEGISLATIVE PRIVILEGE AND IMMUNITY.  AND ONE

22  PLACE WHERE IT OVERLAPS WITH THE FIFTH AMENDMENT IS, AND THIS

23  IS VERY CLEAR, CRIMINAL ACTS ARE NOT IMMUNIZED.

24      AND SO THERE MAY BE SITUATIONS WHERE A WITNESS CAN BE

25  CALLED BEFORE THE SPECIAL PURPOSE GRAND JURY AND ASKED A

1    QUESTION, AND THEIR FIFTH AMENDMENT RIGHT -- AND THEY CAN

2    INVOKE THEIR FIFTH AMENDMENT RIGHT.  THERE'S NOTHING THAT ANY

3    POWER ON EARTH CAN STOP THEM FROM DOING IN THAT SCENARIO.

4    BUT THE LEGISLATIVE PRIVILEGE HAS NOTHING TO DO WITH IT.  AND

5    I JUST WANTED TO BE CLEAR ABOUT THAT.  AND THE PURPOSE OF THE

6    SPECIAL PURPOSE GRAND JURY IS TO INVESTIGATE THAT SUBJECT.

7    IT IS NOT TO HAND DOWN CHARGES LIKE A NORMAL GRAND JURY.

8         **THE COURT:**  ONLY RECOMMENDATIONS.

9         **MR. WAKEFORD:**  RIGHT.

10        SO WITNESSES, TO THE EXTENT THAT AS WE'VE GONE OVER,

11   THEY ARE RELEVANT AND HAVE INFORMATION THAT THEY CAN PROVIDE

12   THE SPECIAL PURPOSE GRAND JURY, COME FORWARD.  IF THEY HAVE

13   RIGHTS THAT THEY CAN INVOKE, THEY CAN STILL DO IT THERE.

14        BUT THE QUESTION IS WHETHER THE QUESTION CAN BE ASKED

15   IN THE FIRST PLACE.  AND IF A QUESTION IS ABOUT -- WELL,

16   WE'VE ALREADY COVERED ONE AREA WHERE THE QUESTIONS CAN BE

17   ASKED.  BUT IN OTHER AREAS, IF THE QUESTION IS ABOUT

18   COMMISSION OF A CRIME, PRIVILEGE DOES NOT PREVENT THE ASKING

19   OF THE QUESTION.  BUT THE FIFTH AMENDMENT PRIVILEGE EXISTS

20   FOR THEM TO SAY, 'I DON'T HAVE TO ANSWER IT.'

21        **THE COURT:**  RIGHT.  I AGREE.

22        **MR. WAKEFORD:**  I JUST WANTED TO MAKE THAT

23   CLARIFICATION.

24        **THE COURT:**  AND MUCH OF THE CASE LAW MR. SAMUEL

25   HIGHLIGHTED IN HIS MOTION, I THINK ONE OF THEM IS GEORGIA

1    BASED, REPRESENTATIVE FORMER CONGRESSMAN SWINDALL.  IT'S TOO

2    LATE IF YOU LET THE QUESTION BE ASKED AND THEN MAY BE EVEN

3    ANSWERED AND SAY, WELL, LET'S STUFF THAT GENIE BACK IN THE

4    BOTTLE.  THAT'S TO THE IMMUNITY.  THAT'S WHY WE'RE WORKING

5    OUT THIS OUT IN ADVANCE.

6        **MR. WAKEFORD:**  RIGHT.

7        **THE COURT:**  SO THAT SOMEONE DOESN'T FEEL COMPELLED TO

8    ANSWER SOMETHING WHERE LATER ON SOMEONE DECIDES, OH, THAT

9    ONE, YOU DIDN'T NEED TO ANSWER BECAUSE THAT WAS PROTECTED BY

10   THE IMMUNITY.

11       SO I GUESS MY LAST QUESTION FOR YOU, AND IF THERE ARE

12   OTHER THINGS YOU WANT TO COVER, LET ME KNOW, I'VE SHED SOME

13   LIGHT ON ONE DIMENSION OF A GUIDELINE THAT I'D LIKE TO SET

14   FORTH, WHICH IS GOING TO BE ALONG THE LINES OF THE

15   PERMISSIBILITY OF ASKING A LEGISLATIVE WITNESS ABOUT CONTACTS

16   WITH THIRD PARTIES, SO OUTSIDE OF THE LEGISLATIVE SPHERE,

17   SENATOR LEE, WITH WHOM DID YOU SPEAK ABOUT X. I SUSPECT I'M

18   GOING TO SAY THAT'S OKAY.

19       ARE THERE OTHER DIMENSIONS OF YOUR INQUIRY THAT YOU

20   WOULD WANT TO TRY TO LAY SOME GENERAL FRAMEWORK IN PLACE SO

21   THAT IT DOESN'T EXPLODE EVERY TIME IT COMES UP?

22       **MR. WAKEFORD:**  I THINK -- AND I'M GLAD YOUR HONOR

23   ASKED.  I THINK THAT CERTAINLY WE'VE GOTTEN FAR ENOUGH TO SAY

24   QUESTIONS CAN BE ASKED, WHO DID YOU TALK TO, WHO DID YOU TALK

25   TO PRIOR TO THE HEARING.

1          **THE COURT:**  WELL, THERE MAY BE SOMETHING GOING AROUND

2     THAT TO MR. SAMUEL'S POINT, 'WELL, YOU KNOW WHAT, MY STAFF

3     GETS 10,000 CALLS A WEEK.  AND WHEN WE WERE GETTING TOWARDS

4     DECEMBER 3RD OF 2020, IT WAS A HUNDRED THOUSAND CALLS A WEEK

5     CAUSE I'M A SENATOR.'  MAYBE I'M ADDING TOO MANY ZEROS

6     BECAUSE IT'S A STATE SENATOR.  AND SO I DIDN'T MEAN IT QUITE

7     LIKE THAT.  I ASSUMED IT WOULD BE A LITTLE MORE CABINED,

8     EITHER 'DID YOU TALK TO SO AND SO' OR 'WITH WHOM DID YOU

9     SPEAK WHO WASN'T JUST A CONSTITUENT,' THAT KIND OF THEM.

10         BUT EITHER WAY, ASSUMING THAT CATEGORY OF QUESTIONS,

11    ASSUMING IT'S ALLOWED, ARE THERE OTHER AREAS THAT YOU KNOW

12    WILL BE RECURRING ACROSS LEGISLATIVE WITNESSES THAT YOU THINK

13    WE OUGHT TO TRY TO SORT OUT IN ADVANCE?

14         **MR. WAKEFORD:**  I THINK THAT GOING PAST MERELY CONTACTS

15    TO THE ACTUAL CONVERSATIONS IS SOMETHING THAT THE SPECIAL

16    PURPOSE GRAND JURY WILL LIKELY, ALMOST CERTAINLY WANT TO ASK

17    ABOUT. "OKAY.  WELL, YOU TALKED TO THEM.  DID YOU TALK TO

18    'X'?"

19         "YES, I DID."

20         "WELL, WHAT DID THEY SAY?"

21         AT THAT POINT, I THINK THAT *GRAVEL* MAKES CLEAR THAT ANY

22    ACTS, ANY ACT, IS MORE EXPANSIVE THAN JUST WHAT HAPPENS.  AND

23    THE CONTENT OF THE CONVERSATION, "WHAT DID THEY TELL YOU,"

24    DOESN'T SPEAK TO -- WE'RE NOT ASKING ABOUT MOTIVATION.  WE'RE

25    NOT ASKING ABOUT WHY THINGS OCCURRED.  WE'RE ASKING ABOUT

1    WHAT INFORMATION CAME TO YOU AS YOU PREPARED FOR THE HEARING.

2         AND THIS -- *GRAVEL* IS ABOUT SOURCES.  AND TO THE EXTENT

3    THAT THERE IS INFORMATION COMING IN IN PREPARATION, THEN THE

4    SPECIAL PURPOSE GRAND JURY SHOULD BE ALLOWED TO ASK, WHAT

5    INFORMATION.

6         "OKAY.  SO YOU SPOKE TO JOHN Q. WELL, WHAT DID JOHN Q

7    SAY?"  I THINK THAT'S THE NEXT LOGICAL STEP.  AND THAT

8    CATEGORY OF QUESTION, I THINK, WOULD BE ALLOWED, WITH THE

9    EXCEPTION, OF COURSE, THAT WE CAN'T SAY, "OKAY.  IS THAT WHY

10   YOU DID WHAT YOU DID?"  WHY DID YOU, YOU KNOW, ANY OF THAT

11   WOULD BE FORECLOSED.  BUT "WHAT DID THEY SAY TO YOU" I THINK

12   IS ENCOMPASSED WITHIN THE RULING IN *GRAVEL*.

13        **THE COURT:**  IT DOES GET CLOSER TO THE SPHERE, THE AREA

14   OF MOTIVATION.  IF THE ANSWER IS, "I ONLY SPOKE WITH THIS ONE

15   PERSON, WHAT DID THIS PERSON SAY," IT WOULD BE HARD TO

16   INSULATE THAT FROM NOW YOU'RE EXPLORING POTENTIAL MOTIVATORS.

17        AND TO MR. SAMUEL'S POINT, ANY FEEDBACK, ANY INPUT THAT

18   SOMEONE RECEIVED FROM A THIRD PARTY IS A POTENTIAL MOTIVATOR.

19   AND I APPRECIATE YOU'RE NOT SAYING THE FOLLOW UP WOULD NOT

20   BE.  YOU AGREE THAT IT WOULD BE IMPERMISSIBLE. "OH.  SO

21   THAT'S WHY YOU DID THAT," "THAT'S WHERE THIS REPORT CAME

22   FROM," BECAUSE THEN YOU'RE GET INTO THE THOUGHT PROCESSES AND

23   THE REASONING.

24        SO I'M GOING TO WORK THROUGH A LITTLE BIT ABOUT THE

25   CONTENT QUESTIONS THAT YOU WANT TO ASK, PARTICULARLY BECAUSE

1    IS THERE NOT A NOT A SAFER, EQUALLY VALID SOURCE?  SURE.

2    IT'S A CONVERSATION.  AND SO THAT WOULD BE TALK TO FRED

3    SMITH.  NOT THAT -- I UNDERSTAND THERE COULD BE ISSUES WITH

4    THAT AS WELL.  BUT I THINK PUSH BACK AND PROTECTION WOULD BE

5    NOW YOU KNOW WHO I TALKED TO.  THEY CAN TELL YOU WHAT IT WAS

6    WE TALKED ABOUT.

7        **MR. WAKEFORD:**  WELL, YOUR HONOR, WE HAVE TWO COMPETING

8    CONCERNS HERE.  THERE'S THE CONCERN THERE IS LEGISLATIVE

9    PRIVILEGE AND IMMUNITY AND ALL OF THE CONCERNS THAT ARE

10   PROTECTED BY THEM.  AND THERE'S ALSO THE DUTY OF THE GRAND

11   JURY TO PURSUE ITS AGREEMENT, TO DO ITS DUTY, AND TO

12   THOROUGHLY INVESTIGATE POSSIBLE CRIMINAL ACTIVITY.

13       AND SO I THINK WHEN YOU'RE TALKING ABOUT 'WHAT DID THIS

14   PERSON SAY TO YOU,' THAT WE ARE DRAWING BEHIND THERE WHERE

15   THERE'S LEGITIMATE INQUIRY ALLOWED TO BE MADE BY THE SPECIAL

16   PURPOSE GRAND JURY WITHOUT GETTING INTO MOTIVATIONS OF AN

17   INDIVIDUAL MEMBER.

18       **THE COURT:**  OKAY.

19       **MR. WAKEFORD:**  I ALSO WANTED TO MENTION ONE OTHER

20   THING, YOUR HONOR, WHICH -- THAT WE BE NOT GOTTEN INTO, AND

21   THAT IS ACTUALLY COMMUNICATION -- NEVER MIND.  I THINK YOUR

22   HONOR SAID THAT YOUR UNDERSTANDING RIGHT NOW IS

23   COMMUNICATIONS BETWEEN MEMBERS AND THEIR STAFF, RIGHT?

24       **THE COURT:**  PROTECTED.

25       **MR. WAKEFORD:**  UNDERSTOOD.

1          **THE COURT:**  CORRECT.  SO THAT SPHERE OR BUBBLE I WAS

2     DRAWING, I THINK VERY, VERY CLEARLY, STRONGLY PROTECTS,

3     IMMUNIZES LEGISLATOR-TO-LEGISLATOR COMMUNICATION, LEGISLATOR

4     TO STAFF, STAFF TO STAFF, THAT'S ALL WITHIN -- IF YOU THINK

5     ABOUT IT SORT OF FIGURATIVELY, THAT'S HAPPENING UNDER THE

6     GOLD DOME OR THOSE FLAT ROOF BUILDINGS NEARBY.  AND THAT'S

7     THE PROTECTION.  BUT WHEN YOU GET THAT PHONE CALL OR THAT

8     E-MAIL OR 'I WAS BACK IN MY DISTRICT AND I TALKED WITH SO AND

9     SO ABOUT X,' THAT'S THE THIRD PARTY THAT I THINK *GRAVEL*, IN

10    THIS NARROW CONTEXT WITH THE AGREEMENT THAT THE SPECIAL

11    PURPOSE GRAND JURY HAS INVESTIGATED POSSIBLE THIRD-PARTY

12    CRIMES, OPENS UP.

13         **MR. WAKEFORD:**  OKAY.  IF I CAN CONFER WITH THE TABLE

14    JUST ONE SECOND, YOUR HONOR.

15         **THE COURT:**  CONFER AGAIN.  NOT A PROBLEM.

16         (DISCUSSION OFF THE RECORD.)

17         **MR. WAKEFORD:**  ALL RIGHT.  WELL, YOUR HONOR, UNLESS YOU

18    HAVE ANY FURTHER QUESTIONS AS TO THIS, THIS SORT OF THE

19    TOPICS WE'VE COVERED, IF THERE'S ANYTHING ELSE, I STILL THINK

20    WE HAVE SOME SCHEDULING AND SORT OF LOGISTICAL CONVERSATIONS

21    TO HAVE.  BUT I'LL SIT DOWN AT THIS POINT.

22         **THE COURT:**  GREAT.  AND I WON'T NEGLECT TO SAY IS THERE

23    ANYTHING ELSE BEFORE WE WRAP UP, BECAUSE WE WILL COVER THE

24    LOGISTICAL.  THAT'S WHY ONE REASON WHY MR. DURHAM IS ON FOR

25    HIS CLIENT, FORMER SENATOR LIGON, IS TO SORT OUT WHEN THAT

1    GRAND JURY APPEARANCE MIGHT OCCUR.

2        **MR. WAKEFORD:**  WELL, THE QUESTION WAS:  IS THERE

3    ANYTHING ELSE?  I'M SURE THERE WILL BE.  BUT THIS IS SORT OF

4    WHERE WE RUN INTO EACH -- THE INQUIRY FOR EACH MEMBER, EACH

5    WITNESS, IS GOING TO NECESSARILY BE A LITTLE DIFFERENT.

6        **THE COURT:**  IT WILL BE.

7        **MR. WAKEFORD:**  SO THERE WILL BE OTHER SUBJECTS.  TO THE

8    EXTENT THAT IT WILL APPLY TO EVERYONE, I DON'T KNOW THAT

9    THERE'S ANYTHING I'M GOING TO SPEAK THROUGH NOW.

10        **THE COURT:**  OKAY.  AND I SUSPECT THAT AS WE WORK

11   THROUGH THIS OVER THE COMING WEEKS, WE'LL DEVELOP ADDITIONAL

12   GUIDELINES.  AND IT MAY WELL BE, AS YOUR TEAM, THE DISTRICT

13   ATTORNEY'S TEAM, THINKS THROUGH IT MORE, THEY CAN BUCKET

14   WITNESSES INTO, WELL, THESE ARE FOLKS WHERE WE WANT TO

15   UNDERSTAND THIRD-PARTY SOURCES AND THESE ARE FOLKS WHERE WE

16   NEED TO KNOW WHEN THEY'RE SOMEWHERE.  MAYBE THAT'S A

17   DIFFERENT SET OF CONCERNS FOR MR. SAMUELS AND HIS TEAM.  AND

18   WE'LL HAVE TO WORK THROUGH THAT.

19        **MR. WAKEFORD:**  THANK YOU, YOUR HONOR.

20        **THE COURT:**  YOU'RE WELCOME.

21        I DIDN'T INVITE YOU UP BUT TELL ME WHAT YOU WANT TO

22   TELL ME, MR. SAMUEL.

23        **MR. SAMUEL:**  WELL, I WANT TO RESPOND TO SOME OF THE

24   WHAT THE PROSECUTION SAID.  BUT IF YOU DON'T THINK IT'S

25   NECESSARY...

1          **THE COURT:**  ON THE LEGITIMACY SIDE, I DON'T NEED TO

2     HEAR ANYTHING UNLESS YOU JUST CAN'T LEAVE WITHOUT SAYING IT.

3          **MR. SAMUEL:**  I JUST --

4          **THE COURT:**  YOU CAN'T.  OKAY.

5          **MR. SAMUEL:**  HERE'S THE PROBLEM:  I CAN'T BELIEVE IT'S

6     NOT GOING TO REAR ITS HEAD AGAIN ONLY BECAUSE IT WAS SUCH AN

7     IMPORTANT PART OF THEIR BRIEF THEY FILED YESTERDAY.  IT WAS

8     THE ESSENCE OF WHY THEY SAID THEY WERE ENTITLED TO DO

9     ANYTHING THEY WANT TO WITH GRAND JURY WITH RESPECT TO SENATOR

10    LIGON.

11          AND IF IN FACT THEY HAD JUST WAIVED THAT ENTIRE

12    ARGUMENT, THEY AGREED IT WAS LEGITIMATE, OR THE INQUIRY IS

13    IRRELEVANT, THEN I SUPPOSE I'D BE WASTING TIME.  BUT I JUST,

14    YOU KNOW.

15          **THE COURT:**  OKAY.  I DIDN'T HEAR THEM WAIVE IT.  I

16    DON'T THINK THEY'VE WAIVED IT.  THEY'VE COMMUNICATED TO ME

17    WHAT THEY FELT THEY NEEDED TO COMMUNICATE.  I UNDERSTAND

18    WHAT'S IN THEIR BRIEF.

19          **MR. SAMUEL:**  AND I HAVEN'T BRIEFED IT BECAUSE THAT --

20    IT WAS NEVER RAISED BEFOREHAND, WHICH IS THE ONLY REASON I

21    WANT TO MAKE OBSERVATIONS ABOUT IT.  I NEVER ADDRESSED THE

22    THAT ISSUE.

23          **THE COURT:**  I UNDERSTAND IF YOU WANT TO MAKE 30 SECONDS

24    OF OBSERVATIONS, YOU CAN. YOU DON'T NEED TO MAKE MORE THAN

25    THAT.

1        **MR. SAMUEL:** OKAY. MY PROBLEM WITH IT IS DEFINING

2    'LEGITIMACY,' WHO'S GOING TO DEFINE IT. IF IT'S YOU, IT

3    SOUNDS LIKE YOU ARE GOING TO. MY PROBLEM WITH IT IS THE

4    REPEATED ASSERTIONS IN THEIR BRIEF THAT THE FINDINGS THAT THE

5    SENATOR MADE WERE FALSE, AS IF SOMEHOW THAT MAKES IT NON

6    LEGISLATIVE. I MEAN, YOU'VE KIND OF OBSERVED YOURSELF. TELL

7    ME WHEN I'M RUNNING OUT OF TIME.

8        SOMETIMES THE LEGISLATORS DO UNBELIEVABLY STUPID

9    THINGS. THEY'RE POLITICIANS.

10       **THE COURT:** I DID NOT SAY 'STUPID,' BUT JUST THAT

11   COURTS --

12       **MR. SAMUEL:** AND UNCONSTITUTIONAL.

13       **THE COURT:** YES.

14       **MR. SAMUEL:** THEY DO ALL KINDS OF THINGS THAT DON'T

15   MAKE SENSE IN HINDSIGHT, BUT THEY INVESTIGATE. THEY'RE

16   OVERSIGHT. THEY'RE TRYING TO FIGURE OUT THE TRUTH ABOUT

17   THINGS.

18       **THE COURT:** SO YOU ACTUALLY DID ARGUE IT IN YOUR

19   MOTION. YOU JUST DIDN'T LABEL IT 'LEGITIMACY.' IT WAS THE

20   IMPORTANCE OF LEGISLATIVE INQUIRY.

21       **MR. SAMUEL:** THAT'S RIGHT.

22       **THE COURT:** AND SOMETIMES THERE ARE OUTCOMES WITH WHICH

23   WE DISAGREE AND ARE REVERSED, ET CETERA. AND IT WAS VERY

24   WELL WRITTEN. AND I READ IT.

25       **MR. SAMUEL:** THANK YOU.

1          **THE COURT:**  YOU'RE WELCOME.

2          **MR. SAMUEL:**  WITH REGARD TO -- IT SOUNDS LIKE THEY'RE

3     NOT AGREEING TO YOUR MIDDLE GROUND.  BUT MAYBE YOU'RE STILL

4     UP ABOUT THAT ANYWAYS ABOUT WHO YOU CAN TALK TO, YOU CAN SAY

5     TO THEM OR ASK THEM.  YOU CAN ASK THEM -- YOU CAN AS FRED BUT

6     YOU CAN'T ASK THE SENATOR.

7          YOU KNOW, I WOULD JUST REMIND THE COURT THAT THE -- THE

8     SPEECH AND DEBATE CLAUSE, OR WHATEVER WE CALL IT, THE SPEECH

9     OR DEBATE CLAUSE, NOT SPEECH AND DEBATE, SPEECH OR DEBATE

10    CLAUSE AND WHAT WE BE IN OUR STATE IS ABSOLUTE.  YOU BEGIN

11    THE PRESENTATION TODAY BY SAYING IT IS AN ABSOLUTE PRIVILEGE

12    WHEN IT APPLIES.  AND WHAT IT SAYS IS, "NO MEMBER SHALL BE

13    LIABLE TO ANSWER IN ANY OTHER PLACE, WHICH INCLUDE THE GRAND

14    JURY, THAT IS A PLACE, FOR ANYTHING SPOKEN IN EITHER HOUSE OR

15    IN ANY COMMITTEE MEETING OF ANY HOUSE."

16         CLEARLY THAT APPLIES TO THE REPORTS.  IT APPLIES TO THE

17    MINUTES.  THEY CANNOT BE ASKED ANYTHING ABOUT THOSE MATTERS.

18    IF THEY WANT TO GO ASK FRED SMITH, THEY CAN ASK FRED SMITH

19    ANYTHING THEY WANT TO ASK HIM.  BUT THERE'S NO EXCEPTION.

20         **THE COURT:**  TRUE.  BUT IT DOESN'T SAY OR COMMUNICATIONS

21    WITH OUTSIDE PARTIES.  IT SAYS --

22         **MR. SAMUEL:**  I UNDERSTAND THAT.

23         **THE COURT:**  -- "IN THE COMMITTEE, THE SUBCOMMITTEES, IN

24    THE REPORTS, ET CETERA."

25         SO IF IT ACTUALLY SAID THAT THERE, YOU WOULDN'T NEED TO

1    RELY ON A NINTH CIRCUIT CASE.

2        **MR. SAMUEL:**  I'D ALSO BRING TO THE COURT'S ATTENTION

3    ANOTHER CASE, *BROWN,* WHICH IS IN OUR BRIEF, WHICH IS A D-C

4    CIRCUIT CASE.  I'D ALSO ASK YOU TO -- AND *BROWN* SAYS YOU

5    CAN'T TALK ABOUT DOCUMENTS THEY RECEIVED, RIGHT?  AND THAT'S

6    THE SAME THING.  YOU'RE TALKING ABOUT OUTSIDE INFORMATION

7    COMING TO YOU WHICH CONFORMS YOUR LEGISLATIVE DECISION

8    MAKING, YOUR DISCRETION.

9        AND I'D ALSO POINT OUT ONE MORE THING, FOR WHAT IT IS

10   WORTH:  WE ARE NOT BOUND BY THE SUPREME COURT DECISION IN

11   *GRAVEL,* AS YOU'VE OBSERVED BEFORE.  IT'S VERY PERSUASIVE.

12   IT'S VERY HELPFUL IN UNDERSTANDING HOW THE FEDS DEALS WITH

13   THIS ISSUES.

14       YOU OUGHT TO READ THE DISSENT IN *GRAVEL*.  IT ADDS

15   ANOTHER 20 OR 30 PAGES.  JUSTICE STEWART SAYS, ABSOLUTELY.

16   YOU CAN'T ASK ANYTHING ABOUT OUTSIDE SOURCES; JUSTICE

17   BRENNAN, YOU CAN'T ASK ANYTHING ABOUT OUTSIDE SOURCES.

18       WE DON'T KNOW HOW THE SUPREME COURT OF GEORGIA WILL

19   RULE.  BUT THEN AGAIN, WE NEVER DO, DO WE?

20       **THE COURT:**  NO, WE DON'T.

21       **MR. SAMUEL:**  ENOUGH SAID.

22       AND THE POINT IS WE ARE NOT BOUND BY *GRAVEL*.  THIS IS

23   NOT A FEDERAL DISTRICT COURT.  THIS IS NOT AN 11TH CIRCUIT

24   THAT'S BOUND BY *GRAVEL*.  WE LOOK TO *GRAVEL* FOR GUIDANCE.  WE

25   MAY VERY WELL WANT TO LOOK AT WHAT THE OTHER JUSTICES AS WELL

1      ABOUT THE IMPORTANCE OF PRESERVING THE INTEGRITY OF ALL THE

2      COMMUNICATIONS AS LONG AS WE'RE DEALING WITH LEGISLATION.  IF

3      THE SENATOR, I'M NOT TALKING ABOUT MY CLIENT HERE, IS OUT

4      THERE SOLICITING A BRIDE FROM JOHN SMITH OR FRED SMITH,

5      CLEARLY, WE'RE OUTSIDE THE REALM OF LEGITIMATE LEGISLATIVE

6      ACTIVITY.  BUT IF HE'S TALKING TO AN OUTSIDE PERSON AND THE

7      OUTSIDE PERSON IS SAYING, WELL, THE ELECTION WAS A COMPLETE

8      FRAUD, THAT IS LEGISLATIVE.  HE'S TRYING TO FIGURE OUT WHAT

9      DO WE NEED TO DO.  WHAT SHOULD WE DO WITH ABSENTEE BALLOTS IN

10     THE NEXT SESSION.  AND THEY DID ADDRESS IT, RIGHT?  THEY HAD

11     THIS COMMITTEE HEARING.  THEY'VE LISTENED TO A WHOLE BUNCH OF

12     PEOPLE.  THEY TALKED TO A WHOLE BUNCH OF CONSTITUENTS.

13     THEY'VE TALKED TO EXPERTS.  THEY'VE TALKED TO EX-MAYORS.

14         AND THEN THEY ADDRESSED IT IN LEGISLATION, YOU KNOW.

15     S-B-2-0-2, THE NEXT JANUARY OR FEBRUARY, DEALT WITH THE VERY

16     ISSUES THEY WERE INVESTIGATING DURING THE ELECTIONS.

17         SO I'M WORRIED ABOUT INHIBITING THEIR ABILITY TO

18     ACQUIRE INFORMATION.  THE MORE YOU TELL THEM, IT'S AN OPEN

19     BOOK.  AND I AGREE, THE GRAND JURY HAS AN UNBELIEVABLE

20     IMPORTANT FUNCTION IN THIS STATE TO PURSUE ITS MISSION.  I'VE

21     NEVER DISAGREED WITH THAT, YOU KNOW.  THE D-A WAS THESE DAYS

22     WANT TO ABOLISH THE GRAND JURY IN THIS STATE, ALL RIGHT.  AND

23     JUST HAVE EVERYTHING DONE BY ACCUSATION.

24         PUTTING THAT ASIDE, WE THINK THE GRAND JURY IS

25     IMPORTANT.  BUT THE GRAND JURY HAS RULES.  AND WE HAVE

1    PRIVILEGES IN THIS COUNTRY.  WE HAVE THE ATTORNEY-CLIENT

2    PRIVILEGE.  WE HAVE JUDICIAL IMMUNITY.  ALL THESE THINGS.  WE

3    HAVE PROSECUTORIAL COMMUNITY.  WE HAVE QUALIFIED IMMUNITY FOR

4    LAW ENFORCEMENT.  THERE'S ALL KINDS OF RULES THAT INHIBIT

5    QUOTE, THE SEARCH FOR TRUTH.  AND THEY ARE UNBELIEVABLY

6    IMPORTANT.  AND THIS PRIVILEGE IS AS IMPORTANT AS ANYTHING

7    BECAUSE IT'S IN THE CONSTITUTION SEPARATION OF POWERS.  IF

8    YOU LET THE JUDGES START INQUIRING OF LEGISLATORS, WHY DID

9    YOU DO WHAT YOU DID, OR THE LEGISLATORS START ASKING YOU --

10    **THE COURT:**  I SAW YOUR PARADE OF EVILS, OR WHAT IF THE

11    JUDGE THAT RULES THAT THE SUBPOENA SHOULDN'T BE QUASHED GETS

12    HAULED IN FRONT OF THE SENATE SUBCOMMITTEE.

13    **MR. SAMUEL:**  THERE YOU GO.

14    **THE COURT:**  YIKES.

15    **MR. SAMUEL:**  AMAZING.  WOULD BE UNBELIEVABLE, WOULDN'T

16    IT?

17    SO I HOPE YOU KEEP IN MIND, YOU KNOW, THAT WHAT'S GOOD

18    FOR THE GOOSE IS GOOD FOR THE GANDER.

19    **THE COURT:**  UNDERSTOOD.  THANK YOU.

20    **MR. SAMUEL:**  I'M SORRY.  THANK YOU.

21    **MR. WAKEFORD:**  I'M SORRY.  MAY I RESPOND TO ONE LEGAL

22    POINT MADE BY MR. SAMUEL, AND THEN I'LL SIT DOWN.

23    **THE COURT:**  YES, EXCEPT YOU DON'T NEED TO SIT DOWN

24    CAUSE THEN I'M GOING TO ASK YOU ABOUT FORMER SENATOR LIGON'S

25    SCHEDULING.  THAT'S, AGAIN, WHY WE GOT MR. DURHAM HERE.  HE'S

1    WELCOME ANYWAY, BUT WE NEED TO SORT THAT OUT SINCE WE'VE GOT

2    EVERYONE TOGETHER.

3        MR. WAKEFORD:  YES, YOUR HONOR.

4        THERE WAS MENTION OF, I BELIEVE A CASE CALLED *BROWN*.

5    THE D-C CIRCUIT IS, TO MY KNOWLEDGE AS I STAND HERE, THE ONLY

6    CIRCUIT WHICH HAS EVER RECOGNIZED A NON-DISCLOSURE PRIVILEGE

7    ATTACHED TO THE -- THE PRIVILEGE IS AN IMMUNITY FOR

8    LEGISLATORS.

9        THE THIRD CIRCUIT AND THE NINTH CIRCUIT HAVE EXPLICITLY

10    REJECTED THAT IDEA.  SO *BROWN*, I MEAN, IF WE'RE LOOKING TO

11    DISSENT AND ISOLATE IT, I MEAN, YOU CAN FIND AN ARGUMENT.

12    THIS IS AN ISSUE WITH LOTS OF OPINIONS AND VERY LITTLE

13    SUPREME COURT PRECEDENT, WHICH MAKES THE SUPREME COURT

14    PRECEDENT ALL THE MORE IMPORTANT.  AND WHAT THE SUPREME COURT

15    HAS TOLD US IS UNEQUIVOCAL THAT THESE QUESTIONS CAN BE ASKED.

16        THE ONLY OTHER THING I WANT TO POINT TO THAT I THINK

17    IT'S AN IMPORTANT CONCERN THAT HAS NOT BEEN BROUGHT UP IS

18    THAT THE *BROWN* CASE, IN THE DC CIRCUIT WHERE THEY RECOGNIZED

19    IT, IS A MUCH MORE EXPANSIVE DEFINITION OF THIS IMMUNITY THAN

20    ANYONE ELSE.  IT HINGES ITS DECISION ON THE POINT OF

21    DISTRACTION THAT THESE QUESTIONS, THESE CASES, THAT CAN BE

22    BROUGHT AGAINST LEGISLATORS ARE DISTRACTIONS FROM THEIR

23    OFFICIAL DUTIES THAT THEY ARE NOT SUPPOSED TO BE SUBJECT TO.

24        AND I THINK IT IS IMPORTANT TO NOTE THAT SENATOR --

25    MR. LIGON IS NO LONGER A SENATOR.  SO THE ANIMATING CONCERN

1    IN THE *BROWN* CASE AND IN THE D-C CIRCUIT'S REASONING IS NOT

2    PRESENT WITH REGARD TO THE MOVANT, MR. LIGON.  HE IS NO

3    LONGER A MEMBER.  SO I JUST WANTED TO POINT THAT OUT.

4        **THE COURT:**  OKAY.  I APPRECIATE THAT.  I THINK THE

5    CONCERN WOULD BE THE PRECEDENTIAL VALUE BECAUSE, WELL, ONE,

6    YOU MAY ALSO HAVE SUBPOENAS FOR CURRENT ACTIVE LEGISLATORS.

7    NOTE, THEY'RE NOT IN SESSION RIGHT NOW.  SO IT'S A DIFFERENT

8    TYPE OF DISTRACTION.

9        **MR. WAKEFORD:**  AND THE INQUIRY WOULD BE DIFFERENT WITH

10   REGARD TO THEM.  WE WOULD ARGUE IF THEY'RE -- I WAS SIMPLY

11   POINTING OUT THAT THE BASIS OF THAT DISTINCTION IN THE DC

12   CIRCUIT IS DISTRACTION.

13       **THE COURT:**  OKAY.  WELL, I WILL REVIEW *BROWN* AGAIN.

14       **MR. WAKEFORD:**  AND THAT CASE IS DISCUSSED -- I HAVE

15   CITATIONS TO OTHER DECISIONS WHICH HAVE ANALYZED *BROWN* AND --

16       **THE COURT:**  DIDN'T LIKE IT.

17       **MR. WAKEFORD:**  IT WAS MENTIONED ACTUALLY BY MR. SAMUEL.

18   *UNITED STATES V. RENZI, R-E-N-Z-I.*  THAT'S *651 F3RD, 1012.*

19       **THE COURT:**  ALL RIGHT.

20       **MR. WAKEFORD:**  AND FROM THE THIRD CIRCUIT, *IN RE:*

21   *FATTAH,* I THINK.  F-A-T-T-A-H.  THAT IS *802 F3D, 516.*

22       **THE COURT:**  ALL RIGHT.

23       **MR. WAKEFORD:**  SO I BELIEVE THAT NOW WE'RE GOING TO

24   MOVE TO DISCUSSION.  AND OBVIOUSLY, ON ANY OF THESE POINT, IF

25   FURTHER BRIEFING OR FURTHER CLARIFICATION IS NEEDED, WE STAND

1    READY TO DO THAT.

2        **THE COURT:**  I WON'T BE SCARCE.

3        **MR. SAMUEL:**  AND IF AT THIS POINT, WE'RE MOVING TO THE

4    DISCUSSION OF SENATOR LIGON'S SCHEDULING, I BELIEVE

5    MR. NATHAN WADE, I THINK, IS GOING TO PRESENT FROM THE

6    DISTRICT ATTORNEY'S OFFICE FOR THAT REGARD.

7        **THE COURT:**  OKAY.  ARE YOU ALL RIGHT, MR. SAMUEL, IF WE

8    PIVOT AWAY FROM THIS TOPIC AND WORK THROUGH FORMER SENATOR

9    LIGON'S SCHEDULE AND MR. DURHAM'S SCHEDULE AS WELL, BECAUSE

10   AS I UNDERSTAND IT.  MR. DURHAM, YOU'RE STILL WITH US?

11       **MR. DURHAM:**  I'M HERE.

12       **THE COURT:**  YOU WANT TO BE HERE, MEANING IN FULTON

13   COUNTY, WHEN YOUR CLIENT IS APPEARING IN FRONT OF THE GRAND

14   JURY SO THAT YOU CAN PLAY THE ROLE THAT WE'RE ENVISIONING

15   SHOULD AN ISSUE ARISE WHERE YOUR CLIENT THINKS MAYBE I NEED

16   TO INVOKE A PRIVILEGE HERE.

17       **SPEAKER:**  THAT'S CORRECT.  AND I ALSO THINK THAT MY

18   APPEARANCE -- THERE ARE ISSUES THAT MAY BE BROADER THAN THE

19   LEGISLATIVE PRIVILEGE.

20       **THE COURT:**  OKAY.  BUT EITHER WAY, BROADER OR NARROWER,

21   THE SCHEDULING ISSUE IS THAT YOU WANT TO BE HERE AND YOU'VE

22   GOT A BIG TRIAL SOMEWHERE THAT YOU'RE SAYING WOULD MAKE IT

23   DIFFICULT FOR YOU TO BE HERE AT THE CURRENT DATE OF THE

24   SUBPOENA.

25       **MR. DURHAM:**  THAT'S RIGHT, YOUR HONOR.

1        **THE COURT:** ALL RIGHT. WHY DON'T YOU START AND THEN

2    I'LL HEAR FROM MR. WADE.

3        WHY DON'T YOU TELL US. I DON'T HAVE IT RIGHT IN FRONT

4    OF ME. BUT YOU'VE GOT A TRIAL SOMEWHERE. YOU'VE ATTACHED

5    THE TRIAL NOTICE, ET CETERA. WHEN ARE YOU NOT AVAILABLE?

6        **MR. DURHAM:** I AM NOT AVAILABLE FROM -- FIRST OF ALL,

7    I'M NOT AVAILABLE ON THE DATE OF THE SUBPOENA, JULY OF 2020.

8    MY TRIAL BEGINNING JULY THE 18TH. IT IS SCHEDULED TO GO FOUR

9    TO SIX WEEKS.

10       THE WEEK BEFORE THAT, WHICH HE'S NOT BEING SUBPOENAED

11   TO, I WILL ALSO NOT BE AVAILABLE BECAUSE OF -- I'M GOING TO

12   BE TRYING A FOUR-TO SIX-WEEK TRIAL STARTING ON JULY THE 18TH.

13       THE EARLIEST I THINK I WILL BE AVAILABLE, IT'S A FULL

14   WEEK TRIAL, WILL BE THE 12TH. THE DISTRICT ATTORNEY'S OFFICE

15   OFFERED, AS FAR A LEAVE THURSDAY OF AUGUST 4TH, WHICH

16   OBVIOUSLY IS STILL WITHIN A TRIAL PERIOD.

17       IF IT'S A SIX-WEEK TRIAL, IT WOULD BE OVER THAT -- THAT

18   WILL PUT ME AT AUGUST THE 26TH.

19       MY PROPOSAL WOULD BE THAT I JUST SIMPLY LET THE

20   DISTRICT ATTORNEY'S OFFICE KNOW WHAT IS GOING ON WITH THE

21   TRIAL AND AGREE THAT WITHIN ONE WEEK OF THE TRIAL BEING OVER,

22   THAT MR. LIGON COULD TESTIFY BEFORE THE GRAND JURY. SO FOR

23   EXAMPLE, IF IT'S ON THE 12TH, THAT'S WHEN THE FOUR WEEKS ARE

24   OVER, I'M IN CONTACT WITH THE DA'S OFFICE AND SAY, "LOOK, IF

25   YOU GUYS ARE ON TUESDAY, WEDNESDAY AND THURSDAY, WHICH IS

1    WHAT I WAS TOLD THE SPECIAL GRAND JURY WAS MEETING, THEN MY

2    CLIENT, MR. LIGON, CAN APPEAR ON THAT FOLLOWING THURSDAY,

3    WHICH I BELIEVE WOULD BE THE 18TH.

4         BUT, OBVIOUSLY, IT COULD LAST THE FIVE WEEKS.  BUT YOU

5    KNOW, REGARDLESS, I THINK I PUT IN THE MOTION THAT IN ANY

6    EVENT, IT WOULD BE NO LATER THAN I BELIEVE I SAID THURSDAY,

7    SEPTEMBER THE 9TH WILL BE NO LATER THAN.  THAT, OBVIOUSLY,

8    WILL BE LONGER, YOU KNOW, FURTHER OUT FROM THE SIX WEEKS.

9    THE JUDGE DOWN IN BRUNSWICK, WHICH IS WHERE I AM RIGHT NOW,

10   IS NOT GOING TO ALLOW THE TRIAL TO GO PAST SIX WEEKS.  I

11   DON'T KNOW IF HE'S GOING TO ALLOW IT TO GO PAST FOUR WEEKS.

12   BUT, YOU KNOW, AGAIN, THIS IS A CASE THAT'S BEEN FILED IN

13   2019.  I'M REPRESENTING 21 PLAINTIFFS.  MY COCOUNSEL IS -- I

14   HAVE SEVERAL ATTORNEYS FROM BONDURANT MIXON.  THERE ARE 75

15   ATTORNEYS ON -- FOR THE DEFENDANTS.  THERE'S THREE

16   PHARMACEUTICAL DISTRIBUTORS.  IT'S A BIG CASE.

17        **THE COURT:**  OKAY.  LOTS OF BIG CASES OUT THERE.  THANK

18   YOU FOR SHARING THAT.

19        MR. WADE, YOUR THOUGHTS.  AND GOOD AFTERNOON.

20        **MR. WADE:**  YES, SIR.  GOOD AFTERNOON, JUDGE.  THANK YOU

21   FOR TAKING THE TIME.

22        A COUPLE OF THINGS THAT THE DISTRICT ATTORNEY'S OFFICE

23   WOULD LIKE TO DEAL WITH.

24        FIRST OFF, MR. DURHAM POINTS OUT THAT IN HIS -- IN HIS

25   MOTION, HE POINTS OUT THAT HE IS COLEAD COUNSEL.  SO IF NEED

1    BE, I THINK THAT THE OTHER LEAD COUNSEL COULD PROBABLY TAKE

2    OVER FOR HIM FOR THAT FEW HOURS GAP OF TIME IN THAT TRIAL.

3         THAT'S THE FIRST THING.

4         **THE COURT:**  OKAY.  SO LET ME PAUSE YOU THERE BECAUSE

5    YOU SAID "FEW HOURS" AND THAT WAS GOING TO BE MY QUESTION.

6         HOW LONG DO YOU ENVISION MR. LIGON'S TESTIMONY TO LAST?

7    YOU'RE HAVING TO BALLPARK IT, BUT THREE DAYS, THREE HOURS,

8    20 MINUTES?

9         **MR. WADE:**  MAY BE THREE, FOUR HOURS.

10        **THE COURT:**  SO WILL GO HALF A DAY.

11        **MR. WADE:**  HALF A DAY.

12        **THE COURT:**  ALL RIGHT.

13        **MR. WADE:**  THE OTHER PIECE OF IT AT THE END OF

14   MR. DURHAM'S STATEMENT HERE, HE STATED THAT THERE WERE 75

15   OTHER ATTORNEYS INVOLVED.  CERTAINLY, ONE OF THE 75 COULD

16   POTENTIALLY STEP IN AND HELP HIM FOR THOSE FEW HOURS.

17        BUT HERE IS THE CONCESSION FROM THE STATE:  WE COULD

18   POTENTIALLY MOVE MR. LIGON'S TESTIMONY UP TO JULY 12TH. AND

19   THAT IS CLEARLY OUTSIDE OF THE CONFLICTED TIME.  JUST PURELY

20   IN THE SPIRIT OF COMPROMISE, WE COULD DO THAT; OR IF HE NEEDS

21   TO MOVE IT A LITTLE SOONER.  IF HE'LL CONCEDE TO COMING IN

22   BEFORE THE 12TH, WE CAN MOVE MOUNTAINS AND DO THAT FOR HIM.

23        **THE COURT:**  YOUR PREFERENCE IS SOONER AND NOT

24   SEPTEMBER?

25        **MR. WADE:**  ABSOLUTELY.

1          **THE COURT:**  BECAUSE OF THE WAY INFORMATION IS FLOWING

2     AND THE WAY IN WHICH YOUR TEAM IS COMPILING AND PRESENTING

3     INFORMATION TO THE GRAND JURY?

4          **MR. WADE:**  YES, SIR.

5          **THE COURT:**  OKAY.  SO MR. DURHAM, TELL ME WHY BETWEEN

6     THE MIDDLE OF NEXT WEEK AND THE START OF YOUR TRIAL, YOU'RE

7     GOING TO BE UNAVAILABLE FOR HALF A DAY.

8          **MR. DURHAM:**  WELL, JUDGE, AS YOU KNOW FROM YOUR OWN

9     EXPERIENCE, IT IS NOT GOING TO INVOLVE A HALF A DAY.  IT IS

10    GOING TO INVOLVE ME SITTING DOWN WITH MY CLIENT, PREPARING

11    HIM FOR THE GRAND JURY.  I DO NOT HAVE TWO DAYS TO GIVE UP IN

12    ORDER TO PREPARE FOR THIS CASE.  THAT'S NUMBER ONE.

13         NUMBER TWO, I WAS TOLD BY THE -- BY THE DISTRICT

14    ATTORNEY HERSELF THAT NEXT WEEK WAS OFF. THAT THERE WERE --

15    THAT DURING THE 4TH OF JULY WEEK, THAT THERE WERE NOT GOING

16    TO BE MEETING.

17         **THE COURT:**  AND TO BE VERY CLEAR, I DON'T SET THE DATES

18    AND I'M CONFIDENT THAT WAS A VALID REPRESENTATION.  I'M JUST

19    TRYING TO EXPLORE YOUR SCHEDULE.  YOU JUST SHARED, "GOSH, I

20    NEED A WHOLE DAY TO PREPARE MY CLIENT."  WELL, THAT COULD BE

21    A NEXT WEEK.  AND THEN IT'S ON PART OF THE DAY THE WEEK AFTER

22    THAT.  SO I DON'T KNOW.

23         I'M ALSO NOT SURE WHY YOU AND MR. LIGON HAVE NOT

24    ALREADY STARTED TALKING ABOUT THIS, AND I'M SURE YOU HAVE.

25         BUT MY QUESTION IS:  WHY A HALF DAY THAT I KNOW YOU

1    NEED TO GIVE UP FOR THE ACTUAL GRAND JURY TIME IS SOMETHING

2    THAT YOU CAN'T PROVIDE BETWEEN NOW AND THE START OF YOUR

3    TRIAL.  AND YOU'RE TELLING ME, WHAT I EXPECTED YOU WOULD, IS

4    THAT IT'S A BIG TRIAL AND I NEED THAT TIME TO GET READY FOR

5    TRIAL.

6         **MR. DURHAM:**  RIGHT.  AND AS IT RELATES TO WHAT WAS SAID

7    ABOUT THE 75 ATTORNEYS, THE 75 ATTORNEYS ARE ON THE DEFENSE

8    SIDE.

9         **THE COURT:**  I UNDERSTAND.  THAT'S WHAT YOU SAID.  NOT

10   ON YOUR SIDE.  I GOT THAT.  I WOULDN'T EXPECT SOMEONE ON THE

11   OTHER SIDE OF THE 'V' TO MAKE YOUR PRESENTATION.  THEY MAY

12   LOVE TO.  "I'LL TAKE THAT UP WHILE YOU'RE GONE, MR. DURHAM."

13        **MR. DURHAM:**  I'M CO-LEAD COUNSEL.  BUT, JUDGE, I'M

14   PICKING THE JURY.  I'M GETTING -- AND I'VE GOT OVER HALF OF

15   THE WITNESSES ARE GOING TO BE PRESENTED DURING OUR CASE IN

16   CHIEF.  AND THE NUMBER OF THE CROSS-EXAMINATIONS, IT IS --

17   YOU KNOW FOR A SPECIAL GRAND JURY THAT HAS BEEN SCHEDULED FOR

18   THE LAST A YEAR, I DON'T KNOW THAT THE DATE GIVEN TO ME,

19   AUGUST 4TH, MOVING THAT TO TWO, THREE, AT THE OUTSET, FOUR

20   WEEKS IS A HUGE CONCESSION BY THE DISTRICT ATTORNEY.

21        **THE COURT:**  SO MR. WADE, THE THREE DATES THAT WOULD BE

22   AVAILABLE, I THINK, THE WEEK OF JULY 11TH WOULD BE 12, 13,

23   14?  THAT'S THE TUESDAY, WEDNESDAY, THURSDAY.

24        **MR. WADE:**  YES, SIR.

25        **THE COURT:**  AND YOU'RE WILLING TO HAVE MR. LIGON FIT IN

1    ANYWHERE, FIRST THING MORNING OF THE 12TH, LAST THING THE

2    AFTERNOON OF THE 14TH?

3        MR. WADE:  ABSOLUTELY.

4        MR. DURHAM:  AND JUDGE, I'LL SAY IT AGAIN:  I AM MOVING

5    DOWN TO BRUNSWICK.  I LIVE IN SAVANNAH.  I AM MOVING DOWN TO

6    A HOTEL IN BRUNSWICK ON THAT MONDAY.  MY AVAILABILITY TO

7    DRIVE UP TO ATLANTA TO SPEAK AND PREPARE MY CLIENT DURING

8    THAT WEEK IS ZERO.

9        THE COURT:  I DON'T KNOW WHERE MR. LIGONS' HOME IS. IS

10    HE CLOSER TO BRUNSWICK AND GLYNN COUNTY OR IS HE UP IN BLUE

11    RIDGE?

12        MR. DURHAM:  NO. HE'S IN GLYNN COUNTY.

13        THE COURT:  SO YOU'RE CLOSE TO HIM.

14        MR. DURHAM:  THAT'S RIGHT.

15        THE COURT:  OKAY.  ALL RIGHT.

16    ANYTHING ELSE, MR. DURHAM, YOU WANT TO SHARE WITH ME

17    ABOUT YOUR BUSY SCHEDULE?

18        MR. DURHAM:  NO.

19        THE COURT:  OKAY.  I APPRECIATE THAT.

20    MR. WADE, ANYTHING ELSE IN TERMS OF YOUR TEAM'S

21    SCHEDULING FOR THAT WEEK?  I'M CALLING IT JULY 11TH BECAUSE

22    THAT'S A MONDAY AND I KNOW THAT'S NOT AN AVAILABLE DATE.

23        MR. WADE:  NOTHING.

24        THE COURT:  OKAY.  AGAIN, I WASN'T TRYING TO TREAD ON

25    ANYONE'S SCHEDULING SPACE.  ACCURATE STATEMENT, NO GRAND JURY

1    ACTIVITY NEXT WEEK, THE WEEK OF JULY 4TH.

2         **MR. WADE:**  UNLESS THERE WERE SOME EMERGENCY SITUATION

3    THAT ARISE.

4         **THE COURT:**  CURRENTLY NO ACTIVITY PLANNED.

5         **MR. WADE:**  NO, SIR.

6         **THE COURT:**  THE GRAND JURY ARE LOOKING FORWARD TO A

7    WEEK OFF?

8         **MR. WADE:**  YES, SIR.

9         **THE COURT:**  OKAY.  THANK YOU.

10        **MR. DURHAM:**  JUDGE, MAY I ASK WHETHER OR NOT THERE IS

11   GRAND JURY TIME THAT'S BEEN SCHEDULED DURING THE WEEKS OF

12   AUGUST, THE AUGUST THE 4TH THAT WAS OFFERED TO ME?

13        **THE COURT:**  YOU KNOW WHAT:  I'M GOING TO LET YOU GUYS

14   WORK THROUGH THAT.  I'VE HEARD WHAT YOUR CONSTRAINTS ARE.

15   AND I'VE HEARD FROM MR. WADE.  AND YOU AND MR. WADE CAN KEEP

16   TALKING ABOUT THAT STUFF.  I'LL WEIGH IN AS I SEE FIT.

17        THANK YOU.

18        MR. SAMUEL, ANYTHING ELSE YOU WANT US TO DISCUSS WHILE

19   WE'RE ALL TOGETHER CONCERNING YOUR MOTION ABOUT SCHEDULING?

20        **MR. SAMUEL:**  NO, YOUR HONOR.  THANK YOU.

21        **THE COURT:**  YOUR WITNESSES, I APPRECIATE MR. DURHAM IS

22   THE ONE WHO'LL BE THERE FOR MR. LIGON, BUT THE TWO PEOPLE ON

23   WHOSE BEHALF YOU'RE SPEAKING TODAY, LIEUTENANT GOVERNOR AND

24   MR. LIGON, THEY'RE BOTH JULY 12TH SUBPOENAS RIGHT NOW?

25        **MR. WADE:**  NO.

1       **THE COURT:** NO. AND I ASK ONLY BECAUSE I NEED TO GET

2   SOME GUIDANCE OUT THAT'S TIMELY. IF I HAVE TO GET GUIDANCE

3   OUT, OBVIOUSLY, THAT'S HELPFUL.

4       **MR. SAMUEL:** LIGON IS WHAT YOU'VE BEEN TALKING ABOUT,

5   WHICH IS DURHAM. HE'S ON THE 12TH.

6       **THE COURT:** NO. HE'S THE 20TH. SO HE'S THE 20TH. WHEN

7   IS THE LIEUTENANT GOVERNOR'S?

8       **MR. SAMUEL:** THE 12TH.

9       **THE COURT:** HE'S THE 12TH. OKAY.

10      THE 12TH WAS RATTLING AROUND. THIS IS -- WE HAD TO

11  HAVE THIS SESSION BEFORE YOU TURN INTO A MARITAL PUMPKIN, NOT

12  YOUR WEDDING.

13      AND SO THE LIEUTENANT GOVERNOR IS CURRENTLY --

14      **MR. SAMUEL:** THE 12TH.

15      **THE COURT:** OKAY. SO I NEED TO GET SOME GUIDANCE OUT

16  FOR THAT DATE.

17      **MR. SAMUEL:** AND THERE ARE OTHERS THAT WEEK.

18      **THE COURT:** WHO ARE HOVERING IN THE BACKGROUND.

19      **MR. SAMUEL:** WHO ARE GOING TO WANT THE ANSWERS TO THE

20  QUESTIONS. AND THEIR LAWYERS ARE GOING TO WANT TO KNOW

21  BECAUSE THEIR LAWYERS ARE CALLING ME EVERY HOUR. SO THEY'RE

22  GOING TO WANT TO KNOW.

23      **THE COURT:** OKAY. I'M NOT TRYING TO DELAY ANYTHING.

24      **MR. SAMUEL:** NO. NO. I JUST DIDN'T WANT YOU TO NOT

25  THINK THAT ONCE I TAKE CARE OF THE LIEUTENANT GOVERNOR, I'M

1    GOING TO TAKE ANOTHER WEEK OFF.  THERE'S GOING TO BE MORE I

2    THINK ON A THURSDAY.  I'LL TALK TO THEM ABOUT THAT.

3        **THE COURT:**  I'LL SPEAK WITH THE DISTRICT ATTORNEY'S

4    OFFICE SEPARATELY.  WE WERE DEVELOPING A COMMUNICATION PLAN.

5    SO I KNOW HOT DAYS VERSUS NOT HOT DAYS.

6        **MR. SAMUEL:**  CORRECT.

7        **THE COURT:**  OKAY.  THANK YOU.  MR. WAKEFORD, ANYTHING

8    ELSE THAT WE NEED TO COVER?

9        **MR. WAKEFORD:**  OTHER THAN THE FACT THAT INDIVIDUAL

10   ISSUES WILL INEVITABLY COME UP AND HAVE TO BE DISCUSSED.

11       NOTHING RIGHT NOW, YOUR HONOR.

12       **THE COURT:**  OKAY.  THEN I SEE AS THE NEXT STEPS I NEED

13   TO DO WHAT I CAN TO RESOLVE MR. LIGON' SCHEDULING CONFLICT.

14   I NEED TO PROVIDE SOME GUIDANCE TO MR. SAMUEL AND HIS CLIENTS

15   AND THE DISTRICT ATTORNEY'S OFFICE.  AND THEN I'LL WORK

16   INDEPENDENTLY.  I'LL REACH OUT TO MR. WADE AND HE CAN DEFLECT

17   ME TO THE RIGHT PERSON SO THAT I'M KNOWING WHEN DATES ARE

18   GOING TO BE APPROACHING WHERE WE THINK THEY ARE GOING TO BE

19   TO NEED TO BE MY AVAILABILITY BECAUSE YOU'RE FORECASTING THAT

20   A WITNESS IS GOING TO SAY "THAT'S A QUESTION I'M NOT GOING TO

21   ANSWER."

22       OKAY.  FANTASTIC.

23       WELL, I APPRECIATE EVERYONE'S TIME.  I APOLOGIZE FOR

24   THE INITIAL NAME MISPRONUNCIATION, BUT I WILL GET TO WORK ON

25   THIS.  I HOPE EVERYONE HAS A GOOD THREE-DAY WEEKEND AND

1      BEYOND.  AND I'M GOING TO ASK YOU TO GET THE HECK OUT OF HERE

2      BECAUSE I HAVE A JURY THAT NEEDS TO COME BACK IN HERE AND

3      PICK UP THE CRIMINAL TRIAL THAT WE'RE IN.

4           **MR. WAKEFORD:**  THANK YOU, YOUR HONOR.

5           **THE COURT:**  THANK YOU, MRS. HILL.

6           (PROCEEDINGS CONCLUDED AT 2:21 P.M.)

C E R T I F I C A T E

STATE OF GEORGIA:

COUNTY OF FULTON:


       I, QUANINCIA S. HILL, CERTIFIED COURT REPORTER FOR FULTON

COUNTY SUPERIOR COURT, HEREBY CERTIFY THAT THE FOREGOING PAGES 1

THROUGH ^ #, AND ALL EXHIBITS ATTACHED REPRESENTS A TRUE,

ACCURATE, AND COMPLETE TRANSCRIPT OF THE PROCEEDINGS IN THE

ABOVE-STYLED ACTION.

       THIS CERTIFICATION IS EXPRESSLY WITHDRAWN AND DENIED UPON

THE DISASSEMBLY OR PHOTOCOPYING OF THE FOREGOING TRANSCRIPT OR ANY

PART THEREOF, INCLUDING EXHIBITS, UNLESS SAID DISASSEMBLY OR

PHOTOCOPYING IS DONE BY THE UNDERSIGNED OFFICIAL COURT REPORTER

AND ORIGINAL SIGNATURE AND SEAL ARE ATTACHED THERETO.

       THIS, THE 2ND DAY OF JULY 2022.


_____

QUANINCIA S. HILL, RPR
CERTIFIED COURT REPORTER
SUPERIOR COURT OF FULTON COUNTY,
ATLANTA JUDICIAL CIRCUIT.

## IN THE SUPERIOR COURT OF FULTON COUNTY

### STATE OF GEORGIA

| | |
|---|---|
| **IN RE:** | ) |
| **SPECIAL PURPOSE GRAND JURY** | ) **2022-EX-000024** |
| | ) |
| | ) **Judge Robert C. I. McBurney** |
| | ) |

FILED IN OFFICE

JUL 05 2022

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

## PETITION FOR CERTIFICATION OF NEED FOR TESTIMONY BEFORE SPECIAL PURPOSE GRAND JURY PURSUANT TO O.C.G.A. O.C.G.A. § 24-13-90 ET SEQ.

**COMES NOW** the State of Georgia, by and through Fani T. Willis, District Attorney, Atlanta Judicial Circuit, Fulton County, Georgia, and petitions this Honorable Court for a Certificate of Need for Testimony Before Special Purpose Grand Jury, pursuant to O.C.G.A. § 24-13-92 et seq., and in support thereof says as follows:

1. A Special Purpose Grand Jury investigation commenced in Fulton County, Georgia, by order of this court on May 2, 2022. *See* Order Impaneling Special Purpose Grand Jury Pursuant to O.C.G.A. § 15-12-100, Et Seq, "**Exhibit A**". The Special Purpose Grand Jury is authorized to investigate any and all facts and circumstances relating directly or indirectly to possible attempts to disrupt the lawful administration of the 2020 elections in the State of Georgia. *See* Letter Requesting Special Purpose Grand Jury, "**Exhibit B**".

2. Kenneth Chesebro, born June 5, ███, (hereinafter, "the Witness") is a necessary and material witness to the Special Purpose Grand Jury investigation. Through both its investigation and through publicly available information, the State has learned that the Witness was an attorney working with the Trump Campaign's legal efforts

seeking to influence the results of the November 2020 election in Georgia and elsewhere. As part of those efforts, the Witness worked with the leadership of the Georgia Republican Party, including Chairman David Shafer, in the weeks after the November 2020 election in Georgia, at the direction of the Trump Campaign. This work included the coordination and execution of a plan to have 16 individuals meet at the Georgia State Capitol on December 14, 2020, to cast purported electoral college votes in favor of former President Donald Trump, even though none of those 16 individuals had been ascertained as Georgia's certified presidential electors by Georgia Governor Brian Kemp. The Witness drafted at least two memoranda in support of this plan, which were provided to the Georgia Republican Party, and the Witness provided template Microsoft Word documents to be used by the Georgia Republican Party at its meeting on December 14, 2020. Further, the Witness indicated in communications with the Georgia Republican Party that he had worked directly with Trump Campaign attorney Rudy Giuliani as part of the coordination and execution of the plan.

3. The Witness, as an attorney working with the Trump Campaign who was directly involved in the coordination and planning of the December 14, 2020, meeting held by the Georgia Republican Party to cast purported electoral college votes in favor of former President Donald Trump, is a necessary and material witness in this investigation. The Witness possesses unique knowledge concerning the coordination and execution of the meeting and communications between himself, others involved in the planning and execution of the meeting, the Trump Campaign, and other known and unknown individuals involved in the multi-state, coordinated efforts to influence

the results of the November 2020 election in Georgia and elsewhere. Finally, the
Witness's anticipated testimony is essential in that it is likely to reveal additional
sources of information regarding the subject of this investigation.

4. The testimony of the Witness will not be cumulative of any other evidence in this
matter.

5. The Witness resides outside the jurisdiction of this Honorable Court and is therefore
unable to be served with process to compel attendance and testimony.

6. The Witness currently resides at ▮▮▮▮▮▮▮▮▮▮▮  ▮▮▮  ▮▮▮  ▮▮  ▮
▮▮▮▮▮▮

7. The Witness will be required to be in attendance and testify before the Special
Purpose Grand Jury on July 12, 2022, and continuing through and until the
conclusion of the Witness's testimony on or before August 31, 2022.

8. The Office of the Fulton County District Attorney, in and for the State of Georgia,
will pay all reasonable and necessary travel expenses and witness fees required to
secure the Witness's attendance and testimony, in accordance with the Uniform Act
to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings.
*See* O.C.G.A. §24-13-90 et seq.

9. If the Witness comes into the State of Georgia pursuant to this request, directing the
Witness to attend and testify before the Special Purpose Grand Jury, the laws of this
State shall give the Witness protection from arrest and from service of civil or
criminal process, both within this State and in any other state through which the
Witness may be required to pass in the ordinary course of travel, for any matters
which arose before the Witness's entrance into this State and other states.

10. Both Georgia and New York have adopted the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings. *See* O.C.G.A. § 24-13-90; NY CLS CPL § 640.10.

**WHEREFORE**, the State of Georgia, by and through Fani T. Willis, District Attorney, Atlanta Judicial Circuit, Fulton County, Georgia, prays that this Honorable Court issue a Certificate of Need for Testimony Before Special Purpose Grand Jury, pursuant to O.C.G.A. § 24-13-92 et seq., certifying to the proper authorities in the jurisdiction in which the Witness is located that the Witness is a necessary and material witness whose attendance and testimony is required for the above-referenced Special Purpose Grand Jury investigation, and the presence of the Witness will be needed for the number of days specified above,

Respectfully submitted this the 29th day of June, 2022,

> **FANI T. WILLIS**
> **DISTRICT ATTORNEY**
> **ATLANTA JUDICIAL CIRCUIT**
>
> **GA Bar No. 223955**
> Atlanta Judicial Circuit
> 136 Pryor Street Southwest
> Third Floor
> Atlanta, Georgia 30303

# Exhibit A

IN THE SUPERIOR COURT OF FULTON COUNTY
ATLANTA JUDICIAL CIRCUIT
STATE OF GEORGIA

FILED IN OFFICE

JAN 24 2022

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

IN RE: REQUEST FOR
SPECIAL PURPOSE
GRAND JURY

## ORDER APPROVING REQUEST FOR SPECIAL PURPOSE GRAND JURY PURSUANT TO O.C.G.A. §15-12-100, et seq.

The District Attorney for the Atlanta Judicial Circuit submitted to the judges of the

Superior Court of Fulton County a request to impanel a special purpose jury for the purposes set

forth in that request. This request was considered and approved by a majority of the total

number of the judges of this Court, as required by O.C.G.A. §15-12-100(b).

IT IS THEREFORE ORDERED that a special purpose grand jury be drawn and

impaneled to serve as provided in O.C.G.A. § 15-12-62.1, 15-12-67, and 15-12-100, to

commence on May 2, 2022, and continuing for a period not to exceed 12 months. Such period

shall not include any time periods when the supervising judge determines that the special

purpose grand jury cannot meet for safety or other reasons, or any time periods when normal

court operations are suspended by order of the Supreme Court of Georgia or the Chief Judge of

the Superior Court. The special purpose grand jury shall be authorized to investigate any and all

facts and circumstances relating directly or indirectly to alleged violations of the laws of the

State of Georgia, as set forth in the request of the District Attorney referenced herein above.

Pursuant to O.C.G.A. § 15-12-101(a), the Honorable Robert C. I. McBurney is hereby

assigned to supervise and assist the special purpose grand jury, and shall charge said special

purpose grand jury and receive its reports as provided by law.

This authorization shall include the investigation of any overt acts or predicate acts relating to the subject of the special purpose grand jury's investigative purpose. The special purpose grand jury, when making its presentments and reports, pursuant to O.C.G.A. §§ 15-12-71 and 15-12-101, may make recommendations concerning criminal prosecution as it shall see fit. Furthermore, the provisions of O.C.G.A. § 15-12-83 shall apply.

This Court also notes that the appointment of a special purpose grand jury will permit the time, efforts, and attention of the regular grand jury(ies) impaneled in this Circuit to continue to be devoted to the consideration of the backlog of criminal matters that has accumulated as a result of the COVID-19 Pandemic.

IT IS FURTHER ORDERED that this Order shall be filed in the Office of the Clerk of the Superior Court of Fulton County.

SO ORDERED, THIS 24 DAY OF January , 2022.

CHRISTOPHER S. BRASHER, CHIEF JUDGE
Superior Court of Fulton County
Atlanta Judicial Circuit

# Exhibit B

OFFICE OF THE FULTON COUNTY DISTRICT ATTORNEY
ATLANTA JUDICIAL CIRCUIT
136 PRYOR STREET SW, 3RD FLOOR
ATLANTA, GEORGIA 30303

*Fani T. Willis*
District Attorney

TELEPHONE 404-612-4639

The Honorable Christopher S. Brasher
Chief Judge, Fulton County Superior Court
Fulton County Courthouse
185 Central Avenue SW, Suite T-8905
Atlanta, Georgia 30303

$2022 - EX - D00017$

FILED IN OFFICE

JAN 20 2022

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

January 20, 2022

Dear Chief Judge Brasher:

I hope this letter finds you well and in good spirits. Please be advised that the District Attorney's Office has received information indicating a reasonable probability that the State of Georgia's administration of elections in 2020, including the State's election of the President of the United States, was subject to possible criminal disruptions. Our office has also learned that individuals associated with these disruptions have contacted other agencies empowered to investigate this matter, including the Georgia Secretary of State, the Georgia Attorney General, and the United States Attorney's Office for the Northern District of Georgia, leaving this office as the sole agency with jurisdiction that is not a potential witness to conduct related to the matter. As a result, our office has opened an investigation into any coordinated attempts to unlawfully alter the outcome of the 2020 elections in this state.

We have made efforts to interview multiple witnesses and gather evidence, and a significant number of witnesses and prospective witnesses have refused to cooperate with the investigation absent a subpoena requiring their testimony. By way of example, Georgia Secretary of State Brad Raffensperger, an essential witness to the investigation, has indicated that he will not participate in an interview or otherwise offer evidence until he is presented with a subpoena by my office. Please see Exhibit A, attached to this letter.

Therefore, I am hereby requesting, as the elected District Attorney for Fulton County, pursuant to O.C.G.A. § 15-12-100 et. seq., that a special purpose grand jury be impaneled for the purpose of investigating the facts and circumstances relating directly or indirectly to possible attempts to disrupt the lawful administration of the 2020 elections in the State of Georgia. Specifically, a special purpose grand jury, which will not have the authority to return an indictment but may make recommendations concerning criminal prosecution as it shall see fit, is needed for three reasons: first, a special purpose grand jury can be impaneled by the Court for any time period required in order to accomplish its investigation, which will likely exceed a normal grand jury

term; second, the special purpose grand jury would be empowered to review this matter and this matter only, with an investigatory focus appropriate to the complexity of the facts and circumstances involved; and third, the sitting grand jury would not be required to attempt to address this matter in addition to their normal duties.

Additionally, I am requesting that, pursuant to O.C.G.A. § 15-12-101, a Fulton County Superior Court Judge be assigned to assist and supervise the special purpose grand jury in carrying out its investigation and duties.

I have attached a proposed order impaneling the special purpose grand jury for the consideration of the Court.

Respectfully,

Fani T. Willis
District Attorney, Atlanta Judicial Circuit

Exhibit A: Transcript of October 31, 2021 episode of *Meet the Press* on NBC News at 26:04 (video archived at https://www.youtube.com/watch?v=B71cBRPgt9k)
Exhibit B: Proposed Order

cc:

The Honorable Kimberly M. Esmond Adams
The Honorable Jane C. Barwick
The Honorable Rachelle Carnesdale
The Honorable Thomas A. Cox, Jr.
The Honorable Eric Dunaway
The Honorable Charles M. Eaton, Jr.
The Honorable Belinda E. Edwards
The Honorable Kelly Lee Ellerbe
The Honorable Kevin M. Farmer
The Honorable Ural Glanville
The Honorable Shakura L. Ingram
The Honorable Rachel R. Krause
The Honorable Melynee Leftridge
The Honorable Robert C.I. McBurney
The Honorable Henry M. Newkirk
The Honorable Emily K. Richardson
The Honorable Craig L. Schwall, Sr.
The Honorable Paige Reese Whitaker
The Honorable Shermela J. Williams
Fulton County Clerk of Superior Court Cathelene "Tina" Robinson

## IN THE SUPERIOR COURT OF FULTON COUNTY

### STATE OF GEORGIA

FILED IN OFFICE

JUL 05 2022

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

IN RE:                                      )
SPECIAL PURPOSE GRAND JURY      )          **2022-EX-000024**
                                            )
                                            )          **Judge Robert C. I. McBurney**
                                            )

### CERTIFICATE OF MATERIAL WITNESS
### PURSUANT TO UNIFORM ACT TO SECURE THE ATTENDANCE
### OF WITNESSES FROM WITHOUT THE STATE,
### CODIFIED IN THE STATE OF GEOGIA AS
### O.C.G.A. § 24-13-90 ET SEQ.

Upon the petition of Fani T. Willis, District Attorney, Atlanta Judicial Circuit, pursuant to

the Uniform Act to Secure the Attendance of Witnesses from Without the State, codified at

O.C.G.A. § 24-13-90 et seq., the Court issues the following Certificate under seal of this Court,

and further says as follows:

1. A Special Purpose Grand Jury investigation commenced in Fulton County, Georgia,

   by order of this Court on May 2, 2022. *See* Order Impaneling Special Purpose Grand

   Jury Pursuant to O.C.G.A. § 15-12-100, et seq., "**Exhibit A**". The Special Purpose

   Grand Jury is authorized to investigate any and all facts and circumstances relating

   directly or indirectly to possible attempts to disrupt the lawful administration of the

   2020 elections in the State of Georgia. *See* Letter Requesting Special Purpose Grand

   Jury, "**Exhibit B**".

2. Based on the representations made by the State in the attached "Petition for

   Certification of Need for Testimony Before Special Purpose Grand Jury Pursuant to

   O.C.G.A. § 24-13-90 et seq.", the Court finds that Kenneth Chesebro, born June 5,

███ , (hereinafter, "the Witness") is a necessary and material witness to the Special

Purpose Grand Jury investigation. The Court further finds that the Witness currently

resides at ███████████████████    ███ ███ ███ ███    ███████████

3. Based on the representations made by the State in the attached "Petition for
   Certification of Need for Testimony Before Special Purpose Grand Jury Pursuant to
   O.C.G.A. § 24-13-90 et seq.", the Court finds that the Witness was an attorney
   working with the Trump Campaign's legal efforts seeking to influence the results of
   the November 2020 election in Georgia and elsewhere. As part of those efforts, the
   Witness worked with the leadership of the Georgia Republican Party, including
   Chairman David Shafer, in the weeks after the November 2020 election in Georgia, at
   the direction of the Trump Campaign. This work included the coordination and
   execution of a plan to have 16 individuals meet at the Georgia State Capitol on
   December 14, 2020, to cast purported electoral college votes in favor of former
   President Donald Trump, even though none of those 16 individuals had been
   ascertained as Georgia's certified presidential electors by Georgia Governor Brian
   Kemp. The Witness drafted at least two memoranda in support of this plan, which
   were provided to the Georgia Republican Party, and the Witness provided template
   Microsoft Word documents to be used by the Georgia Republican Party at its meeting
   on December 14, 2020. Further, the Witness indicated in communications with the
   Georgia Republican Party that he had worked directly with Trump Campaign attorney
   Rudy Giuliani as part of the coordination and execution of the plan.

4. Based on the representations made by the State in the attached "Petition for
   Certification of Need for Testimony Before Special Purpose Grand Jury Pursuant to

O.C.G.A. § 24-13-90 et seq.", the Court finds that the Witness, as an attorney working with the Trump Campaign who was directly involved in the coordination and planning of the December 14, 2020, meeting held by the Georgia Republican Party to cast purported electoral college votes in favor of former President Donald Trump, is a necessary and material witness in this investigation. The Witness possesses unique knowledge concerning the coordination and execution of the meeting and communications between himself, others involved in the planning and execution of the meeting, the Trump Campaign, and other known and unknown individuals involved in the multi-state, coordinated efforts to influence the results of the November 2020 election in Georgia and elsewhere. Finally, the Witness's anticipated testimony is essential in that it is likely to reveal additional sources of information regarding the subject of this investigation.

5. The testimony of the Witness will not be cumulative of any other evidence in this matter.

6. The Witness will be required to be in attendance and testify before the Special Purpose Grand Jury on July 12, 2022, and continuing through and until the conclusion of the Witness's testimony on or before August 31, 2022, at the Superior Court of Fulton County, Fulton County Courthouse, 136 Pryor Street, 3rd Floor, Atlanta, Georgia 30303.

7. The Office of the Fulton County District Attorney, in and for the State of Georgia, will pay all reasonable and necessary travel expenses and witness fees required to secure the Witness's attendance and testimony, in accordance with O.C.G.A. §24-13-90 et seq.

8. The Witness shall be given protection from arrest and from service of civil or criminal process, both within this State and in any other state through which the Witness may be required to pass in the ordinary course of travel, for any matters which arose before the Witness's entrance into this State and other states, while traveling to and from this Court for the purpose of testifying for this case.

9. The State of Georgia is a participant in a reciprocal program providing for the securing of witnesses to testify in foreign jurisdictions which likewise provide for such methods of securing witnesses to testify in their courts.

10. This Certificate is made for the purpose of being presented to a judge of the Supreme Court of New York (Manhattan), by the Manhattan District Attorney or his duly authorized representative, who is proceeding at the request and on behalf of the Office of the Fulton County District Attorney to compel the Witness to be in attendance and testify before the Special Purpose Grand Jury on July 12, 2022, and continuing through and until the conclusion of the Witness's testimony on or before August 31, 2022, at the Superior Court of Fulton County, Fulton County Courthouse, 136 Pryor Street, 3rd Floor, Atlanta, Georgia 30303.

**WITNESS MY HAND AND SEAL** as a judge of the Superior Court of Fulton County, Georgia,

This the _____ day of ~~June~~ July, 2022.

**Hon. Robert C. I. McBurney**
Superior Court of Fulton County
Atlanta Judicial Circuit
State of Georgia

# Exhibit A

IN THE SUPERIOR COURT OF FULTON COUNTY
ATLANTA JUDICIAL CIRCUIT
STATE OF GEORGIA

IN RE: REQUEST FOR
SPECIAL PURPOSE
GRAND JURY

2022 - EX 00002L

FILED IN OFFICE

JAN 24 2022

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

## ORDER APPROVING REQUEST FOR SPECIAL PURPOSE
## GRAND JURY PURSUANT TO O.C.G.A. §15-12-100, et seq.

The District Attorney for the Atlanta Judicial Circuit submitted to the judges of the

Superior Court of Fulton County a request to impanel a special purpose jury for the purposes set

forth in that request. This request was considered and approved by a majority of the total

number of the judges of this Court, as required by O.C.G.A. §15-12-100(b).

IT IS THEREFORE ORDERED that a special purpose grand jury be drawn and

impaneled to serve as provided in O.C.G.A. § 15-12-62.1, 15-12-67, and 15-12-100, to

commence on May 2, 2022, and continuing for a period not to exceed 12 months. Such period

shall not include any time periods when the supervising judge determines that the special

purpose grand jury cannot meet for safety or other reasons, or any time periods when normal

court operations are suspended by order of the Supreme Court of Georgia or the Chief Judge of

the Superior Court. The special purpose grand jury shall be authorized to investigate any and all

facts and circumstances relating directly or indirectly to alleged violations of the laws of the

State of Georgia, as set forth in the request of the District Attorney referenced herein above.

Pursuant to O.C.G.A. § 15-12-101(a), the Honorable Robert C. I. McBurney is hereby

assigned to supervise and assist the special purpose grand jury, and shall charge said special

purpose grand jury and receive its reports as provided by law.

This authorization shall include the investigation of any overt acts or predicate acts relating to the subject of the special purpose grand jury's investigative purpose. The special purpose grand jury, when making its presentments and reports, pursuant to O.C.G.A. §§ 15-12-71 and 15-12-101, may make recommendations concerning criminal prosecution as it shall see fit. Furthermore, the provisions of O.C.G.A. § 15-12-83 shall apply.

This Court also notes that the appointment of a special purpose grand jury will permit the time, efforts, and attention of the regular grand jury(ies) impaneled in this Circuit to continue to be devoted to the consideration of the backlog of criminal matters that has accumulated as a result of the COVID-19 Pandemic.

IT IS FURTHER ORDERED that this Order shall be filed in the Office of the Clerk of the Superior Court of Fulton County.

SO ORDERED, THIS 24 DAY OF January , 2022.

CHRISTOPHER S. BRASHER, CHIEF JUDGE
Superior Court of Fulton County
Atlanta Judicial Circuit

# Exhibit B

OFFICE OF THE FULTON COUNTY DISTRICT ATTORNEY
ATLANTA JUDICIAL CIRCUIT
136 PRYOR STREET SW, 3RD FLOOR
ATLANTA, GEORGIA 30303

*Fani T. Willis*
District Attorney

TELEPHONE 404-612-4639

The Honorable Christopher S. Brasher
Chief Judge, Fulton County Superior Court
Fulton County Courthouse
185 Central Avenue SW, Suite T-8905
Atlanta, Georgia 30303

2022-EX-000017

FILED IN OFFICE

JAN 20 2022

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

January 20, 2022

Dear Chief Judge Brasher:

I hope this letter finds you well and in good spirits. Please be advised that the District Attorney's Office has received information indicating a reasonable probability that the State of Georgia's administration of elections in 2020, including the State's election of the President of the United States, was subject to possible criminal disruptions. Our office has also learned that individuals associated with these disruptions have contacted other agencies empowered to investigate this matter, including the Georgia Secretary of State, the Georgia Attorney General, and the United States Attorney's Office for the Northern District of Georgia, leaving this office as the sole agency with jurisdiction that is not a potential witness to conduct related to the matter. As a result, our office has opened an investigation into any coordinated attempts to unlawfully alter the outcome of the 2020 elections in this state.

We have made efforts to interview multiple witnesses and gather evidence, and a significant number of witnesses and prospective witnesses have refused to cooperate with the investigation absent a subpoena requiring their testimony. By way of example, Georgia Secretary of State Brad Raffensperger, an essential witness to the investigation, has indicated that he will not participate in an interview or otherwise offer evidence until he is presented with a subpoena by my office. Please see Exhibit A, attached to this letter.

Therefore, I am hereby requesting, as the elected District Attorney for Fulton County, pursuant to O.C.G.A. § 15-12-100 et. seq., that a special purpose grand jury be impaneled for the purpose of investigating the facts and circumstances relating directly or indirectly to possible attempts to disrupt the lawful administration of the 2020 elections in the State of Georgia. Specifically, a special purpose grand jury, which will not have the authority to return an indictment but may make recommendations concerning criminal prosecution as it shall see fit, is needed for three reasons: first, a special purpose grand jury can be impaneled by the Court for any time period required in order to accomplish its investigation, which will likely exceed a normal grand jury

term; second, the special purpose grand jury would be empowered to review this matter and this matter only, with an investigatory focus appropriate to the complexity of the facts and circumstances involved; and third, the sitting grand jury would not be required to attempt to address this matter in addition to their normal duties.

Additionally, I am requesting that, pursuant to O.C.G.A. § 15-12-101, a Fulton County Superior Court Judge be assigned to assist and supervise the special purpose grand jury in carrying out its investigation and duties.

I have attached a proposed order impaneling the special purpose grand jury for the consideration of the Court.

Respectfully,

Fani T. Willis
District Attorney, Atlanta Judicial Circuit

Exhibit A: Transcript of October 31, 2021 episode of *Meet the Press* on NBC News at 26:04 (video archived at https://www.youtube.com/watch?v=B71cBRPgt9k)
Exhibit B: Proposed Order

cc:
The Honorable Kimberly M. Esmond Adams
The Honorable Jane C. Barwick
The Honorable Rachelle Carnesdale
The Honorable Thomas A. Cox, Jr.
The Honorable Eric Dunaway
The Honorable Charles M. Eaton, Jr.
The Honorable Belinda E. Edwards
The Honorable Kelly Lee Ellerbe
The Honorable Kevin M. Farmer
The Honorable Ural Glanville
The Honorable Shakura L. Ingram
The Honorable Rachel R. Krause
The Honorable Melynee Leftridge
The Honorable Robert C.I. McBurney
The Honorable Henry M. Newkirk
The Honorable Emily K. Richardson
The Honorable Craig L. Schwall, Sr.
The Honorable Paige Reese Whitaker
The Honorable Shermela J. Williams
Fulton County Clerk of Superior Court Cathelene "Tina" Robinson

## IN THE SUPERIOR COURT OF FULTON COUNTY

### STATE OF GEORGIA

IN RE:                                    )
SPECIAL PURPOSE GRAND JURY    )          2022-EX-000024

                                          )
                                          )          Judge Robert C. I. McBurney
                                          )

## PETITION FOR CERTIFICATION OF NEED FOR TESTIMONY
## BEFORE SPECIAL PURPOSE GRAND JURY
## PURSUANT TO O.C.G.A. O.C.G.A. § 24-13-90 ET SEQ.

**COMES NOW** the State of Georgia, by and through Fani T. Willis, District Attorney,

Atlanta Judicial Circuit, Fulton County, Georgia, and petitions this Honorable Court for a

Certificate of Need for Testimony Before Special Purpose Grand Jury, pursuant to O.C.G.A. §

24-13-92 et seq., and in support thereof says as follows:

1. A Special Purpose Grand Jury investigation commenced in Fulton County, Georgia,

   by order of this court on May 2, 2022. *See* Order Impaneling Special Purpose Grand

   Jury Pursuant to O.C.G.A. § 15-12-100, Et Seq, "**Exhibit A**". The Special Purpose

   Grand Jury is authorized to investigate any and all facts and circumstances relating

   directly or indirectly to possible attempts to disrupt the lawful administration of the

   2020 elections in the State of Georgia. *See* Letter Requesting Special Purpose Grand

   Jury, "**Exhibit B**".

2. Cleta B. Deatherage Mitchell, born September 16, ▮▮▮, (hereinafter, "the Witness")

   is a necessary and material witness to the Special Purpose Grand Jury investigation.

   Through both its investigation and through publicly available information, the State

   has learned that the Witness was an attorney for the Trump Campaign's legal efforts

seeking to influence the results of the November 2020 election in Georgia and elsewhere. As part of those efforts, on January 2, 2021, the Witness, former President Donald Trump, and other individuals associated with the Trump Campaign made a telephone call to Georgia Secretary of State Brad Raffensperger and members of his staff. During the telephone call, the Witness and others made allegations of widespread voter fraud in the November 2020 election in Georgia and pressured Secretary Raffensperger to take action in his official capacity to investigate unfounded claims of fraud. Additionally, former President Trump asked Secretary Raffensperger to "find 11,780 votes" in his favor.

3. The Witness, as an attorney for the Trump Campaign's legal efforts seeking to influence the results of the November 2020 election in Georgia and elsewhere, is a necessary and material witness in this investigation. The Witness possesses unique knowledge concerning the coordination and execution of the January 2, 2021, telephone call to Georgia Secretary of State Brad Raffensperger. The Witness possesses unique knowledge concerning the origin of numerous claims of election fraud alleged in legal filings and to the public by the Witness, former President Trump, the Trump Campaign, and other known and unknown individuals. Additionally, the Witness possesses unique knowledge concerning communications between herself, former President Trump, the Trump Campaign, and other known and unknown individuals involved in the multi-state, coordinated efforts to influence the results of the November 2020 election in Georgia and elsewhere. Finally, the Witness's anticipated testimony is essential in that it is likely to reveal additional sources of information regarding the subject of this investigation.

4. The testimony of the Witness will not be cumulative of any other evidence in this matter.

5. The Witness resides outside the jurisdiction of this Honorable Court and is therefore unable to be served with process to compel attendance and testimony.

6. The Witness currently resides at ███ ██████ ████████ ██ ████.

7. The Witness will be required to be in attendance and testify before the Special Purpose Grand Jury on July 12, 2022, and continuing through and until the conclusion of the Witness's testimony on or before August 31, 2022.

8. The Office of the Fulton County District Attorney, in and for the State of Georgia, will pay all reasonable and necessary travel expenses and witness fees required to secure the Witness's attendance and testimony, in accordance with the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings. *See* O.C.G.A. §24-13-90 et seq.

9. If the Witness comes into the State of Georgia pursuant to this request, directing the Witness to attend and testify before the Special Purpose Grand Jury, the laws of this State shall give the Witness protection from arrest and from service of civil or criminal process, both within this State and in any other state through which the Witness may be required to pass in the ordinary course of travel, for any matters which arose before the Witness's entrance into this State and other states.

10. Both Georgia and North Carolina have adopted the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings. *See* O.C.G.A. § 24-13-90; N.C. Gen. Stat. Ch. 15A, Subch. VIII, Art. 43.

**WHEREFORE**, the State of Georgia, by and through Fani T. Willis, District Attorney, Atlanta Judicial Circuit, Fulton County, Georgia, prays that this Honorable Court issue a Certificate of Need for Testimony Before Special Purpose Grand Jury, pursuant to O.C.G.A. § 24-13-92 et seq., certifying to the proper authorities in the jurisdiction in which the Witness is located that the Witness is a necessary and material witness whose attendance and testimony is required for the above-referenced Special Purpose Grand Jury investigation, and the presence of the Witness will be needed for the number of days specified above,

Respectfully submitted this the 29th day of June, 2022,

**FANI T. WILLIS**
**DISTRICT ATTORNEY**
**ATLANTA JUDICIAL CIRCUIT**

**GA Bar No. 223955**
Atlanta Judicial Circuit
136 Pryor Street Southwest
Third Floor
Atlanta, Georgia 30303

# Exhibit A

IN THE SUPERIOR COURT OF FULTON COUNTY
ATLANTA JUDICIAL CIRCUIT
STATE OF GEORGIA

2022 -EX 000024

FILED IN OFFICE

JAN 24 2022

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

IN RE: REQUEST FOR
SPECIAL PURPOSE
GRAND JURY

## ORDER APPROVING REQUEST FOR SPECIAL PURPOSE
## GRAND JURY PURSUANT TO O.C.G.A. §15-12-100, et seq.

The District Attorney for the Atlanta Judicial Circuit submitted to the judges of the

Superior Court of Fulton County a request to impanel a special purpose jury for the purposes set

forth in that request. This request was considered and approved by a majority of the total

number of the judges of this Court, as required by O.C.G.A. §15-12-100(b).

IT IS THEREFORE ORDERED that a special purpose grand jury be drawn and

impaneled to serve as provided in O.C.G.A. § 15-12-62.1, 15-12-67, and 15-12-100, to

commence on May 2, 2022, and continuing for a period not to exceed 12 months. Such period

shall not include any time periods when the supervising judge determines that the special

purpose grand jury cannot meet for safety or other reasons, or any time periods when normal

court operations are suspended by order of the Supreme Court of Georgia or the Chief Judge of

the Superior Court. The special purpose grand jury shall be authorized to investigate any and all

facts and circumstances relating directly or indirectly to alleged violations of the laws of the

State of Georgia, as set forth in the request of the District Attorney referenced herein above.

Pursuant to O.C.G.A. § 15-12-101(a), the Honorable Robert C. I. McBurney is hereby

assigned to supervise and assist the special purpose grand jury, and shall charge said special

purpose grand jury and receive its reports as provided by law.

This authorization shall include the investigation of any overt acts or predicate acts relating to the subject of the special purpose grand jury's investigative purpose. The special purpose grand jury, when making its presentments and reports, pursuant to O.C.G.A. §§ 15-12-71 and 15-12-101, may make recommendations concerning criminal prosecution as it shall see fit. Furthermore, the provisions of O.C.G.A. § 15-12-83 shall apply.

This Court also notes that the appointment of a special purpose grand jury will permit the time, efforts, and attention of the regular grand jury(ies) impaneled in this Circuit to continue to be devoted to the consideration of the backlog of criminal matters that has accumulated as a result of the COVID-19 Pandemic.

IT IS FURTHER ORDERED that this Order shall be filed in the Office of the Clerk of the Superior Court of Fulton County.

SO ORDERED, THIS 24 DAY OF January, 2022.

CHRISTOPHER S. BRASHER, CHIEF JUDGE
Superior Court of Fulton County
Atlanta Judicial Circuit

# Exhibit B

OFFICE OF THE FULTON COUNTY DISTRICT ATTORNEY
ATLANTA JUDICIAL CIRCUIT
136 PRYOR STREET SW, 3RD FLOOR
ATLANTA, GEORGIA 30303

*Fani T. Willis*
District Attorney

TELEPHONE 404-612-4639

The Honorable Christopher S. Brasher
Chief Judge, Fulton County Superior Court
Fulton County Courthouse
185 Central Avenue SW, Suite T-8905
Atlanta, Georgia 30303

2022-EX-D00017

FILED IN OFFICE
JAN 20 2022
DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

January 20, 2022

Dear Chief Judge Brasher:

I hope this letter finds you well and in good spirits. Please be advised that the District Attorney's Office has received information indicating a reasonable probability that the State of Georgia's administration of elections in 2020, including the State's election of the President of the United States, was subject to possible criminal disruptions. Our office has also learned that individuals associated with these disruptions have contacted other agencies empowered to investigate this matter, including the Georgia Secretary of State, the Georgia Attorney General, and the United States Attorney's Office for the Northern District of Georgia, leaving this office as the sole agency with jurisdiction that is not a potential witness to conduct related to the matter. As a result, our office has opened an investigation into any coordinated attempts to unlawfully alter the outcome of the 2020 elections in this state.

We have made efforts to interview multiple witnesses and gather evidence, and a significant number of witnesses and prospective witnesses have refused to cooperate with the investigation absent a subpoena requiring their testimony. By way of example, Georgia Secretary of State Brad Raffensperger, an essential witness to the investigation, has indicated that he will not participate in an interview or otherwise offer evidence until he is presented with a subpoena by my office. Please see Exhibit A, attached to this letter.

Therefore, I am hereby requesting, as the elected District Attorney for Fulton County, pursuant to O.C.G.A. § 15-12-100 et. seq., that a special purpose grand jury be impaneled for the purpose of investigating the facts and circumstances relating directly or indirectly to possible attempts to disrupt the lawful administration of the 2020 elections in the State of Georgia. Specifically, a special purpose grand jury, which will not have the authority to return an indictment but may make recommendations concerning criminal prosecution as it shall see fit, is needed for three reasons: first, a special purpose grand jury can be impaneled by the Court for any time period required in order to accomplish its investigation, which will likely exceed a normal grand jury

term; second, the special purpose grand jury would be empowered to review this matter and this matter only, with an investigatory focus appropriate to the complexity of the facts and circumstances involved; and third, the sitting grand jury would not be required to attempt to address this matter in addition to their normal duties.

Additionally, I am requesting that, pursuant to O.C.G.A. § 15-12-101, a Fulton County Superior Court Judge be assigned to assist and supervise the special purpose grand jury in carrying out its investigation and duties.

I have attached a proposed order impaneling the special purpose grand jury for the consideration of the Court.

Respectfully,

Fani T. Willis
District Attorney, Atlanta Judicial Circuit

Exhibit A: Transcript of October 31, 2021 episode of *Meet the Press* on NBC News at 26:04 (video archived at https://www.youtube.com/watch?v=B71cBRPgt9k)
Exhibit B: Proposed Order

cc:
The Honorable Kimberly M. Esmond Adams
The Honorable Jane C. Barwick
The Honorable Rachelle Carnesdale
The Honorable Thomas A. Cox, Jr.
The Honorable Eric Dunaway
The Honorable Charles M. Eaton, Jr.
The Honorable Belinda E. Edwards
The Honorable Kelly Lee Ellerbe
The Honorable Kevin M. Farmer
The Honorable Ural Glanville
The Honorable Shakura L. Ingram
The Honorable Rachel R. Krause
The Honorable Melynee Leftridge
The Honorable Robert C.I. McBurney
The Honorable Henry M. Newkirk
The Honorable Emily K. Richardson
The Honorable Craig L. Schwall, Sr.
The Honorable Paige Reese Whitaker
The Honorable Shermela J. Williams
Fulton County Clerk of Superior Court Cathelene "Tina" Robinson

## IN THE SUPERIOR COURT OF FULTON COUNTY

### STATE OF GEORGIA

IN RE:                                    )
SPECIAL PURPOSE GRAND JURY       )          2022-EX-000024
                                          )
                                          )          Judge Robert C. I. McBurney
                                          )

### CERTIFICATE OF MATERIAL WITNESS
### PURSUANT TO UNIFORM ACT TO SECURE THE ATTENDANCE
### OF WITNESSES FROM WITHOUT THE STATE,
### CODIFIED IN THE STATE OF GEOGIA AS
### O.C.G.A. § 24-13-90 ET SEQ.

Upon the petition of Fani T. Willis, District Attorney, Atlanta Judicial Circuit, pursuant to

the Uniform Act to Secure the Attendance of Witnesses from Without the State, codified at

O.C.G.A. § 24-13-90 et seq., the Court issues the following Certificate under seal of this Court,

and further says as follows:

1. A Special Purpose Grand Jury investigation commenced in Fulton County, Georgia,

   by order of this Court on May 2, 2022. *See* Order Impaneling Special Purpose Grand

   Jury Pursuant to O.C.G.A. § 15-12-100, et seq., "**Exhibit A**". The Special Purpose

   Grand Jury is authorized to investigate any and all facts and circumstances relating

   directly or indirectly to possible attempts to disrupt the lawful administration of the

   2020 elections in the State of Georgia. *See* Letter Requesting Special Purpose Grand

   Jury, "**Exhibit B**".

2. Based on the representations made by the State in the attached "Petition for

   Certification of Need for Testimony Before Special Purpose Grand Jury Pursuant to

   O.C.G.A. § 24-13-90 et seq.", the Court finds that Cleta B. Deatherage Mitchell, born

September 16, ▮▮▮ (hereinafter, "the Witness"), is a necessary and material witness to the Special Purpose Grand Jury investigation. The Court further finds that the Witness currently resides at ▮▮▮▮▮▮▮▮▮▮.

3.  Based on the representations made by the State in the attached "Petition for Certification of Need for Testimony Before Special Purpose Grand Jury Pursuant to O.C.G.A. § 24-13-90 et seq.", the Court further finds that the Witness was an attorney for the Trump Campaign's legal efforts seeking to influence the results of the November 2020 election in Georgia and elsewhere. As part of those efforts, on January 2, 2021, the Witness, former President Donald Trump, and other individuals associated with the Trump Campaign made a telephone call to Georgia Secretary of State Brad Raffensperger and members of his staff. During the telephone call, the Witness and others made allegations of widespread voter fraud in the November 2020 election in Georgia and pressured Secretary Raffensperger to take action in his official capacity to investigate unfounded claims of fraud. Additionally, former President Trump asked Secretary Raffensperger to "find 11,780 votes" in his favor.

4.  Based on the representations made by the State in the attached "Petition for Certification of Need for Testimony Before Special Purpose Grand Jury Pursuant to O.C.G.A. § 24-13-90 et seq.", the Court further finds that the Witness, as an attorney for the Trump Campaign's legal efforts seeking to influence the results of the November 2020 election in Georgia and elsewhere, is a necessary and material witness in this investigation. The Witness possesses unique knowledge concerning the coordination and execution of the January 2, 2021, telephone call to Georgia Secretary of State Brad Raffensperger, The Witness possesses unique knowledge

concerning the origin of numerous claims of election fraud alleged in legal filings and
to the public by the Witness, former President Trump, the Trump Campaign, and
other known and unknown individuals. Additionally, the Witness possesses unique
knowledge concerning communications between herself, former President Trump, the
Trump Campaign, and other known and unknown individuals involved in the multi-
state, coordinated efforts to influence the results of the November 2020 election in
Georgia and elsewhere. Finally, the Witness's anticipated testimony is essential in
that it is likely to reveal additional sources of information regarding the subject of this
investigation.

5. The testimony of the Witness will not be cumulative of any other evidence in this
   matter.

6. The Witness will be required to be in attendance and testify before the Special
   Purpose Grand Jury on July 12, 2022, and continuing through and until the
   conclusion of the Witness's testimony on or before August 31, 2022, at the Superior
   Court of Fulton County, Fulton County Courthouse, 136 Pryor Street, 3rd Floor,
   Atlanta, Georgia 30303.

7. The Office of the Fulton County District Attorney, in and for the State of Georgia,
   will pay all reasonable and necessary travel expenses and witness fees required to
   secure the Witness's attendance and testimony, in accordance with O.C.G.A. §24-13-
   90 et seq.

8. The Witness protection shall be given protection from arrest and from service of civil
   or criminal process, both within this State and in any other state through which the
   Witness may be required to pass in the ordinary course of travel, for any matters

which arose before the Witness's entrance into this State and other states, while traveling to and from this Court for the purpose of testifying for this case.

9. The State of Georgia is a participant in a reciprocal program providing for the securing of witnesses to testify in foreign jurisdictions which likewise provide for such methods of securing witnesses to testify in their courts.

10. This Certificate is made for the purpose of being presented to a judge of the Monroe County, NC, Superior Court (District 19D) by the Moore County District Attorney, or his duly authorized representative, who is proceeding at the request and on behalf of the Office of the Fulton County District Attorney to compel the Witness to be in attendance and testify before the Special Purpose Grand Jury on July 12, 2022, and continuing through and until the conclusion of the Witness's testimony on or before August 31, 2022, at the Superior Court of Fulton County, Fulton County Courthouse, 136 Pryor Street, 3rd Floor, Atlanta, Georgia 30303.

**WITNESS MY HAND AND SEAL** as a judge of the Superior Court of Fulton County, Georgia,

This the ___1st___ day of ~~June~~ July, 2022.

**Hon. Robert C. I. McBurney**
Superior Court of Fulton County
Atlanta Judicial Circuit
State of Georgia

# Exhibit A

IN THE SUPERIOR COURT OF FULTON COUNTY
ATLANTA JUDICIAL CIRCUIT
STATE OF GEORGIA

2022-EX 000024

FILED IN OFFICE

JAN 24 2022

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

IN RE:  REQUEST FOR
SPECIAL PURPOSE
GRAND JURY

ORDER APPROVING REQUEST FOR SPECIAL PURPOSE
GRAND JURY PURSUANT TO O.C.G.A. §15-12-100, et seq.

The District Attorney for the Atlanta Judicial Circuit submitted to the judges of the
Superior Court of Fulton County a request to impanel a special purpose jury for the purposes set
forth in that request. This request was considered and approved by a majority of the total
number of the judges of this Court, as required by O.C.G.A. §15-12-100(b).

IT IS THEREFORE ORDERED that a special purpose grand jury be drawn and
impaneled to serve as provided in O.C.G.A. § 15-12-62.1, 15-12-67, and 15-12-100, to
commence on May 2, 2022, and continuing for a period not to exceed 12 months. Such period
shall not include any time periods when the supervising judge determines that the special
purpose grand jury cannot meet for safety or other reasons, or any time periods when normal
court operations are suspended by order of the Supreme Court of Georgia or the Chief Judge of
the Superior Court. The special purpose grand jury shall be authorized to investigate any and all
facts and circumstances relating directly or indirectly to alleged violations of the laws of the
State of Georgia, as set forth in the request of the District Attorney referenced herein above.

Pursuant to O.C.G.A. § 15-12-101(a), the Honorable Robert C. I. McBurney is hereby
assigned to supervise and assist the special purpose grand jury, and shall charge said special
purpose grand jury and receive its reports as provided by law.

This authorization shall include the investigation of any overt acts or predicate acts relating to the subject of the special purpose grand jury's investigative purpose. The special purpose grand jury, when making its presentments and reports, pursuant to O.C.G.A. §§ 15-12-71 and 15-12-101, may make recommendations concerning criminal prosecution as it shall see fit. Furthermore, the provisions of O.C.G.A. § 15-12-83 shall apply.

This Court also notes that the appointment of a special purpose grand jury will permit the time, efforts, and attention of the regular grand jury(ies) impaneled in this Circuit to continue to be devoted to the consideration of the backlog of criminal matters that has accumulated as a result of the COVID-19 Pandemic.

IT IS FURTHER ORDERED that this Order shall be filed in the Office of the Clerk of the Superior Court of Fulton County.

SO ORDERED, THIS 24 DAY OF January , 2022.

CHRISTOPHER S. BRASHER, CHIEF JUDGE
Superior Court of Fulton County
Atlanta Judicial Circuit

# Exhibit B

OFFICE OF THE FULTON COUNTY DISTRICT ATTORNEY
ATLANTA JUDICIAL CIRCUIT
136 PRYOR STREET SW, 3RD FLOOR
ATLANTA, GEORGIA 30303

*Fani T. Willis*
District Attorney

TELEPHONE 404-612-4639

The Honorable Christopher S. Brasher
Chief Judge, Fulton County Superior Court
Fulton County Courthouse
185 Central Avenue SW, Suite T-8905
Atlanta, Georgia 30303

2022-EX-000017

FILED IN OFFICE

JAN 20 2022

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

January 20, 2022

Dear Chief Judge Brasher:

I hope this letter finds you well and in good spirits. Please be advised that the District Attorney's Office has received information indicating a reasonable probability that the State of Georgia's administration of elections in 2020, including the State's election of the President of the United States, was subject to possible criminal disruptions. Our office has also learned that individuals associated with these disruptions have contacted other agencies empowered to investigate this matter, including the Georgia Secretary of State, the Georgia Attorney General, and the United States Attorney's Office for the Northern District of Georgia, leaving this office as the sole agency with jurisdiction that is not a potential witness to conduct related to the matter. As a result, our office has opened an investigation into any coordinated attempts to unlawfully alter the outcome of the 2020 elections in this state.

We have made efforts to interview multiple witnesses and gather evidence, and a significant number of witnesses and prospective witnesses have refused to cooperate with the investigation absent a subpoena requiring their testimony. By way of example, Georgia Secretary of State Brad Raffensperger, an essential witness to the investigation, has indicated that he will not participate in an interview or otherwise offer evidence until he is presented with a subpoena by my office. Please see Exhibit A, attached to this letter.

Therefore, I am hereby requesting, as the elected District Attorney for Fulton County, pursuant to O.C.G.A. § 15-12-100 et. seq., that a special purpose grand jury be impaneled for the purpose of investigating the facts and circumstances relating directly or indirectly to possible attempts to disrupt the lawful administration of the 2020 elections in the State of Georgia. Specifically, a special purpose grand jury, which will not have the authority to return an indictment but may make recommendations concerning criminal prosecution as it shall see fit, is needed for three reasons: first, a special purpose grand jury can be impaneled by the Court for any time period required in order to accomplish its investigation, which will likely exceed a normal grand jury

term; second, the special purpose grand jury would be empowered to review this matter and this matter only, with an investigatory focus appropriate to the complexity of the facts and circumstances involved; and third, the sitting grand jury would not be required to attempt to address this matter in addition to their normal duties.

Additionally, I am requesting that, pursuant to O.C.G.A. § 15-12-101, a Fulton County Superior Court Judge be assigned to assist and supervise the special purpose grand jury in carrying out its investigation and duties.

I have attached a proposed order impaneling the special purpose grand jury for the consideration of the Court.

Respectfully,

Fani T. Willis
District Attorney, Atlanta Judicial Circuit

Exhibit A: Transcript of October 31, 2021 episode of *Meet the Press* on NBC News at 26:04 (video archived at https://www.youtube.com/watch?v=B71cBRPgt9k)
Exhibit B: Proposed Order

cc:
The Honorable Kimberly M. Esmond Adams
The Honorable Jane C. Barwick
The Honorable Rachelle Carnesdale
The Honorable Thomas A. Cox, Jr.
The Honorable Eric Dunaway
The Honorable Charles M. Eaton, Jr.
The Honorable Belinda E. Edwards
The Honorable Kelly Lee Ellerbe
The Honorable Kevin M. Farmer
The Honorable Ural Glanville
The Honorable Shakura L. Ingram
The Honorable Rachel R. Krause
The Honorable Melynee Leftridge
The Honorable Robert C.I. McBurney
The Honorable Henry M. Newkirk
The Honorable Emily K. Richardson
The Honorable Craig L. Schwall, Sr.
The Honorable Paige Reese Whitaker
The Honorable Shermela J. Williams
Fulton County Clerk of Superior Court Cathelene "Tina" Robinson

## IN THE SUPERIOR COURT OF FULTON COUNTY

FILED IN OFFICE
JUL 05 2022
DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

### STATE OF GEORGIA

IN RE: )
SPECIAL PURPOSE GRAND JURY ) 2022-EX-000024
)
) Judge Robert C. I. McBurney
)

## PETITION FOR CERTIFICATION OF NEED FOR TESTIMONY
## BEFORE SPECIAL PURPOSE GRAND JURY
## PURSUANT TO O.C.G.A. O.C.G.A. § 24-13-90 ET SEQ.

**COMES NOW** the State of Georgia, by and through Fani T. Willis, District Attorney, Atlanta Judicial Circuit, Fulton County, Georgia, and petitions this Honorable Court for a Certificate of Need for Testimony Before Special Purpose Grand Jury, pursuant to O.C.G.A. § 24-13-92 et seq., and in support thereof says as follows:

1. A Special Purpose Grand Jury investigation commenced in Fulton County, Georgia, by order of this court on May 2, 2022. *See* Order Impaneling Special Purpose Grand Jury Pursuant to O.C.G.A. § 15-12-100, Et Seq, "**Exhibit A**". The Special Purpose Grand Jury is authorized to investigate any and all facts and circumstances relating directly or indirectly to possible attempts to disrupt the lawful administration of the 2020 elections in the State of Georgia. *See* Letter Requesting Special Purpose Grand Jury, "**Exhibit B**".

2. Jenna Ellis, born November 1, ███, (hereinafter, "the Witness") is a necessary and material witness to the Special Purpose Grand Jury investigation. Through both its investigation and through publicly available information, the State has learned that the Witness was an attorney for the Trump Campaign's legal efforts seeking to

influence the results of the November 2020 election in Georgia and elsewhere. As part of those efforts, on December 3, 2020, the Witness and other individuals known to be associated with both her and the Trump Campaign appeared publicly before the Georgia State Senate at the Georgia State Capitol in Atlanta, Fulton County, Georgia. At that hearing, witnesses provided testimony and documentary evidence purporting to demonstrate the existence of election fraud in multiple Georgia counties during the administration of the November 2020 election. Among the evidence offered by the witnesses was a video recording of election workers at State Farm Arena in Atlanta that purported to show election workers producing "suitcases" of unlawful ballots from unknown sources, outside the view of election poll watchers. Within 24 hours of the December 3, 2020, legislative hearing, the Georgia Secretary of State's Office debunked the State Farm video and explained that its investigation revealed no voter fraud of any kind had taken place at State Farm Arena. Despite this, the Witness made additional statements claiming widespread voter fraud in Georgia during the November 2020 election. There is evidence that the Witness's appearance and testimony at the hearing was part of a multi-state, coordinated plan by the Trump Campaign to influence the results of the November 2020 election in Georgia and elsewhere.

3.  Additionally, the Witness personally authored at least two legal memoranda to former President Donald Trump and his attorneys, including attorney Jay Sekulow, advising that Vice President Mike Pence should disregard certified electoral college votes from Georgia and other purportedly "contested" states during the Joint Session of the United States Congress on January 6, 2021. There is evidence that the Witness's

drafting of these legal memoranda was part of a multi-state, coordinated plan by the Trump Campaign to influence the results of the November 2020 election in Georgia and elsewhere.

4. The Witness, as an attorney for the Trump Campaign's legal efforts seeking to influence the results of the November 2020 election in Georgia and elsewhere, is a necessary and material witness in this investigation. The Witness possesses unique knowledge concerning the origin of numerous claims of election fraud alleged in legal filings and to the public by the Witness, former President Trump, the Trump Campaign, and other known and unknown individuals. Additionally, the Witness possesses unique knowledge concerning communications between herself, former President Trump, the Trump Campaign, and other known and unknown individuals involved in the multi-state, coordinated efforts to influence the results of the November 2020 election in Georgia and elsewhere. Finally, the Witness's anticipated testimony is essential in that it is likely to reveal additional sources of information regarding the subject of this investigation.

5. The testimony of the Witness will not be cumulative of any other evidence in this matter.

6. The Witness resides outside the jurisdiction of this Honorable Court and is therefore unable to be served with process to compel attendance and testimony.

7. The Witness currently resides at ▮▮ ▮▮▮ ▮▮▮▮▮▮ ▮▮ ▮▮▮.

8. The Witness will be required to be in attendance and testify before the Special Purpose Grand Jury on July 12, 2022, and continuing through and until the conclusion of the Witness's testimony on or before August 31, 2022.

9. The Office of the Fulton County District Attorney, in and for the State of Georgia, will pay all reasonable and necessary travel expenses and witness fees required to secure the Witness's attendance and testimony, in accordance with the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings. *See* O.C.G.A. §24-13-90 et seq.

10. If the Witness comes into the State of Georgia pursuant to this request, directing the Witness to attend and testify before the Special Purpose Grand Jury, the laws of this State shall give the Witness protection from arrest and from service of civil or criminal process, both within this State and in any other state through which the Witness may be required to pass in the ordinary course of travel, for any matters which arose before the Witness's entrance into this State and other states.

11. Both Georgia and Colorado have adopted the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings. *See* O.C.G.A. § 24-13-90; C.R.S. 16-9-201-205.

**WHEREFORE**, the State of Georgia, by and through Fani T. Willis, District Attorney, Atlanta Judicial Circuit, Fulton County, Georgia, prays that this Honorable Court issue a Certificate of Need for Testimony Before Special Purpose Grand Jury, pursuant to O.C.G.A. § 24-13-92 et seq., certifying to the proper authorities in the jurisdiction in which the Witness is located that the Witness is a necessary and material witness whose attendance and testimony is required for the above-referenced Special Purpose Grand Jury investigation, and the presence of the Witness will be needed for the number of days specified above,

Respectfully submitted this the 29th day of June, 2022,

> **FANI T. WILLIS**
> **DISTRICT ATTORNEY**
> **ATLANTA JUDICIAL CIRCUIT**
>
> **GA Bar No. 223955**
> Atlanta Judicial Circuit
> 136 Pryor Street Southwest
> Third Floor
> Atlanta, Georgia 30303

# Exhibit A

IN THE SUPERIOR COURT OF FULTON COUNTY
ATLANTA JUDICIAL CIRCUIT
STATE OF GEORGIA

2022 - EX 000024

FILED IN OFFICE

JAN 24 2022

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

IN RE: REQUEST FOR
SPECIAL PURPOSE
GRAND JURY

## ORDER APPROVING REQUEST FOR SPECIAL PURPOSE GRAND JURY PURSUANT TO O.C.G.A. §15-12-100, et seq.

The District Attorney for the Atlanta Judicial Circuit submitted to the judges of the Superior Court of Fulton County a request to impanel a special purpose jury for the purposes set forth in that request. This request was considered and approved by a majority of the total number of the judges of this Court, as required by O.C.G.A. §15-12-100(b).

IT IS THEREFORE ORDERED that a special purpose grand jury be drawn and impaneled to serve as provided in O.C.G.A. § 15-12-62.1, 15-12-67, and 15-12-100, to commence on May 2, 2022, and continuing for a period not to exceed 12 months. Such period shall not include any time periods when the supervising judge determines that the special purpose grand jury cannot meet for safety or other reasons, or any time periods when normal court operations are suspended by order of the Supreme Court of Georgia or the Chief Judge of the Superior Court. The special purpose grand jury shall be authorized to investigate any and all facts and circumstances relating directly or indirectly to alleged violations of the laws of the State of Georgia, as set forth in the request of the District Attorney referenced herein above.

Pursuant to O.C.G.A. § 15-12-101(a), the Honorable Robert C. I. McBurney is hereby assigned to supervise and assist the special purpose grand jury, and shall charge said special purpose grand jury and receive its reports as provided by law.

This authorization shall include the investigation of any overt acts or predicate acts relating to the subject of the special purpose grand jury's investigative purpose. The special purpose grand jury, when making its presentments and reports, pursuant to O.C.G.A. §§ 15-12-71 and 15-12-101, may make recommendations concerning criminal prosecution as it shall see fit. Furthermore, the provisions of O.C.G.A. § 15-12-83 shall apply.

This Court also notes that the appointment of a special purpose grand jury will permit the time, efforts, and attention of the regular grand jury(ies) impaneled in this Circuit to continue to be devoted to the consideration of the backlog of criminal matters that has accumulated as a result of the COVID-19 Pandemic.

IT IS FURTHER ORDERED that this Order shall be filed in the Office of the Clerk of the Superior Court of Fulton County.

SO ORDERED, THIS 24 DAY OF January , 2022.

CHRISTOPHER S. BRASHER, CHIEF JUDGE
Superior Court of Fulton County
Atlanta Judicial Circuit

# Exhibit B

OFFICE OF THE FULTON COUNTY DISTRICT ATTORNEY
ATLANTA JUDICIAL CIRCUIT
136 PRYOR STREET SW, 3RD FLOOR
ATLANTA, GEORGIA 30303

*Fani T. Willis*
District Attorney



TELEPHONE 404-612-4639

The Honorable Christopher S. Brasher
Chief Judge, Fulton County Superior Court
Fulton County Courthouse
185 Central Avenue SW, Suite T-8905
Atlanta, Georgia 30303

*2022 - EX - 000017*

FILED IN OFFICE

JAN 20 2022

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

January 20, 2022

Dear Chief Judge Brasher:

I hope this letter finds you well and in good spirits. Please be advised that the District Attorney's Office has received information indicating a reasonable probability that the State of Georgia's administration of elections in 2020, including the State's election of the President of the United States, was subject to possible criminal disruptions. Our office has also learned that individuals associated with these disruptions have contacted other agencies empowered to investigate this matter, including the Georgia Secretary of State, the Georgia Attorney General, and the United States Attorney's Office for the Northern District of Georgia, leaving this office as the sole agency with jurisdiction that is not a potential witness to conduct related to the matter. As a result, our office has opened an investigation into any coordinated attempts to unlawfully alter the outcome of the 2020 elections in this state.

We have made efforts to interview multiple witnesses and gather evidence, and a significant number of witnesses and prospective witnesses have refused to cooperate with the investigation absent a subpoena requiring their testimony. By way of example, Georgia Secretary of State Brad Raffensperger, an essential witness to the investigation, has indicated that he will not participate in an interview or otherwise offer evidence until he is presented with a subpoena by my office. Please see Exhibit A, attached to this letter.

Therefore, I am hereby requesting, as the elected District Attorney for Fulton County, pursuant to O.C.G.A. § 15-12-100 et. seq., that a special purpose grand jury be impaneled for the purpose of investigating the facts and circumstances relating directly or indirectly to possible attempts to disrupt the lawful administration of the 2020 elections in the State of Georgia. Specifically, a special purpose grand jury, which will not have the authority to return an indictment but may make recommendations concerning criminal prosecution as it shall see fit, is needed for three reasons: first, a special purpose grand jury can be impaneled by the Court for any time period required in order to accomplish its investigation, which will likely exceed a normal grand jury

term; second, the special purpose grand jury would be empowered to review this matter and this matter only, with an investigatory focus appropriate to the complexity of the facts and circumstances involved; and third, the sitting grand jury would not be required to attempt to address this matter in addition to their normal duties.

Additionally, I am requesting that, pursuant to O.C.G.A. § 15-12-101, a Fulton County Superior Court Judge be assigned to assist and supervise the special purpose grand jury in carrying out its investigation and duties.

I have attached a proposed order impaneling the special purpose grand jury for the consideration of the Court.

Respectfully,

Fani T. Willis
District Attorney, Atlanta Judicial Circuit

Exhibit A: Transcript of October 31, 2021 episode of *Meet the Press* on NBC News at 26:04 (video archived at https://www.youtube.com/watch?v=B71cBRPgt9k)
Exhibit B: Proposed Order

cc:
The Honorable Kimberly M. Esmond Adams
The Honorable Jane C. Barwick
The Honorable Rachelle Carnesdale
The Honorable Thomas A. Cox, Jr.
The Honorable Eric Dunaway
The Honorable Charles M. Eaton, Jr.
The Honorable Belinda E. Edwards
The Honorable Kelly Lee Ellerbe
The Honorable Kevin M. Farmer
The Honorable Ural Gianville
The Honorable Shakura L. Ingram
The Honorable Rachel R. Krause
The Honorable Melynee Leftridge
The Honorable Robert C.I. McBurney
The Honorable Henry M. Newkirk
The Honorable Emily K. Richardson
The Honorable Craig L. Schwall, Sr.
The Honorable Paige Reese Whitaker
The Honorable Shermela J. Williams
Fulton County Clerk of Superior Court Cathelene "Tina" Robinson

## IN THE SUPERIOR COURT OF FULTON COUNTY

### STATE OF GEORGIA

IN RE:                                          )
SPECIAL PURPOSE GRAND JURY        )         2022-EX-000024
                                                )
                                                )         Judge Robert C. I. McBurney
                                                )

### CERTIFICATE OF MATERIAL WITNESS
### PURSUANT TO UNIFORM ACT TO SECURE THE ATTENDANCE
### OF WITNESSES FROM WITHOUT THE STATE,
### CODIFIED IN THE STATE OF GEOGIA AS
### O.C.G.A. § 24-13-90 ET SEQ.

Upon the petition of Fani T. Willis, District Attorney, Atlanta Judicial Circuit, pursuant to

the Uniform Act to Secure the Attendance of Witnesses from Without the State, codified at

O.C.G.A. § 24-13-90 et seq., the Court issues the following Certificate under seal of this Court,

and further says as follows:

1. A Special Purpose Grand Jury investigation commenced in Fulton County, Georgia,

   by order of this Court on May 2, 2022. *See* Order Impaneling Special Purpose Grand

   Jury Pursuant to O.C.G.A. § 15-12-100, et seq., "**Exhibit A**". The Special Purpose

   Grand Jury is authorized to investigate any and all facts and circumstances relating

   directly or indirectly to possible attempts to disrupt the lawful administration of the

   2020 elections in the State of Georgia. *See* Letter Requesting Special Purpose Grand

   Jury, "**Exhibit B**".

2. Based on the representations made by the State in the attached "Petition for

   Certification of Need for Testimony Before Special Purpose Grand Jury Pursuant to

   O.C.G.A. § 24-13-90 et seq.", the Court finds that Jenna Ellis, born November 1,

█████ (hereinafter, "the Witness"), is a necessary and material witness to the Special Purpose Grand Jury investigation. The Court further finds that the Witness currently resides at ██████████ ████████████ ████ ████.

3. Based on the representations made by the State in the attached "Petition for Certification of Need for Testimony Before Special Purpose Grand Jury Pursuant to O.C.G.A. § 24-13-90 et seq.", the Court further finds that the Witness was an attorney for the Trump Campaign's legal efforts seeking to influence the results of the November 2020 election in Georgia and elsewhere. As part of those efforts, on December 3, 2020, the Witness and other individuals known to be associated with both her and the Trump Campaign appeared publicly before the Georgia State Senate at the Georgia State Capitol in Atlanta, Fulton County, Georgia. At that hearing, witnesses provided testimony and documentary evidence purporting to demonstrate the existence of election fraud in multiple Georgia counties during the administration of the November 2020 election. Among the evidence offered by the witnesses was a video recording of election workers at State Farm Arena in Atlanta that purported to show election workers producing "suitcases" of unlawful ballots from unknown sources, outside the view of election poll watchers. Within 24 hours of the December 3, 2020, legislative hearing, the Georgia Secretary of State's Office debunked the State Farm video and explained that its investigation revealed no voter fraud of any kind had taken place at State Farm Arena. Despite this, the Witness made additional statements claiming widespread voter fraud in Georgia during the November 2020 election. There is evidence that the Witness's appearance and testimony at the hearing

was part of a multi-state, coordinated plan by the Trump Campaign to influence the results of the November 2020 election in Georgia and elsewhere.

4. Based on the representations made by the State in the attached "Petition for Certification of Need for Testimony Before Special Purpose Grand Jury Pursuant to O.C.G.A. § 24-13-90 et seq.", the Court further finds that the Witness personally authored at least two legal memoranda to former President Donald Trump and another of his attorneys, Jay Sekulow, advising that Vice President Mike Pence should disregard certified electoral college votes from Georgia and other purportedly "contested" states during the Joint Session of the United States Congress on January 6, 2021. There is evidence that the Witness's drafting of these legal memoranda was part of a multi-state, coordinated plan by the Trump Campaign to influence the results of the November 2020 election in Georgia and elsewhere.

5. Based on the representations made by the State in the attached "Petition for Certification of Need for Testimony Before Special Purpose Grand Jury Pursuant to O.C.G.A. § 24-13-90 et seq.", the Court further finds that the Witness, as an attorney for the Trump Campaign's legal efforts seeking to influence the results of the November 2020 election in Georgia and elsewhere, is a necessary and material witness in this investigation. The Witness possesses unique knowledge concerning the origin of numerous claims of election fraud alleged in legal filings and to the public by the Witness, former President Trump, the Trump Campaign, and other known and unknown individuals. Additionally, the Witness possesses unique knowledge concerning communications between herself, former President Trump, the Trump Campaign, and other known and unknown individuals involved in the multi-

state, coordinated efforts to influence the results of the November 2020 election in Georgia and elsewhere. Finally, the Witness's anticipated testimony is essential in that it is likely to reveal additional sources of information regarding the subject of this investigation.

6. The testimony of the Witness will not be cumulative of any other evidence in this matter.

7. The Witness will be required to be in attendance and testify before the Special Purpose Grand Jury on July 12, 2022, and continuing through and until the conclusion of the Witness's testimony on or before August 31, 2022, at the Superior Court of Fulton County, Fulton County Courthouse, 136 Pryor Street, 3rd Floor, Atlanta, Georgia 30303.

8. The Office of the Fulton County District Attorney, in and for the State of Georgia, will pay all reasonable and necessary travel expenses and witness fees required to secure the Witness's attendance and testimony, in accordance with O.C.G.A. §24-13-90 et seq.

9. The Witness protection shall be given protection from arrest and from service of civil or criminal process, both within this State and in any other state through which the Witness may be required to pass in the ordinary course of travel, for any matters which arose before the Witness's entrance into this State and other states, while traveling to and from this Court for the purpose of testifying for this case.

10. The State of Georgia is a participant in a reciprocal program providing for the securing of witnesses to testify in foreign jurisdictions which likewise provide for such methods of securing witnesses to testify in their courts.

11. This Certificate is made for the purpose of being presented to a judge of the Colorado Eighth Judicial District Court, Larimer County, by the District Attorney for the Colorado Eighth Judicial District, or his duly authorized representative, who is proceeding at the request and on behalf of the Office of the Fulton County District Attorney to compel the Witness to be in attendance and testify before the Special Purpose Grand Jury on July 12, 2022, and continuing through and until the conclusion of the Witness's testimony on or before August 31, 2022, at the Superior Court of Fulton County, Fulton County Courthouse, 136 Pryor Street, 3rd Floor, Atlanta, Georgia 30303.

**WITNESS MY HAND AND SEAL** as a judge of the Superior Court of Fulton County,

Georgia,

This the ___1st___ day of ~~June~~ July, 2022.

**Hon. Robert C. I. McBurney**
Superior Court of Fulton County
Atlanta Judicial Circuit
State of Georgia

# Exhibit A

IN THE SUPERIOR COURT OF FULTON COUNTY
ATLANTA JUDICIAL CIRCUIT
STATE OF GEORGIA

2022 - EX 000024

FILED IN OFFICE

JAN 24 2022

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

IN RE: REQUEST FOR
SPECIAL PURPOSE
GRAND JURY

## ORDER APPROVING REQUEST FOR SPECIAL PURPOSE
## GRAND JURY PURSUANT TO O.C.G.A. §15-12-100, et seq.

The District Attorney for the Atlanta Judicial Circuit submitted to the judges of the

Superior Court of Fulton County a request to impanel a special purpose jury for the purposes set

forth in that request. This request was considered and approved by a majority of the total

number of the judges of this Court, as required by O.C.G.A. §15-12-100(b).

IT IS THEREFORE ORDERED that a special purpose grand jury be drawn and

impaneled to serve as provided in O.C.G.A. § 15-12-62.1, 15-12-67, and 15-12-100, to

commence on May 2, 2022, and continuing for a period not to exceed 12 months. Such period

shall not include any time periods when the supervising judge determines that the special

purpose grand jury cannot meet for safety or other reasons, or any time periods when normal

court operations are suspended by order of the Supreme Court of Georgia or the Chief Judge of

the Superior Court. The special purpose grand jury shall be authorized to investigate any and all

facts and circumstances relating directly or indirectly to alleged violations of the laws of the

State of Georgia, as set forth in the request of the District Attorney referenced herein above.

Pursuant to O.C.G.A. § 15-12-101(a), the Honorable Robert C. I. McBurney is hereby

assigned to supervise and assist the special purpose grand jury, and shall charge said special

purpose grand jury and receive its reports as provided by law.

This authorization shall include the investigation of any overt acts or predicate acts relating to the subject of the special purpose grand jury's investigative purpose. The special purpose grand jury, when making its presentments and reports, pursuant to O.C.G.A. §§ 15-12-71 and 15-12-101, may make recommendations concerning criminal prosecution as it shall see fit. Furthermore, the provisions of O.C.G.A. § 15-12-83 shall apply.

This Court also notes that the appointment of a special purpose grand jury will permit the time, efforts, and attention of the regular grand jury(ies) impaneled in this Circuit to continue to be devoted to the consideration of the backlog of criminal matters that has accumulated as a result of the COVID-19 Pandemic.

IT IS FURTHER ORDERED that this Order shall be filed in the Office of the Clerk of the Superior Court of Fulton County.

SO ORDERED, THIS 24 DAY OF January , 2022.

CHRISTOPHER S. BRASHER, CHIEF JUDGE
Superior Court of Fulton County
Atlanta Judicial Circuit

# Exhibit B



OFFICE OF THE FULTON COUNTY DISTRICT ATTORNEY
ATLANTA JUDICIAL CIRCUIT
136 PRYOR STREET SW, 3RD FLOOR
ATLANTA, GEORGIA 30303

*Fani T. Willis*
District Attorney

TELEPHONE 404-612-4639

2022-EX-000017

FILED IN OFFICE

JAN 20 2022

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

The Honorable Christopher S. Brasher
Chief Judge, Fulton County Superior Court
Fulton County Courthouse
185 Central Avenue SW, Suite T-8905
Atlanta, Georgia 30303

January 20, 2022

Dear Chief Judge Brasher:

I hope this letter finds you well and in good spirits. Please be advised that the District Attorney's Office has received information indicating a reasonable probability that the State of Georgia's administration of elections in 2020, including the State's election of the President of the United States, was subject to possible criminal disruptions. Our office has also learned that individuals associated with these disruptions have contacted other agencies empowered to investigate this matter, including the Georgia Secretary of State, the Georgia Attorney General, and the United States Attorney's Office for the Northern District of Georgia, leaving this office as the sole agency with jurisdiction that is not a potential witness to conduct related to the matter. As a result, our office has opened an investigation into any coordinated attempts to unlawfully alter the outcome of the 2020 elections in this state.

We have made efforts to interview multiple witnesses and gather evidence, and a significant number of witnesses and prospective witnesses have refused to cooperate with the investigation absent a subpoena requiring their testimony. By way of example, Georgia Secretary of State Brad Raffensperger, an essential witness to the investigation, has indicated that he will not participate in an interview or otherwise offer evidence until he is presented with a subpoena by my office. Please see Exhibit A, attached to this letter.

Therefore, I am hereby requesting, as the elected District Attorney for Fulton County, pursuant to O.C.G.A. § 15-12-100 et. seq., that a special purpose grand jury be impaneled for the purpose of investigating the facts and circumstances relating directly or indirectly to possible attempts to disrupt the lawful administration of the 2020 elections in the State of Georgia. Specifically, a special purpose grand jury, which will not have the authority to return an indictment but may make recommendations concerning criminal prosecution as it shall see fit, is needed for three reasons: first, a special purpose grand jury can be impaneled by the Court for any time period required in order to accomplish its investigation, which will likely exceed a normal grand jury

term; second, the special purpose grand jury would be empowered to review this matter and this matter only, with an investigatory focus appropriate to the complexity of the facts and circumstances involved; and third, the sitting grand jury would not be required to attempt to address this matter in addition to their normal duties.

Additionally, I am requesting that, pursuant to O.C.G.A. § 15-12-101, a Fulton County Superior Court Judge be assigned to assist and supervise the special purpose grand jury in carrying out its investigation and duties.

I have attached a proposed order impaneling the special purpose grand jury for the consideration of the Court.

Respectfully,

Fani T. Willis
District Attorney, Atlanta Judicial Circuit

Exhibit A: Transcript of October 31, 2021 episode of *Meet the Press* on NBC News at 26:04 (video archived at https://www.youtube.com/watch?v=B71cBRPgt9k)
Exhibit B: Proposed Order

cc:
The Honorable Kimberly M. Esmond Adams
The Honorable Jane C. Barwick
The Honorable Rachelle Carnesdale
The Honorable Thomas A. Cox, Jr.
The Honorable Eric Dunaway
The Honorable Charles M. Eaton, Jr.
The Honorable Belinda E. Edwards
The Honorable Kelly Lee Ellerbe
The Honorable Kevin M. Farmer
The Honorable Ural Glanville
The Honorable Shakura L. Ingram
The Honorable Rachel R. Krause
The Honorable Melynee Leftridge
The Honorable Robert C.I. McBurney
The Honorable Henry M. Newkirk
The Honorable Emily K. Richardson
The Honorable Craig L. Schwall, Sr.
The Honorable Paige Reese Whitaker
The Honorable Shermela J. Williams
Fulton County Clerk of Superior Court Cathelene "Tina" Robinson

**IN THE SUPERIOR COURT OF FULTON COUNTY**

**STATE OF GEORGIA**

IN RE:                                    )
SPECIAL PURPOSE GRAND JURY    )        **2022-EX-000024**
                                          )
                                          )        **Judge Robert C. I. McBurney**
                                          )

## PETITION FOR CERTIFICATION OF NEED FOR TESTIMONY
## BEFORE SPECIAL PURPOSE GRAND JURY
## PURSUANT TO O.C.G.A. O.C.G.A. § 24-13-90 ET SEQ.

**COMES NOW** the State of Georgia, by and through Fani T. Willis, District Attorney,

Atlanta Judicial Circuit, Fulton County, Georgia, and petitions this Honorable Court for a

Certificate of Need for Testimony Before Special Purpose Grand Jury, pursuant to O.C.G.A. §

24-13-92 et seq., and in support thereof says as follows:

1. A Special Purpose Grand Jury investigation commenced in Fulton County, Georgia,

    by order of this court on May 2, 2022. *See* Order Impaneling Special Purpose Grand

    Jury Pursuant to O.C.G.A. § 15-12-100, Et Seq, "**Exhibit A**". The Special Purpose

    Grand Jury is authorized to investigate any and all facts and circumstances relating

    directly or indirectly to possible attempts to disrupt the lawful administration of the

    2020 elections in the State of Georgia. *See* Letter Requesting Special Purpose Grand

    Jury, "**Exhibit B**".

2. John Charles Eastman, born April 21, ███, (hereinafter, "the Witness") is a

    necessary and material witness to the Special Purpose Grand Jury investigation.

    Through both its investigation and through publicly available information, the State

    has learned that the Witness was as an attorney for the Trump Campaign's legal

efforts seeking to influence the results of the November 2020 election in Georgia and elsewhere. As part of those efforts, on December 3, 2020, the Witness and other individuals known to be associated with both him and the Trump campaign appeared publicly before the Georgia State Senate at the Georgia State Capitol in Atlanta, Fulton County, Georgia. At that hearing, the Witness provided testimony, during which he advised lawmakers that they had both the lawful authority and a "duty" to replace the Democratic Party's slate of presidential electors, who had been certified as the duly appointed electors for the State of Georgia after the November 2020 election, due to unfounded claims of widespread voter fraud within the state. There is evidence that the Witness's appearance and testimony at the hearing was part of a multi-state, coordinated plan by the Trump Campaign to influence the results of the November 2020 election in Georgia and elsewhere.

3. The Witness also drafted at least two memoranda to the Trump Campaign and others detailing a plan through which Vice President Mike Pence, as president of the Senate, could refuse to count some of President Joe Biden's electoral votes during the joint session of Congress on January 6, 2021. The Witness spoke to Vice President Pence and his legal staff to discuss the plan, but Vice President Pence rejected it. There is evidence that the Witness's drafting of the memoranda and meeting with Vice President Pence were part of a multi-state, coordinated plan by the Trump Campaign to influence the results of the November 2020 election in Georgia and elsewhere.

4. The Witness, as both an attorney for the Trump Campaign's legal efforts seeking to influence the results of the November 2020 election in Georgia and elsewhere and as a witness who appeared and testified before the Georgia State Senate on behalf of the

Trump Campaign, is a necessary and material witness in this investigation. The Witness possesses unique knowledge concerning the planning and coordination of the Georgia State Senate hearing. Additionally, the Witness possesses unique knowledge concerning communications between himself, the Trump Campaign, and other known and unknown individuals involved in the multi-state, coordinated efforts to influence the results of the November 2020 election in Georgia and elsewhere. Finally, the Witness's anticipated testimony is essential in that it is likely to reveal additional sources of information regarding the subject of this investigation.

5. The testimony of the Witness will not be cumulative of any other evidence in this matter.

6. The Witness resides outside the jurisdiction of this Honorable Court and is therefore unable to be served with process to compel attendance and testimony.

7. The Witness currently resides at ███ █████████ ███ █ ██ █████.

8. The Witness will be required to be in attendance and testify before the Special Purpose Grand Jury on July 12, 2022, and continuing through and until the conclusion of the Witness's testimony on or before August 31, 2022.

9. The Office of the Fulton County District Attorney, in and for the State of Georgia, will pay all reasonable and necessary travel expenses and witness fees required to secure the Witness's attendance and testimony, in accordance with the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings. *See* O.C.G.A. §24-13-90 et seq.

10. If the Witness comes into the State of Georgia pursuant to this request, directing the Witness to attend and testify before the Special Purpose Grand Jury, the laws of this

State shall give the Witness protection from arrest and from service of civil or

criminal process, both within this State and in any other state through which the

Witness may be required to pass in the ordinary course of travel, for any matters

which arose before the Witness's entrance into this State and other states.

11. Both Georgia and New Mexico have adopted the Uniform Act to Secure the

Attendance of Witnesses from Without a State in Criminal Proceedings. *See*

O.C.G.A. § 24-13-90; N.M. Stat. Ann. §§ 31-8-1-6.

**WHEREFORE**, the State of Georgia, by and through Fani T. Willis, District Attorney,

Atlanta Judicial Circuit, Fulton County, Georgia, prays that this Honorable Court issue a

Certificate of Need for Testimony Before Special Purpose Grand Jury, pursuant to O.C.G.A. § 24-

13-92 et seq., certifying to the proper authorities in the jurisdiction in which the Witness is located

that the Witness is a necessary and material witness whose attendance and testimony is required

for the above-referenced Special Purpose Grand Jury investigation, and the presence of the

Witness will be needed for the number of days specified above.

Respectfully submitted this the 27th day of June, 2022.

> **FANI T. WILLIS**
> **DISTRICT ATTORNEY**
> **ATLANTA JUDICIAL CIRCUIT**
>
> **GA Bar No. 223955**
> Atlanta Judicial Circuit
> 136 Pryor Street Southwest
> Third Floor
> Atlanta, Georgia 30303

# Exhibit A

OFFICE OF THE FULTON COUNTY DISTRICT ATTORNEY
ATLANTA JUDICIAL CIRCUIT
136 PRYOR STREET SW, 3RD FLOOR
ATLANTA, GEORGIA 30303

*Fani T. Willis*
District Attorney

TELEPHONE 404-612-4639

The Honorable Christopher S. Brasher
Chief Judge, Fulton County Superior Court
Fulton County Courthouse
185 Central Avenue SW, Suite T-8905
Atlanta, Georgia 30303

2022-EX-000017



FILED IN OFFICE

JAN 20 2022

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

January 20, 2022

Dear Chief Judge Brasher:

I hope this letter finds you well and in good spirits. Please be advised that the District Attorney's Office has received information indicating a reasonable probability that the State of Georgia's administration of elections in 2020, including the State's election of the President of the United States, was subject to possible criminal disruptions. Our office has also learned that individuals associated with these disruptions have contacted other agencies empowered to investigate this matter, including the Georgia Secretary of State, the Georgia Attorney General, and the United States Attorney's Office for the Northern District of Georgia, leaving this office as the sole agency with jurisdiction that is not a potential witness to conduct related to the matter. As a result, our office has opened an investigation into any coordinated attempts to unlawfully alter the outcome of the 2020 elections in this state.

We have made efforts to interview multiple witnesses and gather evidence, and a significant number of witnesses and prospective witnesses have refused to cooperate with the investigation absent a subpoena requiring their testimony. By way of example, Georgia Secretary of State Brad Raffensperger, an essential witness to the investigation, has indicated that he will not participate in an interview or otherwise offer evidence until he is presented with a subpoena by my office. Please see Exhibit A, attached to this letter.

Therefore, I am hereby requesting, as the elected District Attorney for Fulton County, pursuant to O.C.G.A. § 15-12-100 et. seq., that a special purpose grand jury be impaneled for the purpose of investigating the facts and circumstances relating directly or indirectly to possible attempts to disrupt the lawful administration of the 2020 elections in the State of Georgia. Specifically, a special purpose grand jury, which will not have the authority to return an indictment but may make recommendations concerning criminal prosecution as it shall see fit, is needed for three reasons: first, a special purpose grand jury can be impaneled by the Court for any time period required in order to accomplish its investigation, which will likely exceed a normal grand jury

term; second, the special purpose grand jury would be empowered to review this matter and this matter only, with an investigatory focus appropriate to the complexity of the facts and circumstances involved; and third, the sitting grand jury would not be required to attempt to address this matter in addition to their normal duties.

Additionally, I am requesting that, pursuant to O.C.G.A. § 15-12-101, a Fulton County Superior Court Judge be assigned to assist and supervise the special purpose grand jury in carrying out its investigation and duties.

I have attached a proposed order impaneling the special purpose grand jury for the consideration of the Court.

Respectfully,

Fani T. Willis
District Attorney, Atlanta Judicial Circuit

Exhibit A: Transcript of October 31, 2021 episode of *Meet the Press* on NBC News at 26:04 (video archived at https://www.youtube.com/watch?v=B71cBRPgt9k)
Exhibit B: Proposed Order

cc:
The Honorable Kimberly M. Esmond Adams
The Honorable Jane C. Barwick
The Honorable Rachelle Carnesdale
The Honorable Thomas A. Cox, Jr.
The Honorable Eric Dunaway
The Honorable Charles M. Eaton, Jr.
The Honorable Belinda E. Edwards
The Honorable Kelly Lee Ellerbe
The Honorable Kevin M. Farmer
The Honorable Ural Glanville
The Honorable Shakura L. Ingram
The Honorable Rachel R. Krause
The Honorable Melynee Leftridge
The Honorable Robert C.I. McBurney
The Honorable Henry M. Newkirk
The Honorable Emily K. Richardson
The Honorable Craig L. Schwall, Sr.
The Honorable Paige Reese Whitaker
The Honorable Shermela J. Williams
Fulton County Clerk of Superior Court Cathelene "Tina" Robinson

# Exhibit B

**IN THE SUPERIOR COURT OF FULTON COUNTY**
**ATLANTA JUDICIAL CIRCUIT**
**STATE OF GEORGIA**

2022 - EX 000024
FILED IN OFFICE
JAN 24 2022
DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

**IN RE: REQUEST FOR**
**SPECIAL PURPOSE**
**GRAND JURY**

### ORDER APPROVING REQUEST FOR SPECIAL PURPOSE
### GRAND JURY PURSUANT TO O.C.G.A. §15-12-100, et seq.

The District Attorney for the Atlanta Judicial Circuit submitted to the judges of the

Superior Court of Fulton County a request to impanel a special purpose jury for the purposes set

forth in that request. This request was considered and approved by a majority of the total

number of the judges of this Court, as required by O.C.G.A. §15-12-100(b).

IT IS THEREFORE ORDERED that a special purpose grand jury be drawn and

impaneled to serve as provided in O.C.G.A. § 15-12-62.1, 15-12-67, and 15-12-100, to

commence on May 2, 2022, and continuing for a period not to exceed 12 months. Such period

shall not include any time periods when the supervising judge determines that the special

purpose grand jury cannot meet for safety or other reasons, or any time periods when normal

court operations are suspended by order of the Supreme Court of Georgia or the Chief Judge of

the Superior Court. The special purpose grand jury shall be authorized to investigate any and all

facts and circumstances relating directly or indirectly to alleged violations of the laws of the

State of Georgia, as set forth in the request of the District Attorney referenced herein above.

Pursuant to O.C.G.A. § 15-12-101(a), the Honorable Robert C. I. McBurney is hereby

assigned to supervise and assist the special purpose grand jury, and shall charge said special

purpose grand jury and receive its reports as provided by law.

This authorization shall include the investigation of any overt acts or predicate acts relating to the subject of the special purpose grand jury's investigative purpose. The special purpose grand jury, when making its presentments and reports, pursuant to O.C.G.A. §§ 15-12-71 and 15-12-101, may make recommendations concerning criminal prosecution as it shall see fit. Furthermore, the provisions of O.C.G.A. § 15-12-83 shall apply.

This Court also notes that the appointment of a special purpose grand jury will permit the time, efforts, and attention of the regular grand jury(ies) impaneled in this Circuit to continue to be devoted to the consideration of the backlog of criminal matters that has accumulated as a result of the COVID-19 Pandemic.

IT IS FURTHER ORDERED that this Order shall be filed in the Office of the Clerk of the Superior Court of Fulton County.

SO ORDERED, THIS 24 DAY OF January , 2022.

CHRISTOPHER S. BRASHER, CHIEF JUDGE
Superior Court of Fulton County
Atlanta Judicial Circuit

IN THE SUPERIOR COURT OF FULTON COUNTY

STATE OF GEORGIA

IN RE:                                    )
SPECIAL PURPOSE GRAND JURY    )          2022-EX-000024
                                          )
                                          )          Judge Robert C. I. McBurney
                                          )

## CERTIFICATE OF MATERIAL WITNESS
## PURSUANT TO UNIFORM ACT TO SECURE THE ATTENDANCE
## OF WITNESSES FROM WITHOUT THE STATE,
## CODIFIED IN THE STATE OF GEOGIA AS
## O.C.G.A. § 24-13-90 ET SEQ.

Upon the petition of Fani T. Willis, District Attorney, Atlanta Judicial Circuit, pursuant to

the Uniform Act to Secure the Attendance of Witnesses from Without the State, codified at

O.C.G.A. § 24-13-90 et seq., the Court issues the following Certificate under seal of this Court,

and further says as follows:

1. A Special Purpose Grand Jury investigation commenced in Fulton County, Georgia,

   by order of this Court on May 2, 2022. *See* Order Impaneling Special Purpose Grand

   Jury Pursuant to O.C.G.A. § 15-12-100, et seq., "**Exhibit A**". The Special Purpose

   Grand Jury is authorized to investigate any and all facts and circumstances relating

   directly or indirectly to possible attempts to disrupt the lawful administration of the

   2020 elections in the State of Georgia. *See* Letter Requesting Special Purpose Grand

   Jury, "**Exhibit B**".

2. Based on the representations made by the State in the attached "Petition for

   Certification of Need for Testimony Before Special Purpose Grand Jury Pursuant to

   O.C.G.A. § 24-13-90 et seq.", the Court finds that John Charles Eastman, born April

21, ▮▮ (hereinafter, "the Witness"), is a necessary and material witness to the Special Purpose Grand Jury investigation. The Court further finds that the Witness currently resides at ▮▮ ▮▮▮▮▮ ▮▮▮ ▮ ▮▮ ▮▮▮.

3. Based on the representations made by the State in the attached "Petition for Certification of Need for Testimony Before Special Purpose Grand Jury Pursuant to O.C.G.A. § 24-13-90 et seq.", the Court further finds that the Witness was as an attorney for the Trump Campaign's legal efforts seeking to influence the results of the November 2020 election in Georgia and elsewhere. As part of those efforts, on December 3, 2020, the Witness and other individuals known to be associated with both him and the Trump campaign appeared publicly before the Georgia State Senate at the Georgia State Capitol in Atlanta, Fulton County, Georgia. At that hearing, the Witness provided testimony, during which he advised lawmakers that they had both the lawful authority and a "duty" to replace the Democratic Party's slate of presidential electors, who had been certified as the duly appointed electors for the State of Georgia after the November 2020 election, due to unfounded claims of widespread voter fraud within the state. There is evidence that the Witness's appearance and testimony at the hearing was part of a multi-state, coordinated plan by the Trump Campaign to influence the results of the November 2020 election in Georgia and elsewhere.

4. Based on the representations made by the State in the attached "Petition for Certification of Need for Testimony Before Special Purpose Grand Jury Pursuant to O.C.G.A. § 24-13-90 et seq.", the Court further finds that the Witness drafted at least two memoranda to the Trump Campaign and others detailing a plan through which

Vice President Mike Pence, as president of the Senate, could refuse to count some of President Joe Biden's electoral votes during the joint session of Congress on January 6, 2021. The Witness spoke to Vice President Pence and his legal staff to discuss the plan, but Vice President Pence rejected it. There is evidence that the Witness's drafting of the memoranda and meeting with Vice President Pence were part of a multi-state, coordinated plan by the Trump Campaign to influence the results of the November 2020 election in Georgia and elsewhere.

5. Based on the representations made by the State in the attached "Petition for Certification of Need for Testimony Before Special Purpose Grand Jury Pursuant to O.C.G.A. § 24-13-90 et seq.", the Court further finds that the Witness, as both an attorney for the Trump Campaign's legal efforts seeking to influence the results of the November 2020 election in Georgia and elsewhere and as a witness who appeared and testified before the Georgia State Senate on behalf of the Trump Campaign, is a necessary and material witness in this investigation. The Witness possesses unique knowledge concerning the planning and coordination of the Georgia State Senate hearing. Additionally, the Witness possesses unique knowledge concerning communications between himself, the Trump Campaign, and other known and unknown individuals involved in the multi-state, coordinated efforts to influence the results of the November 2020 election in Georgia and elsewhere. Finally, the Witness's anticipated testimony is essential in that it is likely to reveal additional sources of information regarding the subject of this investigation.

6. The testimony of the Witness will not be cumulative of any other evidence in this matter.

7. The Witness will be required to be in attendance and testify before the Special Purpose Grand Jury on July 12, 2022, and continuing through and until the conclusion of the Witness's testimony on or before August 31, 2022, at the Superior Court of Fulton County, Fulton County Courthouse, 136 Pryor Street, 3rd Floor, Atlanta, Georgia 30303.

8. The Office of the Fulton County District Attorney, in and for the State of Georgia, will pay all reasonable and necessary travel expenses and witness fees required to secure the Witness's attendance and testimony, in accordance with O.C.G.A. §24-13-90 et seq.

9. The Witness protection shall be given protection from arrest and from service of civil or criminal process, both within this State and in any other state through which the Witness may be required to pass in the ordinary course of travel, for any matters which arose before the Witness's entrance into this State and other states, while traveling to and from this Court for the purpose of testifying for this case.

10. The State of Georgia is a participant in a reciprocal program providing for the securing of witnesses to testify in foreign jurisdictions which likewise provide for such methods of securing witnesses to testify in their courts.

11. This Certificate is made for the purpose of being presented to a judge of the First Judicial District Court of New Mexico, by the District Attorney for First Judicial District of New Mexico, or his duly authorized representative, who is proceeding at the request and on behalf of the Office of the Fulton County District Attorney to compel the Witness to be in attendance and testify before the Special Purpose Grand Jury on July 12, 2022, and continuing through and until the conclusion of the

Witness's testimony on or before August 31, 2022, at the Superior Court of Fulton County, Fulton County Courthouse, 136 Pryor Street, 3rd Floor, Atlanta, Georgia 30303.

**WITNESS MY HAND AND SEAL** as a judge of the Superior Court of Fulton County, Georgia,

This the 28th day of June, 2022.

Hon. Robert C. I. McBurney
Superior Court of Fulton County
Atlanta Judicial Circuit
State of Georgia

# Exhibit A

OFFICE OF THE FULTON COUNTY DISTRICT ATTORNEY
ATLANTA JUDICIAL CIRCUIT
136 PRYOR STREET SW, 3RD FLOOR
ATLANTA, GEORGIA 30303

*Fani T. Willis*
District Attorney



TELEPHONE 404-612-4639

The Honorable Christopher S. Brasher
Chief Judge, Fulton County Superior Court
Fulton County Courthouse
185 Central Avenue SW, Suite T-8905
Atlanta, Georgia 30303

*2022-EX-000017*

FILED IN OFFICE

JAN 20 2022

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

January 20, 2022

Dear Chief Judge Brasher:

I hope this letter finds you well and in good spirits. Please be advised that the District Attorney's Office has received information indicating a reasonable probability that the State of Georgia's administration of elections in 2020, including the State's election of the President of the United States, was subject to possible criminal disruptions. Our office has also learned that individuals associated with these disruptions have contacted other agencies empowered to investigate this matter, including the Georgia Secretary of State, the Georgia Attorney General, and the United States Attorney's Office for the Northern District of Georgia, leaving this office as the sole agency with jurisdiction that is not a potential witness to conduct related to the matter. As a result, our office has opened an investigation into any coordinated attempts to unlawfully alter the outcome of the 2020 elections in this state.

We have made efforts to interview multiple witnesses and gather evidence, and a significant number of witnesses and prospective witnesses have refused to cooperate with the investigation absent a subpoena requiring their testimony. By way of example, Georgia Secretary of State Brad Raffensperger, an essential witness to the investigation, has indicated that he will not participate in an interview or otherwise offer evidence until he is presented with a subpoena by my office. Please see Exhibit A, attached to this letter.

Therefore, I am hereby requesting, as the elected District Attorney for Fulton County, pursuant to O.C.G.A. § 15-12-100 et. seq., that a special purpose grand jury be impaneled for the purpose of investigating the facts and circumstances relating directly or indirectly to possible attempts to disrupt the lawful administration of the 2020 elections in the State of Georgia. Specifically, a special purpose grand jury, which will not have the authority to return an indictment but may make recommendations concerning criminal prosecution as it shall see fit, is needed for three reasons: first, a special purpose grand jury can be impaneled by the Court for any time period required in order to accomplish its investigation, which will likely exceed a normal grand jury

term; second, the special purpose grand jury would be empowered to review this matter and this matter only, with an investigatory focus appropriate to the complexity of the facts and circumstances involved; and third, the sitting grand jury would not be required to attempt to address this matter in addition to their normal duties.

Additionally, I am requesting that, pursuant to O.C.G.A. § 15-12-101, a Fulton County Superior Court Judge be assigned to assist and supervise the special purpose grand jury in carrying out its investigation and duties.

I have attached a proposed order impaneling the special purpose grand jury for the consideration of the Court.

Respectfully,

Fani T. Willis
District Attorney, Atlanta Judicial Circuit

Exhibit A: Transcript of October 31, 2021 episode of *Meet the Press* on NBC News at 26:04 (video archived at https://www.youtube.com/watch?v=B71cBRPgt9k)
Exhibit B: Proposed Order

cc:
The Honorable Kimberly M. Esmond Adams
The Honorable Jane C. Barwick
The Honorable Rachelle Carnesdale
The Honorable Thomas A. Cox, Jr.
The Honorable Eric Dunaway
The Honorable Charles M. Eaton, Jr.
The Honorable Belinda E. Edwards
The Honorable Kelly Lee Ellerbe
The Honorable Kevin M. Farmer
The Honorable Ural Glanville
The Honorable Shakura L. Ingram
The Honorable Rachel R. Krause
The Honorable Melynee Leftridge
The Honorable Robert C.I. McBurney
The Honorable Henry M. Newkirk
The Honorable Emily K. Richardson
The Honorable Craig L. Schwall, Sr.
The Honorable Paige Reese Whitaker
The Honorable Shermela J. Williams
Fulton County Clerk of Superior Court Cathelene "Tina" Robinson

# Exhibit B

IN THE SUPERIOR COURT OF FULTON COUNTY
ATLANTA JUDICIAL CIRCUIT
STATE OF GEORGIA

2022 -EX 000024

FILED IN OFFICE

JAN 24 2022

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

IN RE: **REQUEST FOR
SPECIAL PURPOSE
GRAND JURY**

## ORDER APPROVING REQUEST FOR SPECIAL PURPOSE
## GRAND JURY PURSUANT TO O.C.G.A. §15-12-100, et seq.

The District Attorney for the Atlanta Judicial Circuit submitted to the judges of the

Superior Court of Fulton County a request to impanel a special purpose jury for the purposes set

forth in that request. This request was considered and approved by a majority of the total

number of the judges of this Court, as required by O.C.G.A. §15-12-100(b).

IT IS THEREFORE ORDERED that a special purpose grand jury be drawn and

impaneled to serve as provided in O.C.G.A. § 15-12-62.1, 15-12-67, and 15-12-100, to

commence on May 2, 2022, and continuing for a period not to exceed 12 months. Such period

shall not include any time periods when the supervising judge determines that the special

purpose grand jury cannot meet for safety or other reasons, or any time periods when normal

court operations are suspended by order of the Supreme Court of Georgia or the Chief Judge of

the Superior Court. The special purpose grand jury shall be authorized to investigate any and all

facts and circumstances relating directly or indirectly to alleged violations of the laws of the

State of Georgia, as set forth in the request of the District Attorney referenced herein above.

Pursuant to O.C.G.A. § 15-12-101(a), the Honorable Robert C. I. McBurney is hereby

assigned to supervise and assist the special purpose grand jury, and shall charge said special

purpose grand jury and receive its reports as provided by law.

This authorization shall include the investigation of any overt acts or predicate acts relating to the subject of the special purpose grand jury's investigative purpose. The special purpose grand jury, when making its presentments and reports, pursuant to O.C.G.A. §§ 15-12-71 and 15-12-101, may make recommendations concerning criminal prosecution as it shall see fit. Furthermore, the provisions of O.C.G.A. § 15-12-83 shall apply.

This Court also notes that the appointment of a special purpose grand jury will permit the time, efforts, and attention of the regular grand jury(ies) impaneled in this Circuit to continue to be devoted to the consideration of the backlog of criminal matters that has accumulated as a result of the COVID-19 Pandemic.

IT IS FURTHER ORDERED that this Order shall be filed in the Office of the Clerk of the Superior Court of Fulton County.

SO ORDERED, THIS 24 DAY OF January , 2022.

CHRISTOPHER S. BRASHER, CHIEF JUDGE
Superior Court of Fulton County
Atlanta Judicial Circuit

## IN THE SUPERIOR COURT OF FULTON COUNTY

### STATE OF GEORGIA

IN RE:                                    )
SPECIAL PURPOSE GRAND JURY    )        2022-EX-000024
                                          )
                                          )        Judge Robert C. I. McBurney
                                          )

## PETITION FOR CERTIFICATION OF NEED FOR TESTIMONY
## BEFORE SPECIAL PURPOSE GRAND JURY
## PURSUANT TO O.C.G.A. O.C.G.A. § 24-13-90 ET SEQ.

**COMES NOW** the State of Georgia, by and through Fani T. Willis, District Attorney,

Atlanta Judicial Circuit, Fulton County, Georgia, and petitions this Honorable Court for a

Certificate of Need for Testimony Before Special Purpose Grand Jury, pursuant to O.C.G.A. §

24-13-92 et seq., and in support thereof says as follows:

1.  A Special Purpose Grand Jury investigation commenced in Fulton County, Georgia,

    by order of this court on May 2, 2022. *See* Order Impaneling Special Purpose Grand

    Jury Pursuant to O.C.G.A. § 15-12-100, Et Seq, "**Exhibit A**". The Special Purpose

    Grand Jury is authorized to investigate any and all facts and circumstances relating

    directly or indirectly to possible attempts to disrupt the lawful administration of the

    2020 elections in the State of Georgia. *See* Letter Requesting Special Purpose Grand

    Jury, "**Exhibit B**".

2.  Rudolph William Louis Giuliani, born May 28, ▮▮▮, (hereinafter, "the Witness") is a

    necessary and material witness to the Special Purpose Grand Jury investigation.

    Through both its investigation and through publicly available information, the State

    has learned that the Witness was both a personal attorney for former President Donald

Trump and a lead attorney for the Trump Campaign's legal efforts seeking to influence the results of the November 2020 election in Georgia and elsewhere. As part of those efforts, on December 3, 2020, the Witness and other individuals known to be associated with both him and the Trump Campaign appeared publicly before the Georgia State Senate at the Georgia State Capitol in Atlanta, Fulton County, Georgia. At that hearing, the Witness provided testimony, additional witnesses, and documentary evidence purporting to demonstrate the existence of election fraud in multiple Georgia counties during the administration of the November 2020 election. Among the evidence offered by the Witness was a video recording of election workers at State Farm Arena in Atlanta that purported to show election workers producing "suitcases" of unlawful ballots from unknown sources, outside the view of election poll watchers. Within 24 hours of the December 3, 2020, legislative hearing, the Georgia Secretary of State's Office debunked the State Farm video and explained that its investigation revealed no voter fraud of any kind had taken place at State Farm Arena. Despite this, the Witness made additional statements, both to the public and in subsequent legislative hearings, claiming widespread voter fraud in Georgia during the November 2020 election and using the now-debunked State Farm video in support of those statements. There is evidence that the Witness's appearance and testimony at the hearing was part of a multi-state, coordinated plan by the Trump Campaign to influence the results of the November 2020 election in Georgia and elsewhere.

3. The Witness, as both a personal attorney for former President Donald Trump and a lead attorney for the Trump Campaign's legal efforts seeking to influence the results

of the November 2020 election in Georgia and elsewhere, is a necessary and material witness in this investigation. The Witness possesses unique knowledge concerning the acquisition of the State Farm video and the manner of its presentation to the Georgia State Senate as well as knowledge of the origin of numerous other claims of election fraud alleged in legal filings and to the public by the Witness, former President Trump, the Trump Campaign, and other known and unknown individuals. Additionally, the Witness possesses unique knowledge concerning communications between himself, former President Trump, the Trump Campaign, and other known and unknown individuals involved in the multi-state, coordinated efforts to influence the results of the November 2020 election in Georgia and elsewhere. Finally, the Witness's anticipated testimony is essential in that it is likely to reveal additional sources of information regarding the subject of this investigation.

4. The testimony of the Witness will not be cumulative of any other evidence in this matter.

5. The Witness resides outside the jurisdiction of this Honorable Court and is therefore unable to be served with process to compel attendance and testimony.

6. The Witness currently resides at ▮▮ ▮▮ ▮▮ ▮▮ ▮▮ ▮▮ ▮▮▮ .

7. The Witness will be required to be in attendance and testify before the Special Purpose Grand Jury on July 12, 2022, and continuing through and until the conclusion of the Witness's testimony on or before August 31, 2022.

8. The Office of the Fulton County District Attorney, in and for the State of Georgia, will pay all reasonable and necessary travel expenses and witness fees required to secure the Witness's attendance and testimony, in accordance with the Uniform Act

to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings. *See* O.C.G.A. §24-13-90 et seq.

9. If the Witness comes into the State of Georgia pursuant to this request, directing the Witness to attend and testify before the Special Purpose Grand Jury, the laws of this State shall give the Witness protection from arrest and from service of civil or criminal process, both within this State and in any other state through which the Witness may be required to pass in the ordinary course of travel, for any matters which arose before the Witness's entrance into this State and other states.

10. Both Georgia and New York have adopted the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings. *See* O.C.G.A. § 24-13-90; N.Y. Crim. Proc. Law § 640.10.

**WHEREFORE**, the State of Georgia, by and through Fani T. Willis, District Attorney, Atlanta Judicial Circuit, Fulton County, Georgia, prays that this Honorable Court issue a Certificate of Need for Testimony Before Special Purpose Grand Jury, pursuant to O.C.G.A. § 24-13-92 et seq., certifying to the proper authorities in the jurisdiction in which the Witness is located that the Witness is a necessary and material witness whose attendance and testimony is required for the above-referenced Special Purpose Grand Jury investigation, and the presence of the Witness will be needed for the number of days specified above,

Respectfully submitted this the 27th day of June, 2022,

> **FANI T. WILLIS**
> **DISTRICT ATTORNEY**
> **ATLANTA JUDICIAL CIRCUIT**

**GA Bar No. 223955**
Atlanta Judicial Circuit
136 Pryor Street Southwest
Third Floor
Atlanta, Georgia 30303

# Exhibit A

OFFICE OF THE FULTON COUNTY DISTRICT ATTORNEY
ATLANTA JUDICIAL CIRCUIT
136 PRYOR STREET SW, 3RD FLOOR
ATLANTA, GEORGIA 30303

*Fani T. Willis*
District Attorney



TELEPHONE 404-612-4639

The Honorable Christopher S. Brasher
Chief Judge, Fulton County Superior Court
Fulton County Courthouse
185 Central Avenue SW, Suite T-8905
Atlanta, Georgia 30303

*2022-EX-000017*

FILED IN OFFICE

JAN 20 2022

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

January 20, 2022

Dear Chief Judge Brasher:

I hope this letter finds you well and in good spirits. Please be advised that the District Attorney's Office has received information indicating a reasonable probability that the State of Georgia's administration of elections in 2020, including the State's election of the President of the United States, was subject to possible criminal disruptions. Our office has also learned that individuals associated with these disruptions have contacted other agencies empowered to investigate this matter, including the Georgia Secretary of State, the Georgia Attorney General, and the United States Attorney's Office for the Northern District of Georgia, leaving this office as the sole agency with jurisdiction that is not a potential witness to conduct related to the matter. As a result, our office has opened an investigation into any coordinated attempts to unlawfully alter the outcome of the 2020 elections in this state.

We have made efforts to interview multiple witnesses and gather evidence, and a significant number of witnesses and prospective witnesses have refused to cooperate with the investigation absent a subpoena requiring their testimony. By way of example, Georgia Secretary of State Brad Raffensperger, an essential witness to the investigation, has indicated that he will not participate in an interview or otherwise offer evidence until he is presented with a subpoena by my office. Please see Exhibit A, attached to this letter.

Therefore, I am hereby requesting, as the elected District Attorney for Fulton County, pursuant to O.C.G.A. § 15-12-100 et. seq., that a special purpose grand jury be impaneled for the purpose of investigating the facts and circumstances relating directly or indirectly to possible attempts to disrupt the lawful administration of the 2020 elections in the State of Georgia. Specifically, a special purpose grand jury, which will not have the authority to return an indictment but may make recommendations concerning criminal prosecution as it shall see fit, is needed for three reasons: first, a special purpose grand jury can be impaneled by the Court for any time period required in order to accomplish its investigation, which will likely exceed a normal grand jury

term; second, the special purpose grand jury would be empowered to review this matter and this matter only, with an investigatory focus appropriate to the complexity of the facts and circumstances involved; and third, the sitting grand jury would not be required to attempt to address this matter in addition to their normal duties.

Additionally, I am requesting that, pursuant to O.C.G.A. § 15-12-101, a Fulton County Superior Court Judge be assigned to assist and supervise the special purpose grand jury in carrying out its investigation and duties.

I have attached a proposed order impaneling the special purpose grand jury for the consideration of the Court.

Respectfully,

Fani/T. Willis
District Attorney, Atlanta Judicial Circuit

Exhibit A: Transcript of October 31, 2021 episode of *Meet the Press* on NBC News at 26:04 (video archived at https://www.youtube.com/watch?v=B71cBRPgt9k)
Exhibit B: Proposed Order

cc:
The Honorable Kimberly M. Esmond Adams
The Honorable Jane C. Barwick
The Honorable Rachelle Carnesdale
The Honorable Thomas A. Cox, Jr.
The Honorable Eric Dunaway
The Honorable Charles M. Eaton, Jr.
The Honorable Belinda E. Edwards
The Honorable Kelly Lee Ellerbe
The Honorable Kevin M. Farmer
The Honorable Ural Glanville
The Honorable Shakura L. Ingram
The Honorable Rachel R. Krause
The Honorable Melynee Leftridge
The Honorable Robert C.I. McBurney
The Honorable Henry M. Newkirk
The Honorable Emily K. Richardson
The Honorable Craig L. Schwall, Sr.
The Honorable Paige Reese Whitaker
The Honorable Shermela J. Williams
Fulton County Clerk of Superior Court Cathelene "Tina" Robinson

# Exhibit B

IN THE SUPERIOR COURT OF FULTON COUNTY
ATLANTA JUDICIAL CIRCUIT
STATE OF GEORGIA

2022 - EX 000024

FILED IN OFFICE

JAN 24 2022

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

IN RE: REQUEST FOR
SPECIAL PURPOSE
GRAND JURY

ORDER APPROVING REQUEST FOR SPECIAL PURPOSE
GRAND JURY PURSUANT TO O.C.G.A. §15-12-100, et seq.

The District Attorney for the Atlanta Judicial Circuit submitted to the judges of the

Superior Court of Fulton County a request to impanel a special purpose jury for the purposes set

forth in that request. This request was considered and approved by a majority of the total

number of the judges of this Court, as required by O.C.G.A. §15-12-100(b).

IT IS THEREFORE ORDERED that a special purpose grand jury be drawn and

impaneled to serve as provided in O.C.G.A. § 15-12-62.1, 15-12-67, and 15-12-100, to

commence on May 2, 2022, and continuing for a period not to exceed 12 months. Such period

shall not include any time periods when the supervising judge determines that the special

purpose grand jury cannot meet for safety or other reasons, or any time periods when normal

court operations are suspended by order of the Supreme Court of Georgia or the Chief Judge of

the Superior Court. The special purpose grand jury shall be authorized to investigate any and all

facts and circumstances relating directly or indirectly to alleged violations of the laws of the

State of Georgia, as set forth in the request of the District Attorney referenced herein above.

Pursuant to O.C.G.A. § 15-12-101(a), the Honorable Robert C. I. McBurney is hereby

assigned to supervise and assist the special purpose grand jury, and shall charge said special

purpose grand jury and receive its reports as provided by law.

This authorization shall include the investigation of any overt acts or predicate acts relating to the subject of the special purpose grand jury's investigative purpose. The special purpose grand jury, when making its presentments and reports, pursuant to O.C.G.A. §§ 15-12-71 and 15-12-101, may make recommendations concerning criminal prosecution as it shall see fit. Furthermore, the provisions of O.C.G.A. § 15-12-83 shall apply.

This Court also notes that the appointment of a special purpose grand jury will permit the time, efforts, and attention of the regular grand jury(ies) impaneled in this Circuit to continue to be devoted to the consideration of the backlog of criminal matters that has accumulated as a result of the COVID-19 Pandemic.

IT IS FURTHER ORDERED that this Order shall be filed in the Office of the Clerk of the Superior Court of Fulton County.

SO ORDERED, THIS 24 DAY OF January, 2022.

_____
CHRISTOPHER S. BRASHER, CHIEF JUDGE
Superior Court of Fulton County
Atlanta Judicial Circuit

IN THE SUPERIOR COURT OF FULTON COUNTY

STATE OF GEORGIA

IN RE:                                    )
SPECIAL PURPOSE GRAND JURY      )          2022-EX-000024
                                          )
                                          )          Judge Robert C. I. McBurney
                                          )

**CERTIFICATE OF MATERIAL WITNESS
PURSUANT TO UNIFORM ACT TO SECURE THE ATTENDANCE
OF WITNESSES FROM WITHOUT THE STATE,
CODIFIED IN THE STATE OF GEOGIA AS
O.C.G.A. § 24-13-90 ET SEQ.**

Upon the petition of Fani T. Willis, District Attorney, Atlanta Judicial Circuit, pursuant to the Uniform Act to Secure the Attendance of Witnesses from Without the State, codified at O.C.G.A. § 24-13-90 et seq., the Court issues the following Certificate under seal of this Court, and further says as follows:

1.  A Special Purpose Grand Jury investigation commenced in Fulton County, Georgia, by order of this Court on May 2, 2022. *See* Order Impaneling Special Purpose Grand Jury Pursuant to O.C.G.A. § 15-12-100, et seq., "**Exhibit A**". The Special Purpose Grand Jury is authorized to investigate any and all facts and circumstances relating directly or indirectly to possible attempts to disrupt the lawful administration of the 2020 elections in the State of Georgia. *See* Letter Requesting Special Purpose Grand Jury, "**Exhibit B**".

2.  Based on the representations made by the State in the attached "Petition for Certification of Need for Testimony Before Special Purpose Grand Jury Pursuant to O.C.G.A. § 24-13-90 et seq.", the Court finds that Rudolph William Louis Giuliani,

born May 28, ▆▆ (hereinafter, "the Witness"), is a necessary and material witness to the Special Purpose Grand Jury investigation. The Court further finds that the Witness currently resides at ▆▆ ▆ ▆▆ ▆▆ ▆▆ ▆ ▆▆.

3. Based on the representations made by the State in the attached "Petition for Certification of Need for Testimony Before Special Purpose Grand Jury Pursuant to O.C.G.A. § 24-13-90 et seq.", the Court further finds that the Witness was both a personal attorney for former President Donald Trump and a lead attorney for the Trump Campaign's legal efforts seeking to influence the results of the November 2020 election in Georgia and elsewhere. As part of those efforts, on December 3, 2020, the Witness and other individuals known to be associated with both him and the Trump Campaign appeared publicly before the Georgia State Senate at the Georgia State Capitol in Atlanta, Fulton County, Georgia. At that hearing, the Witness provided testimony, additional witnesses, and documentary evidence purporting to demonstrate the existence of election fraud in multiple Georgia counties during the administration of the November 2020 election. Among the evidence offered by the Witness was a video recording of election workers at State Farm Arena in Atlanta that purported to show election workers producing "suitcases" of unlawful ballots from unknown sources, outside the view of election poll watchers. Within 24 hours of the December 3, 2020, legislative hearing, the Georgia Secretary of State's Office debunked the State Farm video and explained that its investigation revealed no voter fraud of any kind had taken place at State Farm Arena. Despite this, the Witness made additional statements, both to the public and in subsequent legislative hearings, claiming widespread voter fraud in Georgia during the November 2020 election and

using the now-debunked State Farm video in support of those statements. There is evidence that the Witness's appearance and testimony at the hearing was part of a multi-state, coordinated plan by the Trump Campaign to influence the results of the November 2020 election in Georgia and elsewhere.

4. Based on the representations made by the State in the attached "Petition for Certification of Need for Testimony Before Special Purpose Grand Jury Pursuant to O.C.G.A. § 24-13-90 et seq.", the Court further finds that the Witness, as both a personal attorney for former President Donald Trump and a lead attorney for the Trump Campaign's legal efforts seeking to influence the results of the November 2020 election in Georgia and elsewhere, is a necessary and material witness in this investigation. The Witness possesses unique knowledge concerning the acquisition of the State Farm video and the manner of its presentation to the Georgia State Senate as well as knowledge of the origin of numerous other claims of election fraud alleged in legal filings and to the public by the Witness, former President Trump, the Trump Campaign, and other known and unknown individuals. Additionally, the Witness possesses unique knowledge concerning communications between himself, former President Trump, the Trump Campaign, and other known and unknown individuals involved in the multi-state, coordinated efforts to influence the results of the November 2020 election in Georgia and elsewhere. Finally, the Witness's anticipated testimony is essential in that it is likely to reveal additional sources of information regarding the subject of this investigation.

5. The testimony of the Witness will not be cumulative of any other evidence in this matter.

6. The Witness will be required to be in attendance and testify before the Special Purpose Grand Jury on July 12, 2022, and continuing through and until the conclusion of the Witness's testimony on or before August 31, 2022, at the Superior Court of Fulton County, Fulton County Courthouse, 136 Pryor Street, 3rd Floor, Atlanta, Georgia 30303.

7. The Office of the Fulton County District Attorney, in and for the State of Georgia, will pay all reasonable and necessary travel expenses and witness fees required to secure the Witness's attendance and testimony, in accordance with O.C.G.A. §24-13-90 et seq.

8. The Witness protection shall be given protection from arrest and from service of civil or criminal process, both within this State and in any other state through which the Witness may be required to pass in the ordinary course of travel, for any matters which arose before the Witness's entrance into this State and other states, while traveling to and from this Court for the purpose of testifying for this case.

9. The State of Georgia is a participant in a reciprocal program providing for the securing of witnesses to testify in foreign jurisdictions which likewise provide for such methods of securing witnesses to testify in their courts.

10. This Certificate is made for the purpose of being presented to a judge of the Supreme Court of New York, by the New York County District Attorney, or his duly authorized representative, who is proceeding at the request and on behalf of the Office of the Fulton County District Attorney to compel the Witness to be in attendance and testify before the Special Purpose Grand Jury on July 12, 2022, and continuing through and until the conclusion of the Witness's testimony on or before

August 31, 2022, at the Superior Court of Fulton County, Fulton County Courthouse,

136 Pryor Street, 3rd Floor, Atlanta, Georgia 30303.

**WITNESS MY HAND AND SEAL** as a judge of the Superior Court of Fulton County,

Georgia,

This the _28th_ day of June, 2022.

**Hon. Robert C. I. McBurney**
Superior Court of Fulton County
Atlanta Judicial Circuit
State of Georgia

# Exhibit A

OFFICE OF THE FULTON COUNTY DISTRICT ATTORNEY
ATLANTA JUDICIAL CIRCUIT
136 PRYOR STREET SW, 3RD FLOOR
ATLANTA, GEORGIA 30303

*Fani T. Willis*
District Attorney



TELEPHONE 404-612-4639

The Honorable Christopher S. Brasher
Chief Judge, Fulton County Superior Court
Fulton County Courthouse
185 Central Avenue SW, Suite T-8905
Atlanta, Georgia 30303

2022 - EX - 000017



FILED IN OFFICE

JAN 20 2022

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

January 20, 2022

Dear Chief Judge Brasher:

I hope this letter finds you well and in good spirits. Please be advised that the District Attorney's Office has received information indicating a reasonable probability that the State of Georgia's administration of elections in 2020, including the State's election of the President of the United States, was subject to possible criminal disruptions. Our office has also learned that individuals associated with these disruptions have contacted other agencies empowered to investigate this matter, including the Georgia Secretary of State, the Georgia Attorney General, and the United States Attorney's Office for the Northern District of Georgia, leaving this office as the sole agency with jurisdiction that is not a potential witness to conduct related to the matter. As a result, our office has opened an investigation into any coordinated attempts to unlawfully alter the outcome of the 2020 elections in this state.

We have made efforts to interview multiple witnesses and gather evidence, and a significant number of witnesses and prospective witnesses have refused to cooperate with the investigation absent a subpoena requiring their testimony. By way of example, Georgia Secretary of State Brad Raffensperger, an essential witness to the investigation, has indicated that he will not participate in an interview or otherwise offer evidence until he is presented with a subpoena by my office. Please see Exhibit A, attached to this letter.

Therefore, I am hereby requesting, as the elected District Attorney for Fulton County, pursuant to O.C.G.A. § 15-12-100 et. seq., that a special purpose grand jury be impaneled for the purpose of investigating the facts and circumstances relating directly or indirectly to possible attempts to disrupt the lawful administration of the 2020 elections in the State of Georgia. Specifically, a special purpose grand jury, which will not have the authority to return an indictment but may make recommendations concerning criminal prosecution as it shall see fit, is needed for three reasons: first, a special purpose grand jury can be impaneled by the Court for any time period required in order to accomplish its investigation, which will likely exceed a normal grand jury

term; second, the special purpose grand jury would be empowered to review this matter and this matter only, with an investigatory focus appropriate to the complexity of the facts and circumstances involved; and third, the sitting grand jury would not be required to attempt to address this matter in addition to their normal duties.

Additionally, I am requesting that, pursuant to O.C.G.A. § 15-12-101, a Fulton County Superior Court Judge be assigned to assist and supervise the special purpose grand jury in carrying out its investigation and duties.

I have attached a proposed order impaneling the special purpose grand jury for the consideration of the Court.

Respectfully,

Fani/T. Willis
District Attorney, Atlanta Judicial Circuit

Exhibit A: Transcript of October 31, 2021 episode of *Meet the Press* on NBC News at 26:04 (video archived at https://www.youtube.com/watch?v=B71cBRPgt9k)
Exhibit B: Proposed Order

cc:
The Honorable Kimberly M. Esmond Adams
The Honorable Jane C. Barwick
The Honorable Rachelle Carnesdale
The Honorable Thomas A. Cox, Jr.
The Honorable Eric Dunaway
The Honorable Charles M. Eaton, Jr.
The Honorable Belinda E. Edwards
The Honorable Kelly Lee Ellerbe
The Honorable Kevin M. Farmer
The Honorable Ural Glanville
The Honorable Shakura L. Ingram
The Honorable Rachel R. Krause
The Honorable Melynee Leftridge
The Honorable Robert C.I. McBurney
The Honorable Henry M. Newkirk
The Honorable Emily K. Richardson
The Honorable Craig L. Schwall, Sr.
The Honorable Paige Reese Whitaker
The Honorable Shermela J. Williams
Fulton County Clerk of Superior Court Cathelene "Tina" Robinson

# Exhibit B

**IN THE SUPERIOR COURT OF FULTON COUNTY**
**ATLANTA JUDICIAL CIRCUIT**
**STATE OF GEORGIA**

2022 - EX 000024

FILED IN OFFICE

JAN 24 2022

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

**IN RE: REQUEST FOR**
**SPECIAL PURPOSE**
**GRAND JURY**

## ORDER APPROVING REQUEST FOR SPECIAL PURPOSE
## GRAND JURY PURSUANT TO O.C.G.A. §15-12-100, et seq.

The District Attorney for the Atlanta Judicial Circuit submitted to the judges of the

Superior Court of Fulton County a request to impanel a special purpose jury for the purposes set

forth in that request. This request was considered and approved by a majority of the total

number of the judges of this Court, as required by O.C.G.A. §15-12-100(b).

IT IS THEREFORE ORDERED that a special purpose grand jury be drawn and

impaneled to serve as provided in O.C.G.A. § 15-12-62.1, 15-12-67, and 15-12-100, to

commence on May 2, 2022, and continuing for a period not to exceed 12 months. Such period

shall not include any time periods when the supervising judge determines that the special

purpose grand jury cannot meet for safety or other reasons, or any time periods when normal

court operations are suspended by order of the Supreme Court of Georgia or the Chief Judge of

the Superior Court. The special purpose grand jury shall be authorized to investigate any and all

facts and circumstances relating directly or indirectly to alleged violations of the laws of the

State of Georgia, as set forth in the request of the District Attorney referenced herein above.

Pursuant to O.C.G.A. § 15-12-101(a), the Honorable Robert C. I. McBurney is hereby

assigned to supervise and assist the special purpose grand jury, and shall charge said special

purpose grand jury and receive its reports as provided by law.

This authorization shall include the investigation of any overt acts or predicate acts relating to the subject of the special purpose grand jury's investigative purpose. The special purpose grand jury, when making its presentments and reports, pursuant to O.C.G.A. §§ 15-12-71 and 15-12-101, may make recommendations concerning criminal prosecution as it shall see fit. Furthermore, the provisions of O.C.G.A. § 15-12-83 shall apply.

This Court also notes that the appointment of a special purpose grand jury will permit the time, efforts, and attention of the regular grand jury(ies) impaneled in this Circuit to continue to be devoted to the consideration of the backlog of criminal matters that has accumulated as a result of the COVID-19 Pandemic.

IT IS FURTHER ORDERED that this Order shall be filed in the Office of the Clerk of the Superior Court of Fulton County.

SO ORDERED, THIS 24 DAY OF January , 2022.

CHRISTOPHER S. BRASHER, CHIEF JUDGE
Superior Court of Fulton County
Atlanta Judicial Circuit

## IN THE SUPERIOR COURT OF FULTON COUNTY

### STATE OF GEORGIA

IN RE:                                          )
SPECIAL PURPOSE GRAND JURY          )       2022-EX-000024
                                                )
                                                )       Judge Robert C. I. McBurney
                                                )

### PETITION FOR CERTIFICATION OF NEED FOR TESTIMONY
### BEFORE SPECIAL PURPOSE GRAND JURY
### PURSUANT TO O.C.G.A. O.C.G.A. § 24-13-90 ET SEQ.

**COMES NOW** the State of Georgia, by and through Fani T. Willis, District Attorney,

Atlanta Judicial Circuit, Fulton County, Georgia, and petitions this Honorable Court for a

Certificate of Need for Testimony Before Special Purpose Grand Jury, pursuant to O.C.G.A. §

24-13-92 et seq., and in support thereof says as follows:

1.  A Special Purpose Grand Jury investigation commenced in Fulton County, Georgia,

    by order of this court on May 2, 2022. *See* Order Impaneling Special Purpose Grand

    Jury Pursuant to O.C.G.A. § 15-12-100, Et Seq, "**Exhibit A**". The Special Purpose

    Grand Jury is authorized to investigate any and all facts and circumstances relating

    directly or indirectly to possible attempts to disrupt the lawful administration of the

    2020 elections in the State of Georgia. *See* Letter Requesting Special Purpose Grand

    Jury, "**Exhibit B**".

2.  Jacki Pick Deason (aka Jacki Lynn Pick), born October 20, ▮▮▮, (hereinafter, "the

    Witness") is a necessary and material witness to the Special Purpose Grand Jury

    investigation. Through both its investigation and through publicly available

    information, the State has learned that the Witness was an attorney for the Trump

Campaign's legal efforts seeking to influence the results of the November 2020 election in Georgia and elsewhere. As part of those efforts, on December 3, 2020, the Witness and other individuals known to be associated with both her and the Trump Campaign appeared publicly before the Georgia State Senate at the Georgia State Capitol in Atlanta, Fulton County, Georgia. At that hearing, the Witness provided testimony and documentary evidence purporting to demonstrate the existence of election fraud in Fulton County, Georgia, during the administration of the November 2020 election. Among the evidence offered by the Witness was a video recording of election workers at State Farm Arena in Atlanta that purported to show election workers producing "suitcases" of unlawful ballots from unknown sources, outside the view of election poll watchers. The Witness personally presented and narrated selected portions of the State Farm video to members of the Georgia State Senate. Within 24 hours of the December 3, 2020, legislative hearing, the Georgia Secretary of State's Office debunked the State Farm video and explained that its investigation revealed no voter fraud of any kind had taken place at State Farm Arena. There is evidence that the Witness's appearance and testimony at the hearing was part of a multi-state, coordinated plan by the Trump Campaign to influence the results of the November 2020 election in Georgia and elsewhere.

3. The Witness, as both an attorney for the Trump Campaign's legal efforts seeking to influence the results of the November 2020 election in Georgia and elsewhere and as the specific witness who presented the State Farm video to the Georgia State Senate on December 3, 2020, is a necessary and material witness in this investigation. The Witness possesses unique knowledge concerning the acquisition of the State Farm

video and the manner of its presentation to the Georgia State Senate. Additionally, the

Witness possesses unique knowledge concerning communications between herself,

the Trump Campaign, and other known and unknown individuals involved in the

multi-state, coordinated efforts to influence the results of the November 2020 election

in Georgia and elsewhere. Finally, the Witness's anticipated testimony is essential in

that it is likely to reveal additional sources of information regarding the subject of this

investigation.

4. The testimony of the Witness will not be cumulative of any other evidence in this
   matter.

5. The Witness resides outside the jurisdiction of this Honorable Court and is therefore
   unable to be served with process to compel attendance and testimony.

6. The Witness currently resides at ▮▮▮ ▮▮▮ ▮▮▮▮▮ ▮▮ ▮▮▮ .

7. The Witness will be required to be in attendance and testify before the Special
   Purpose Grand Jury on July 12, 2022, and continuing through and until the
   conclusion of the Witness's testimony on or before August 31, 2022.

8. The Office of the Fulton County District Attorney, in and for the State of Georgia,
   will pay all reasonable and necessary travel expenses and witness fees required to
   secure the Witness's attendance and testimony, in accordance with the Uniform Act
   to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings.
   *See* O.C.G.A. §24-13-90 et seq.

9. If the Witness comes into the State of Georgia pursuant to this request, directing the
   Witness to attend and testify before the Special Purpose Grand Jury, the laws of this
   State shall give the Witness protection from arrest and from service of civil or

criminal process, both within this State and in any other state through which the

Witness may be required to pass in the ordinary course of travel, for any matters

which arose before the Witness's entrance into this State and other states.

10. Both Georgia and Texas have adopted the Uniform Act to Secure the Attendance of

Witnesses from Without a State in Criminal Proceedings. *See* O.C.G.A. § 24-13-90;

Tex. Code Crim. Proc. Art. 24.28.

**WHEREFORE**, the State of Georgia, by and through Fani T. Willis, District Attorney,

Atlanta Judicial Circuit, Fulton County, Georgia, prays that this Honorable Court issue a

Certificate of Need for Testimony Before Special Purpose Grand Jury, pursuant to O.C.G.A. § 24-

13-92 et seq., certifying to the proper authorities in the jurisdiction in which the Witness is located

that the Witness is a necessary and material witness whose attendance and testimony is required

for the above-referenced Special Purpose Grand Jury investigation, and the presence of the

Witness will be needed for the number of days specified above,

Respectfully submitted this the 27th day of June, 2022,

> **FANI T. WILLIS**
> **DISTRICT ATTORNEY**
> **ATLANTA JUDICIAL CIRCUIT**
>
> **GA Bar No. 223955**
> Atlanta Judicial Circuit
> 136 Pryor Street Southwest
> Third Floor
> Atlanta, Georgia 30303

# Exhibit A

OFFICE OF THE FULTON COUNTY DISTRICT ATTORNEY
ATLANTA JUDICIAL CIRCUIT
136 PRYOR STREET SW, 3RD FLOOR
ATLANTA, GEORGIA 30303

*Fani T. Willis*
District Attorney



TELEPHONE 404-612-4639

The Honorable Christopher S. Brasher
Chief Judge, Fulton County Superior Court
Fulton County Courthouse
185 Central Avenue SW, Suite T-8905
Atlanta, Georgia 30303



2022 - EX - 000017

FILED IN OFFICE

JAN 20 2022

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

January 20, 2022

Dear Chief Judge Brasher:

I hope this letter finds you well and in good spirits. Please be advised that the District Attorney's Office has received information indicating a reasonable probability that the State of Georgia's administration of elections in 2020, including the State's election of the President of the United States, was subject to possible criminal disruptions. Our office has also learned that individuals associated with these disruptions have contacted other agencies empowered to investigate this matter, including the Georgia Secretary of State, the Georgia Attorney General, and the United States Attorney's Office for the Northern District of Georgia, leaving this office as the sole agency with jurisdiction that is not a potential witness to conduct related to the matter. As a result, our office has opened an investigation into any coordinated attempts to unlawfully alter the outcome of the 2020 elections in this state.

We have made efforts to interview multiple witnesses and gather evidence, and a significant number of witnesses and prospective witnesses have refused to cooperate with the investigation absent a subpoena requiring their testimony. By way of example, Georgia Secretary of State Brad Raffensperger, an essential witness to the investigation, has indicated that he will not participate in an interview or otherwise offer evidence until he is presented with a subpoena by my office. Please see Exhibit A, attached to this letter.

Therefore, I am hereby requesting, as the elected District Attorney for Fulton County, pursuant to O.C.G.A. § 15-12-100 et. seq., that a special purpose grand jury be impaneled for the purpose of investigating the facts and circumstances relating directly or indirectly to possible attempts to disrupt the lawful administration of the 2020 elections in the State of Georgia. Specifically, a special purpose grand jury, which will not have the authority to return an indictment but may make recommendations concerning criminal prosecution as it shall see fit, is needed for three reasons: first, a special purpose grand jury can be impaneled by the Court for any time period required in order to accomplish its investigation, which will likely exceed a normal grand jury

term; second, the special purpose grand jury would be empowered to review this matter and this matter only, with an investigatory focus appropriate to the complexity of the facts and circumstances involved; and third, the sitting grand jury would not be required to attempt to address this matter in addition to their normal duties.

Additionally, I am requesting that, pursuant to O.C.G.A. § 15-12-101, a Fulton County Superior Court Judge be assigned to assist and supervise the special purpose grand jury in carrying out its investigation and duties.

I have attached a proposed order impaneling the special purpose grand jury for the consideration of the Court.

Respectfully,

Fani/T. Willis
District Attorney, Atlanta Judicial Circuit

Exhibit A: Transcript of October 31, 2021 episode of *Meet the Press* on NBC News at 26:04 (video archived at https://www.youtube.com/watch?v=B71cBRPgt9k)
Exhibit B: Proposed Order

cc:

The Honorable Kimberly M. Esmond Adams
The Honorable Jane C. Barwick
The Honorable Rachelle Carnesdale
The Honorable Thomas A. Cox, Jr.
The Honorable Eric Dunaway
The Honorable Charles M. Eaton, Jr.
The Honorable Belinda E. Edwards
The Honorable Kelly Lee Ellerbe
The Honorable Kevin M. Farmer
The Honorable Ural Glanville
The Honorable Shakura L. Ingram
The Honorable Rachel R. Krause
The Honorable Melynee Leftridge
The Honorable Robert C.I. McBurney
The Honorable Henry M. Newkirk
The Honorable Emily K. Richardson
The Honorable Craig L. Schwall, Sr.
The Honorable Paige Reese Whitaker
The Honorable Shermela J. Williams
Fulton County Clerk of Superior Court Cathelene "Tina" Robinson

# Exhibit B

IN THE SUPERIOR COURT OF FULTON COUNTY
ATLANTA JUDICIAL CIRCUIT
STATE OF GEORGIA

2022 -EX 000024

FILED IN OFFICE

JAN 24 2022

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

IN RE:  REQUEST FOR
SPECIAL PURPOSE
GRAND JURY

## ORDER APPROVING REQUEST FOR SPECIAL PURPOSE
## GRAND JURY PURSUANT TO O.C.G.A. §15-12-100, et seq.

The District Attorney for the Atlanta Judicial Circuit submitted to the judges of the

Superior Court of Fulton County a request to impanel a special purpose jury for the purposes set

forth in that request.  This request was considered and approved by a majority of the total

number of the judges of this Court, as required by O.C.G.A. §15-12-100(b).

IT IS THEREFORE ORDERED that a special purpose grand jury be drawn and

impaneled to serve as provided in O.C.G.A. § 15-12-62.1, 15-12-67, and 15-12-100, to

commence on May 2, 2022, and continuing for a period not to exceed 12 months.  Such period

shall not include any time periods when the supervising judge determines that the special

purpose grand jury cannot meet for safety or other reasons, or any time periods when normal

court operations are suspended by order of the Supreme Court of Georgia or the Chief Judge of

the Superior Court.  The special purpose grand jury shall be authorized to investigate any and all

facts and circumstances relating directly or indirectly to alleged violations of the laws of the

State of Georgia, as set forth in the request of the District Attorney referenced herein above.

Pursuant to O.C.G.A. § 15-12-101(a), the Honorable Robert C. I. McBurney is hereby

assigned to supervise and assist the special purpose grand jury, and shall charge said special

purpose grand jury and receive its reports as provided by law.

This authorization shall include the investigation of any overt acts or predicate acts relating to the subject of the special purpose grand jury's investigative purpose. The special purpose grand jury, when making its presentments and reports, pursuant to O.C.G.A. §§ 15-12-71 and 15-12-101, may make recommendations concerning criminal prosecution as it shall see fit. Furthermore, the provisions of O.C.G.A. § 15-12-83 shall apply.

This Court also notes that the appointment of a special purpose grand jury will permit the time, efforts, and attention of the regular grand jury(ies) impaneled in this Circuit to continue to be devoted to the consideration of the backlog of criminal matters that has accumulated as a result of the COVID-19 Pandemic.

IT IS FURTHER ORDERED that this Order shall be filed in the Office of the Clerk of the Superior Court of Fulton County.

SO ORDERED, THIS ⅃⅃ DAY OF ⟋ January , 2022.

CHRISTOPHER S. BRASHER, CHIEF JUDGE
Superior Court of Fulton County
Atlanta Judicial Circuit

IN THE SUPERIOR COURT OF FULTON COUNTY

STATE OF GEORGIA

IN RE:                                  )
SPECIAL PURPOSE GRAND JURY              )        2022-EX-000024
                                        )
                                        )        Judge Robert C. I. McBurney
                                        )

**CERTIFICATE OF MATERIAL WITNESS
PURSUANT TO UNIFORM ACT TO SECURE THE ATTENDANCE
OF WITNESSES FROM WITHOUT THE STATE,
CODIFIED IN THE STATE OF GEOGIA AS
O.C.G.A. § 24-13-90 ET SEQ.**

Upon the petition of Fani T. Willis, District Attorney, Atlanta Judicial Circuit, pursuant to

the Uniform Act to Secure the Attendance of Witnesses from Without the State, codified at

O.C.G.A. § 24-13-90 et seq., the Court issues the following Certificate under seal of this Court,

and further says as follows:

1. A Special Purpose Grand Jury investigation commenced in Fulton County, Georgia,

   by order of this Court on May 2, 2022. *See* Order Impaneling Special Purpose Grand

   Jury Pursuant to O.C.G.A. § 15-12-100, et seq., "**Exhibit A**". The Special Purpose

   Grand Jury is authorized to investigate any and all facts and circumstances relating

   directly or indirectly to possible attempts to disrupt the lawful administration of the

   2020 elections in the State of Georgia. *See* Letter Requesting Special Purpose Grand

   Jury, "**Exhibit B**".

2. Based on the representations made by the State in the attached "Petition for

   Certification of Need for Testimony Before Special Purpose Grand Jury Pursuant to

   O.C.G.A. § 24-13-90 et seq.", the Court finds that Jacki Pick Deason (aka Jacki Lynn

Pick), born October 20, ███ (hereinafter, "the Witness"), is a necessary and material witness to the Special Purpose Grand Jury investigation. The Court further finds that the Witness currently resides at ███ ███ ███████ █ ████.

3. Based on the representations made by the State in the attached "Petition for Certification of Need for Testimony Before Special Purpose Grand Jury Pursuant to O.C.G.A. § 24-13-90 et seq.", the Court finds that the Witness was an attorney for the Trump Campaign's legal efforts seeking to influence the results of the November 2020 election in Georgia and elsewhere. As part of those efforts, on December 3, 2020, the Witness and other individuals known to be associated with both her and the Trump Campaign appeared publicly before the Georgia State Senate at the Georgia State Capitol in Atlanta, Fulton County, Georgia. At that hearing, the Witness provided testimony and documentary evidence purporting to demonstrate the existence of election fraud in Fulton County, Georgia, during the administration of the November 2020 election. Among the evidence offered by the Witness was a video recording of election workers at State Farm Arena in Atlanta that purported to show election workers producing "suitcases" of unlawful ballots from unknown sources, outside the view of election poll watchers. The Witness personally presented and narrated selected portions of the State Farm video to members of the Georgia State Senate. Within 24 hours of the December 3, 2020, legislative hearing, the Georgia Secretary of State's Office debunked the State Farm video and explained that its investigation revealed no voter fraud of any kind had taken place at State Farm Arena. There is evidence that the Witness's appearance and testimony at the hearing

was part of a multi-state, coordinated plan by the Trump Campaign to influence the results of the November 2020 election in Georgia and elsewhere.

4. Based on the representations made by the State in the attached "Petition for Certification of Need for Testimony Before Special Purpose Grand Jury Pursuant to O.C.G.A. § 24-13-90 et seq.", the Court finds that the Witness, as both an attorney for the Trump Campaign's legal efforts seeking to influence the results of the November 2020 election in Georgia and elsewhere and as the specific witness who presented the State Farm video to the Georgia State Senate on December 3, 2020, is a necessary and material witness in this investigation. The Witness possesses unique knowledge concerning the acquisition of the State Farm video and the manner of its presentation to the Georgia State Senate. Additionally, the Witness possesses unique knowledge concerning communications between herself, the Trump Campaign, and other known and unknown individuals involved in the multi-state, coordinated efforts to influence the results of the November 2020 election in Georgia and elsewhere. Finally, the Witness's anticipated testimony is essential in that it is likely to reveal additional sources of information regarding the subject of this investigation.

5. The testimony of the Witness will not be cumulative of any other evidence in this matter.

6. The Witness will be required to be in attendance and testify before the Special Purpose Grand Jury on July 12, 2022, and continuing through and until the conclusion of the Witness's testimony on or before August 31, 2022, at the Superior Court of Fulton County, Fulton County Courthouse, 136 Pryor Street, 3rd Floor, Atlanta, Georgia 30303.

7. The Office of the Fulton County District Attorney, in and for the State of Georgia, will pay all reasonable and necessary travel expenses and witness fees required to secure the Witness's attendance and testimony, in accordance with O.C.G.A. §24-13-90 et seq.

8. The Witness protection shall be given protection from arrest and from service of civil or criminal process, both within this State and in any other state through which the Witness may be required to pass in the ordinary course of travel, for any matters which arose before the Witness's entrance into this State and other states, while traveling to and from this Court for the purpose of testifying for this case.

9. The State of Georgia is a participant in a reciprocal program providing for the securing of witnesses to testify in foreign jurisdictions which likewise provide for such methods of securing witnesses to testify in their courts.

10. This Certificate is made for the purpose of being presented to a judge of the District Court of Dallas County, Texas, by the Dallas County District Attorney, or his duly authorized representative, who is proceeding at the request and on behalf of the Office of the Fulton County District Attorney to compel the Witness to be in attendance and testify before the Special Purpose Grand Jury on July 12, 2022, and continuing through and until the conclusion of the Witness's testimony on or before August 31, 2022, at the Superior Court of Fulton County, Fulton County Courthouse, 136 Pryor Street, 3rd Floor, Atlanta, Georgia 30303.

**WITNESS MY HAND AND SEAL** as a judge of the Superior Court of Fulton County, Georgia,

This the 28th day of June, 2022.

**Hon. Robert C. I. McBurney**
Superior Court of Fulton County
Atlanta Judicial Circuit
State of Georgia

# Exhibit A

OFFICE OF THE FULTON COUNTY DISTRICT ATTORNEY
ATLANTA JUDICIAL CIRCUIT
136 PRYOR STREET SW, 3RD FLOOR
ATLANTA, GEORGIA 30303

*Fani T. Willis*
District Attorney



TELEPHONE 404-612-4639

The Honorable Christopher S. Brasher
Chief Judge, Fulton County Superior Court
Fulton County Courthouse
185 Central Avenue SW, Suite T-8905
Atlanta, Georgia 30303

2022 - EX - 000017
FILED IN OFFICE
JAN 20 2022
DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

January 20, 2022

Dear Chief Judge Brasher:

I hope this letter finds you well and in good spirits. Please be advised that the District Attorney's Office has received information indicating a reasonable probability that the State of Georgia's administration of elections in 2020, including the State's election of the President of the United States, was subject to possible criminal disruptions. Our office has also learned that individuals associated with these disruptions have contacted other agencies empowered to investigate this matter, including the Georgia Secretary of State, the Georgia Attorney General, and the United States Attorney's Office for the Northern District of Georgia, leaving this office as the sole agency with jurisdiction that is not a potential witness to conduct related to the matter. As a result, our office has opened an investigation into any coordinated attempts to unlawfully alter the outcome of the 2020 elections in this state.

We have made efforts to interview multiple witnesses and gather evidence, and a significant number of witnesses and prospective witnesses have refused to cooperate with the investigation absent a subpoena requiring their testimony. By way of example, Georgia Secretary of State Brad Raffensperger, an essential witness to the investigation, has indicated that he will not participate in an interview or otherwise offer evidence until he is presented with a subpoena by my office. Please see Exhibit A, attached to this letter.

Therefore, I am hereby requesting, as the elected District Attorney for Fulton County, pursuant to O.C.G.A. § 15-12-100 et. seq., that a special purpose grand jury be impaneled for the purpose of investigating the facts and circumstances relating directly or indirectly to possible attempts to disrupt the lawful administration of the 2020 elections in the State of Georgia. Specifically, a special purpose grand jury, which will not have the authority to return an indictment but may make recommendations concerning criminal prosecution as it shall see fit, is needed for three reasons: first, a special purpose grand jury can be impaneled by the Court for any time period required in order to accomplish its investigation, which will likely exceed a normal grand jury

term; second, the special purpose grand jury would be empowered to review this matter and this matter only, with an investigatory focus appropriate to the complexity of the facts and circumstances involved; and third, the sitting grand jury would not be required to attempt to address this matter in addition to their normal duties.

Additionally, I am requesting that, pursuant to O.C.G.A. § 15-12-101, a Fulton County Superior Court Judge be assigned to assist and supervise the special purpose grand jury in carrying out its investigation and duties.

I have attached a proposed order impaneling the special purpose grand jury for the consideration of the Court.

Respectfully,

Fani/T. Willis
District Attorney, Atlanta Judicial Circuit

Exhibit A: Transcript of October 31, 2021 episode of *Meet the Press* on NBC News at 26:04 (video archived at https://www.youtube.com/watch?v=B71cBRPgt9k)
Exhibit B: Proposed Order

cc:
The Honorable Kimberly M. Esmond Adams
The Honorable Jane C. Barwick
The Honorable Rachelle Carnesdale
The Honorable Thomas A. Cox, Jr.
The Honorable Eric Dunaway
The Honorable Charles M. Eaton, Jr.
The Honorable Belinda E. Edwards
The Honorable Kelly Lee Ellerbe
The Honorable Kevin M. Farmer
The Honorable Ural Glanville
The Honorable Shakura L. Ingram
The Honorable Rachel R. Krause
The Honorable Melynee Leftridge
The Honorable Robert C.I. McBurney
The Honorable Henry M. Newkirk
The Honorable Emily K. Richardson
The Honorable Craig L. Schwall, Sr.
The Honorable Paige Reese Whitaker
The Honorable Shermela J. Williams
Fulton County Clerk of Superior Court Cathelene "Tina" Robinson

# Exhibit B

IN THE SUPERIOR COURT OF FULTON COUNTY
ATLANTA JUDICIAL CIRCUIT
STATE OF GEORGIA

2022 -EX 000024

FILED IN OFFICE

JAN 24 2022

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

IN RE: REQUEST FOR
SPECIAL PURPOSE
GRAND JURY

## ORDER APPROVING REQUEST FOR SPECIAL PURPOSE
## GRAND JURY PURSUANT TO O.C.G.A. §15-12-100, et seq.

The District Attorney for the Atlanta Judicial Circuit submitted to the judges of the

Superior Court of Fulton County a request to impanel a special purpose jury for the purposes set

forth in that request. This request was considered and approved by a majority of the total

number of the judges of this Court, as required by O.C.G.A. §15-12-100(b).

IT IS THEREFORE ORDERED that a special purpose grand jury be drawn and

impaneled to serve as provided in O.C.G.A. § 15-12-62.1, 15-12-67, and 15-12-100, to

commence on May 2, 2022, and continuing for a period not to exceed 12 months. Such period

shall not include any time periods when the supervising judge determines that the special

purpose grand jury cannot meet for safety or other reasons, or any time periods when normal

court operations are suspended by order of the Supreme Court of Georgia or the Chief Judge of

the Superior Court. The special purpose grand jury shall be authorized to investigate any and all

facts and circumstances relating directly or indirectly to alleged violations of the laws of the

State of Georgia, as set forth in the request of the District Attorney referenced herein above.

Pursuant to O.C.G.A. § 15-12-101(a), the Honorable Robert C. I. McBurney is hereby

assigned to supervise and assist the special purpose grand jury, and shall charge said special

purpose grand jury and receive its reports as provided by law.

This authorization shall include the investigation of any overt acts or predicate acts relating to the subject of the special purpose grand jury's investigative purpose. The special purpose grand jury, when making its presentments and reports, pursuant to O.C.G.A. §§ 15-12-71 and 15-12-101, may make recommendations concerning criminal prosecution as it shall see fit. Furthermore, the provisions of O.C.G.A. § 15-12-83 shall apply.

This Court also notes that the appointment of a special purpose grand jury will permit the time, efforts, and attention of the regular grand jury(ies) impaneled in this Circuit to continue to be devoted to the consideration of the backlog of criminal matters that has accumulated as a result of the COVID-19 Pandemic.

IT IS FURTHER ORDERED that this Order shall be filed in the Office of the Clerk of the Superior Court of Fulton County.

SO ORDERED, THIS 24 DAY OF January , 2022.

CHRISTOPHER S. BRASHER, CHIEF JUDGE
Superior Court of Fulton County
Atlanta Judicial Circuit



FILED IN OFFICE

JUL 0 6 2022

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

| | |
|---|---|
| IN RE 2 MAY 2022 SPECIAL PURPOSE GRAND JURY | 2022-EX-000024 |

## ORDER DENYING MOTION TO QUASH

On 20 January 2022, the District Attorney of Fulton County petitioned the Chief Judge of the Superior Court of Fulton County to convene the entire Superior Court bench to consider the District Attorney's request for a special purpose grand jury. That grand jury's charter, if approved, would be to investigate "the facts and circumstances relating directly or indirectly to possible attempts to disrupt the lawful administration of the 2020 elections in the State of Georgia" and to prepare a report and recommendation for the District Attorney advising her whether she should seek to prosecute anyone for such potential offenses. On 24 January 2022, the Chief Judge, having received a majority of the twenty judges' assent, issued an Order authorizing the convening of a special purpose grand jury for the aforementioned purpose.

On 2 May 2022, the special purpose grand jury was selected and sworn in; in June 2022 it began receiving evidence. The District Attorney has since subpoenaed several members of the Georgia Legislature to appear before the grand jury. Two of these "member" witnesses -- Lieutenant Governor Geoff Duncan[1] and former State Senator William Ligon -- have retained counsel who, on their[2] behalf, has filed a motion

---

[1] The Lieutenant Governor serves as the President of the Senate and is thus effectively a member of the legislature. Ga. Const. art V, § 1, ¶ 3.

[2] The witnesses' counsel has indicated that he and his colleague will likely represent additional members of the Legislature for purposes of navigating the issues addressed in this Order.

1

challenging their subpoenas. The witnesses contend that the legislative privilege protects them from such process and that their subpoenas should be quashed. The State filed a responsive pleading on 30 June 2022 and on 1 July 2022, the Court heard from the witnesses' counsel as well as the District Attorney. Based on the briefs, oral argument, and relevant law, the Court DENIES the witnesses' motion to quash but does establish certain limits to the District Attorney's ability to question these two "legislative" witnesses (and any future similarly situated witnesses).

The legislative privilege, codified in the Georgia Constitution in article III, section four, paragraph nine, reads in pertinent part, "No member shall be liable to answer in any other place for anything spoken in either house or in any committee meeting of either house." This protection serves the laudable purpose of ensuring that our state legislators can speak freely to each other while conducting legitimate legislative activity in the house and senate without worrying that their words, written or spoken, will result in either executive or judicial branch inquiry.

The District Attorney has made plain in her responsive pleading that she intends to question the witnesses about matters she believes fall outside the scope of the privilege, making quashal improper. And she is correct, insofar as the questioning of the witnesses indeed stays away from legitimate[3] legislative activity. However, because the District

---

[3] One prong of the District Attorney's argument against quashal to which the Court does not subscribe is her claim that legislators associated with any legislative activity (floor debates, committee meetings, etc.) to decertify or otherwise challenge the results of the November 2020 general election enjoy no legislative immunity because their actions were not "legitimate" legislative actions. It is decidedly not the province of the judicial branch (or the executive) to assess the wisdom or merits of legislative activity. If the deed was done, the word was spoken, or the vote was taken in connection with debating and enacting legislation, it is protected: "The claim of an unworthy purpose does not destroy the privilege." *Village of N. Atlanta v. Cook*, 219 Ga. 316, 319 (1963), quoting *Tenney v. Brandhove*, 341 U.S. 367, 377 (1951). And while the District Attorney has identified certain topics addressed during the 3 December 2020 subcommittee hearing that appear to fall outside the jurisdiction of the State legislature, other items discussed during that session and in the subcommittee's final report clearly are within the purview of the legislature.

2

Attorney has indicated that one topic of interest for the grand jury is the 3 December 2020 "Election Law Study" subcommittee hearing that former Senator Ligon chaired, counsel for the witnesses understandably has requested that, if quashal is not occurring (and it is not), guidelines for inquiry be established so that (1) the District Attorney will avoid certain patently improper lines of questioning and (2) the witnesses know when they might persuasively invoke the legislative privilege while being questioned.

Each witness will be different and investigative questioning is inherently difficult to cabin, especially when the grand jurors are empowered to ask questions of their own. Nonetheless, some fairly clear lines can be drawn to help guide the questioning of legislative witnesses, including the Lieutenant Governor and former Senator Ligon.

**First, neither the District Attorney nor the grand jurors may ask either witness about anything he said while participating in any session of the legislature, be that on the floor of the body or in a subcommittee.** This is the essence of the immunity provided by the legislative privilege. It includes spoken words, memos, draft bills, and any other written documents prepared by a legislator or her staff for the session, as well as any official reports generated during or as a result of the session.[4] This prohibition bars inquiries not only into what was said (or written) but also, perhaps more importantly, into why it was said (or written). The motivations of the elected officials for the actions they took (or failed to take) during legislative sessions are not subject to scrutiny by this grand jury (or any other). *United States v. Brewster*, 408 U.S. 501, 525 (1972).

---

[4] There is one exception, discussed in n.6 below, for the re-publication of speeches or reports.

**Second, neither witness may be asked about direct communications (face-to-face conversations, calls, e-mails, texts, etc.) he had with any other legislator in preparing for any session or drafting any legislation or official report.** This ban extends to any direct communications with staff members, either the witness's own or those of another legislator, made in connection with preparing for a session or drafting official documents.[5]

Where the legislative privilege ends and the grand jury's authority to question the witnesses about possible criminal electoral interference by others[6] begins is when a witness (or his staff) has engaged with private citizens on topics relevant to the grand jury's investigative charter. This is so for at least four reasons. First, there is nothing inherently confidential in such exchanges, unlike the traditional protected communications between a lawyer and her client, a doctor and his patient, or a priest and his parishioner. Put differently, there is no "senator-constituent" privilege[7] -- in particular when those communications are relevant to possible third-party crimes (*i.e.,* the legislator (or her aide) is not the target of the investigation). A concerned citizen or interested lobbyist has no reasonable basis for expecting that his communications with a

---

[5] Courts have regularly held that both the member and his staff enjoy the protections of the legislative privilege when engaged in legitimate legislative activity. *Code Revision Comm'n for Gen. Assembly of Georgia v. Public.Resource.Org, Inc.,* 906 F.3d 1229, 1245 (11th Cir. 2018), *aff'd sub nom. Georgia v. Public.Resource.Org, Inc.,* 140 S. Ct. 1498, 206 L. Ed. 2d 732 (2020) ("legislative immunity applies not only to a Member but also to his aides insofar as the conduct of the latter would be a protected legislative act if performed by the Member himself").

[6] Obviously if the questioning turns towards a *witness's* possible involvement in such activity, a different privilege becomes available for assertion.

[7] Certainly the "constituent" could not invoke the privilege: imagine the foreign agent spotted leaving a legislator's office resisting a subpoena on the grounds that her communications with the legislator were "privileged." And if it does not exist for the third party, how does it exist for the legislator? Would only what the legislator said in the conversation with the third party be off limits?

4

legislator won't be shared by the legislator, either with colleagues or the press;[8] similarly, the legislator knows full well that the third party with whom she spoke is not bound to secrecy and can reveal to anyone what was shared in their exchange. Second, public disclosure of who meets with our legislative decision-makers yields a social benefit, as it enables voters to understand who is influencing -- or at least seeking to influence -- those who theoretically represent them in our legislature. Third, lobbyists (and other private citizens and organizations) do not create legislation; they are not our elected representatives. They may -- and very often do -- submit draft proposals, offer research, and contribute generously to re-election campaigns. But what they may *not* do is actually conduct the business of the legislature: the speaking, the debating, and, ultimately, the voting. The legislative privilege, both in its actual text[9] as well as in its application through the courts, protects *that* process of law-making, not the extra-legislative lobbying, persuading, and cajoling that occurs *outside* the corps of legislators and their staff and involves non-privileged communications with non-legislative stakeholders.

Fourth, and binding upon the undersigned, the United States Supreme Court has held that such third party communications fall outside the legislative privilege in the context of criminal investigations. Specifically, the Supreme Court concluded that the Speech or Debate Clause -- the federal constitution's version of the legislative privilege -- does not "immunize Senator or aide from testifying at trials or grand jury proceedings

---

[8] Indeed, the U.S. Supreme Court has held that even a plainly privileged communication, such as a speech on the legislative floor or a committee report, can lose its protection if the member himself republishes it, as that re-publication is not a legislative act and so does not enjoy immunity. *Hutchinson v. Proxmire*, 443 U.S. 111, 127–28 (1979). This principle may come into play with Mr. Ligon, who, according to the District Attorney, personally republished both the subcommittee's report and a video of the hearing.

[9] The language of the State Constitution protects legislators from answering for what is "spoken in either house or in any committee meeting of either house." Had the drafters of this constitutional provision wanted to extend the privilege to what is spoken outside the legislative chambers to non-legislators, they could have. But they did not.

involving third-party crimes where the questions do not require testimony about or impugn a legislative act." *Gravel v. U. S.*, 408 U.S. 606, 622 (1972). Put differently, a legislator may, consistent with legislative immunity, be compelled to testify before a grand jury concerning communications he (or his staff) had with third parties -- even if arguably in connection with the performance of his legislative duties -- if such an inquiry proves relevant to investigating possible third-party crime.[10]

In the end, this balance makes sense. If, as the District Attorney alleges, outside individuals sought to influence Georgia legislators and other elected state officials as part of a possibly illegal scheme to interfere with the lawful administration of the electoral process in our State, the grand jury should be able to investigate such activity. The legislative privilege, designed to protect the legitimate -- as in lawful -- legislative process, ought not to be a shield that benefits those outside individuals or otherwise obscures from the grand jury's view the full scope of the alleged efforts to subvert Georgia's elections.

This is not, however, a boundless exception to the privilege. Inquiries remain limited to who and what, not why. For example, the District Attorney may ask former Senator Ligon to identify any non-legislators (and non-staffers) with whom he met to discuss ideas such as "rescinding" the certification of the general election and substituting "proper" electors for those already selected -- if those topics are relevant to the grand jury's investigation of possible electoral crimes. And the grand jury may explore with the former senator what such individual(s) who promoted these ideas shared with him. What

---

[10] The Court appreciates counsel for the witnesses' reliance on the dissents in *Gravel*. They contain passionate language about the need to extend the legislative privilege to a legislator's private communications with the citizenry and the importance of the legislative "informing function." *See, e.g., Gravel* at 649-50 (Brennan, J., dissenting). However, to restate what seems to have become a forgotten axiom of American democracy, a lesser vote count -- be it in a judicial opinion or a general election -- does not carry the day.

6

the grand jury may *not* pursue is any line of questioning about what the former senator thought of such proposals or what, if anything, he decided to do based on having received such input.

Undoubtedly, issues will arise that do not fall neatly into any of these categories. These witnesses (and others) may invoke the legislative privilege in response to questions the District Attorney deems proper.  The District Attorney may ask questions the witnesses contend are prohibited by this Order (and/or the legislative privilege).  Such instances should be brought to the Court's attention and, as soon as the Court can disentangle itself from its other judicial responsibilities, it will mediate the dispute.

SO ORDERED this 6th day of July 2022.

Judge Robert C.I. McBurney
Superior Court of Fulton County
Atlanta Judicial Circuit

7

FILED IN OFFICE

JUN 06 2022

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

| IN RE 2 MAY 2022 SPECIAL PURPOSE GRAND JURY | 2022-EX-000024 |
|---|---|

## ORDER DENYING MOTION TO CONTINUE

The District Attorney of Fulton County has subpoenaed former State Senator William Ligon to testify before the special purpose grand jury that has been authorized by the Chief Judge of the Superior Court of Fulton County (pursuant to a majority vote of the Court's twenty members) to investigate possible criminal interference with the lawful administration of the 2020 general elections in Georgia. Mr. Ligon has retained counsel in connection with the grand jury's investigation. His attorney has a trial starting on 18 July 2022 in Glynn County, Georgia, that he contends will render him (and thus his client) unavailable for the better part of a month, if not longer. Counsel has thus asked that Mr. Ligon's testimony be delayed until September 2022 to accommodate not Mr. Ligon's schedule, but his own.

The District Attorney is unwilling to delay Mr. Ligon's testimony for so many weeks, given the structure and pacing of the grand jury's investigation. Faced with this dispute and the competing interests of Mr. Ligon's attorney's civil trial obligations and the District Attorney's investigation into allegations of criminal electoral interference, the Court strikes the following balance: **Mr. Ligon must make himself available for a minimum of two hours of grand jury examination during the week of 11 July 2022.**[1] Should he wish to go longer, he may, but at the two hour mark -- assuming no

---

[1] The District Attorney has informed the Court and Mr. Ligon that the grand jury will be convening on July 12-14. Mr. Ligon can designate his two-hour block at any time the grand jury will be in session during that three-day window.

delays occasioned by the witness or his lawyer -- he and his attorney may halt the proceedings and the District Attorney will have to recall Mr. Ligon after his lawyer finishes his trial should she (or the grand jury) desire additional testimony from Mr. Ligon.

SO ORDERED this 6th day of July 2022.

Judge Robert C.I. McBurney
Superior Court of Fulton County
Atlanta Judicial Circuit

**ORIGINAL**

IN THE FULTON COUNTY SUPERIOR COURT
STATE OF GEORGIA

IN RE: SUBPOENAS FROM SPECIAL PURPOSE GRAND JURY
CASE NO. 2022-EX-000024

ISSUED TO: William Ligon

**FILED IN OFFICE**

JUL 11 2022

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

### RESPONSE TO DISTRICT ATTORNEY'S JULY 8, 2022, MEMORANDUM FOR THE COURT REGARDING GRAND JURY APPEARANCE OF WILLIAM LIGON

On July 8, 2022, the district attorney's office advised the Court that when William Ligon appears at the grand jury on July 13, 2022, the grand jury will ask him questions about a legislative committee report that documented and summarized the testimony from the December 3, 2020, committee hearing. The DA's memo to Judge McBurney indicates that the grand jury intends to question Mr. Ligon about the contents of the committee report, as well as the published minutes of the committee session, and the contents of Mr. Ligon's recorded statements at the subcommittee hearing. The DA argues that these topics of the proposed questioning face no constraint based on the Georgia Legislators' Constitutional Immunity provision, Ga. Const. art. III, § 4, ¶ 9.

The DA suggests that Ligon's "republication" of the committee report on Mr. Ligon's website removes the document (as well as the Senator's statements at the committee hearing) from the protection of the Georgia Speech or Debate Clause. The DA's argument is wrong.

1

Here is what the DA proposed in the first four paragraphs of his memo:[1]

1. Statements made by Mr. Ligon or other witnesses in videos of the subcommittee hearings, which were republished on Mr. Ligon's personal website via hyperlink and are currently publicly available on the website.

2. The Report of the Election Law Study Subcommittee of the Standing Senate Judiciary Committee, which was republished on Mr. Ligon's personal website via hyperlink and is currently publicly available on the website.

3. The Minutes of the Second Hearing of the Election Law Study Subcommittee, which were republished on Mr. Ligon's personal website via hyperlink and are currently publicly available on the website.

4. The Chairman's Report of the Election Law Study Subcommittee of the Standing Senate Judiciary Committee, which was republished on Mr. Ligon's personal website and is currently publicly available at

http://www.senatorligon.com/THE_FINAL%20REPORT.PDF. (This republication has since been removed from the homepage of Mr. Ligon's personal website but was publicly available there at least as early as December 21, 2020; this report appears to have been removed from the homepage of Mr. Ligon's personal website on or about January 7, 2021.)

---

[1] The Fifth category of information in the DA's memo is too vague for the witness to preemptively address.

2

The DA's position is that Mr. Ligon may be questioned about the committee reports because they were "republished" on his personal website. This suggestion is premised on the faulty belief that the Speech or Debate Clause is a privilege that protects confidential communications and that it can be waived by the subsequent publication of otherwise privileged acts. That is not the case. The Speech or Debate Clause shields Members from questioning in connection with all their legislative duties, which clearly includes statements made in committee hearings and the preparation of committee reports. The reports are not confidential when published, whether on the General Assembly's website, a Member's website, or in a newspaper of general circulation. The privilege and the immunity are designed to prevent any inquiry into the preparation of the committee report, wherever the report may be published or republished. The fact that the committee report and that the testimony at the hearing are not confidential is entirely irrelevant to the question of whether the executive or judicial branch can compel a legislator to testify about his or her involvement in the indisputably legislative acts of participating in a committee hearing and preparing the committee's report thereon.[2]

---

[2] This Court, too, indicated that the lack of confidentiality is in some way relevant to determination of whether Legislative Immunity applies in certain situations (third-party conversations) (July 6 Order page 4). This court also misconstrued the genetic basis for the privilege. It is the impropriety of the inquiry from the

The DA's mistake presumably arises from a misreading of *Gravel*. First, that case did refer to "republication" of certain documents. But what was republished in *Gravel* was not a committee report. Rather, what was republished were the Pentagon Papers. The Pentagon Papers were not subject to the legislative privilege before they were acquired by Senator Gravel or when they were republished by Senator Gravel. The Pentagon Papers were introduced into the committee record, but the Pentagon Papers were not themselves a committee report and were not prepared, or authored by, a Member of the Senate. Second, the Court in *Gravel* held that the republication of the Pentagon Papers was not a legislative act because arranging with a private publisher to publish non-legislative (and perhaps illegally obtained) material was potentially a crime and not "part and parcel of the legislative process." 408 U.S. at 626. It is critical to note that the Court in *Gravel* permitted questioning of the Senator's aide about his involvement of the republication only insofar as "the legislative acts of the Senator are not impugned." *Id*. at 626-27. In other words, nothing in *Gravel* supports the D.A.'s suggestion that Senator Ligon's legislative acts, *i.e.*, his statements during the committee meeting or acts or motivations in preparing the committee report, are not shielded by the privilege simply because they were posted on Senator Ligon's website.

---

executive or judicial branch of government that matters, not the breach of a confidential communication.

Unfortunately, there is language in the July 6 Order that may have contributed to this error. In footnote 8 of the July 6 Order, the Court wrote that the republication of a committee report may not be privileged. The Court cites *Hutchinson v. Proxmire*, 443 U.S. 111 (1979), for this assertion. But this Court's suggestion in footnote 8 extended *Proxmire* beyond its express terms. *Proxmire* held that issuing a press release or a newsletter about legislative acts or making a speech about legislative activity is not privileged. But Committee Reports themselves *are* privileged, even when published outside the Senate Chamber:

> Members of Congress could not be held liable for voting to publish a report. Voting and preparing committee reports are the individual and collective expressions of opinion within the legislative process. As such, they are protected by the Speech or Debate Clause. Newsletters and press releases, by contrast, are primarily means of informing those outside the legislative forum; they represent the views and will of a single Member. It does not disparage either their value or their importance to hold that they are not entitled to the protection of the Speech or Debate Clause.

*Hutchinson v. Proxmire*, 99 S.Ct. 2675, 2687, 443 U.S. 111, 133 (1979).

Therefore, the privilege that bars questioning about a legislative act prohibits the grand jury from questioning Mr. Ligon about the preparation of the committee report or anything contained in (or the source of information for) the committee report, and he is absolutely privileged and immune from any interrogation whatsoever about what was said (or why) in a recorded Senate committee hearing.

RESPECTFULLY SUBMITTED,

Garland, Samuel & Loeb, PC

*Donald F. Samuel*

Donald F. Samuel
Special Assistant Legislative Counsel[3]

*Amanda Clark Palmer*

Amanda Clark Palmer
Special Assistant Legislative Counsel

3151 Maple Drive
Atlanta, Georgia 30305
(404) 262-2225

**GRIFFIN DURHAM TANNER & CLARKSON**

*James D. Durham*

James D. Durham
Georgia Bar No. 235515
jdurham@griffindurham.com
7 East Congress Street, Suite 703
Savannah, GA 31401
Ph/Fax: 912-867-9140

---

[3] The Special Assistant Legislative Counsels are appearing for the limited purpose of addressing matters relating to legislative privilege.

IN THE FULTON COUNTY SUPERIOR COURT
STATE OF GEORGIA

IN RE: SUBPOENAS FROM SPECIAL PURPOSE GRAND JURY,
CASE NO. 2022-EX-000024

ISSUED TO: Members of the General Assembly (William Ligon; Lt. Governor
Duncan; and others)

### CERTIFICATE OF SERVICE

I hereby certify that I have served the foregoing **RESPONSE TO DISTRICT ATTORNEY'S JULY 8, 2022, MEMORANDUM FOR THE COURT REGARDING GRAND JURY APPEARANCE OF WILLIAM LIGON** upon the following counsel this date by hand delivery:

> Fani T. Willis, DA
> Fulton County District Attorney's Office
> Lewis Slaton Courthouse, Third Floor
> 136 Pryor Street, S.W.
> Atlanta, Georgia 30305

This the 11th day of July, 2022.

RESPECTFULLY SUBMITTED,

GARLAND, SAMUEL & LOEB, P.C.

Donald F. Samuel
Special Assistant Legislative Counsel

3151 Maple Drive, N.E.
Atlanta, Georgia 30305
(404) 262-2225
dfs@gsllaw.com

7

**IN THE SUPERIOR COURT OF FULTON COUNTY**

**STATE OF GEORGIA**

IN RE: )
SPECIAL PURPOSE GRAND JURY ) **2022-EX-000024**
 )
 ) **Judge Robert C. I. McBurney**
 )

## PETITION FOR CERTIFICATION OF NEED FOR TESTIMONY BEFORE SPECIAL PURPOSE GRAND JURY PURSUANT TO O.C.G.A. O.C.G.A. § 24-13-90 ET SEQ.

**COMES NOW** the State of Georgia, by and through Fani T. Willis, District Attorney, Atlanta Judicial Circuit, Fulton County, Georgia, and petitions this Honorable Court for a Certificate of Need for Testimony Before Special Purpose Grand Jury, pursuant to O.C.G.A. § 24-13-92 et seq., and in support thereof says as follows:

1. A Special Purpose Grand Jury investigation commenced in Fulton County, Georgia, by order of this court on May 2, 2022. *See* Order Impaneling Special Purpose Grand Jury Pursuant to O.C.G.A. § 15-12-100, Et Seq, "**Exhibit A**". The Special Purpose Grand Jury is authorized to investigate any and all facts and circumstances relating directly or indirectly to possible attempts to disrupt the lawful administration of the 2020 elections in the State of Georgia. *See* Letter Requesting Special Purpose Grand Jury, "**Exhibit B**".

2. Lindsey Olin Graham, born July 9, ▮▮▮, (hereinafter, "the Witness") is a necessary and material witness to the Special Purpose Grand Jury investigation. Through both its investigation and through publicly available information, the State has learned that the Witness made at least two telephone calls to Georgia Secretary of State Brad

Raffensperger and members of his staff in the weeks following the November 2020 election in Georgia. During the telephone calls, the Witness questioned Secretary Raffensperger and his staff about reexamining certain absentee ballots cast in Georgia in order to explore the possibility of a more favorable outcome for former President Donald Trump. The Witness also made reference to allegations of widespread voter fraud in the November 2020 election in Georgia, consistent with public statements made by known affiliates of the Trump Campaign.

3. The Witness, based on the substance and timing of the telephone calls he personally made to Georgia Secretary of State Brad Raffensperger, is a necessary and material witness in this investigation. The Witness possesses unique knowledge concerning the substance of the telephone calls, the circumstances surrounding his decision to make the telephone calls, the logistics of setting up the telephone calls, and any communications between himself, others involved in the planning and execution of the telephone calls, the Trump Campaign, and other known and unknown individuals involved in the multi-state, coordinated efforts to influence the results of the November 2020 election in Georgia and elsewhere. Finally, the Witness's anticipated testimony is essential in that it is likely to reveal additional sources of information regarding the subject of this investigation.

4. The testimony of the Witness will not be cumulative of any other evidence in this matter.

5. The Witness resides outside the jurisdiction of this Honorable Court and is therefore unable to be served with process to compel attendance and testimony.

6. The Witness currently resides at ███ ████████████████████████████████
   ████ .

7. The Witness will be required to be in attendance and testify before the Special
   Purpose Grand Jury on August 2, 2022, and continuing through and until the
   conclusion of the Witness's testimony on or before August 31, 2022.

8. The Office of the Fulton County District Attorney, in and for the State of Georgia,
   will pay all reasonable and necessary travel expenses and witness fees required to
   secure the Witness's attendance and testimony, in accordance with the Uniform Act
   to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings.
   *See* O.C.G.A. §24-13-90 et seq.

9. If the Witness comes into the State of Georgia pursuant to this request, directing the
   Witness to attend and testify before the Special Purpose Grand Jury, the laws of this
   State shall give the Witness protection from arrest and from service of civil or
   criminal process, both within this State and in any other state through which the
   Witness may be required to pass in the ordinary course of travel, for any matters
   which arose before the Witness's entrance into this State and other states.

10. Both Georgia and the District of Columbia have adopted the Uniform Act to Secure
    the Attendance of Witnesses from Without a State in Criminal Proceedings. *See*
    O.C.G.A. § 24-13-90; D.C. Code §§ 23-1501 – 23-1503.

**WHEREFORE**, the State of Georgia, by and through Fani T. Willis, District Attorney,
Atlanta Judicial Circuit, Fulton County, Georgia, prays that this Honorable Court issue a
Certificate of Need for Testimony Before Special Purpose Grand Jury, pursuant to O.C.G.A. § 24-
13-92 et seq., certifying to the proper authorities in the jurisdiction in which the Witness is located

that the Witness is a necessary and material witness whose attendance and testimony is required

for the above-referenced Special Purpose Grand Jury investigation, and the presence of the

Witness will be needed for the number of days specified above,

Respectfully submitted this the 8th day of July, 2022,

> **FANI T. WILLIS**
> **DISTRICT ATTORNEY**
> **ATLANTA JUDICIAL CIRCUIT**
>
> **GA Bar No. 223955**
> Atlanta Judicial Circuit
> 136 Pryor Street Southwest
> Third Floor
> Atlanta, Georgia 30303

# Exhibit A

IN THE SUPERIOR COURT OF FULTON COUNTY
ATLANTA JUDICIAL CIRCUIT
STATE OF GEORGIA

2022 - EK 000024

FILED IN OFFICE

JAN 24 2022

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

IN RE: REQUEST FOR
SPECIAL PURPOSE
GRAND JURY

## ORDER APPROVING REQUEST FOR SPECIAL PURPOSE
## GRAND JURY PURSUANT TO O.C.G.A. §15-12-100, et seq.

The District Attorney for the Atlanta Judicial Circuit submitted to the judges of the

Superior Court of Fulton County a request to impanel a special purpose jury for the purposes set

forth in that request. This request was considered and approved by a majority of the total

number of the judges of this Court, as required by O.C.G.A. §15-12-100(b).

IT IS THEREFORE ORDERED that a special purpose grand jury be drawn and

impaneled to serve as provided in O.C.G.A. § 15-12-62.1, 15-12-67, and 15-12-100, to

commence on May 2, 2022, and continuing for a period not to exceed 12 months. Such period

shall not include any time periods when the supervising judge determines that the special

purpose grand jury cannot meet for safety or other reasons, or any time periods when normal

court operations are suspended by order of the Supreme Court of Georgia or the Chief Judge of

the Superior Court. The special purpose grand jury shall be authorized to investigate any and all

facts and circumstances relating directly or indirectly to alleged violations of the laws of the

State of Georgia, as set forth in the request of the District Attorney referenced herein above.

Pursuant to O.C.G.A. § 15-12-101(a), the Honorable Robert C. I. McBurney is hereby

assigned to supervise and assist the special purpose grand jury, and shall charge said special

purpose grand jury and receive its reports as provided by law.

This authorization shall include the investigation of any overt acts or predicate acts relating to the subject of the special purpose grand jury's investigative purpose. The special purpose grand jury, when making its presentments and reports, pursuant to O.C.G.A. §§ 15-12-71 and 15-12-101, may make recommendations concerning criminal prosecution as it shall see fit. Furthermore, the provisions of O.C.G.A. § 15-12-83 shall apply.

This Court also notes that the appointment of a special purpose grand jury will permit the time, efforts, and attention of the regular grand jury(ies) impaneled in this Circuit to continue to be devoted to the consideration of the backlog of criminal matters that has accumulated as a result of the COVID-19 Pandemic.

IT IS FURTHER ORDERED that this Order shall be filed in the Office of the Clerk of the Superior Court of Fulton County.

SO ORDERED, THIS 24 DAY OF January, 2022.

CHRISTOPHER S. BRASHER, CHIEF JUDGE
Superior Court of Fulton County
Atlanta Judicial Circuit

# Exhibit B

OFFICE OF THE FULTON COUNTY DISTRICT ATTORNEY
ATLANTA JUDICIAL CIRCUIT
136 PRYOR STREET SW, 3RD FLOOR
ATLANTA, GEORGIA 30303

*Fani T. Willis*
District Attorney

TELEPHONE 404-612-4639

The Honorable Christopher S. Brasher
Chief Judge, Fulton County Superior Court
Fulton County Courthouse
185 Central Avenue SW, Suite T-8905
Atlanta, Georgia 30303

2022-EX-000017

FILED IN OFFICE
JAN 20 2022
DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

January 20, 2022

Dear Chief Judge Brasher:

I hope this letter finds you well and in good spirits. Please be advised that the District Attorney's Office has received information indicating a reasonable probability that the State of Georgia's administration of elections in 2020, including the State's election of the President of the United States, was subject to possible criminal disruptions. Our office has also learned that individuals associated with these disruptions have contacted other agencies empowered to investigate this matter, including the Georgia Secretary of State, the Georgia Attorney General, and the United States Attorney's Office for the Northern District of Georgia, leaving this office as the sole agency with jurisdiction that is not a potential witness to conduct related to the matter. As a result, our office has opened an investigation into any coordinated attempts to unlawfully alter the outcome of the 2020 elections in this state.

We have made efforts to interview multiple witnesses and gather evidence, and a significant number of witnesses and prospective witnesses have refused to cooperate with the investigation absent a subpoena requiring their testimony. By way of example, Georgia Secretary of State Brad Raffensperger, an essential witness to the investigation, has indicated that he will not participate in an interview or otherwise offer evidence until he is presented with a subpoena by my office. Please see Exhibit A, attached to this letter.

Therefore, I am hereby requesting, as the elected District Attorney for Fulton County, pursuant to O.C.G.A. § 15-12-100 et. seq., that a special purpose grand jury be impaneled for the purpose of investigating the facts and circumstances relating directly or indirectly to possible attempts to disrupt the lawful administration of the 2020 elections in the State of Georgia. Specifically, a special purpose grand jury, which will not have the authority to return an indictment but may make recommendations concerning criminal prosecution as it shall see fit, is needed for three reasons: first, a special purpose grand jury can be impaneled by the Court for any time period required in order to accomplish its investigation, which will likely exceed a normal grand jury

term; second, the special purpose grand jury would be empowered to review this matter and this matter only, with an investigatory focus appropriate to the complexity of the facts and circumstances involved; and third, the sitting grand jury would not be required to attempt to address this matter in addition to their normal duties.

Additionally, I am requesting that, pursuant to O.C.G.A. § 15-12-101, a Fulton County Superior Court Judge be assigned to assist and supervise the special purpose grand jury in carrying out its investigation and duties.

I have attached a proposed order impaneling the special purpose grand jury for the consideration of the Court.

Respectfully,

Fani T. Willis
District Attorney, Atlanta Judicial Circuit

Exhibit A: Transcript of October 31, 2021 episode of *Meet the Press* on NBC News at 26:04
(video archived at https://www.youtube.com/watch?v=B71cBRPgt9k)
Exhibit B: Proposed Order

cc:

The Honorable Kimberly M. Esmond Adams
The Honorable Jane C. Barwick
The Honorable Rachelle Carnesdale
The Honorable Thomas A. Cox, Jr.
The Honorable Eric Dunaway
The Honorable Charles M. Eaton, Jr.
The Honorable Belinda E. Edwards
The Honorable Kelly Lee Ellerbe
The Honorable Kevin M. Farmer
The Honorable Ural Glanville
The Honorable Shakura L. Ingram
The Honorable Rachel R. Krause
The Honorable Melynee Leftridge
The Honorable Robert C.I. McBurney
The Honorable Henry M. Newkirk
The Honorable Emily K. Richardson
The Honorable Craig L. Schwall, Sr.
The Honorable Paige Reese Whitaker
The Honorable Shermela J. Williams
Fulton County Clerk of Superior Court Cathelene "Tina" Robinson

**IN THE SUPERIOR COURT OF FULTON COUNTY**

**STATE OF GEORGIA**

IN RE:                                              )
SPECIAL PURPOSE GRAND JURY          )      **2022-EX-000024**
                                                   )
                                                   )      **Judge Robert C. I. McBurney**
                                                   )

### CERTIFICATE OF MATERIAL WITNESS
### PURSUANT TO UNIFORM ACT TO SECURE THE ATTENDANCE
### OF WITNESSES FROM WITHOUT THE STATE,
### CODIFIED IN THE STATE OF GEORGIA AS
### O.C.G.A. § 24-13-90 ET SEQ.

Upon the petition of Fani T. Willis, District Attorney, Atlanta Judicial Circuit, pursuant to

the Uniform Act to Secure the Attendance of Witnesses from Without the State, codified at

O.C.G.A. § 24-13-90 et seq., the Court issues the following Certificate under seal of this Court,

and further says as follows:

1.  A Special Purpose Grand Jury investigation commenced in Fulton County, Georgia,

    by order of this Court on May 2, 2022. *See* Order Impaneling Special Purpose Grand

    Jury Pursuant to O.C.G.A. § 15-12-100, et seq., "**Exhibit A**". The Special Purpose

    Grand Jury is authorized to investigate any and all facts and circumstances relating

    directly or indirectly to possible attempts to disrupt the lawful administration of the

    2020 elections in the State of Georgia. *See* Letter Requesting Special Purpose Grand

    Jury, "**Exhibit B**".

2.  Based on the representations made by the State in the attached "Petition for

    Certification of Need for Testimony Before Special Purpose Grand Jury Pursuant to

    O.C.G.A. § 24-13-90 et seq.", the Court finds that Lindsey Olin Graham, born July 9,

▮▮▮▮ (hereinafter, "the Witness") is a necessary and material witness to the Special
Purpose Grand Jury investigation. The Court further finds that the Witness currently
resides at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

3. Based on the representations made by the State in the attached "Petition for
Certification of Need for Testimony Before Special Purpose Grand Jury Pursuant to
O.C.G.A. § 24-13-90 et seq.", the Court finds that the Witness made at least two
telephone calls to Georgia Secretary of State Brad Raffensperger and members of his
staff in the weeks following the November 2020 election in Georgia. During the
telephone calls, the Witness questioned Secretary Raffensperger and his staff about
reexamining certain absentee ballots cast in Georgia in order to explore the possibility
of a more favorable outcome for former President Donald Trump. The Witness also
made reference to allegations of widespread voter fraud in the November 2020
election in Georgia, consistent with public statements made by known affiliates of the
Trump Campaign.

4. Based on the representations made by the State in the attached "Petition for
Certification of Need for Testimony Before Special Purpose Grand Jury Pursuant to
O.C.G.A. § 24-13-90 et seq.", the Court finds that the Witness, based on the
substance and timing of the telephone calls he personally made to Georgia Secretary
of State Brad Raffensperger, is a necessary and material witness in this investigation.
The Witness possesses unique knowledge concerning the substance of the telephone
calls, the circumstances surrounding his decision to make the telephone calls, the
logistics of setting up the telephone calls, and any communications between himself,
others involved in the planning and execution of the telephone calls, the Trump

Campaign, and other known and unknown individuals involved in the multi-state, coordinated efforts to influence the results of the November 2020 election in Georgia and elsewhere. Finally, the Witness's anticipated testimony is essential in that it is likely to reveal additional sources of information regarding the subject of this investigation.

5. The testimony of the Witness will not be cumulative of any other evidence in this matter.

6. The Witness will be required to be in attendance and testify before the Special Purpose Grand Jury on August 2, 2022, and continuing through and until the conclusion of the Witness's testimony on or before August 31, 2022, at the Superior Court of Fulton County, Fulton County Courthouse, 136 Pryor Street, 3rd Floor, Atlanta, Georgia 30303.

7. The Office of the Fulton County District Attorney, in and for the State of Georgia, will pay all reasonable and necessary travel expenses and witness fees required to secure the Witness's attendance and testimony, in accordance with O.C.G.A. §24-13-90 et seq.

8. The Witness shall be given protection from arrest and from service of civil or criminal process, both within this State and in any other state through which the Witness may be required to pass in the ordinary course of travel, for any matters which arose before the Witness's entrance into this State and other states, while traveling to and from this Court for the purpose of testifying for this case.

9. The State of Georgia is a participant in a reciprocal program providing for the securing of witnesses to testify in foreign jurisdictions which likewise provide for such methods of securing witnesses to testify in their courts.

10. This Certificate is made for the purpose of being presented to a judge of the Superior Court of the District of Columbia by the United States Attorney for the District of Columbia or his duly authorized representative, who is proceeding at the request and on behalf of the Office of the Fulton County District Attorney to compel the Witness to be in attendance and testify before the Special Purpose Grand Jury on August 2, 2022, and continuing through and until the conclusion of the Witness's testimony on or before August 31, 2022, at the Superior Court of Fulton County, Fulton County Courthouse, 136 Pryor Street, 3rd Floor, Atlanta, Georgia 30303.

**WITNESS MY HAND AND SEAL** as a judge of the Superior Court of Fulton County, Georgia,

This the ⌀ day of July, 2022.

**Hon. Robert C. I. McBurney**
Superior Court of Fulton County
Atlanta Judicial Circuit
State of Georgia

# Exhibit A

IN THE SUPERIOR COURT OF FULTON COUNTY
ATLANTA JUDICIAL CIRCUIT
STATE OF GEORGIA

2022 — EX 000024

FILED IN OFFICE

JAN 24 2022

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

IN RE: REQUEST FOR
SPECIAL PURPOSE
GRAND JURY

## ORDER APPROVING REQUEST FOR SPECIAL PURPOSE
## GRAND JURY PURSUANT TO O.C.G.A. §15-12-100, et seq.

The District Attorney for the Atlanta Judicial Circuit submitted to the judges of the

Superior Court of Fulton County a request to impanel a special purpose jury for the purposes set

forth in that request. This request was considered and approved by a majority of the total

number of the judges of this Court, as required by O.C.G.A. §15-12-100(b).

IT IS THEREFORE ORDERED that a special purpose grand jury be drawn and

impaneled to serve as provided in O.C.G.A. § 15-12-62.1, 15-12-67, and 15-12-100, to

commence on May 2, 2022, and continuing for a period not to exceed 12 months. Such period

shall not include any time periods when the supervising judge determines that the special

purpose grand jury cannot meet for safety or other reasons, or any time periods when normal

court operations are suspended by order of the Supreme Court of Georgia or the Chief Judge of

the Superior Court. The special purpose grand jury shall be authorized to investigate any and all

facts and circumstances relating directly or indirectly to alleged violations of the laws of the

State of Georgia, as set forth in the request of the District Attorney referenced herein above.

Pursuant to O.C.G.A. § 15-12-101(a), the Honorable Robert C. I. McBurney is hereby

assigned to supervise and assist the special purpose grand jury, and shall charge said special

purpose grand jury and receive its reports as provided by law.

This authorization shall include the investigation of any overt acts or predicate acts relating to the subject of the special purpose grand jury's investigative purpose. The special purpose grand jury, when making its presentments and reports, pursuant to O.C.G.A. §§ 15-12-71 and 15-12-101, may make recommendations concerning criminal prosecution as it shall see fit. Furthermore, the provisions of O.C.G.A. § 15-12-83 shall apply.

This Court also notes that the appointment of a special purpose grand jury will permit the time, efforts, and attention of the regular grand jury(ies) impaneled in this Circuit to continue to be devoted to the consideration of the backlog of criminal matters that has accumulated as a result of the COVID-19 Pandemic.

IT IS FURTHER ORDERED that this Order shall be filed in the Office of the Clerk of the Superior Court of Fulton County.

SO ORDERED, THIS 24 DAY OF January , 2022.

_____
CHRISTOPHER S. BRASHER, CHIEF JUDGE
Superior Court of Fulton County
Atlanta Judicial Circuit

# Exhibit B

OFFICE OF THE FULTON COUNTY DISTRICT ATTORNEY
ATLANTA JUDICIAL CIRCUIT
136 PRYOR STREET SW, 3RD FLOOR
ATLANTA, GEORGIA 30303

*Fani T. Willis*
District Attorney



TELEPHONE 404-612-4639

The Honorable Christopher S. Brasher
Chief Judge, Fulton County Superior Court
Fulton County Courthouse
185 Central Avenue SW, Suite T-8905
Atlanta, Georgia 30303

$2022-EX-000017$

FILED IN OFFICE

JAN 20 2022

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

January 20, 2022

Dear Chief Judge Brasher:

I hope this letter finds you well and in good spirits. Please be advised that the District Attorney's Office has received information indicating a reasonable probability that the State of Georgia's administration of elections in 2020, including the State's election of the President of the United States, was subject to possible criminal disruptions. Our office has also learned that individuals associated with these disruptions have contacted other agencies empowered to investigate this matter, including the Georgia Secretary of State, the Georgia Attorney General, and the United States Attorney's Office for the Northern District of Georgia, leaving this office as the sole agency with jurisdiction that is not a potential witness to conduct related to the matter. As a result, our office has opened an investigation into any coordinated attempts to unlawfully alter the outcome of the 2020 elections in this state.

We have made efforts to interview multiple witnesses and gather evidence, and a significant number of witnesses and prospective witnesses have refused to cooperate with the investigation absent a subpoena requiring their testimony. By way of example, Georgia Secretary of State Brad Raffensperger, an essential witness to the investigation, has indicated that he will not participate in an interview or otherwise offer evidence until he is presented with a subpoena by my office. Please see Exhibit A, attached to this letter.

Therefore, I am hereby requesting, as the elected District Attorney for Fulton County, pursuant to O.C.G.A. § 15-12-100 et. seq., that a special purpose grand jury be impaneled for the purpose of investigating the facts and circumstances relating directly or indirectly to possible attempts to disrupt the lawful administration of the 2020 elections in the State of Georgia. Specifically, a special purpose grand jury, which will not have the authority to return an indictment but may make recommendations concerning criminal prosecution as it shall see fit, is needed for three reasons: first, a special purpose grand jury can be impaneled by the Court for any time period required in order to accomplish its investigation, which will likely exceed a normal grand jury

term; second, the special purpose grand jury would be empowered to review this matter and this matter only, with an investigatory focus appropriate to the complexity of the facts and circumstances involved; and third, the sitting grand jury would not be required to attempt to address this matter in addition to their normal duties.

Additionally, I am requesting that, pursuant to O.C.G.A. § 15-12-101, a Fulton County Superior Court Judge be assigned to assist and supervise the special purpose grand jury in carrying out its investigation and duties.

I have attached a proposed order impaneling the special purpose grand jury for the consideration of the Court.

Respectfully,

Fani/T. Willis
District Attorney, Atlanta Judicial Circuit

Exhibit A: Transcript of October 31, 2021 episode of *Meet the Press* on NBC News at 26:04 (video archived at https://www.youtube.com/watch?v=B71cBRPgt9k)
Exhibit B: Proposed Order

cc:
The Honorable Kimberly M. Esmond Adams
The Honorable Jane C. Barwick
The Honorable Rachelle Carnesdale
The Honorable Thomas A. Cox, Jr.
The Honorable Eric Dunaway
The Honorable Charles M. Eaton, Jr.
The Honorable Belinda E. Edwards
The Honorable Kelly Lee Ellerbe
The Honorable Kevin M. Farmer
The Honorable Ural Glanville
The Honorable Shakura L. Ingram
The Honorable Rachel R. Krause
The Honorable Melynee Leftridge
The Honorable Robert C.I. McBurney
The Honorable Henry M. Newkirk
The Honorable Emily K. Richardson
The Honorable Craig L. Schwall, Sr.
The Honorable Paige Reese Whitaker
The Honorable Shermela J. Williams
Fulton County Clerk of Superior Court Cathelene "Tina" Robinson